## ESCROW AGREEMENT

THIS ESCROW AGREEMENT is made and entered into this 14th day of November, 2000 by and among:

A.   Mr. Hector Vargas Garza ("Mr. Vargas"), residing at Río Papaloapan 450 Col. México, Monterrey, Nuevo León, Código Postal 64740, and Valores Ecologicos S.A. de C.V. ("Valores") a corporation organized under the laws of the United Mexican States, with offices at Ave. Lázaro Cárdenas #2400 Pte. Edificio Losoles PB-7, San Pedro Garza García, N.L., México; collectively, hereinafter the "Sellers"; and

B.   Compagnie Générale d'Entreprises Automobiles S.A. ("CGEA") having offices at Parc des Fontaines, 169 avenue Georges Clémenceau, 92735 Nanterre, SARP Industries, S.A. ("SARPI"), having offices at Zone Portuaire, 427 rue du Hazay, 78250 Limay, and SARP Industries México, S.A. de C.V. ("SARPI Mexico"), having offices at Av. Lázaro Cárdenas, Pte. 2400, Office No. PD6D, Residencial San Agustín, San Pedro Garza García, N.L. 66260, Mexico; collectively, hereinafter the "Buyers"; and

C.   UBS AG, NEW YORK BRANCH, a branch licensed in the State of New York of a Swiss banking corporation (hereinafter called "Escrow Agent").

WHEREAS, by a Stock Purchase Agreement dated August 26, 2000 (the "SPA"), Buyers and Sellers have agreed to purchase and sell certain shares in Confinamina S.A. de C.V., a company organized under the laws of the United Mexican States, having its registered office at Ave. Lázaro Cárdenas #2400 Pte. Edificio Losoles PB-6, San Pedro Garza García, N.L., México pursuant to the terms and conditions of that agreement; and

WHEREAS, in order to secure certain potential liability of the Sellers as set forth in the SPA, Sellers have agreed to place in escrow a portion of the purchase price in the amount of USD 4,874,593.78 (Four Million Eight Hundred Seventy-Four Thousand Five Hundred Ninety-Three and 78/100 U.S. dollars) to serve as security for any claims Buyers may have against Sellers, or any of them, on account of such certain potential liabilities;

NOW, THEREFORE, Sellers do hereby agree to deposit with Escrow Agent the sum of USD 4,874,593.78 (Four Million Eight Hundred Seventy-Four Thousand Five Hundred Ninety-Three and 78/100 U.S. dollars) to be held pursuant to this Escrow Agreement as follows:

1.    Except as otherwise set forth herein, Escrow Agent shall hold said funds in an account with Escrow Agent at its office in New York (which shall be designated in its records as "UBS AG, New York Branch, as Escrow Agent for Mr. Vargas, Valores, CGEA, SARPI and SARPI Mexico (Escrow Account)") unless and until it receives joint instructions from Buyers and Sellers to disburse the funds or a decision of the arbitrators referred to in Section 6(a)(ii), at which time Escrow Agent shall disburse the funds or any portion thereof as directed.

If it shall be determined by Escrow Agent that any payments or transfers made by Escrow Agent pursuant to this Agreement would be subject to any tax, withholding or other charge under laws applicable to Escrow Agent, then it is understood that Escrow Agent may withhold such tax or charge as shall be prescribed by law on such payments or transfers.

2.    In the event Escrow Agent has not disbursed all of the escrowed funds on or before November 14, 2005 pursuant to joint instructions from Buyers and Sellers or as otherwise set forth in this agreement, then Escrow Agent may, at its option, deposit said funds in the registry of any court having general jurisdiction in New York City and shall cite the said parties to claim such funds.    In the case of any proceeding or dispute arising from this Escrow Agreement, the parties hereto each agree to the jurisdiction and venue of the said court and to accept service by certified mail, return receipt requested, directed as set forth in Section 10 hereof.

3.    Escrow Agent shall invest the escrowed funds in an overnight deposit with UBS AG, Cayman Islands Branch, or as otherwise mutually agreeable to Buyers, Sellers and Escrow Agent, with interest payable as directed by Sellers.

4.    Escrow Agent shall for its services hereunder be paid by Sellers a fee of USD 5,000.00 (five thousand U.S. Dollars) payable in advance on the date of this Agreement, the receipt of which by Escrow Agent shall be a condition to the effectiveness of this Agreement.

5.    (a)    The responsibility of Escrow Agent is extended solely to the duties expressly stated in this Agreement.  It may consult with its attorneys as to said duties and any matters incidental thereto and shall be fully protected when acting thereon in accordance with the advice of its attorneys.  It shall not be liable for any act or omission except for actual fraud,

-2-

CGEA0041080

dishonesty or bad faith.  In the event of any dispute arising between the parties hereto, Escrow Agent may withhold any requested action until the dispute is amicably resolved, or settled by a decision of the arbitrators referred to in Section 6(a)(ii).  In the event the dispute is not amicably resolved, Escrow Agent reserves the right to deposit all property in its possession in connection with this Agreement in the registry of a competent court upon directing written notice by registered mail to the parties, and thereupon shall be relieved of any further responsibility under this Agreement.

(b)  Escrow Agent shall be under no duty to take any action whatsoever hereunder unless and until Escrow Agent shall have received joint instructions from Buyers and Sellers or is otherwise obligated to act pursuant to the terms hereof (including without limitation pursuant to a decision of the arbitrators referred to in Section 6(a)(ii) hereof) and shall be assured, to its satisfaction, that it is adequately indemnified against its costs and liabilities to be incurred in so acting; provided, however, that Escrow Agent need take no action if it determines that it would be unlawful or impracticable to do so or if doing so might expose Escrow Agent to liability.

(c)  Escrow Agent may rely and shall be protected in acting or refraining from acting upon any written or oral notice, confirmation, direction, certificate, resolution, instruction, request, authorization, or other paper or document (including any telecopy) as to any information therein contained, which in good faith it believes to be genuine and to have been signed or presented by the proper party or parties.  Without limiting the foregoing, Escrow Agent shall have no duty to inquire as to the authority of signatories or authenticity of signatures.

6.  a) At any time or times on or before November 14, 2005 Buyers shall have the right directly or through its legal counsel to notify the Sellers of any and all claims which it may have against any or all of the Sellers under the SPA, such "Notice of Claim" to specify the type of claim, the amount thereof, the relevant facts, and the provisions of the SPA and/or law on which the claims are based and a copy of the notice of claim so served, shall be delivered to the Escrow Agent.  The Escrow Agent shall have no duty to ascertain whether such Notice of Claim was in fact delivered to the Sellers.

(i)Upon receipt by the Escrow Agent of such a Notice of Claim it shall pay to Buyers out of the escrowed funds or the remaining balance thereof the amount of the claim

-3-

specified in such Notice of Claim which can be satisfied
therefrom, promptly after the earlier of the following:

A/Receipt by the Escrow Agent of a written authorization
from the Sellers to make such payment;

B/Expiration of thirty days after receipt of such Notice of
Claim provided that the Escrow Agent shall not have
received a written statement from the Sellers objecting
to such payment, in all or part. If the objection of the
Seller relates only to part of a claim, the Escrow Agent
shall pay to Buyers out of the escrowed funds that amount
of the Claim to which Sellers have not objected and for
which there are sufficient funds in the escrowed funds.

(ii) In case the Sellers shall object to such payment in
respect of any claim or claims made in any Notice of Claim,
the Sellers and Buyers shall attempt in good faith to come
to an agreement with respect to each of such claims, during
a period of 30 days from receipt of the Notice of Claim. If
the Sellers and Buyers so agree a written memorandum
setting forth such agreement shall be prepared and signed
by both parties and shall be furnished to the Escrow Agent.
The Escrow Agent shall be entitled to rely on any such
memorandum and distribute the escrowed funds in accordance
with the terms thereof. If no such agreement can be reached
after good faith negotiations, the dispute shall be decided
by arbitration as provided in paragraph 8 below. The Escrow
Agent  is  authorized  and  directed  to  retain  in  its
possession without liability to anyone all or the remaining
balance of the escrowed funds until such dispute shall have
been settled by a decision of the arbitrator(s), but it
shall be under no duty whatsoever to institute or defend
any   such   proceeding.   The   final   decision   of   the
arbitrator(s)  is  binding  also  upon  the  Escrow  Agent,
subject to Section 5(b) hereof.

b)    On November 15, 2005, the Escrow Agent shall pay the
balance of the escrowed funds, if any, to the Sellers, less
an amount sufficient to cover any claims of Buyers specified
in any Notice of Claim delivered to the Escrow Agent, which
may still give rise, under the provisions of paragraph 6(a),
to an obligation on the part of the Escrow Agent to pay such
an amount to the Buyer, provided that the Escrow Agent
cannot be required to retain an amount greater than the
balance of the escrowed funds.

-4-

7.    It is understood that nothing in the present Escrow Agreement shall be deemed to limit the right of Buyer to pursue Seller for the full amount of any claims which the former may have against the Seller or any of them, whether or not the total amount of such claims exceeds the amount of the escrowed funds and regardless of the time when any such claims may have arisen.

8.    It is understood by the parties hereto that all disputes arising in connection with the SPA and with this Agreement shall be finally settled by arbitration in New York, N.Y., U.S.A. under the Rules of Conciliation and Arbitration of the International Chamber of Commerce, by one or more arbitrators appointed under those Rules. All written briefs and pleadings and all oral proceedings shall be in the English language. The Escrow Agent may rely conclusively upon and shall be protected in acting upon any order, decree, certificate, notice, request, consent, statement or instruction believed by it to be genuine and to have been signed and presented by proper persons acting on behalf of the above indicated arbitrator or arbitrators or a competent court or tribunal.

9.    Buyers and Sellers jointly and severally agree to reimburse and to indemnify Escrow Agent for, and to hold Escrow Agent harmless against, any claim, damage, loss, liability or expense (including reasonable attorneys' fees and the costs and expenses of defending itself against any claim of liability) incurred without fraud, dishonesty or bad faith on the part of Escrow Agent arising out of or in connection with its entering into this Agreement and carrying out its duties hereunder.  The foregoing indemnity shall without limitation extend to all costs of filing the interpleader referred to in Section 2 and Section 5(a) hereof.

10.   All notices and instructions hereunder shall be in writing (including telecopy), shall be effective when received and shall be directed as follows:

        To Buyers:

        Compagnie Générale d'Entreprises
          Automobiles S.A.
        Parc des Fontaines
        169 avenue Georges Clémenceau
        92735 Nanterre, France

        Telephone: 011 33 1 4669 3000
        Facsimile: 011 33 1 4669 3363

-5-

CGEA0041083

Attention: President

SARP Industries, S.A.
Zone Portuaire
427 rue du Hazay
78250 Limay, France

Telephone: 011 33 1 3497 2525
Facsimile: 011 33 1 3495 2698

Attention: President

SARP Industries México, S.A. de C.V.
Av. Lázaro Cárdenas
Pte. 2400
Office No. PD6D
Residencial San Agustín
San Pedro Garza García, N.L. 66260
Mexico

Telephone: 011 52 8 363 8870
Facsimile: 011 52 8 363 3684

Attention: Luis Santos Theriot
           Secretary

To Sellers:

Hector Vargas Garza
Río Papaloapan 450
Col. México, Monterrey
Nuevo León
Código Postal 64740

Telephone: 011 52 8 152 2102
Facsimile: 011 52 8 152 2190

Valores Ecologicos S.A. de C.V.
Ave. Lázaro Cárdenas #2400
Pte. Edificio Losoles PB-7
San Pedro Garza García, N.L., México

Telephone: 011 52 8 363 20 24
Facsimile: 011 52 8 363 20 24 ext. 102

Attention: Administrador Unico

-6-

To Escrow Agent:

UBS AG, New York Branch
10 East 50th Street
New York, New York  10022

Telephone: (212) 574-3503
Facsimile: (212) 574-5443

Attention: Lorenzo Mueller

11.  Without limiting other action by Escrow Agent, Escrow Agent may, in the event of non-payment by Buyers or Sellers of any amounts due hereunder after Escrow Agent's demand therefor, exercise a right of set-off against amounts otherwise payable to Buyers or Sellers hereunder.

12.  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

EXECUTED as of the 14th day of November, 2000.

Sellers

_____
HECTOR VARGAS GARZA

VALORES ECOLOGICOS S.A. DE C.V.

By _____
Title: _____

-7-

CGEA0041085

<u>Buyers</u>

COMPAGNIE GENERALE D'ENTREPRISES
AUTOMOBILES S.A.

By_____

Title: _Vice President_


SARP INDUSTRIES S.A.

By_____

Title: _Vice President_


SARP INDUSTRIES MEXICO, S.A. DE
C.V.

By_____

Title: _President_


<u>Escrow Agent</u>

UBS AG, NEW YORK BRANCH


Alfredo Roth
Executive Director
Private Banking

By_____

Title: _____


By_____

Title: _____

Alan L. Griffin
Executive Director
Legal Affairs


algdoc/escvar7/ALG

-8-

# NON-COMPETITION AGREEMENT

THIS NON-COMPETITION AGREEMENT (the "Agreement") is entered into this 14th day of November, 2000, by and among Mr. Hector Vargas Garza, Hector Vargas Aguirre, Alberto Vargas Aguirre, Eduardo Vargas Aguirre, Jose de Jesus Aguirre, and Guillermo Vargas Aguirre residing at Rio Papaloapan 450, Col. Mexico, Monterrey NL CP 64740 and Valores Ecologicos SA de CV acting jointly and severally (collectively known as "Promisors") and Residuos Industriales Multiquim, S.A. de C.V. (the "Company"), a corporation organized under the laws of the United Mexican States;

## WITNESSETH:

WHEREAS, pursuant to that certain Stock Purchase Agreement dated August 26, 2000 (the "Stock Purchase Agreement") by and among Mr. Hector Vargas Garza ("HVG"), Valores Ecologicos SA de CV ("Valores") and Buyer, Buyer has agreed to purchase from HVG and Valores 75% of the shares of common and preferred stock of the Company owned by HVG and Valores, pursuant to the terms and conditions described therein;

WHEREAS, Buyer has required that the parties hereto enter into this Agreement as a condition to the consummation of the transactions contemplated in the Stock Purchase Agreement; and

WHEREAS, All of the Promisors will derive substantial benefit as a result of the performance by all of the Promisors of their obligations under the Stock Purchase Agreement.

NOW, THEREFORE, in consideration of the promises and covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which are mutually acknowledged by each party, it is agreed as follows:

1.     Defined Terms.  Capitalized terms used herein without definition have the meanings assigned to them in the Stock Purchase Agreement.

CGEA0041087

2.    Restrictive Covenant.  (a) Promisors agree that for a period commencing at the Time of Closing and ending three and a half (3.5) years after HVG and Valores cease to own or hold any shares of common stock of the Company (the "Period"), Promisors and their Affiliates will not directly or indirectly engage in any business or activity that competes with or falls within the definition of the Business (as defined below) anywhere in the United Mexican States including but not limited to the owning of (except as specifically provided for in sub-paragraphs (b) and (d) below), investing in, managing, operating, controlling, assisting, counseling, or providing services to any person or entity and will not solicit business, directly or indirectly, that competes with or falls in the definition of the Business anywhere in the United Mexican States. For the purposes of this Section 2, the "Business" shall mean the business of performing, with respect to Hazardous Waste (as defined by the Environmental and safety laws of the United Mexican States) and non-hazardous and non hazardous waste, importation and exportation, collection (other than collection that results in services performed by the Company), transportation, transfer, storage, treatment, reuse, recycling, solidification, stabilization, physico-chemical treatment, biological treatment, thermal desorption, tank cleaning, lab pack and repackaging services, reactive chemical management, brokerage services, inplant environmental administration services, remedial services, chemical cleaning, high pressure water blasting services and technology, incineration, deepwell injection, blending, solvent distillation, disposal, confinement and final disposal services, landfill, waste to energy, radioactive waste services (including any subsequently developed technology related to the foregoing).

(b)    Nothing in this Agreement shall limit on prevent the right of Promisors to hold the ownership of less than 5% of any class of issued and outstanding securities of any publicly held corporation listed on a national stock exchange, engaged in the Business.

(c)    Without the Company's written consent, Promisors and their Affiliates shall not, and shall cause their Affiliates not to, for the duration of the Period, (i) make, offer, solicit or induce to enter into, any written or oral arrangement, agreement or understanding regarding employment or retention as a consultant or independent contractor with any person who was, on the date hereof or who becomes during the Period, a full-time employee of the Company, and (ii) enter into any such written or oral arrangement, agreement or understanding with any person who was, on the date hereof, or who becomes during the Period a full-time employee of the Company.

(d)    Nothing in this agreement shall prevent the Promissors from continuing to hold a 99 % voting interest in Ingenieria de Proceso Ambiental SA de CV (IPA) a company engaged in the business of Bio remediation and water treatment and a 99 % voting interest in Trans Quimica National SA de CV ("TQN") a transportation company, provided that: (i) as to IPA, if Buyer or any of its affiliates enters the Bioremediation or the water treatment business in the United Mexican States, Promissors agrees to immediately cause IPA to cease from undertaking any new Bioremediation or water treatment project and to solicit offer from the Buyer for the sale of all of their shares in

-2-

CGEA0041088

IPA as provided for in Section 5 below, (ii) as to TQN, not more than 10% of the sales of TQN shall be derived from sources having an activity in competition with the definition of the Business and provided that Promisors grant first negotiation last refusal rights to Company or any of its Affiliates as provided for in section 5 below.

      (e)    Promisors and their Affiliates recognize and agree that a breach by Promisors and their Affiliates of any of the covenants and agreements in this Section 2 would cause irreparable harm to the Company, that the Company's remedies at law in the event of such breach may be inadequate, and that, accordingly, in the event of such breach by Promisors and their Affiliates, in addition to any other rights and remedies that may be available under applicable law to the Company, the Company may seek injunctive relief in a court of competent jurisdiction. Promisors and their Affiliates covenant that they will not contest the fairness and reasonableness of the restraints imposed by this Section 2, or the appropriateness or availability of temporary or permanent injunctive relief without the necessity of proving actual damages, or posting bond. If this Section 2 is more restrictive than permitted by the laws of the jurisdiction in which the Company seeks enforcement hereof, this Section 2 shall be limited to the extent required to permit enforcement under such laws. The rights and benefits contained in this Section 2, shall inure to the benefit of and be enforceable by any successor or assignee of the Company that may hereafter acquire the Shares.

     3.    Joint and Several Liability. Promisors shall be jointly and severally liable for the full and prompt performance of the obligations of Promisors and their Affiliates herein.

     4.    Payment. As consideration for this Agreement, the Company shall pay to Promisor the sum of Mexican Pesos 18,720,000, which sum shall be payable on the date of Closing by wire transfer of immediately available funds to such account as may be specified by Promisor in writing.

     5.    First Negotiation, Last refusal rights

      (a) In the event that either Promisors or an Affiliate of any of them (in any such case, the "Offeror") wishes to sell in a transaction with an independent third party all or any portion of the shares of common stock of IPA or TQN, owned by the Offeror (the "Shares"), the Offeror shall first, and prior to soliciting any third parties, notify the Company and the Buyer (the "Offeree") in writing (the "Notice of Intended Sale") of the number of Shares for sale by the Offeror (the "Offered Shares") and the material proposed terms of sale, including the purchase price per share if the Offeror has received an unsolicited offer from an independent third party to buy the Offered Shares.

-3-

(b) The Offeror shall engage in exclusive discussions with the Offeree if the latter so desires, for a period not to exceed 30 days from the date of receipt by the Offeree of the Notice of Intended Sale, to mutually agree on a purchase price per share for the Offered Shares. Not later than the end of such 30 day period, the Offeree shall notify the Offeror in writing either of its offer (the "Offer") to buy all and not less than all of the Offered Shares at a specified price per share (the "Offeree Proposed Price") and on all other material terms proposed by the Offeror subject to confirmatory due diligence, negotiation of definitive transaction documents and any other customary conditions, or that the Offeree does not wish to purchase any of the Offered Shares.

(c) Within 30 days after the date of receipt by the Offeror of the notice of the Offeree Proposed Price, the Offeror shall notify the Offeree in writing in accordance with the following provisions:

(i) If either (x) the Offeree Proposed Price is equal to or greater than the proposed purchase price per share for the Offered Shares contained in the Notice of Intended Sale, or (y) the Notice of Intended Sale did not contain any proposed purchase price for the Offered Shares but the Offeror wishes in its discretion to sell the Offered Shares to the Offeree at the Offeree Purchase Price, then (z) the Offeree and the Offeror shall, as promptly as practicable, negotiate in good faith in order to enter into a definitive stock purchase agreement and execute and deliver such documents to one another as shall be necessary for the sale of shares as contemplated hereby to be consummated within 90 days after the date of receipt by the Offeree of the notice of the Offeror under this sub-section (c). The Offeror shall be afforded the opportunity to conduct confirmatory due diligence during this 90 day period.

(ii) If either (x) the Offeree Proposed Price is less than the proposed purchase price per share for the Offered Shares contained in the Notice of Intended Sale, or (y) the Notice of Intended Sale did not contain any proposed purchase price for the Offered Shares and the Offeror in its discretion does not wish to sell the Offered Shares to the Offeree at the Offeree Proposed Price (or if the Offeree has notified the Offeror that it does not wish to purchase any of the Offered Shares), then (z) the Offeror shall be free, for a period of 90 days after the date of receipt by the Offeree of the notice required by paragraph (c), to consummate a sale of the Offered Shares to any Person at a price equal to or greater than the proposed purchase price per share contained in the Notice of Intended Sale refered to in (x) above and on substantially the same material terms as set forth in the Notice of Intended Sale; provided, however, that in the event the Notice of Intended Sale did not contain any proposed purchase price for the Offered Shares and during such 90 day period the Offeror receives an offer from an independent third party to buy the Offered Shares, the Offeror shall so advise the Offeree in writing and shall afford the Offeree one opportunity for a period not to exceed 30 days to notify the Offeror in writing of its Offer as defined in (b)

-4-

CGEA0041090

above to buy all and not less than all of the Offered Shares at a purchase price per share (the "Revised Offeree Proposed Price") that is equal to or greater than the purchase price per share contained in, and on all other material terms of, such third party offer, whereupon the Offeree and the Offeror shall, as promptly as practicable, negotiate in good faith in order to enter into a definitive stock purchase agreement and execute and deliver such documents to one another as shall be necessary for the sale of shares as contemplated hereby to be consummated within 90 days after the date of receipt by the Offeror of the notice of the Revised Offeree Proposed Price. ;the Offeree shall be afforded the opportunity to conduct confirmatory due diligence during this 90 day period. To the extent that a sale is not consummated by the Offeror within the periods contemplated by this subparagraph (ii), without any fault on the part of the Offeree, the Offered Shares shall thereafter again be subject to the provisions of this Section 5.

6.    Conflict. Promisors hereby represent and warrant to the Company that Promisors and their Affiliates have not executed any written agreement with any other person or entity that would prohibit them from entering into this Agreement.

7.    Notices.Any notice to a party hereto pursuant to this Agreement shall be given by hand delivery, telecopier, certified or registered mail or a private courier service which provides evidence of receipt as a part of its service, addressed, if to the Company, to: Chairman of the Board, Residuous Industriales Multiquim, S.A. de C.V., Ave. Lazaro Cardenas 2400 B-21, Garza Garcia, Nuevo Leon C.P. 66260, telecopier number (8)152-21-90; or, if to Promisors or their Affiliates, to: Mr. Hector Vargas Garza residing at Rio Papaloapan 450, Col. Mexico, Monterrey NL CP 64740, or if to Buyer, to CGEA, Parc des Fontaines, 169 av. Georges Clémenceau 92735 Nanterre Cedex FRANCEtelecopier number (33) 1 46 69 33 63 with a copy to Kenneth Levine, 51 avenue Montaigne, 75008 Paris – France, telecopier number : (33)145632496. Any notice given hereunder shall be deemed given on the date of hand delivery, transmission by telecopier, five day after deposit with the postal service or two days after delivery to a courier service, as appropriate. In the event any proceeding, action or suit is commenced by any party to this Agreement against any other party to either enforce the performance of this Agreement or any right or obligation arising thereunder, Promisors each hereby appoint Mr. Hector Vargas Garza, Buyer hereby appoints its President, and the Company hereby appoints its Chairman of the Board, as their respective agents for service of process. Any party may change the address to which notices are given by giving notice to the other parties in the manner indicated below.

8.    Governing Law. This Agreement shall be governed by and construed in accordance with the internal laws of the United Mexican States applicable in the case of contracts    made    and    to    be    performed    in    such    jurisdiction.

-5-

9.    Binding Effect. This Agreement shall inure to the benefit of, and be binding on and enforceable against the successors and assigns of the Company, and Promisors.

10.    Entire Agreement. This Agreement constitutes the entire Agreement and understanding between the parties, and supersedes any prior agreement and understandings relating to the subject matter hereof. This Agreement may be modified or amended by a written instrument executed by all parties hereto.

11.    Severability of Provisions. If at any time subsequent to the date hereof, any provision of this Agreement shall be held by any court of competent jurisdiction to be illegal, void or unenforceable, such provision shall be of no force and effect, but the illegality or unenforceability of such provision shall have no effect upon and shall not impair the enforceability of any other provision of this Agreement.

12.    Execution in Counterparts. This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute but one and the same instrument.

13.    Attorney's Fees; Costs of Litigation. If any legal action or any other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled.

14.    Headings. The subject headings of the paragraphs and sections of this Agreement are included for purposes of convenience only and shall not affect the construction or interpretation of any of its provisions.

15.    Limitation of Rights to Parties. Nothing in this Agreement, whether expressed or implied, is intended to confer any rights or remedies under or by reason of this Agreement on any persons other than the parties to it and their respective successors, legal representatives and assigns, nor is anything in this Agreement intended to relieve or discharge the obligation or liability of any third persons to any party to this Agreement, nor shall any provisions give any third persons any rights of subrogation or action over or against any party to this Agreement.

16.    Arbitration. Any dispute, controversy or claim arising out of or relating to this Agreement or the breach thereof shall be finally settled by arbitration in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce ("ICC"). There shall be three arbitrators, one selected by the Company, one selected by the Promisors, and the third selected by the two arbitrators so selected.   If a party fails to nominate an

-6-

CGEA0041092

arbitrator within 30 days from the date of notification to it of the other party's request for arbitration, or if the two arbitrators fail within 30 days from the date of their appointment to reach agreement on the third arbitrator, then the Court of Arbitration of the ICC shall appoint the arbitrator that was not nominated by the failing party, or shall appoint a third arbitrator, as the case may be. The place of arbitration shall be New York City and the language used shall be English.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first above written.

CGEA SA

By: _____
Name: _____
Title: _____

RESIDUOS INDUSTRIALES MULTIQUIM,
S.A. DE C.V.

By: _____
Name: _____
Title: _____


HECTOR VARGAS GARZA


HECTOR VARGAS AGUIRRE


ALBERTO VARGAS AGUIRRE


EDUARDO VARGAS AGUIRRE


-7-

CGEA0041093

JOSE DE JESUS VARGAS AGUIRRE

GUILLERMO VARGAS AGUIRRE

VALORES ECOLOGICOS SA de CV.

By: _____

Name: _____

Title: _____

-8-

CGEA0041094

# SHAREHOLDERS AGREEMENT

Agreement dated as of November 14, 2000 among

Mr. Hector Vargas Garza ("Mr. Vargas), a citizen and resident of the United Mexican States having his domicile at Rio Papaloapan 450, Col. Mexico, Monterrey NL CP 64740and Valores Ecologicos SA de CV, ("Valores"), a corporation organized under the law of the United Mexican States(Hereinafter referred to collectively as "the Vargas Interests")

AND

SARP Industries Mexico S.A. de CV a corporation organized under the laws of the United Mexican States, having its registered office atAv. Lazaro Cardenas, Pte. 2400, Office N° PD6D, Residential San Agustin, San Pedro Garza Garcia, N.L. 66260, Mexico, represented by Mr. Jean-Alain Jullien, its Chairman.

(Hereinafter referred to as "SARPI")

(Mr. Vargas, the Vargas Interests, Valores and SARPI each referred to as a "Party" and collectively the "Parties").

1

CGEA0041095

**IT HAS BEEN AGREED AS FOLLOWS:**

## Article I – Preliminary Statements

1.1     Pursuant to an agreement (the "Agreement") of even date entitled "Agreement for the Purchase of Stock of Residuos Industriales Multiquim, S.A. de C.V. ("RIMSA" or the "Company") among Mr. Vargas, Valores , Compagnie Générale d'Entreprises Automobiles, SA ("CGEA") through it wholly owned subsidiary designee SARPI (the "Buyer") as defined in that Agreement acquired 100% of the authorized issued and outstanding stock of Immobiliaria Confinamina S.A. de C.V. which is the owner of 30% of the authorized, issued and outstanding capital stock of RIMSA (686 Series B shares, 42 Series B-V Shares and 1,672 Series P shares) and of the Land as defined in that Agreement. The Buyer also acquired 60% of the authorized issued and outstanding stock of RIMSA from Chemical Waste Management, Inc.. Mr. Vargas continues to own 10 % of the authorized, issued and outstanding capital stock of RIMSA (the "Shares"). (229 Series B shares, 14 Series B-V Shares and 557 Series P shares) through Valores, a company in which he owns the quasi-totality of the shares, i.e. 495 shares out of a total of 500

1.2     The Parties desire to enter into this Agreement for the purpose of defining their future relations as the sole remaining shareholders of RIMSA. The parties acknowledge that all of their undertakings here under are subject to compliance with the legal requirements of the United Mexican States.

## Article II – RIMSA's Business

2.1     RIMSA's actual current business activities consist mainly of the collection, storage, transportation, treatment and final disposal of solid or liquid hazardous waste in the United Mexican States, including but not limited to reuse, recycling, blending, thermal treatment, bioremediation, confinement, importation, exportation and also has some industrial waste activities..

2.2     During the term of this agreement, RIMSA's activities may be expanded to include incineration, transportation, thermal treatment

2

and bioremediation of solid or liquid hazardous waste in the United Mexican States. Additional facilities and sites for the conduct of the business defined in 2.1 and 2.2 may be acquired, constructed and/or operated by RIMSA.

2.3    Extensions of the activities of RIMSA beyond those defined in 2.1 and 2.2 above shall require the unanimous approval of the parties.

### Article III – Management of RIMSA

**3.1    Board of Directors**

(a)    The Board of Directors of RIMSA shall have the general supervision of the business and operations of RIMSA, and shall be composed of at least 5 Directors who shall be elected by the shareholders;

(b)    Mr. Vargas through Valores shall be entitled to nominate 1 member and SARPI shall be entitled to nominate 4 members. Each party shall nominate its proposed members and their alternates of the Board, and the Parties agree to elect all such nominees at the annual ordinary meeting of shareholders of RIMSA, and at the meeting of shareholders of RIMSA held on this date. If the Shareholders decide to increase the number of directors, the proportions set forth in this section (Vargas : 1, SARPI : 4) shall be maintained;

(c)    Any director (or alternate) elected as provided above may be removed from office without cause only upon the initiative of the Party which originally nominated such director (or alternate). In such event, the other Party agrees to vote for the removal of such director (or alternate). Any Party may propose the removal of a director not originally nominated by it only for cause;

(d)    In the event there is any vacancy on the Board arising out of death, disability, removal, resignation or otherwise, the Party which originally nominated the director (or alternate) vacating such office shall nominate a new director (or alternate) to the Board.

(e)    Any Board action may be taken by the affirmative vote of a majority of directors present or represented at the meeting.

3

CGEA0041097

**3.2    Officers**

(a)    The Board of Directors shall elect the officers who shall consist of Chairman, a President, a Chief Executive Officer, a Vice-President of Business Development, a Secretary, and other officers as may determined by the Board, provided however that for as long as Mr. Vargas, directly or indirectly owns any share participation in RIMSA the director appointed by him will be entitled to propose candidates for such positions, and one of such positions shall be occupied by one of the candidates proposed by such director;

(b)    Mr. Hector Vargas Garza will be named President by the Board of Directors' meeting held shortly after the signature of this agreement and the organization chart annexed hereto as Exhibit A, will be adopted at that meeting. The President will not have a casting vote.

(c)    The following actions will require the affirmative vote of the Board of Directors :

➤    Approval or modification of the yearly Budget, Business Plan, or Capital Investment Program,

➤    Approval of capital expenditures per item and per period in excess of an amount to be determined by the Board;

➤    Purchase, sale or lease of assets with a value exceeding an amount to be determined by the Board other than in the ordinary course of business;

➤    Approval of or amendment to any contract with a value in excess of an amount to be determined by the Board;

➤    Incurrence of any item of indebtedness in excess of an amount to be determined by the Board;

➤    Commencement or settlement of any material litigation in excess of an amount to be determined by the Board;

➤    Approval of any contract or amendment with any shareholder or an Affiliate thereof;

4

➢ Undertaking to guarantee payment or performance of the obligations of any third party on granting credit to any third party (other than in the ordinary course of business);

➢ Creation, acquisition or disposition of any subsidiary of RIMSA or of any shares in any such subsidiary;

➢ Acquisition, purchase or subscription for any interest, shares, debentures or other securities in any company (other than subsidiaries of RIMSA);

➢ Creation of any encumbrance of any kind whatsoever upon assets, other than purchase money encumbrances in connection with authorized purchases or encumbrances arising by operation of law;

➢ Change of accounting policies;

➢ Requesting any material permits, authorizations or licenses from governmental authorities;

➢ Any agreements, licenses, operations, or action which may render the continuation of the operations of the Company difficult or impossible;

➢ Hiring or firing any persons having a salary in excess of an amount to be determined by the Board;

➢ Material changes in labor policies.

**3.3 Shareholders**

(a) The following actions shall require the affirmative vote of all outstanding shares:

(i)

➢ Mergers, spin-offs (escision) or sales of substantially all of the assets of the business.

5

CGEA0041099

➤ Extension of the activities of the Company outside its area of business as defined in Section 2.1 and 2.2.

➤ Issuance of Preferred Shares.

➤ Increase or decrease of capital, share split-up or spin-off.

➤ Appointment and removal of the Examiner of the Company, provided that if SARPI and the Vargas Interests cannot agree on the Examiner, each Party may elect an Examiner.

➤ Change of the nationality of the Company.

➤ Dissolution of the Company.

➤ Amendments to the charter or by-laws in connection with any of the above provide matters.

(ii)

➤ Executing or amending any contract or agreement with any shareholder or affiliate which is not in the ordinary course of business; It being agreed that an agreement with SARPI or affiliate for the providing of administrative services in consideration of the payment of a fee of 2% of the sales of Rimsa, and billings by Confinamina for the providing of raw materials beginning June 26, 2000 at fair market values no less than current values, and the agreement with Valores or affiliate for the providing of management services to Rimsa for three years from the Closing or until Valores sells its Shares in Rimsa, whichever is earlier, shall each be deemed to be agreements in the ordinary course of business.

➤ Making any capital expenditures which in the aggregate or in a single transaction exceeds U.S. $ 10 million per fiscal year;

➤ Sale of any assets for an aggregate amount or in a single transaction exceeding U.S. $ 1 million per fiscal year ;

➤ Obtaining any loans or credit facilities which singly or cumulatively exceed U.S. $ 10 million per fiscal year;

➤ Granting of any liens, mortgages or pledges of assets in an amount which exceeds singly or cumulatively U.S. $ 10 million.

6

CGEA0041100

(b)     All other actions by the shareholders shall be taken by the affirmative vote of the majority customary required by law for ordinary meetings and for extraordinary (special) meetings.

(c)     If SARPI proposes any decision requiring the Vargas' Interests shareholder approval under Section 3.3(a) and the Vargas Interests vote against such proposal, the Vargas Interest and SARPI shall meet over a period not to exceed 30 days in an attempt to find a mutually agreeable solution. If SARPI maintains its proposed decision a second shareholders meeting to decide on said decision shall be held and if the Vargas Interests vote against such proposal for a second time, each of the parties may exercise the Put/Call arrangement of Section 6.3 below.

## Article IV – Financial statements

The Board of Directors shall cause the management of RIMSA to distribute to the Board and to the parties for internal management purposes, no later than 30 days after the end of each quarter, unaudited financial statements for such quarter prepared in accordance with U.S. GAAP.

## Article V – Financing

The parties may make additional capital investments or shareholder loans available to RIMSA on terms, conditions, and interest rate to be determined by the Board, or may borrow from external sources.

## Article VI – Transfer of Shares – Put and Call

6.1     Valores shall not during the term of this agreement sell, assign, or encumber any Shares except as provided for below.

6.2     For a period of three years from the date of this agreement Valores may only sell, assign, encumber or transfer Shares under the following put and call agreement.

6.3     If SARPI proposes any decision requiring the Vargas Interests shareholder approval under Sections 3.3(a)(i) or (ii) and if the Vargas

7

CGEA0041101

Interests vote against said decision for a second time at a second shareholders meeting called to decide on said decision as provided for in sub-paragraph 3.3 (c) then SARPI shall have the right and option to purchase ("the Call") all of the Shares owned by the Vargas Interests at the Exit Price defined below and the Vargas Interests shall have the obligation to sell such shares at that price, and (ii) the Vargas Interests shall have the right and option to sell ("the Put") all of the Shares owned by the Vargas Interests and SARPI will have the obligation to purchase all of the Shares at the Exit Price defined below. SARPI shall exercise its Call and the Vargas Interests shall exercise their Put, as the case may be, within sixty days after the holding of the second shareholders meeting referred to in subsection 3.3 (c) by delivery of a written notice ("the Exercise Notice") to the other Party during such sixty days. The price for the shares shall be the Exit Price as determined below, which shall be payable in cash at the Closing. The Vargas Interests upon written notice of the exercise of such option ("exercise notice") shall deliver all Shares owned by them against payment of the Exit Price at the Closing.

6.4    Should Mr. Vargas sell all or part of his 95% share interest in Valores, then SARPI shall have a Call on all of the Shares owned by the Vargas Interests. SARPI may exercise its call by sending a written notice ("Exercise Notice") to the Vargas interest within 60 days of being notified by the Vargas Interests of the change in Mr. Vargas participation in Valores or within 60 days of learning of such change whichever is the latest. The price for the shares shall be the Exit Price as determined below, which shall be payable in cash at the Closing.

6.5    Commencing on November 15, 2003 and at any time during the ninety (90) day period thereafter:

·    The Vargas Interests shall have the right, but not the obligation, to sell ("the Put") to SARPI all of the Shares owned by them and SARPI will have the obligation to purchase such Shares, and

·    SARPI shall have the right, but not the obligation, to purchase ("the Call") all of the Shares owned by the Vargas Interests and the Vargas Interests shall have the obligation to sell such Shares;

8

CGEA0041102

- by delivering a written notice ("the Exercise Notice") to the other party during such period. The price for the shares shall be the Exit Price as determined below, which shall be payable in cash at the Closing.

6.6    Exit Price :

The Exit Price for each share to be sold shall de determined as follows:

- If the Exercise Notice is sent subsequent to November 15, 2003, the Exit Price shall be average EBITDA of RIMSA for the years 2001, 2002 and 2003, multiplied by five less any financial or shareholder indebtedness, and divided by the total number of shares outstanding at the time of exercise;

- If the Exercise Notice is sent subsequent to December 1, 2002, the Exit Price Shall be average net EBITDA of RIMSA for the years 2000, 2001, 2002, multiplied by five less any financial or shareholder indebtedness, and divided by the total number of shares outstanding at the time of exercise;

- If the Exercise Notice is sent subsequent to December 1, 2001, the Exit Price Shall be the EBITDA of RIMSA for the years 1999, 2000 and 2001, multiplied by five less any financial or shareholder indebtedness, and divided by the total number of shares outstanding at the time of exercise;

If the Exercise Notice is sent subsequent to December 1, 2000, the Exit Price Shall be the EBITDA of RIMSA for the years 1999 and 2000, multiplied by five less any financial or shareholder indebtedness, and divided by the total number of shares outstanding at the time of exercise;

EBITDA for purposes hereof shall mean the Earnings Before Interest, Income Taxes, Depreciation and Amortization, deducting any amount of profit sharing payable to employees, and shall not take into account any inflation escalation. Payments to shareholders or affiliates not in the ordinary course of business shall not be deducted for determining EBITDA unless they have been unanimously agreed to between the parties.

9

6.7    Closing

Within thirty (30) days following sending of an Exercise Notice by either the Vargas Interests or SARPI, subject to the terms and conditions hereof, the Vargas Interests shall sell and SARPI shall purchase the Vargas Interests Shares in RIMSA at a mutually agreeable time and place (the "Option Closing"). At the Option Closing, the Vargas Interests deliver all instruments and certificates duly endorsed necessary to effect the transfer of the interests contemplated hereby free and clear of all liens and encumbrances, and SARPI shall deliver to the Vargas Interests an amount equal to the Exit Price by cashier's or certified check or wire transfer of immediately available funds to an account designated by the Vargas Interests.

6.8    Right of First Refusal

(a)    For periods subsequent to January 1, 2004 if Mr. Vargas continues to own Shares, and if the Vargas Interests desires to sell, assign or otherwise transfer Shares, the Vargas Interests shall first offer to sell all of the Shares owned by them to SARPI. The Vargas Interests shall deliver a notice (the "Sale Notice") to SARPI of their intention to sell, assign, or otherwise transfer such shares, identifying the proposed purchaser, assignee or transferee and indicating the per share price and other terms and conditions.

(b)    In a period of 30 days following the Sale Notice, SARPI shall have the option to purchase all of the Shares owned by the Vargas Interests, by delivering a notice stating that it has elected to purchase such shares on the same per share price as stipulated in the Sale Notice.

(c)    In the event that SARPI does not exercise its option, then the Vargas Interests shall be free to sell, assign or transfer all of their Shares to the purchaser, assignee, or transferee identified in the Sale Notice at the price and on the terms and conditions specified therein for a period of 30 days. If the transfer to such purchaser, assignee or transferee is not effected within such time period, then the Vargas Interests must again follow the procedure set forth in this section 6.8 in order to sell assign or transfer shares.

10

(d)     If SARPI elects to purchase the shares, a Closing as defined in sub-section 6.7 shall take place within 30 days after the notice of election refered to in (b) above has been delivered by SARPI.

6.9    Co-sale

(a)     Should SARPI propose to accept an offer (the "Purchase Offer") from any person, (the "Offeror") to purchase a majority of RIMSA's shares from SARPI (either directly or indirectly by the sale of Confinamina Shares), then SARPI shall promptly notify the Vargas Interests of the terms of such Purchase Offer (the "Notice of Purchase Offer").

(b)     The Vargas Interests shall have the right, exercisable upon written notice to SARPI with 15 days after receipt of the Notice of Purchase Offer to elect to sell all of their Shares in RIMSA at the same price per share and on the same terms and conditions described in the said Notice of Purchase Offer .

(c)     Should SARPI deliver a Notice of Purchase Offer to the Vargas Interests pursuant to sub-section (a) above, it may deliver to the Vargas Interests a notice with respect to said Purchase Offer obligating the Vargas Interests to sell all of their Shares in RIMSA to the Offeror at the same price per share and on the same terms and conditions as described in the Notice of Purchase Offer and the Vargas Interests agree to sell said Shares.

(d)     A closing as defined in sub-section 6.7 above shall take place on the date indicated in the Purchase Offer.

6.10    O.I.A. (Operedora Industrial Administrativa SA de CV Valores) owns more than a 99%   stock interest in O.I.A. a company organized under the laws of the United Mexican States and which provides personnel administrative services to RIMSA. Valores agrees to sell to SARPI or its designee at SARPI's option, exercised at any time prior to January 31, 2004, all of the shares of O.I.A. at a price equal to the tax cost of the shares. SARPI may exercise this right by sending an exercise notice following which a Closing as defined in subparagraph 6.7 will be held.

11

### Article VII – Corporate Charter

To the extent appropriate the agreements and undertakings contained in this Agreement shall be reflected in the corporate charter of RIMSA.

### Article VIII – Termination

(a)  This Agreement shall terminate on the earlier to occur of :

(i)  a written agreement of the parties to that effect;

(ii)  the dissolution, insolvency or bankruptcy, of RIMSA under the laws of the United Mexican States;

(iii)  all of the shares are transferred by one party to the other party.

(b)  Articles II, III, IV, V and sub-sections 6.2 to 6.6 shall terminate on January 31, 2004.

### Article IX – General Notices

9.1   Notices.

Any notice to a party hereto pursuant to this Agreement shall be given by hand delivery, telecopier, certified or registered mail or a private courier service which provides evidence of receipt as a part of its service, addressed, if to RIMSA, to: Chairman of the Board, Residuos Industriales Multiquim, S.A. de C.V., Ave. Lazaro Cardenas 2400 B-21, Garza Garcia, Nuevo Leon C.P. 66260, telecopier number (8) 152-21-90; or if to SARPI,: President CGEA, Parc des Fontaines, 169 av. Georges Clémenceau 92735 Nanterre Cedex France telecopier number (33) 1 46 69 33 63 with a copy to Kenneth Levine, Levine & Okoshken, 51 avenue Montaigne, 75008 Paris, tel. : 33.1.44.13.69.21, fax : 33.1.45.63.24.96; or, if to the Vargas Interests, to: Valores Ecologicos, S.A. de C.V. , Ave. Lazaro Cardenas 2400 PB-7, Garza Garcia, Nuevo Leon C.P. 66260.

12

CGEA0041106

Any notice given hereunder shall be deemed given on the date of hand delivery, transmission by telecopier, five days after deposit with the postal service or, two days after delivery to a courier service, as appropriate. In the event any proceeding, action or suit is commenced by any party to this Agreement against any other party to either enforce the performance of this Agreement or any right or obligation arising thereunder, the Vargas Interests hereby appoints Mr. Hector Vargas Garza , RIMSA hereby appoints its Chairman of the Board, and SARPI hereby appoints its President as their respective agents for service of process. Any party may change the address to which notices are given by giving notice to the other parties in the manner indicated herein.

9.2    Governing Law.

This Agreement shall be governed by and construed in accordance with the laws of the   United Mexican States applicable in the case of contracts made and to be performed in such jurisdiction, without giving effect to any conflict of laws rules.

9.3    Binding Effect.

This Agreement shall inure to the benefit of, and be binding on and enforceable against the successors and assigns of the Buyer, the Company and the Seller.

9.4    Entire Agreement.

This Agreement (including the Exhibits hereto) and the documents and schedules delivered pursuant hereto constitute the entire Agreement and understanding between the parties, and supersedes any prior agreement and understandings relating to the subject matter hereof. This Agreement may be modified or amended only by a written instrument executed by all parties hereto.

9.5    Severability.

If at any time subsequent to the date hereof, any provision of this Agreement shall be held by any court of competent jurisdiction to be illegal, void or unenforceable, such provision shall be of no force and effect, but the illegality or unenforceability of such provision shall

13

CGEA0041107

have no effect upon and shall not impair the enforceability of any other provision of this Agreement.

9.6    Execution in Counterparts.

This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute but one and the same instrument.

9.7    Attorney's Fees; Costs of Litigation.

If any legal action or any other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled.

9.8    Headings.

The subject headings of the paragraphs and sections of this Agreement are included for purposes of convenience only and shall not affect the construction or interpretation of any of its provisions.

9.9    Arbitration.

Any dispute, controversy or claim arising out of or relating to this Agreement or the breach thereof shall be finally settled by arbitration in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce ("ICC"). There shall be three arbitrators, one selected by the Buyer, one selected by the Seller, and the third selected by the two arbitrators so selected by the Buyer and the Seller. If a party fails to nominate an arbitrator within 30 days from the date of notification to it of the other party's request for arbitration, or if the two arbitrators fail within 30 days from the date of their appointment to reach agreement on the third arbitrator, then the Court of Arbitration of the ICC shall appoint the arbitrator that was not nominated by the failing party, or shall appoint a third arbitrator, as the case may be. The place of arbitration shall be New York City and the language used shall be English.

14

9.10    Succession and Assignment.

This Agreement shall be binding upon and inure to the benefit of the Parties named herein and their respective successors and assigns; except as otherwise provided herein, no Party may assign either this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of each other Party; provided, however, that SARPI may (i) assign any or all of its rights and interests hereunder to one or more of its wholly owned Affiliates and (ii) designate one or more of its wholly owned Affiliates to perform its obligations hereunder.; provided that SARPI guaranties to the Vargas Interests the performance by the assignee of the obligations of SARPI hereunder.

In witness Whereof, the parties have executed this agreement on the date first written above.

Mr. Hector Vargas Garza

VALORES Ecologica SA de CV
By:
Name:
Title:

SARP Industries Mexico SA de CV

By:
Name: Jean-Alain Jullien
Title: Chairman

15

CGEA0041109



# RIMSA´S
## PROPOSAL ORGANIZATION CHART

**BOARD OF DIRECTORS**
Jean-Alain Jullien
Chairman

**President**
Hector Vargas Garza

**Vice-president Buss. Development**
Hector Vargas A.

**Chief Executive Officer**
Juan A. Cuellar

November 2000

CGEA0004110

## CLOSING CERTIFICATE

I, Hector Vargas Garza, residing at Rio Papaloapan 450, Col. Mexico, Monterrey, Nueve Leon, Codigo Postal 64740, hereby certify as follows:

(a)    all representations and warranties of myself, Confinamina and the Company contained in that certain Agreement for the Purchase of Stock Of Residuos Industriales Multiquim S.A. de C.V. (the "Company") dated August 26, 2000, between myself, Valores Ecologicos, S.A. de C.V. and Compagnie Générale d'Entreprises Automobiles, S.A./SARP Industries, S.A. (the "Agreement") are true and correct in all material respects as of the date hereof except for changes contemplated or permitted by the Agreement; and

(b)    since December 31, 1999, there have been no material adverse changes in the business, operating results, financial condition, assets, or operations of the Company.

(c)    each of the conditions set forth in Sections 9.1, 9.2, and 9.3 of the Agreement have been satisfied in all material respects.

IN WITNESS WHEREOF, the undersigned has executed this Closing Certificate in conformity with Section 9.4 of the Agreement as of November 16, 2000.

Hector Vargas Garza

CGEA0041111

## CLOSING CERTIFICATE

I, Hector Vargas Garza, Sole Administrator of Valores Ecologicos S.A. de C.V. (Valores), hereby certify on behalf of Valores as follows:

(a)    all representations and warranties of Valores, Confinamina and the Company contained in that certain Agreement for the Purchase of Stock Of Residuos Industriales Multiquim S.A. de C.V. (the "Company") dated August 26, 2000, between Hector Vargas Garza, Valores and Compagnie Générale d'Entreprises Automobiles, S.A./SARP Industries, S.A. (the "Agreement") are true and correct in all material respects as of the date hereof except for changes contemplated or permitted by the Agreement; and

(b)    since December 31, 1999, there have been no material adverse changes in the business, operating results, financial condition, assets, or operations of the Company.

(c)    each of the conditions set forth in Sections 9.1, 9.2, and 9.3 of the Agreement have been satisfied in all material respects.

IN WITNESS WHEREOF, the undersigned has executed this Closing Certificate in conformity with Section 9.4 of the Agreement as of November 14, 2000.

Valores Ecologicos, S.A. de C.V.

By:_____
Name : Hector Vargas Garza
Its: Sole Administrator

D:\Mes Documents\NIRAO\Vivendi\WM International\RIMSA\Closing RIMSA 0011 13&14\Closing Vargas\CLOSING CERTIFICATE Valores 001114.doc

Dernière impression le 14/11/00 22:31

CGEA0041112

## CLOSING CERTIFICATE

I, Pascal Gauthier Vice-President, SARP Industries, S.A. (SARPI), hereby certify on behalf of SARPI as follows:

(a)    all representations and warranties of SARPI contained in that certain Agreement for the Purchase of Stock Of Residuos Industriales Multiquim S.A. de C.V. (the "Company") dated August 26, 2000, between Hector Vargas Garza, Valores Ecologicos, S.A. de C.V., Compagnie Générale d'Entreprises Automobiles, S.A. and SARPI (the "Agreement") are true and correct in all material respects as of the date hereof; and

(b)    each of the conditions set forth in Sections 8.1 and 8.2 of the Agreement have been satisfied in all material respects.

IN WITNESS WHEREOF, the undersigned has executed this Closing Certificate in conformity with Section 8.3 of the Agreement as of November 14th, 2000.


SARP Industries


By:_____
Name : _____
Its: _____

CLOSING CERTIFICATE SARPI 001114

## CLOSING CERTIFICATE

I, Pascal Gauthier, Vice President of Compagnie Générale d'Entreprises Automobiles, S.A. (CGEA), hereby certify on behalf of CGEA as follows:

(a)    all representations and warranties of CGEA contained in that certain Agreement for the Purchase of Stock Of Residuos Industriales Multiquim S.A. de C.V. (the "Company") dated August 26, 2000, between Hector Vargas Garza, Valores Ecologicos, S.A. de C.V., SARP Industries, S.A. and CGEA (the "Agreement") are true and correct in all material respects as of the date hereof; and

(b)    each of the conditions set forth in Sections 8.1 and 8.2 of the Agreement have been satisfied in all material respects.

IN WITNESS WHEREOF, the undersigned has executed this Closing Certificate in conformity with Section 8.3 of the Agreement as of November 14th, 2000.

CGEA

By:_____

Name : Pascal Gauthier

Its: Vice President

CLOSING CERTIFICATE Gauthier 001334

## GENERAL RELEASE

### Hector Vargas Garza.

This Release is executed in connection with that certain Agreement for the Purchase of Stock of Residuos Industriales Multiquim, S.A. de C.V. (the "Company") dated August 26, 2000 (the "Stock Purchase Agreement") by and among Compagnie Générale d'Entreprises Automobiles, S.A./SARP Industries, S.A., corporations organized under the laws of France (the "Buyer"); Hector Vargas Garza, and Valores Ecologicos S.A. de C.V., a corporation organized under the laws of the United States of Mexico (the "Seller") (other capitalized terms used and not otherwise defined herein shall have the meanings assigned thereto in the Stock Purchase Agreement).

1.    For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Hector Vargas Garza, for himself or itself and his or its heirs, successors and assigns and Affiliates (the "Releasing Parties"), does hereby fully and forever release and discharge Confinamina and the Company and their Affiliates (the "Released Parties") successors and assigns of and from a any and all claims, demands, accounts, debts, proceedings, liabilities, actions, causes of action, suits, agreements, losses, damages, costs, expenses, sums of money, obligations, judgments, executions and controversies of every kind and description, whether in law or equity and whether known or unknown, accrued or unaccrued, matured or unmatured, liquidated or unliquidated, contingent or otherwise, which any of the Releasing Parties now have, may now have, have had or which may exist or be claimed to exist at or prior to the date of this Release; provided, however, that nothing contained herein shall be deemed to release the Released Parties or their successors or assigns from any of their obligations under the Stock Purchase Agreement.

2.    This Release shall be binding on the undersigned and his or its heirs, successors and assigns and all those claiming through or under all or any of them.

3.    This Release shall be governed by and construed in accordance with the laws of the Republic of Mexico.

IN WITNESS WHEREOF, the undersigned has executed this Release as of the 14th day of November 2000.

Hector Vargas Garza
Address:_____

WITNESS:_____

CGEA0041115

## GENERAL RELEASE

### Valores Ecologicos, S.A. DE C.V.

This Release is executed in connection with that certain Agreement for the Purchase of Stock of Residuos Industriales Multiquim, S.A. de C.V. (the "Company") dated August 26, 2000 (the "Stock Purchase Agreement") by and among Compagnie Générale d'Entreprises Automobiles, S.A./SARP Industries, S.A., corporations organized under the laws of France (the "Buyer"); Hector Vargas Garza, and Valores Ecologicos S.A. de C.V., a corporation organized under the laws of the United States of Mexico (the "Seller") (other capitalized terms used and not otherwise defined herein shall have the meanings assigned thereto in the Stock Purchase Agreement).

1.    For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Valores Ecologicos, S.A. DE C.V., for himself or itself and his or its heirs, successors and assigns and Affiliates (the "Releasing Parties"), does hereby fully and forever release and discharge Confinamina and the Company and their Affiliates (the "Released Parties") successors and assigns of and from a any and all claims, demands, accounts, debts, proceedings, liabilities, actions, causes of action, suits, agreements, losses, damages, costs, expenses, sums of money, obligations, judgments, executions and controversies of every kind and description, whether in law or equity and whether known or unknown, accrued or unaccrued, matured or unmatured, liquidated or unliquidated, contingent or otherwise, which any of the Releasing Parties now have, may now have, have had or which may exist or be claimed to exist at or prior to the date of this Release; provided, however, that nothing contained herein shall be deemed to release the Released Parties or their successors or assigns from any of their obligations under the Stock Purchase Agreement.

2.    This Release shall be binding on the undersigned and his or its heirs, successors and assigns and all those claiming through or under all or any of them.

3.    This Release shall be governed by and construed in accordance with the laws of the Republic of Mexico.

IN WITNESS WHEREOF, the undersigned has executed this Release as of the 14ᵗʰ day of November 2080.

Valores Ecologicos, S.A. DE C.V.
Address:_____

WITNESS:_____

CGEA0041116

**GENERAL RELEASE**

### Minera La Fe Del Norte

This Release is executed in connection with that certain Agreement for the Purchase of Stock of Residuos Industriales Multiquim, S.A. de C.V. (the "Company") dated August 26, 2000 (the "Stock Purchase Agreement") by and among Compagnie Générale d'Entreprises Automobiles, S.A./SARP Industries, S.A., corporations organized under the laws of France (the "Buyer"); Hector Vargas Garza, and Valores Ecologicos S.A. de C.V., a corporation organized under the laws of the United States of Mexico (the "Seller") (other capitalized terms used and not otherwise defined herein shall have the meanings assigned thereto in the Stock Purchase Agreement).

1.      For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Minera La Fe Del Norte, for himself or itself and his or its heirs, successors and assigns and Affiliates (the "Releasing Parties"), does hereby fully and forever release and discharge <u>Confinamina and the Company</u> and their Affiliates (the "Released Parties") successors and assigns of and from a any and all claims, demands, accounts, debts, proceedings, liabilities, actions, causes of action, suits, agreements, losses, damages, costs, expenses, sums of money, obligations, judgments, executions and controversies of every kind and description, whether in law or equity and whether known or unknown, accrued or unaccrued, matured or unmatured, liquidated or unliquidated, contingent or otherwise, which any of the Releasing Parties now have, may now have, have had or which may exist or be claimed to exist at or prior to the date of this Release; provided, however, that nothing contained herein shall be deemed to release the Released Parties or their successors or assigns from any of their obligations under the Stock Purchase Agreement.

2.      This Release shall be binding on the undersigned and his or its heirs, successors and assigns and all those claiming through or under all or any of them.

3.      This Release shall be governed by and construed in accordance with the laws of the Republic of Mexico.

IN WITNESS WHEREOF, the undersigned has executed this Release as of the $\text{11}^{th}$ day of November 2000.

Minera La Fe Del Norte
Address: _____

WITNESS: _____

G:\VIVENDI\RIMSA\Closing\Closing Vargas\EXHIBIT O Minera.doc
Dernière impression le 06/11/00 16:05

## GENERAL RELEASE

### Hector Vargas Garza.

This Release is executed in connection with that certain Agreement for the Purchase of Stock of Residuos Industriales Multiquim, S.A. de C.V. (the "Company") dated August 26, 2000 (the "Stock Purchase Agreement") by and among Compagnie Générale d'Entreprises Automobiles, S.A./SARP Industries, S.A., corporations organized under the laws of France (the "Buyer"); Hector Vargas Garza, and Valores Ecologicos S.A. de C.V., a corporation organized under the laws of the United States of Mexico (the "Seller"); (other capitalized terms used and not otherwise defined herein shall have the meanings assigned thereto in the Stock Purchase Agreement).

1.    For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Hector Vargas Garza, for himself or itself and his or its heirs, successors and assigns and Affiliates (the "Releasing Parties"), does hereby fully and forever release and discharge Chemical Waste Management and its Affiliates (the "Released Parties") successors and assigns of and from a any and all claims, demands, accounts, debts, proceedings, liabilities, actions, causes of action, suits, agreements, losses, damages, costs, expenses, sums of money, obligations, judgments, executions and controversies of every kind and description, whether in law or equity and whether known or unknown, accrued or unaccrued, matured or unmatured, liquidated or unliquidated, contingent or otherwise, which any of the Releasing Parties now have, may now have, have had or which may exist or be claimed to exist at or prior to the date of this Release; provided, however, that nothing contained herein shall be deemed to release the Released Parties or their successors or assigns from any of their obligations under the Stock Purchase Agreement.

2.    This Release shall be binding on the undersigned and his or its heirs, successors and assigns and all those claiming through or under all or any of them.

3.    This Release shall be governed by and construed in accordance with the laws of the Republic of Mexico.

IN WITNESS WHEREOF, the undersigned has executed this Release as of the 14th day of November 2000.

Hector Vargas Garza
Address:_____

_____

WITNESS:_____

_____

G:\VIVENDI\RIMSA\Closing\Closing Vargas\EXHIBIT C Vargas1.doc
Dernière impression le 06/11/00 12:56

CGEA0041118

## GENERAL RELEASE

### Valores Ecologicos, S.A. DE C.V.

This Release is executed in connection with that certain Agreement for the Purchase of Stock of Residuos Industriales Multiquim, S.A. de C.V. (the "Company") dated August 26, 2000 (the "Stock Purchase Agreement") by and among Compagnie Générale d'Entreprises Automobiles, S.A./SARP Industries, S.A., corporations organized under the laws of France (the "Buyer"); Hector Vargas Garza, and Valores Ecologicos S.A. de C.V., a corporation organized under the laws of the United States of Mexico (the "Seller"); (other capitalized terms used and not otherwise defined herein shall have the meanings assigned thereto in the Stock Purchase Agreement).

1.     For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Valores Ecologicos, S.A. DE C.V., for himself or itself and his or its heirs, successors and assigns and Affiliates (the "Releasing Parties"), does hereby fully and forever release and discharge Chemical Waste Management and its Affiliates (the "Released Parties") successors and assigns of and from a any and all claims, demands, accounts, debts, proceedings, liabilities, actions, causes of action, suits, agreements, losses, damages, costs, expenses, sums of money, obligations, judgments, executions and controversies of every kind and description, whether in law or equity and whether known or unknown, accrued or unaccrued, matured or unmatured, liquidated or unliquidated, contingent or otherwise, which any of the Releasing Parties now have, may now have, have had or which may exist or be claimed to exist at or prior to the date of this Release; provided, however, that nothing contained herein shall be deemed to release the Released Parties or their successors or assigns from any of their obligations under the Stock Purchase Agreement.

2.     This Release shall be binding on the undersigned and his or its heirs, successors and assigns and all those claiming through or under all or any of them.

3.     This Release shall be governed by and construed in accordance with the laws of the Republic of Mexico.

IN WITNESS WHEREOF, the undersigned has executed this Release as of the ḻḻ day of November 2000.

Valores Ecologicos, S.A. DE C.V.
Address: _____

_____

WITNESS: _____

_____

Q:\VIVENDI\RIMSA\Closing\Closing Vargas\EXHIBIT C Vssros1.doc
Dernière impression le 06/11/00 18:88

CGEA0041119

## GENERAL RELEASE

### Minera La Fe Del Norte

This Release is executed in connection with that certain Agreement for the Purchase of Stock of Residuos Industriales Multiquim, S.A. de C.V. (the "Company") dated August 26, 2000 (the "Stock Purchase Agreement") by and among Compagnie Générale d'Entreprises Automobiles, S.A./SARP Industries, S.A., corporations organized under the laws of France (the "Buyer"); Hector Vargas Garza, and Valores Ecologicos S.A. de C.V., a corporation organized under the laws of the United States of Mexico (the "Seller"); (other capitalized terms used and not otherwise defined herein shall have the meanings assigned thereto in the Stock Purchase Agreement).

1.    For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Minera La Fe Del Norte, for himself or itself and his or its heirs, successors and assigns and Affiliates (the "Releasing Parties"), does hereby fully and forever release and discharge Chemical Waste Management and its Affiliates (the "Released Parties") successors and assigns of and from a any and all claims, demands, accounts, debts, proceedings, liabilities, actions, causes of action, suits, agreements, losses, damages, costs, expenses, sums of money, obligations, judgments, executions and controversies of every kind and description, whether in law or equity and whether known or unknown, accrued or unaccrued, matured or unmatured, liquidated or unliquidated, contingent or otherwise, which any of the Releasing Parties now have, may now have, have had or which may exist or be claimed to exist at or prior to the date of this Release; provided, however, that nothing contained herein shall be deemed to release the Released Parties or their successors or assigns from any of their obligations under the Stock Purchase Agreement.

2.    This Release shall be binding on the undersigned and his or its heirs, successors and assigns and all those claiming through or under all or any of them.

3.    This Release shall be governed by and construed in accordance with the laws of the Republic of Mexico.

IN WITNESS WHEREOF, the undersigned has executed this Release as of the 14th day of November 2000.

Minera La Fe Del Norte
Address:_____

_____

WITNESS:_____

_____

CGEA0041120

## GENERAL RELEASE

### Valores Ecologicos, S.A. DE C.V.

### Technical Assistance

This Release is executed in connection with that certain Agreement for the Purchase of Stock of Residuos Industriales Multiquim, S.A. de C.V. (the "Company") dated August 26, 2000 (the "Stock Purchase Agreement") by and among Compagnie Générale d'Entreprises Automobiles, S.A./SARP Industries, S.A., corporations organized under the laws of France (the "Buyer"), Hector Vargas Garza, and Valores Ecologicos S.A. de C.V., a corporation organized under the laws of the United States of Mexico (the "Seller") (other capitalized terms used and not otherwise defined herein shall have the meanings assigned thereto in the Stock Purchase Agreement).

    1.    For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Valores Ecologicos, S.A. DE C.V., for himself or itself and his or its heirs, successors and assigns and Affiliates (the "Releasing Parties"), does hereby fully and forever release and discharge Confinamina and the Company and their Affiliates (the "Released Parties") successors and assigns of and from a any and all claims, demands, accounts, debts, proceedings, liabilities, actions, causes of action, suits, agreements, losses, damages, costs, expenses, sums of money, obligations, judgments, executions and controversies of every kind and description, whether in law or equity and whether known or unknown, accrued or unaccrued, matured or unmatured, liquidated or unliquidated, contingent or otherwise, which any of the Releasing Parties now have, may now have, have had or which may exist or be claimed to exist at or prior to the date of this Release arising out of the Existing Technical Assistance Agreement.

    2.    This Release shall be binding on the undersigned and his or its heirs, successors and assigns and all those claiming through or under all or any of them.

    3.    This Release shall be governed by and construed in accordance with the laws of the Republic of Mexico.

    IN WITNESS WHEREOF, the undersigned has executed this Release as of the 14th day of November 2000.

Valores Ecologicos, S.A. DE C.V.
Address: _____

WITNESS: _____

CGEA0041121

# GENERAL RELEASE

## Residuos Industriales Multiquim S.A. DE C.V.

This Release is executed in connection with that certain Agreement for the Purchase of Stock of Residuos Industriales Multiquim, S.A. de C.V. (the "Company") dated August 26, 2000 (the "Stock Purchase Agreement") by and among Compagnie Générale d'Entreprises Automobiles, S.A./SARP Industries, S.A., corporations organized under the laws of France (the "Buyer"); Hector Vargas Garza, and Valores Ecologicos S.A. de C.V., a corporation organized under the laws of the United States of Mexico (the "Seller"); (other capitalized terms used and not otherwise defined herein shall have the meanings assigned thereto in the Stock Purchase Agreement).

      1.    For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company, for himself or itself and his or its heirs, successors and assigns and Affiliates (the "Releasing Parties"), does hereby fully and forever release and discharge Mr. Hector Vargas Garza and Valores Ecologicos S.A. DE C.V. and its Affiliates (the "Released Parties") successors and assigns of and from a any and all claims, demands, accounts, debts, proceedings, liabilities, actions, causes of action, suits, agreements, losses, damages, costs, expenses, sums of money, obligations, judgments, executions and controversies of every kind and description, whether in law or equity and whether known or unknown, accrued or unaccrued, matured or unmatured, liquidated or unliquidated, contingent or otherwise, which any of the Releasing Parties now have, may now have, have had or which may exist or be claimed to exist at or prior to the date of this Release; provided, however, that nothing contained herein shall be deemed to release the Released Parties or their successors or assigns from any of their obligations under the Stock Purchase Agreement.

      2.    This Release shall be binding on the undersigned and his or its heirs, successors and assigns and all those claiming through or under all or any of them.

      3.    This Release shall be governed by and construed in accordance with the laws of the Republic of Mexico.

      IN WITNESS WHEREOF, the undersigned has executed this Release as of the 14th day of November 2000.

Hector Vargas Garza
Address: _____

WITNESS: _____

CGEA0041122

Residuos Industriales Multiquim S.A. de C.V.
Av. Lazaro Cardenas 2400 West
Losoles Building
San Pedro Garza Garcia
Nuevo Leon
Mexico

November 14, 2000

This is to advise you that I hereby resign from my duties as a director of Residuos Industriales Multiquim S.A. de C.V. (the "Company") as well as from any other functions or positions that I may hold in the Company or its affiliates, effective immediately.

I wish to confirm that I have been fully paid to date for any remuneration or expense reimbursement that the Company or its affiliates may owe to me. I also hereby release the Company from all debts, claims, liabilities, demands, obligations, losses, costs, actions and causes of action of any nature whatsoever, which are based upon or arising out of or in connection with any matter, cause or thing existing at any time prior to this date or anything done, omitted, or suffered to be done or omitted at any time prior to the date hereof.

Sincerely yours,

Mr. Hector Vargas Garza
President

CGEA0041123

Residuos Industriales Multiquim S.A. de C.V.
Av. Lazaro Cardenas 2400 West
Losoles Building
San Pedro Garza Garcia
Nuevo Leon
Mexico

November 14, 2000

This is to advise you that I hereby resign from my duties as a director of Residuos Industriales Multiquim S.A. de C.V. (the "Company") as well as from any other functions or positions that I may hold in the Company or its affiliates, effective immediately.

I wish to confirm that I have been fully paid to date for any remuneration or expense reimbursement that the Company or its affiliates may owe to me. I also hereby release the Company from all debts, claims, liabilities, demands, obligations, losses, costs, actions and causes of action of any nature whatsoever, which are based upon or arising out of or in connection with any matter, cause or thing existing at any time prior to this date or anything done, omitted, or suffered to be done or omitted at any time prior to the date hereof.

Sincerely yours,

Mr. José de J. Vargas Aguirre
Board Member

CGEA0041124

Residuos Industriales Multiquim S.A. de C.V.
Av. Lazaro Cardenas 2400 West
Losoles Building
San Pedro Garza Garcia
Nuevo Leon
Mexico

November 14, 2000

This is to advise you that I hereby resign from my duties as a director of Residuos Industriales Multiquim S.A. de C.V. (the "Company") as well as from any other functions or positions that I may hold in the Company or its affiliates, effective immediately.

I wish to confirm that I have been fully paid to date for any remuneration or expense reimbursement that the Company or its affiliates may owe to me. I also hereby release the Company from all debts, claims, liabilities, demands, obligations, losses, costs, actions and causes of action of any nature whatsoever, which are based upon or arising out of or in connection with any matter, cause or thing existing at any time prior to this date or anything done, omitted, or suffered to be done or omitted at any time prior to the date hereof.

Sincerely yours,

Mr. Hector Vargas Aguirre
Alternate Board Member

CGEA0041125

Residuos Industriales Multiquim S.A. de C.V.
Av. Lazaro Cardenas 2400 West
Losoles Building
San Pedro Garza Garcia
Nuevo Leon
Mexico

November 14, 2000

This is to advise you that I hereby resign from my duties as a director of Residuos Industriales Multiquim S.A. de C.V. (the "Company") as well as from any other functions or positions that I may hold in the Company or its affiliates, effective immediately.

I wish to confirm that I have been fully paid to date for any remuneration or expense reimbursement that the Company or its affiliates may owe to me. I also hereby release the Company from all debts, claims, liabilities, demands, obligations, losses, costs, actions and causes of action of any nature whatsoever, which are based upon or arising out of or in connection with any matter, cause or thing existing at any time prior to this date or anything done, omitted, or suffered to be done or omitted at any time prior to the date hereof.

Sincerely yours,

Mr. Guillermo Vargas Aguirre
    Alternate Board Member

Residuos Industriales Multiquim S.A. de C.V.
Av. Lazaro Cardenas 2400 West
Losoles Building
San Pedro Garza Garcia
Nuevo Leon
Mexico

November 14, 2000

This is to advise you that I hereby resign from my duties as an Examiner of Residuos Industriales Multiquim S.A. de C.V. (the "Company") as well as from any other functions or positions that I may hold in the Company or its affiliates, effective immediately.

I wish to confirm that I have been fully paid to date for any remuneration or expense reimbursement that the Company or its affiliates may owe to me. I also hereby release the Company from all debts, claims, liabilities, demands, obligations, losses, costs, actions and causes of action of any nature whatsoever, which are based upon or arising out of or in connection with any matter, cause or thing existing at any time prior to this date or anything done, omitted, or suffered to be done or omitted at any time prior to the date hereof.

Sincerely yours,

Mr. José Alberto Villarreal Villarreal
Alternate Examiner

CGEA0041127

Residuos Industriales Multiquim S.A. de C.V.
Av. Lazaro Cardenas 2400 West
Losoles Building
San Pedro Garza Garcia
Nuevo Leon
Mexico

November 14, 2000

This is to advise you that I hereby resign from my duties as an Examiner of Residuos 'ndustriales Multiquim S.A. de C.V. (the "Company") as well as from any other functions ∪r positions that I may hold in the Company or its affiliates, effective immediately.

I wish to confirm that I have been fully paid to date for any remuneration or expense reimbursement that the Company or its affiliates may owe to me. I also hereby release the Company from all debts, claims, liabilities, demands, obligations, losses, costs, actions and causes of action of any nature whatsoever, which are based upon or arising out of or in connection with any matter, cause or thing existing at any time prior to this date or anything done, omitted, or suffered to be done or omitted at any time prior to the date hereof.

Sincerely yours

Mr. Amali Cienfuegos Pecino
Examiner

Residuos Industriales Multiquim S.A. de C.V.
Av. Lazaro Cardenas 2400 West
Losoles Building
San Pedro Garza Garcia
Nuevo Leon
Mexico

November 14, 2000

This is to advise you that I hereby resign from my duties as an Examiner of Residuos
'ndustriales Multiquim S.A. de C.V. (the "Company") as well as from any other functions
ɔr positions that I may hold in the Company or its affiliates, effective immediately.

I wish to confirm that I have been fully paid to date for any remuneration or expense
reimbursement that the Company or its affiliates may owe to me. I also hereby release
the Company from all debts, claims, liabilities, demands, obligations, losses, costs,
actions and causes of action of any nature whatsoever, which are based upon or arising
out of or in connection with any matter, cause or thing existing at any time prior to this
date or anything done, omitted, or suffered to be done or omitted at any time prior to the
date hereof.

Sincerely yours,

Mr. Amall fuenfuegos Pecino
Examiner

Residuos Industriales Multiquim S.A. de C.V.
Av. Lazaro Cardenas 2400 West
Losoles Building
San Pedro Garza Garcia
Nuevo Leon
Mexico

November 14, 2000

This is to advise you that I hereby resign from my duties as an Examiner of Residuos 'ndustriales Multiquim S.A. de C.V. (the "Company") as well as from any other functions ᴜr positions that I may hold in the Company or its affiliates, effective immediately.

I wish to confirm that I have been fully paid to date for any remuneration or expense reimbursement that the Company or its affiliates may owe to me. I also hereby release the Company from all debts, claims, liabilities, demands, obligations, losses, costs, actions and causes of action of any nature whatsoever, which are based upon or arising out of or in connection with any matter, cause or thing existing at any time prior to this date or anything done, omitted, or suffered to be done or omitted at any time prior to the date hereof.

Sincerely yours,

Mr. Amal Cienfuegos Pecino
Examiner

Residuos Industriales Multiquim, S.A. de C.V.
Ave. Lázaro Cárdenas 2400 Pte.
Edificio Losoles
San Pedro Garza Garcia
Nuevo León
México

Noviembre 14 del 2000

Informo a ustedes que por medio de la presente renuncio, con efectos inmediatos, a mi cargo de Comisario de la empresa Residuos Industriales Multiquim, S.A. de C.V. (la "Compañía") asi como a cualquier otro cargo, puesto o trabajo que pueda tener o desempeñar en la Compañía o sus filiales.

Deseo confirmar a ustedes que he recibido totalmente el pago de mis remuneraciones, así como el reembolso de cualquier gasto, que la Compañía o sus filiales me hayan adeudado. Asimismo, por medio de la presente libero a la Compañía de todas las deudas, reclamaciones, responsabilidades, demandas, obligaciones, pérdidas, costos, acciones o causas de acción de cualquier naturaleza, que puedan resultar de o basarse en cualquier asunto, causa o materia existente en cualquier fecha previa a la fecha de la presente, así como respecto de cualquier acto ejecutado, omitido, que me haya afectado en cualquier tiempo anterior a esta fecha.

Atentamente,

SR. AMELACIENFUEGOS PECINO
COMISARIO

CGEA0041131

Immobiliaria Confinamina S.A. de C.V.
Av. Lazaro Cardenas 2400 West
Losoles Building – PB - 5
San Pedro Garza Garcia
Nuevo Leon
Mexico

November 14, 2000

This is to advise you that I hereby resign from my duties as Examiner of Immobiliaria Confinamina S.A. de C.V. (the "Company") as well as from any other functions or positions that I may hold in the Company or its affiliates, effective immediately.

I wish to confirm that I have been fully paid to date for any remuneration or expense reimbursement that the Company or its affiliates may owe to me. I also hereby release the Company from all debts, claims, liabilities, demands, obligations, losses, costs, actions and causes of action of any nature whatsoever, which are based upon or arising out of or in connection with any matter, cause or thing existing at any time prior to this date or anything done, omitted, or suffered to be done or omitted at any time prior to the date hereof.

Sincerely yours,

Mr. Raul Salinas Garza
Examiner

Inmobiliaria Confinamina S.A. de C.V.
Av. Lazaro Cardenas 2400 West
Losoles Building – PB - 5
San Pedro Garza Garcia
Nuevo Leon
Mexico

Noviembre 14 del 2000

Informo a ustedes que por medio de la presente renuncio, con efectos inmediatos, a mi cargo de Comisario de la empresa Inmobliaria Confinamina, S.A. de C.V. (la "Compañía") así como a cualquier otro cargo, puesto o trabajo que pueda tener o desempeñar en la Compañía o sus filiales.

Deseo confirmar a ustedes que he recibido totalmente el pago de mis remuneraciones, así como el reembolso de cualquier gasto, que la Compañía o sus filiales me hayan adeudado. Asimismo, por medio de la presente libero a la Compañía de todas las deudas, reclamaciones, responsabilidades, demandas, obligaciones, pérdidas, costos, acciones o causas de acción de cualquier naturaleza, que puedan resultar de o basarse en cualquier asunto, causa o materia existente en cualquier fecha previa a la fecha de la presente, así como respecto de cualquier acto ejecutado, omitido, que me haya afectado en cualquier tiempo anterior a esta fecha.

Atentamente,

C.P. RAUL SALINAS GARZA
COMISARIO

CGEA0041133

Immobiliaria Confinamina S.A. de C.V.
Av. Lazaro Cardenas 2400 West
Losoles Building – PB - 5
San Pedro Garza Garcia
Nuevo Leon
Mexico

November 14, 2000

This is to advise you that I hereby resign from my duties as Sole Administrator of Immobiliaria Confinamina S.A. de C.V. (the "Company") as well as from any other functions or positions that I may hold in the Company or its affiliates, effective immediately.

I wish to confirm that I have been fully paid to date for any remuneration or expense reimbursement that the Company or its affiliates may owe to me. I also hereby release the Company from all debts, claims, liabilities, demands, obligations, losses, costs, actions and causes of action of any nature whatsoever, which are based upon or arising out of or in connection with any matter, cause or thing existing at any time prior to this date or anything done, omitted, or suffered to be done or omitted at any time prior to the date hereof.

Sincerely yours,

Mr. Abelardo Raul Cavazos Garza
    Sole Administrator

Immobiliaria Confinamina S.A. de C.V.
Av. Lazaro Cardenas 2400 West
Losoles Building – PB - 5
San Pedro Garza Garcia
Nuevo Leon
Mexico

November 14, 2000

This is to advise you that I hereby resign from my duties as Sole
Administrator of Immobiliaria Confinamina S.A. de C.V. (the "Company") as
well as from any other functions or positions that I may hold in the
Company or its affiliates, effective immediately.

I wish to confirm that I have been fully paid to date for any remuneration or
expense reimbursement that the Company or its affiliates may owe to me. I
also hereby release the Company from all debts, claims, liabilities,
demands, obligations, losses, costs, actions and causes of action of any
nature whatsoever, which are based upon or arising out of or in connection
with any matter, cause or thing existing at any time prior to this date or
anything done, omitted, or suffered to be done or omitted at any time prior
to the date hereof.

Sincerely yours,

Mr. Abelardo Raul Cavazos Garza
    Sole Administrator

Immobiliaria Confinamina S.A. de C.V.
Av. Lazaro Cardenas 2400 West
Losoles Building – PB - 5
San Pedro Garza Garcia
Nuevo Leon
Mexico

November 14, 2000

This is to advise you that I hereby resign from my duties as Sole Administrator of Immobiliaria Confinamina S.A. de C.V. (the "Company") as well as from any other functions or positions that I may hold in the Company or its affiliates, effective immediately.

I wish to confirm that I have been fully paid to date for any remuneration or expense reimbursement that the Company or its affiliates may owe to me. I also hereby release the Company from all debts, claims, liabilities, demands, obligations, losses, costs, actions and causes of action of any nature whatsoever, which are based upon or arising out of or in connection with any matter, cause or thing existing at any time prior to this date or anything done, omitted, or suffered to be done or omitted at any time prior to the date hereof.

Sincerely yours,

Mr. Abelardo Raul Cavazos Garza
Sole Administrator

CGEA0041136

Immobiliaria Confinamina S.A. de C.V.
Av. Lazaro Cardenas 2400 West
Losoles Building – PB - 5
San Pedro Garza Garcia
Nuevo Leon
Mexico

Noviembre 14 del 2000

Informo a ustedes que por medio de la presente renuncio, con efectos inmediatos, a mi cargo de Administrador Unico de la empresa Inmobiliaria Confinamina, S.A. de C.V. (la "Compañía") así como a cualquier otro cargo, puesto o trabajo que pueda tener o desempeñar en la Compañía o sus filiales.

Deseo confirmar a ustedes que he recibido totalmente el pago de mis remuneraciones, así como el reembolso de cualquier gasto, que la Compañía o sus filiales me hayan adeudado. Asimismo, por medio de la presente libero a la Compañía de todas las deudas, reclamaciones, responsabilidades, demandas, obligaciones, pérdidas, costos, acciones o causas de acción de cualquier naturaleza, que puedan resultar de o basarse en cualquier asunto, causa o materia existente en cualquier fecha previa a la fecha de la presente, así como respecto de cualquier acto ejecutado, omitido, que me haya afectado en cualquier tiempo anterior a esta fecha.

Atentamente,

ING. ABELARDO RAUL CAVAZOS GARZA
ADMINISTRADOR UNICO

CGEA0041137

## LIMITED WAIVER OF SECTIONS 8.6 AND 9.7

Pursuant to Sections 8.6 and 9.7 of the Stock Purchase Agreement dated August 26, 2000 as amended (the «Agreement»), Compagnie Générale d'Entreprises Automobiles, S.A., Sarp Industries S.A, Mr. Hector Vargas Garza and Valores Ecologicos hereby waive as a condition precedent to Closing and for no other purpose the requirement under Sections 8.6 and 9.7 of the Agreement that no action or proceeding shall have been instituted or threatened by or before any court, other governmental body or arbitration tribunal, domestic or foreign, which shall seek to restrain, prohibit or invalidate the Agreement or seek to obtain damages or other relief in connection with the transactions contemplated by the Agreement. Notwithstanding the foregoing limited waiver, CGEA, the Buyer and the Company reserve all other rights and remedies available to them under the Agreement for the Purchase of Stock of Residuos Industriales Multiquim, S.A. DE C.V. (including but not limited to those set forth in Article VII of the Agreement) with respect to the demand for arbitration to be conducted in Monterrey, Mexico which has been filed by the "Garza"'s against Sanifill de Mexico, S.A. DE C.V., Waste Management Holdings, Inc., Chemical Waste Management, Inc. and Waste Management, Inc. A true summary of these arbitration claims prepared by WMI is attached hereto.

All terms here shall have the same meaning as those defined in the Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this limited waiver to be duly executed on this 14th day of November, 2000.

Valores Ecologicos, S.A. DE C.V.

By:
Name:
Title:

Hector Vargas Garza

Compagnie Générale d'Entreprises Automobiles, S.A.

By:
Name: Pascal Gauthier
Title: Vice President

CGEA Limited Waiver Vargas 001114

CGEA0041138