## SUMMARY OF GARZA ARBITRATION CLAIMS

The Garzas have submitted a demand for arbitration to be conducted by the International Chamber of Commerce (ICC) to be conducted in Monterrey, Mexico. The demand has been filed against Sanifill de Mexico, S.A. de C.V., Waste Management Holdings Inc., Chemical Waste Management Inc. and Waste Management Inc. The ICC has given Waste Management and the other defendants 30 days from their receipt of the demand to file a response with the ICC. Requests for extension can be made in certain circumstances. Nonetheless, Waste Management is requested to name its choice for one of three arbitrators within the 30-day time period, even if it requests an extension for its response. The arbitrator chosen by the Garzas is Lic. Ramiro Gerardo Villareal Morales.

### Summary of Introduction to Demand.

The introduction to the demand gives and overview of the claims that PASA is asserting. The demand states that it arises from Waste Management's sale of RIMSA to Vivendi. It alleges that Waste Management violated a contractual right of the Garzas to acquire 60% of the shares of RIMSA. The Garzas are asking for damages of NP540,140,000 (approximately US$56 million), plus 6% interest from the date of the demand until the payment of damages, for this violation.

The demand also alleges that Waste Management obligated itself to Vivendi to compete in Mexico against PASA in violation of contractual obligations to PASA.

The demand summarizes Waste Management's various alleged violations to consist of: breaching an obligation of confidentiality, conspiring to harm PASA by selling RIMSA to the competition, harming PASA by representing in contracts that all of its Mexican subsidiaries would be put under the control of PASA and hiding the fact that it owned shares of RIMSA other than through PASA, in order to compete with PASA, and competing with PASA in the waste market in Mexico.

The demand asks for additional damages of NP101,500,000 (approximately US$10,500), representing the increased costs incurred by having different offices of PASA and RIMSA in different cities, which could have been consolidated if PASA had acquired 60% ownership of RIMSA. These increased costs have been discounted to present value and multiplied by 60%.

The demand further requests damages allegedly caused by Waste Management by the conduct of Asset Recovery Group in competition with PASA in Mexico. The demand asked that these damages be estimated in the arbitration proceeding after the presentation of evidence by PASA.

### Initial Summary of Narrative Portion of Demand.

The demand contains a lengthy narrative that elaborates further on the alleged bases for PASA's claims. This summary is based on an initial review performed in a limited amount of

CGEA0041139

## SUMMARY OF GARZA ARBITRATION CLAIMS

The Garzas have submitted a demand for arbitration to be conducted by the International Chamber of Commerce (ICC) to be conducted in Monterrey, Mexico. The demand has been filed against Sanifill de Mexico, S.A. de C.V., Waste Management Holdings Inc., Chemical Waste Management Inc. and Waste Management Inc. The ICC has given Waste Management and the other defendants 30 days from their receipt of the demand to file a response with the ICC. Requests for extension can be made in certain circumstances. Nonetheless, Waste Management is requested to name its choice for one of three arbitrators within the 30-day time period, even if it requests an extension for its response. The arbitrator chosen by the Garzas is Lic. Ramiro Gerardo Villareal Morales.

### Summary of Introduction to Demand.

The introduction to the demand gives and overview of the claims that PASA is asserting. The demand states that it arises from Waste Management's sale of RIMSA to Vivendi. It alleges that Waste Management violated a contractual right of the Garzas to acquire 60% of the shares of RIMSA. The Garzas are asking for damages of NP540,140,000 (approximately US$56 million), plus 6% interest from the date of the demand until the payment of damages, for this violation.

The demand also alleges that Waste Management obligated itself to Vivendi to compete in Mexico against PASA in violation of contractual obligations to PASA.

The demand summarizes Waste Management's various alleged violations to consist of: breaching an obligation of confidentiality, conspiring to harm PASA by selling RIMSA to the competition, harming PASA by representing in contracts that all of its Mexican subsidiaries would be put under the control of PASA and hiding the fact that it owned shares of RIMSA other than through PASA, in order to compete with PASA, and competing with PASA in the waste market in Mexico.

The demand asks for additional damages of NP101,500,000 (approximately US$10,500), representing the increased costs incurred by having different offices of PASA and RIMSA in different cities, which could have been consolidated if PASA had acquired 60% ownership of RIMSA. These increased costs have been discounted to present value and multiplied by 60%.

The demand further requests damages allegedly caused by Waste Management by the conduct of Asset Recovery Group in competition with PASA in Mexico. The demand asked that these damages be estimated in the arbitration proceeding after the presentation of evidence by PASA.

### Initial Summary of Narrative Portion of Demand.

The demand contains a lengthy narrative that elaborates further on the alleged bases for PASA's claims. This summary is based on an initial review performed in a limited amount of

HOUSTON:015396/00001:513450v1

## SUMMARY OF GARZA ARBITRATION CLAIMS

The Garzas have submitted a demand for arbitration to be conducted by the International Chamber of Commerce (ICC) to be conducted in Monterrey, Mexico. The demand has been filed against Sanifill de Mexico, S.A. de C.V., Waste Management Holdings Inc., Chemical Waste Management Inc. and Waste Management Inc. The ICC has given Waste Management and the other defendants 30 days from their receipt of the demand to file a response with the ICC. Requests for extension can be made in certain circumstances. Nonetheless, Waste Management is requested to name its choice for one of three arbitrators within the 30-day time period, even if it requests an extension for its response. The arbitrator chosen by the Garzas is Lic. Ramiro Gerardo Villareal Morales.

### Summary of Introduction to Demand.

The introduction to the demand gives and overview of the claims that PASA is asserting. The demand states that it arises from Waste Management's sale of RIMSA to Vivendi. It alleges that Waste Management violated a contractual right of the Garzas to acquire 60% of the shares of RIMSA. The Garzas are asking for damages of NP540,140,000 (approximately US$56 million), plus 6% interest from the date of the demand until the payment of damages, for this violation.

The demand also alleges that Waste Management obligated itself to Vivendi to compete in Mexico against PASA in violation of contractual obligations to PASA.

The demand summarizes Waste Management's various alleged violations to consist of: breaching an obligation of confidentiality, conspiring to harm PASA by selling RIMSA to the competition, harming PASA by representing in contracts that all of its Mexican subsidiaries would be put under the control of PASA and hiding the fact that it owned shares of RIMSA other than through PASA, in order to compete with PASA, and competing with PASA in the waste market in Mexico.

The demand asks for additional damages of NP101,500,000 (approximately US$10,500), representing the increased costs incurred by having different offices of PASA and RIMSA in different cities, which could have been consolidated if PASA had acquired 60% ownership of RIMSA. These increased costs have been discounted to present value and multiplied by 60%.

The demand further requests damages allegedly caused by Waste Management by the conduct of Asset Recovery Group in competition with PASA in Mexico. The demand asked that these damages be estimated in the arbitration proceeding after the presentation of evidence by PASA.

### Initial Summary of Narrative Portion of Demand.

The demand contains a lengthy narrative that elaborates further on the alleged bases for PASA's claims. This summary is based on an initial review performed in a limited amount of

CGEA0041141

time.  We will continue to review the demand and provide more detailed summaries as necessary.

The demand states that it bases its claim in three contracts — the Stock Contribution Agreement, Transaction Agreement and Unanimous Agreement of Shareholders — among Sanifill, PASA and the Garzas.

The demand spends a lot of time stating that the contracts forming the basis for this complaint provided that their terms were applicable not only to the parties, but also to all of their subsidiaries and affiliates, including entities that may become subsidiaries and affiliates in the future.  The demand also asserts that the spirit and letter of the contracts require Waste Management to hold all of its Mexican business through PASA.  The demand points out that Waste Management made a number of representations and warranties that it had no subsidiaries in Mexico other than those being transferred to PASA (except for one subsidiary that was being liquidated).

According to the demand, Waste Management's negotiation of a Novation to the Shareholders Agreement constituted an acknowledgement by Waste Management that it had violated the contracts by acquiring RIMSA other than through PASA, and an implicit acknowledgement that the obligations of the various contracts applied not only to the parties thereto, but also to all their subsidiaries and affiliates.

The narrative alleges that Waste Management violated PASA's right of first refusal to acquire RIMSA when it sold RIMSA to Vivendi.  This alleged violation occurred despite three notifications that PASA sent to Waste Management's lawyers in Mexico.  The demand argues that Waste Management would have had the same benefits from the sale of RIMSA by complying with the right of first refusal, since PASA would have paid the same price that Vivendi paid.

The demand asserts that Waste Management violated its non-compete obligations to PASA not only by acquiring RIMSA other than through PASA, but also by binding itself to obligations in its contract with Vivendi that require Waste Management to compete with PASA in Mexico.  The demand states that although the Novation allowed RIMSA to compete with PASA in managing hazardous waste, RIMSA has also handled non-hazardous waste in direct competition with PASA.

CGEA0041142

### Ancillary Stock Purchase Agreement

This Stock Purchase agreement is made and entered into by and among, on one part, Compagnie Générale d'Entreprises Automobiles, S.A., a corporation organized under the laws of the Republic of France herein represented by Pascal Gauthier and SARP Industries Mexico S.A. de C.V. a corporation organized under the law of the United Mexican States herein represented by Jean-Alain Jullien (the "Buyer"); and on another part, Hector Vargas Garza ("Mr. Vargas") residing at Rio Papaloapan 450, Col. Mexico, Monterrey, Nueve Leon, Codigo Postal 64740 and Valores Ecologicos S.A. de C.V. ("Valores") and Minera La Fe Del Norte ("Minera"), corporations organized under the law of the United Mexican States ( collectively the "Seller") and represented by Mr. Hector Vargas Garza pursuant to the following recitals and clauses:

### RECITALS

I.    Seller States:

(a) That Valores is the lawful owner of 3,270,495 shares of Immobiliaria Confinamina SA de CV ("Confinamina"),, a corporation organized under the laws of the United Mexican States (the "Company"), as evidenced by stock certificates number 1 and 3 issued by Confinamina.

(b) That Minera is the lawful owner of five (5) shares of Immobiliaria Confinamina SA de CV , a corporation organized under the laws of the United Mexican States (the "Company"), as evidenced by stock certificates number 2  issued by Confinamina.

All shares referred to in subparagraphs (a), and (b) above being collectively the "Shares".

(c) That the Seller wishes to sell and transfer to the Buyer, under the terms and conditions herein established, all of the Shares.

CGEA0041143

(d) That the Shares are fully paid and free of any lien, encumbrance, obligation or any other limitation whatsoever that may restrict or impair the rights of the Buyer as shareholder in the Company.

(e) That Seller is duly represented herein by Hector Vargas Garza, who has full power and authority to execute this Agreement, which power and authority has not been limited or revoked.

II.    Buyer states:

(a) That Buyer wishes to acquire from Seller the Shares, under the terms and conditions herein established.

(b) That Buyer has full power and authority to execute this Agreement, which power and authority has not been limited or revoked.

(c) That Buyer is duly represented herein by Pascal Gauthier and jean-Alain Jullien, who has full power and authority to execute this Agreement, which power and authority has not been limited or revoked.

NOW, THEREFORE, the parties hereby agree as follows:

## CLAUSES

### FIRST - PURCHASE OF SHARES

Based on the representations of Seller and Buyer and the promises and agreements herein contained and subject to the terms and conditions of this Agreement, Seller hereby sells and transfers the Shares to Buyer, and Buyer hereby purchases the Shares from Seller, including all dividend rights,

2

Aurilieny Stock Purchase Agreement2 001114

CGEA0041144

free and clear of all liens, claims, pledges, encumbrances, security interests or other rights or restrictions.

## SECOND - CONSIDERATION

As total consideration for the purchase of the Shares, the Buyer covenants and agrees to pay Seller, on the date hereof and against delivery of the corresponding share certificates, duly endorsed in ownership, the amount of US $ 22,363,032.25 (Twenty two million three hundred sixty three thousand thirty two US$ and twenty five cents), Mexican Pesos 20,592,000 (Twenty million five hundred ninety two thousand) on May 14, 2002, Mexican Pesos 20,592,000 (Twenty million five hundred ninety two thousand) on November 14, 2003 and Mexican Pesos 20,592,000 (Twenty million five hundred ninety two thousand) when Confinamina or Residuos Industriales Multiquim S.A. de C.V. ("RIMSA") receives a permit to use and operate as a hazardous waste landfill at least 700 hectares of flat land comprised in lot N°39, on no less favorable conditions than those applicable to the current permit on the Mina landfill; plus the amount of 8,424,000 Mexican pesos, if certain EBITDA criteria related to RIMSA are reached

## THIRD – TAXES

Seller covenants and agrees that Buyer may withhold any percentage of the total price set forth in this Agreement, representing the minimum amount that is required to be withheld in accordance with the laws of the Republic of Mexico, subject to Seller's right to review and consent to the calculation of any amount so withheld provided, that if at or prior to the closing, the Seller shall have furnished to Buyer a tax accountant's certification to the effect that Seller will recognize no gain on its disposition of the Shares, no amount will be withheld by Buyer.

3

CGEA0041145

## FOURTH - MISCELLANEOUS

4.1    Notices. Any notice to a party hereto pursuant to this Agreement shall be given by certified or registered mail addressed as follows:

To Buyer:    Compagnie Générale d'Entreprises Automobiles, S.A.
Parc des Fontaines
169 avenue Georges Clémenceau
92735 Nanterre Cedex, France
Attention: President

To Seller:    Valores Ecologicos S.A. de C.V.
Lazaro Cardenas 2460 Edificio Losoles PB-7
Col. Residencial San Agustin
San Pedro Garza Garcia N.L.
Att. Hector Vargas Garza

4.2    Assignment. No party may assign this Agreement or its rights hereunder. Nothing contained in this Agreement shall constitute either of Buyer or Seller a partner, agent or representative of each other.

4.3    Paragraph Headings. The paragraph headings contained in this Agreement have been inserted for reference purposes only and shall not, in any way, affect the meaning or interpretation of this Agreement.

4.4    Governing Law. This Agreement shall be governed and construed in accordance with the domestic laws of the Republic of Mexico.

4.5    Amendments. No amendment or revision hereof shall have any force or effect unless the same is put in writing and executed by the parties hereto.

**(SIGNATURE PAGE FOLLOWS)**

4

Ancillary Stock Purchase Agreement2 001114

CGEA0041146

IN WITNESS WHEREOF, the parties have executed this Agreement on the 14th day of November, 2000.

Compagnie Generale D'Entreprises Automobiles S.A

By: _____

Name: _____

Title: _____

WITNESS:


SARP Industries Mexico S.A. de C.V.

By: _____

Name: _____

Title _____

WITNESS:


VALORES ECOLOGICOS SA de CV

By: _____

Name: _____

Title: _____

WITNESS: _____


Héctor Vargas Garza


MINERA LAFFE DEL NORTE, S.A. de C.V.

By: _____

Name: _____

Title: _____

WITNESS: _____

5

Additional Stock Purchase Agreement2 001114

CGEA0041147

# CERTIFICATE

ROBERTO SALAZAR VILLARREAL acting as Chief Financial Officer of Residuos Industriales
Multiquim. Sociedad Anónima de Capital Variable hereby certifies that the intercompanies balances
as of November 14 2000 are as follows:

## ACCOUNTS RECEIVABLE

|  | AMOUNTS IN PESOS |
|---|---|
| **GRUPO WASTE MANAGEMENT** | |
| Promotora Ambiental, S.A. De C.V. | - |
| Waste Management de México, S.A. De C.V. | 1.293.929 |
| Servicios Especializados en Recolección de Basura, S.A. De C.V. | 862.344 |
| Gen Industrial, S.A. De C.V. | 657.969 |
|  | 2,814,242 |

|  | AMOUNTS IN USD |
|---|---|
| Waste Management de México, S.A. De C.V. | 376.273 |
| Servicios Especializados en Recolección de Basura, S.A. De C.V. | 47.602 |
|  | 423,875 |

|  | AMOUNTS IN PESOS |
|---|---|
| **GRUPO ORVA** | |
| Transquimica Nacional, S.A. De C.V. | 12,088,568 |

## ACCOUNTS PAYABLE

|  |  | AMOUNT IN PESOS |
|---|---|---|
| **GRUPO WASTE MANAGEMENT** | | |
| Waste Management of Texas, Inc. | | - |
|  | Technical Asistance 6% | - |
|  | Technical Support 2% | - |
| Gen Industrial, S.A. De C.V. | | 77.050 |
|  | | 77.050 |

|  | AMOUNTS IN USD |
|---|---|
| CWM Kettleman Hills | 59.623 |
| CWM Butterfield | 16.512 |
| CWM Covel Gardens | 9.270 |
|  | 85,404 |

| | | AMOUNTS IN PESOS | AMOUNTS IN USD |
|---|---|---|---|
| **GRUPO ORVA** | | | |
| Valores Ecológicos, S.A. De C.V. | | - | |
|  | Technical Assistance 4% | - | |
| Valores Ecológicos, S.A. De C.V.(Management fee) | | 456.272 | |
| Transquimica Nacional, S.A. De C.V. | | 3.606.856 | |
| Materias Primas Aracc. S.A. De C.V. | | N/A | |
| Operaciones Inmobiliarias ORVA, S.A. De C.V. | | | 24.840 |
| Operadora Industrial Administrativa, S.A. De C.V. | | - | |
| Comunicación Interactiva, S.A. De C.V. | | - | |
| Ingeniería de Proceso Ambiental, S.A. De C.V. | | - | |
| Ing. Héctor Vargas Garza | | - | |
|  | | 4,063,128 | 24,840 |

The aforesaid is certified for all the pertinent legal purposes

SAN PEDRO GARZA GARCIA. NUEVO LEON  NOVEMBER 14, 2000.

C.P. ROBERTO SALAZAR VILLARREAL
CHIEF FINANCIAL OFFICER
RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V.

CGEA0041148

**Residuos Industriales Multiquim, S.A. De C.V.**
**Créditos y Cobranzas**
**Saldo al 14 de Noviembre de 2000**
**Filiales**

| WASTE | Pesos | Dlls. |
|---|---|---|
| 15405 | 68,989 | 11,038 |
| 14954 | 13,044 | |
| 15031 | 736 | 348,538 |
| 11458 | 304,845 | |
| 13967 | 906,316 | 16,696 |
| | 1,293,929 | 376,273 |

| SEREBA | Pesos | Dlls. |
|---|---|---|
| 11065 | 862,344 | |
| 14153 | | 47,602 |
| | 862,344 | 47,602 |

| GEN INDUSTRIAL | Pesos | Dlls. |
|---|---|---|
| 10944 | 179,029 | - |
| 10960 | 269,839 | |
| 17573 | 20,708 | |
| 15698 | 188,392 | |
| | 657,969 | - |

| | | |
|---|---|---|
| **Transquimica Nacional** | 12,088,568 | |
| | | |
| **Total** | 14,902,811 | 423,874 |



CGEA0041149

SIDUOS INDUSTRIA  MULTIQUIM, S.A. DE C.V.
SUMEN DE OPERA    2ES DE INTERCOMPAÑIAS WASTE
. 31 DE DICIEMBRE DE 1999 AL 31 DE OCTUBRE DEL 2000
RAS EN PESOS

| | ENERO | FEBRERO | MARZO | ABRIL | MAYO | JUNIO | JULIO | AGOSTO | SEPTIEMBRE | OCTUBRE | NOVIEMBRE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **M BUTTERFIELD** | | | | | | | | | | | |
| LDO INICIAL | 47,364 | 72,154 | · | 98,480 | 62,770 | 111,507 | 102,638 | 48,177 | 76,805 | 60,456 | 138,758 |
| GOS | 47,364 | 72,154 | · | 56,492 | 53,376 | 57,046 | 54,461 | 48,177 | 70,892 | | |
| MPRAS | 72,154 | · | 98,480 | 20,783 | 102,112 | 48,177 | · | 76,805 | 54,543 | 78,302 | 18,582 |
| LDO FINAL | 72,154 | · | 98,480 | 62,770 | 111,507 | 102,638 | 48,177 | 76,805 | 60,456 Dolares | 138,758 14,557 | 157,340 18,512 |
| **M KETTLEMAN** | | | | | | | | | | | |
| LDO INICIAL | 117,421 | 52,925 | 48,416 | 607,956 | 639,155 | 616,784 | 237,480 | 167,887 | · | 391,209 | 414,091 |
| GOS | 117,421 | 4,509 | | 48,416 | 205,137 | 441,619 | 175,165 | 167,887 | | | |
| MPRAS | 52,925 | · | 559,540 | 79,615 | 182,765 | 62,315 | 105,572 | | 391,209 | 22,882 | 148,884 |
| LDO FINAL | 52,925 | 48,416 | 607,956 | 639,155 | 616,784 | 237,480 | 167,887 | · | 391,209 Dolares | 414,091 43,932 | 562,975 59,823 |
| **M COVEL GARDENS** | | | | | | | | | | | |
| LDO INICIAL | · | · | · | 27,722 | 27,722 | 167,372 | 155,985 | 7,084 | 171,279 | 99,732 | |
| GOS | 202,746 | · | · | · | 27,722 | 231,539 | 155,985 | · | 158,764 | 12,515 | |
| MPRAS | 262,746 | · | 27,722 | · | 167,372 | 220,153 | 7,084 | 164,195 | 87,218 | | |
| LDO FINAL | · | · | 27,722 | 27,722 | 167,372 | 155,985 | 7,084 | 171,279 | 99,732 Dolares | 87,218 9,279 | |
| **ASTE MANAGEMENT, INC.** | | | | | | | | | | | |
| LDO INICIAL | 37,403,115 | 27,841,746 | 25,079,022 | 30,928,138 | 30,840,054 | 30,840,054 | 26,301,171 | 14,007,614 | 14,007,614 | 15,920,007 | 1,026,996 |
| GOS | 9,561,369 | 2,762,724 | 5,703,003 | 88,084 | · | 12,055,000 | · | · | · | 15,920,007 | 1,491,000 |
| MPRAS | · | · | 11,552,118 | · | · | 7,516,117 | 2,046,812 | · | 1,912,393 | 1,026,996 | 404,004 |
| USTES | | | | | | | 14,342,369 | | | | |
| LDO FINAL | 27,841,746 | 25,079,022 | 30,928,138 | 30,840,054 | 30,840,054 | 26,301,171 | 14,007,614 | 14,007,614 | 15,920,007 | 1,026,996 | · |
| **EN INDUSTRIAL** | | | | | | | | | | | |
| LDO INICIAL | 4,025 | · | 8,050 | 28,175 | 36,225 | 20,125 | 32,200 | · | 77,050 | 77,050 | |
| GOS | 4,025 | · | | | 16,100 | · | 32,200 | | · | · | |
| MPRAS | · | 8,050 | 20,125 | 8,050 | · | 12,075 | · | 77,050 | · | · | |
| LDO FINAL | · | 8,050 | 28,175 | 36,225 | 20,125 | 32,200 | · | 77,050 | 77,050 | 77,050 | |
| **ERVICIOS ESPECIALES DE RECOLECCION DE BASURA** | | | | | | | | | | | |
| LDO INICIAL | 9,200 | 4,600 | 4,600 | 4,600 | 4,600 | 4,600 | · | 4,600 | 9,200 | · | |
| GOS | 9,700 | | | | | 9,700 | | | 9,200 | 2,220 | |
| MPRAS | 4,600 | | | | | 4,600 | 4,600 | 4,600 | · | 2,220 | |
| LDO FINAL | 4,600 | 4,600 | 4,600 | 4,600 | 4,600 | · | 4,600 | 9,200 | · | · | |

CGEA0041150

# lESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V.

PERACIONES Y SALDOS INTERCOMPAÑIAS POR PAGAR A EMPRESAS DEL GRUPO ORVA
OR EL PERIODO DEL 01 DE ENERO AL 31 DE OCTUBRE DEL 2000

IFRAS EN PESOS

**ALORES ECOLOGICOS, S.A. DE C.V.**
sistencia Técnica, Management fee

| | ENERO | FEBRERO | MARZO | ABRIL | MAYO | JUNIO | JULIO | AGOSTO | SEPTIEMBRE | OCTUBRE | NOVIEMBRE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **ALDO INICIAL: ASISTENCIA TECNICA** | 14,402,294 | 15,988,237 | 16,778,937 | 15,851,187 | 17,412,230 | 19,660,675 | 11,660,675 | 2,098,675 | 1,539,090 | 104,853 | - |
| MATERIA PRIMA | 984,885 | 703,432 | 281,339 | | | | | | | | |
| MANAGEMENT FEE | - | | | - | | 456,272 | 456,272 | 456,272 | - | - | - |
| **AGOS:** | | | | | | | | | | | |
| lATERIA PRIMA | 281,563 | 472,093 | 281,339 | | | | | | | | |
| SISTENCIA TECNICA | 862,785 | 1,316,529 | 3,277,484 | 280,859 | | 8,000,000 | | 559,585 | 1,434,237 | 104,853 | |
| lANAGEMENT FEE | 456,272 | 456,272 | 456,272 | 456,272 | | | 456,272 | 912,544 | 456,272 | 456,272 | |
| **ASTOS:** | | | | | | | | | | | |
| SISTENCIA TECNICA | 2,110,198 | 1,849,765 | 1,871,055 | 1,778,393 | 1,955,170 | N/A | N/A | N/A | N/A | | |
| /A ACREDITABLE ASISTENCIA TECNICA | 316,530 | 277,465 | 280,658 | 266,309 | 293,276 | N/A | N/A | N/A | | | |
| lANAGEMENT FEE | 456,272 | 456,272 | 456,272 | 456,272 | 456,272 | 456,272 | 456,272 | 456,272 | 456,272 | 456,272 | 456,272 |
| **APITALIZACION DE DEUDA** | | | | | | | 9,562,000 | | | | |
| **ALDO FINAL: ASISTENCIA TECNICA** | 15,988,237 | 16,778,937 | 15,851,187 | 17,412,230 | 19,660,675 | 11,660,675 | 2,098,675 | 1,539,090 | 104,853 | - | - |
| MATERIA PRIMA | 703,432 | 281,339 | - | - | - | - | - | - | - | - | |
| MANAGEMENT FEE | - | - | - | - | 456,272 | 456,272 | 456,272 | - | - | - | 456,272 |

**TRANSQUIMICA NACIONAL, S.A. DE C.V.**
Transporte especializado

| | ENERO | FEBRERO | MARZO | ABRIL | MAYO | JUNIO | JULIO | AGOSTO | SEPTIEMBRE | OCTUBRE | NOVIEMBRE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SALDO INICIAL | 3,917,458 | 3,930,424 | 4,114,259 | 4,362,020 | 4,670,922 | 4,903,888 | 1,932,730 | 3,621,700 | 3,357,267 | 3,109,905 | 2,710,187 |
| PAGOS | 3,545,300 | 2,728,980 | 2,617,960 | 1,203,736 | 2,653,115 | 5,298,319 | 1,040,538 | 2,769,524 | 2,061,231 | 2,948,015 | 492,454 |
| GASTOS | 3,558,266 | 2,912,815 | 2,865,721 | 1,512,538 | 2,886,181 | 2,327,170 | 2,729,498 | 2,505,091 | 1,813,869 | 2,548,277 | 1,389,143 |
| SALDO FINAL | 3,930,424 | 4,114,259 | 4,362,020 | 4,670,922 | 4,903,888 | 1,932,730 | 3,621,700 | 3,357,267 | 3,109,905 | 2,710,187 | 3,606,858 |

**MATERIAS PRIMAS ARACC, S.A. DE C.V.**
Materia Prima (Calcita, Agua, Arcilla)

| | ENERO | FEBRERO | MARZO | ABRIL | MAYO | JUNIO | JULIO | AGOSTO | SEPTIEMBRE | OCTUBRE | NOVIEMBRE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SALDO INICIAL | 814,497 | 981,773 | 1,488,530 | 1,521,900 | 1,401,798 | 3,061,613 | 1,416,962 | 259,381 | - | - | - |
| PAGOS | 1,176,883 | 684,957 | 1,309,516 | 1,521,900 | - | 3,061,613 | 1,416,962 | 259,381 | - | - | - |
| GASTOS | 1,340,160 | 1,191,714 | 1,342,885 | 1,401,798 | 1,659,814 | 1,416,962 | 259,381 | N/A | N/A | N/A | N/A |
| SALDO FINAL | 981,773 | 1,488,530 | 1,521,900 | 1,401,798 | 3,061,613 | 1,416,962 | 259,381 | - | - | - | - |

NOTA : En el mes de Julio se registró de forma equivocada la facturación de materiales correspondientes al periodo del 26 al 30 de Junio.
Por otra parte, los servicios de acarreo de materiales y otros gastos relacionados no han sido facturados desde dicha fecha.



CGEA0041151

# RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V.

OPERACIONES Y SALDOS INTERCOMPAÑIAS POR PAGAR A EMPRESAS DEL GRUPO ORVA
POR EL PERIODO DEL 01 DE ENERO AL 31 DE OCTUBRE DEL 2000

CIFRAS EN PESOS

## OPERACIONES INMOBILIARIAS ORVA, S.A. C.V
Arrendamiento de equipos

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SALDO INICIAL | 98,718 | 58,810 | 56,780 | 76,472 | 116,360 | 177,556 | 61,759 | 119,214 | 95,548 | 163,443 | 196,099 |
| PAGOS | 98,718 | 58,810 | 97,217 | 38,497 | 37,975 | 177,556 | 41,098 | 119,214 | 19,110 | 58,062 | |
| GASTOS | 58,810 | 56,780 | 114,909 | 78,386 | 99,170 | 61,759 | 98,553 | 95,548 | 77,004 | 100,718 | 39,330 |
| SALDO FINAL | 58,810 | 56,780 | 76,472 | 116,386 | 177,556 | 61,759 | 119,214 | 95,548 | 163,443 | 196,099 | 235,429 |
| | | | | | | | | | | Dolares | 26,840 |

## OPERADORA INDUSTRIAL ADMINISTRATIVA, S.A. DE C.V.
Administración de personal

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | - | 132,402 | 123,721 | 163,478 | - | 778,413 | - | - | - | - | - |
| SALDO INICIAL | 1,798,368 | 1,791,711 | 2,052,214 | 2,498,726 | 2,356,266 | 3,359,960 | 2,439,889 | 2,552,111 | 2,910,429 | 2,953,334 | 1,360,407 |
| PAGOS | 1,930,770 | 1,783,030 | 2,691,971 | 2,335,247 | 3,134,666 | 2,581,547 | 2,439,889 | 2,552,111 | 2,910,429 | 2,953,334 | 1,360,407 |
| GASTOS | 132,402 | 123,721 | 163,478 | - | 778,413 | - | - | - | - | - | - |
| SALDO FINAL | | | | | | | | | | | - |

## COMUNICACIÓN INTERACTIVA, S.A. DE C.V.
Servicios de soporte en software, Material publicitario, Internet.

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 13,806 | 94,043 | 48,000 | 10,143 | 94,651 | 187,317 | 14,490 | 21,252 | 1,507 | 1,507 | - |
| SALDO INICIAL | 13,806 | 134,889 | 48,760 | | 118,710 | 187,517 | 13,938 | 44,712 | 74,684 | 19,354 | |
| PAGOS | 94,043 | 88,846 | 12,903 | 84,508 | 211,576 | 14,490 | 20,200 | 24,967 | 74,684 | 17,847 | |
| GASTOS | 94,043 | 48,000 | 10,143 | 94,651 | 187,517 | 14,490 | 21,252 | 1,507 | 1,507 | - | - |
| SALDO FINAL | | | | | | | | | | | |

## INGENIERIA DE PROCESO AMBIENTAL S.A. DE C.V.
Arrendamiento de equipos

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SALDO INICIAL | - | - | - | - | - | - | - | 258,354 | 248,354 | 368,644 | - |
| PAGOS | | | | | | | | 258,354 | | 368,644 | |
| GASTOS | | | | | | | 258,354 | 248,354 | 170,290 | | |
| SALDO FINAL | - | - | - | - | - | - | 258,354 | 248,354 | 368,644 | - | - |



# CONVENIO MODIFICATORIO

Al Contrato de Prestación de Asesorías para el Desarrollo Negocios (en lo sucesivo el "Contrato de Asesoría") celebrado en fecha (2) dos de Enero de (2000) dos mil, por una parte RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V., representada por el Dr. Juan Antonio Cuellar López (a quien en lo sucesivo se le denominará "RIMSA") y por otra parte VALORES ECOLOGICOS, S.A. DE C.V., representada por el Ing. Héctor Vargas Garza (a quien en lo sucesivo se le denominará "VAECO"), de conformidad con las siguientes declaraciones y cláusulas:

## DECLARACIONES

Manifiestan conjuntamente RIMSA y VAECO:

I.  Que a la fecha de celebración del presente Convenio Modificatorio, dichas partes han cumplido con sus obligaciones derivadas del Contrato de Asesoría;

II.  Que todas las partes tienen la capacidad jurídica para contratar y obligarse en los términos del presente Convenio Modificatorio; y

III.  Que es su deseo modificar la Cláusula Tercera y la Cláusula Cuarta, incisos 1) y 2), del Contrato de Asesoría, en la forma y términos que más adelante se establecen.

En virtud de lo anterior, las partes convienen en modificar el Contrato de Asesoría bajo las siguientes:

## CLAUSULAS

**PRIMERA:-** Las partes modifican la Cláusula Tercera del Contrato de Asesoría, para quedar redactada como sigue:

"**TERCERA: Duración:** A menos que se dé por terminado con anterioridad de conformidad con las disposiciones de la Cláusula Décima del presente, este Contrato permanecerá en vigor por un término de (3) tres años, contado a partir del día (15) quince de Noviembre del (2000) dos mil. No obstante lo dispuesto en contrario, el presente Contrato terminará automáticamente en caso de que VAECO dejare de tener participación accionaria en RIMSA."

**SEGUNDA:-** Las partes modifican exclusivamente los incisos 1) y 2) de la Cláusula Cuarta del Contrato de Asesoría, para quedar redactado como sigue:

"**CUARTA:** ...

1)  Un Honorario no superior al presupuesto aprobado por el Consejo de Administración de RIMSA para contratar las Asesorías, el cual asciende a $400,000.00 U.S.D. (cuatrocientos mil 00/100 dólares de los Estados Unidos de América), por todos los diferentes proyectos a desarrollar asignados a VAECO por RIMSA.

1

CGEA0041153

2)    Los pagos a VAECO por RIMSA se realizarán los días (15) quince de cada mes, pagándose la cantidad de $33,333.33 U.S.D. (treinta y tres mil trescientos treinta y tres 33/100 dólares de los Estados Unidos de América) en cada exhibición quincenal.

3) al 4) ....."

**TERCERA:-** Este Convenio Modificatorio constituye el convenio total entre las partes con respecto a las modificaciones celebradas al Contrato de Asesoría arriba mencionado, por lo que los demás términos y condiciones del Contrato de Asesoría permanecen sin modificación alguna y en vigor.

**CUARTA:-** El significado de los términos aquí utilizados será el mismo a aquél que se tenga dentro del Contrato, salvo lo aquí previsto en contrario.

**QUINTA:-** Las partes convienen expresamente que las modificaciones efectuadas al Contrato de Asesoría entrarán en vigor a partir del día (15) quince de Noviembre del (2000) dos mil.

**PARA CONSTANCIA DE LO ANTERIOR,** estando las partes bien enteradas del contenido y alcance legales de todas y cada una de las cláusulas del presente Convenio Modificatorio, lo celebran por duplicado en San Pedro Garza García, Nuevo León, a los (14) catorce días de Noviembre de (2000) dos mil.

"RIMSA"

DR. JUAN ANTONIO CUELLAR LOPEZ

"VAECO"

ING. HECTOR VARGAS GARZA

T E S T I G O S

2

CGEA0041154

CONVENIO DE TERMINACION DE UN CONTRATO DE SUMINISTRO, QUE CELEBRAN POR UNA PARTE LA EMPRESA MATERIAS PRIMAS ARACC, S.A. DE C.V., REPRESENTADA EN ESTE ACTO POR SU APODERADO GENERAL EL SR. ING. EDUARDO A. BAKER ARJONA, A QUIEN EN LO SUCESIVO SE LE DENOMINARA "ARACC" Y POR LA OTRA PARTE LA EMPRESA RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V., REPRESENTADA EN ESTE ACTO POR SU APODERADO GENERAL EL DR. JUAN ANTONIO CUELLAR LOPEZ, A QUIEN EN LO SUCESIVO SE LE DENOMINARA "RIMSA"; CONVENIO POR EL CUAL SE SUJETARAN A LAS SIGUIENTES DECLARACIONES Y CLAUSULAS:

## DECLARACIONES

Declaran ambas partes que:

I.      Con fecha (2) dos de Enero del (2000) dos mil, celebraron un Contrato de Suministro (el "Contrato de Suministro") respecto de las siguientes materias primas y materiales: carbonato de calcio (calcita), cal comercial, Tyvek (uniformes de seguridad), arcilla, agua tipo industrial, agua limpia y servicios (en lo sucesivo "Materiales y Servicios"), con una vigencia de (1) un año contado a partir de la fecha de su celebración.

II.     Que al día (25) veinticinco de Junio del (2000) dos mil, no existían adeudos pendientes de liquidar, ni obligaciones pendientes de cumplir, entre las partes.

III.    Que por así convenir los intereses de ambas partes, es intención de las mismas dejar sin efecto jurídico alguno el Contrato de Suministro que se menciona en la Declaración I que antecede.

Con estas Declaraciones, ambas partes otorgan el Convenio a que se ha hecho referencia, conforme a las siguientes:

## CLAUSULAS

PRIMERA.- Ambas partes acuerdan dar por terminado, con efectos al día (25) veinticinco de Junio del (2000), el Contrato de Suministro, por lo que hasta la citada fecha, todos los derechos y obligaciones que se hubieren derivado del Contrato de Suministro dejarán de tener vigencia, liberándose ambas partes de toda responsabilidad y de toda obligación, reconociendo expresamente ambas partes que a esa fecha no se adeudan contraprestación alguna, sirviendo el presente instrumento como finiquito respecto de cualesquier contraprestación generada entre las partes con anterioridad a la misma.

SEGUNDA.- Las contraprestaciones que se hubieren generado por el suministro de los Materiales y Servicios, durante el periodo comprendido del día (26) veintiséis de Junio del (2000) dos mil al (14) catorce de Noviembre del (2000), serán cobrados por la empresa denominada "Inmobiliaria Confinamina, S.A. de C.V.", por lo que ARACC, en este acto y,

CGEA0041155

en forma irrevocable, cede y transmite a Inmobiliaria Confinamina, S.A. de C.V. cualesquier derecho de cobro respecto de las contraprestaciones referidas.

**TERCERA.-** Manifiestan ambas partes que celebran el presente Convenio a su entera conformidad, sin que exista cualesquier tipo de vicio en el consentimiento aquí expresado, ni error en el objeto, dolo, violencia o mala fe, por lo que este instrumento contiene la totalidad de la voluntad expresada por ambas partes, sustituyendo cualesquier otra que se hubiese expresado con anterioridad.

**CUARTA.-**   En todo aquello que no estuviese previsto en el presente Convenio, serán únicamente aplicables las disposiciones relativas del Código Civil para el Estado de Nuevo León.

Leido integramente por los otorgantes y bien impuestos de su contenido y efectos legales, lo aceptan, ratifican y firman en San Pedro Garza Garcia, Nuevo León, el día (14) catorce del mes de Noviembre del (2000) dos mil.

"ARACC"

ING. EDUARDO A. BAKER ARJONA

"RIMSA"

DR. JUAN ANTONIO CUELLAR LOPEZ

TESTIGO

TESTIGO

CGEA0041156

CONVENIO QUE CELEBRAN, POR UNA PARTE, EL ING. HECTOR VARGAS GARZA (EN LO SUCESIVO "ING. VARGAS") POR SUS PROPIOS DERECHOS, Y POR LA OTRA PARTE, RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. REPRESENTADA POR EL DR. JUAN ANTONIO CUÉLLAR LÓPEZ (EN LO SUCESIVO "RIMSA") EL CUAL SUSCRIBEN DE CONFORMIDAD A LAS SIGUIENTES DECLARACIONES Y CLÁUSULAS:

## DECLARACIONES

I.-    Declaraciones del ING. VARGAS:

I.a)    Que con motivo de la enajenación de 971 acciones emitidas por RIMSA que hizo con fecha 20 de octubre del 2000 a favor de la empresa Valores Ecológicos, S.A. de C.V.("VESA") optó por que VESA le efectuara una retención para efectos del impuesto sobre la renta sobre la base de su ganancia real, por lo que procedió a presentar el aviso de dictamen correspondiente así como el propio dictamen fiscal que para ese efecto exigen las disposiciones legales aplicables, mismo que fuera suscrito por el contador público Gilberto Rangel Sáenz (el "Dictamen Fiscal").

I.b)    Que con el fin de que RIMSA quede liberado de cualquier responsabilidad fiscal por el hecho de registrar como accionista de dicha sociedad a VESA como adquirente de las acciones que le vendió, desea poner a disposición de RIMSA una copia del Dictamen Fiscal en los términos que aqui se precisan.

II.-    Declaraciones del representante de RIMSA:

II.a)    Que le ha sido mostrado un ejemplar del Dictamen Fiscal y que está de acuerdo en que la copia del mismo se ponga a su disposición conforme a lo establecido en el presente documento.

## CLAUSULAS

PRIMERA: El ING. VARGAS se obliga dentro de los 3 (tres) días hábiles siguientes a la fecha de este convenio, a poner a disposición de RIMSA una copia del Dictamen Fiscal mediante su depósito irrevocable en una caja de seguridad de una institución bancaria reconocida y con domicilio en la ciudad de Monterrey o del municipio de San Pedro Garza Garcia, Nuevo León.

CGEA0041157

SEGUNDA: Al constituir el depósito del Dictamen Fiscal en los términos señalados en la cláusula precedente, el ING. VARGAS está de acuerdo en que dicho ejemplar se mantendrá en el citado depósito por un plazo que no será menor al número de años durante el cual las autoridades fiscales puedan ejercer sus facultades de comprobación fiscal en RIMSA, o 5 (cinco) años a partir de la fecha del presente, lo que ocurra primero ; en el entendido, sin embargo, que dicho depósito concluirá una vez que el Dictamen Fiscal se entregue a RIMSA en los términos aquí pactados, o transcurra el plazo señalado en esta cláusula, lo que ocurra primero.

TERCERA: Al efectuarse el depósito del Dictamen Fiscal en los términos previstos en la cláusula precedente, el ING. VARGAS dará instrucciones a la institución bancaria en el sentido de que dicho Dictamen Fiscal podrá ser retirado del depósito solo con las firmas mancomunadas de los señores licenciados Andrés González Sandoval y Luis Santos Theriot ("Personas Autorizadas").

CUARTA: En caso que RIMSA requiera acreditar ante cualquier autoridad fiscal que tiene a su disposición el Dictamen Fiscal, el ING. VARGAS manifiesta desde ahora no tener ningún inconveniente en que el ejemplar del Dictamen Fiscal sea retirado de inmediato del depósito por las Personas Autorizadas. y que el mismo le sea entregado a un representante autorizado de RIMSA. Para ello bastará que la necesidad de RIMSA de disponer del Dictamen Fiscal se le justifique al Lic. Andrés González Sandoval.

QUINTA: En el supuesto de que RIMSA requiera acreditar ante alguna autoridad fiscal que cuenta con una copia del Dictamen Fiscal y por causas imputables al ING. VARGAS RIMSA se ve impedida de recibir oportunamente dicho Dictamen Fiscal, y de ello se derivan a cargo de RIMSA obligaciones de pago de contribuciones y accesorios, el ING. VARGAS deberá indemnizar a RIMSA por cualesquiera de dichos montos que le resulten a cargo de RIMSA, siempre que RIMSA no tuviere derecho a exigir dicha indemnización conforme a los términos de contrato o documento diverso.

SEXTA: Serán a cargo y por cuenta exclusiva del ING. VARGAS el pago de los servicios que preste la institución bancaria por el depósito y resguardo del Dictamen Fiscal.

Bien enteradas las partes del contenido del presente Convenio, lo subscriben a los 14 días del mes de noviembre del 2000.


ING. HÉCTOR VARGAS GARZA                    RESIDUOS INDUSTRIALES
                                            MULTIQUIM, S.A. DE C.V.

                                            Dr. Juan Antonio Cuéllar López

                                            ACEPTADO:

CGEA0041158

RESIDUOS INDUSTRIALES MULTIQUIM,
S.A. DE C.V.

Hago referencia al Contrato de prestación de servicios que tengo celebrado con esa empresa de fecha 1°. de octubre de 1996 y de manera específica a su cláusula cuarta.

Estoy informado y enterado que con motivo de diversas operaciones entre los accionistas de esa sociedad, con esta fecha se ha modificado la estructura accionaria de Residuos Industriales Multiquim, S.A. de C.V. y que los nuevos accionistas lo son Sarp Industries México, S.A. de C.V. e Inmobiliaria Confinamina, S.A. de C.V. Por medio de la presente deseo informarles que a pesar de dicho cambio en la estructura accionaria en la referida empresa, ello no constituye ningún impedimento en los términos de la referida cláusula cuarta que me impida continuar laborando para dicha empresa y por lo tanto deseo continuar haciéndolo. Manifiesto también que si bien el citado cambio en la estructura accionaria pudiera generar asimismo una modificación en organización administrativa de esa empresa, dichos cambios tampoco me impedirán que continúe laborando para la misma, siempre y cuando dicho cambio no implique un demérito en el nivel organizacional que actualmente ocupo. Asimismo reconozco que he iniciado las negociaciones con esa empresa para celebrar un contrato de prestación de servicios acorde con las políticas laborales de los nuevos accionistas en el entendido que los términos y condiciones de mi actual contrato subsistirán hasta que las referidas negociaciones concluyan con la firma de un nuevo contrato.

Noviembre 14 del 2000

Atentamente,

Dr. Juan Antonio Cuéllar López

**CERTIFICACION SECRETARIAL**

ALEJANDRO MARTIN SANCHEZ FRANCO, en mi carácter de Secretario del Consejo de Administración de **RESIDUOS INDUSTRIALES MULTIQUIM, SOCIEDAD ANONIMA DE CAPITAL VARIABLE**, hago constar y:-

**CERTIFICO**

Que de acuerdo con el Libro de Actas de Asambleas, el Libro de Aumentos y Disminuciones de Capital Variable y el Registro de Acciones que lleva la Sociedad citada en los términos de la Ley General de Sociedades Mercantiles, al (14) de Noviembre del año (2000) inclusive, los datos de integración del Capital Social Total, Capital Minimo Fijo, Capital Variable, numero total de acciones en que se divide, en su caso, nombres de accionistas y numero de acciones de las cuales son titulares, en la citada Sociedad, son como a continuación se indican:

| | |
|---|---|
| CAPITAL MINIMO FIJO | $   20,000.00 |
| CAPITAL VARIABLE | $63'417,460.00 |
| CAPITAL SOCIAL TOTAL | $63'437,460.00 |
| NUMERO TOTAL DE ACCIONES | 8,000 |
| VALOR NOMINAL | SIN EXPRESION DE VALOR NOMINAL |

| ACCIONISTAS | ACCIONES PARTE FIJA |
|---|---|
| SARP INDUSTRIES MEXICO, S.A. DE C.V. | 1,085 |
| INMOBILIARIA CONFINAMINA, S.A. DE C.V. | 686 |
| VALORES ECOLOGICOS, S.A. DE C.V. | 229 |
| TOTAL PARTE FIJA | 2,000 |

| ACCIONISTAS | ACCIONES PARTE VARIABLE |
|---|---|
| SARP INDUSTRIES MEXICO, S.A. DE C.V. | 372 |
| INMOBILIARIA CONFINAMINA, S.A. DE C.V. | 42 |
| VALORES ECOLOGICOS, S.A. DE C.V. | 14 |
| SUBTOTAL PARTE VARIABLE | 428 |

| ACCIONISTAS | ACCIONES PARTE VARIABLE PREFERENTES |
|---|---|
| SARP INDUSTRIES MEXICO, S.A. DE C.V. | 3,343 |
| INMOBILIARIA CONFINAMINA, S.A. DE C.V. | 1,672 |
| VALORES ECOLOGICOS, S.A. DE C.V. | 557 |
| SUBTOTAL PARTE VARIABLE PREFERENTES | 5,572* |

*las presentes acciones se convirtieron en ordinarias conforme a los Acuerdos Adoptados en la Asamblea Extraordinaria de Accionistas de esta misma fecha.

| | |
|---|---|
| TOTAL PARTE VARIABLE | 6,000 |
| TOTAL CAPITAL SOCIAL | **8,000** |

LO ANTERIOR LO CERTIFICO Y HAGO CONSTAR PARA LOS EFECTOS LEGALES A QUE HAYA LUGAR DADA EN SAN PEDRO GARZA GARCIA, NUEVO LEON A LOS (14) DIAS DEL MES DE NOVIEMBRE DEL AÑO 2000

RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V.

LIC. ALEJANDRO MARTIN SANCHEZ FRANCO
SECRETARIO DEL CONSEJO DE ADMINISTRACION

CGEA0041161

## CERTIFICACION SECRETARIAL

ABELARDO RAUL CAVAZOS GARZA, en mi carácter de Administrador Unico de la Sociedad de INMOBILIARIA CONFINAMINA, SOCIEDAD ANONIMA DE CAPITAL VARIABLE, hago constar y:-

### CERTIFICO

Que de acuerdo con el Libro de Actas de Asambleas, el Libro de Aumentos y Disminuciones de Capital Variable y el Registro de Acciones que lleva la Sociedad citada en los términos de la Ley General de Sociedades Mercantiles, al (14) de Noviembre del año (2000) inclusive, los datos de integración del Capital Social Total, Capital Mínimo Fijo, Capital Variable, numero total de acciones en que se divide, en su caso, nombres de accionistas y numero de acciones de las cuales son titulares, en la citada Sociedad, son como a continuación se indican:

| | |
|---|---|
| CAPITAL MINIMO FIJO | $     50,000.00 |
| CAPITAL VARIABLE | $327'000,000.00 |
| CAPITAL SOCIAL TOTAL | $327'050,000.00 |
| NUMERO TOTAL DE ACCIONES | 3'270,500 |
| VALOR NOMINAL | $100.00 |

| ACCIONISTAS | ACCIONES PARTE FIJA |
|---|---|
| SARP INDUSTRIES MEXICO, S.A. DE C.V. | 495 |
| COMPAGNIE GENERALE D'ENTREPRISES AUTOMOBILES, S.A. | 5 |
| TOTAL PARTE FIJA | 500 |

| ACCIONISTAS | ACCIONES PARTE VARIABLE |
|---|---|
| SARP INDUSTRIES MEXICO, S.A. DE C.V. | 3'270,000 |
| TOTAL PARTE VARIABLE | 3'270,000 |
| TOTAL CAPITAL SOCIAL | 3'270,500 |

LO ANTERIOR LO CERTIFICO Y HAGO CONSTAR PARA LOS EFECTOS LEGALES A QUE HAYA LUGAR DADA EN SAN PEDRO GARZA GARCIA, NUEVO LEON A LOS (14) DIAS DEL MES DE NOVIEMBRE DEL AÑO 2000

INMOBILIARIA CONFINAMINA, S.A. DE C.V.

ING. ABELARDO RAUL CAVAZOS GARZA
ADMINISTRADOR UNICO

CGEA0041162

## RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V.
### ACTA DE ASAMBLEA GENERAL ORDINARIA DE ACCIONISTAS
### OCTUBRE 20, 2000

En la ciudad de San Pedro Garza García, N.L., domicilio social de **RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V.** siendo las (9.30) horas del día (20) de octubre del (2000) se reunieron en Lázaro Cárdenas 2400 Edificio Losoles Despacho B-21, los accionistas y los representantes de accionistas cuyos nombres y firmas aparecen en la Lista de Asistencia al efecto preparada y certificada por el Escrutador designado, de la cual el original se agrega al expediente del duplicado de la presente Acta, con el objeto de celebrar una Asamblea General Ordinaria de Accionistas a la cual fueron debidamente citados. Se encontraron presentes el Lic. ALEJANDRO MARTIN SANCHEZ FRANCO en su calidad de Secretario del Consejo de Administración, el Sr. C.P. AMEL CIENFUEGOS PECINO, en su carácter de Comisario de la Sociedad y los Señores Lic. HECTOR VARGAS AGUIRRE, DR. JUAN ANTONIO CUELLAR LOPEZ y C.P. ROBERTO SALAZAR VILLARREAL, en calidad de invitados-

Presidio la Asamblea el Sr. Ing. HECTOR VARGAS GARZA, en su calidad de Presidente del Consejo de Administración y el Sr. Lic. ALEJANDRO MARTIN SANCHEZ FRANCO en calidad de Secretario Consejo de Administración, esto de conformidad con los Estatutos Sociales.

A propuesta del Presidente, por unanimidad de votos la Asamblea designó Escrutador al Señor C.P. ROBERTO SALAZAR VILLARREAL quien acepto su cargo y procedió a verificar la correspondiente Lista de Asistencia, el Registro de Acciones y las Cartas Poder exhibidas, certificando que en la Asamblea de relación se encontraron legalmente representadas las 8,000 Acciones en que se encuentra dividido el capital social total de la Sociedad y por ende el quórum a que se refieren los Estatutos Sociales para declarar legítimamente instalada la Asamblea, distribuidas de la siguiente manera:

| ACCIONISTAS | ACCIONES | | |
|---|---|---|---|
| | SERIE B | SERIE B-V | SERIE P |
| CHEMICAL WASTE MANAGEMENT, INC. | 1,085 | 372 | 3,343 |
| ING. HECTOR VARGAS GARZA | 915 | 56 | |
| VALORES ECOLOGICOS, S.A. DE C.V. | | | 2,229 |
| TOTALES | 2,000 | 428 | 5,572 |
| TOTAL CAPITAL SOCIAL | | 8.000 | |

En virtud de la certificación del Escrutador respecto de haberse encontrado representado el 100% de las acciones representativas del Capital Social total suscrito y pagado de la Sociedad, el Presidente declaró legalmente instalada la Asamblea y apta para tratar y resolver los asuntos que la motivan, a pesar de no haberse publicado Convocatoria previa, de conformidad con lo dispuesto por los Estatutos Sociales.

Acto seguido, el Secretario dio lectura, a la siguiente:-

### ORDEN DEL DIA:

I.-PRESENTACION DE LA PROPUESTA PARA VENDER ACCIONES EMITIDAS POR ESTA SOCIEDAD

II.-NOMBRAMIENTO DE DELEGADO O DELEGADOS ESPECIALES PARA FORMALIZAR LOS ACUERDOS ADOPTADOS, EN SU CASO.

Con respecto al desahogo del PRIMER PUNTO contenido en la Orden del Dia, El Secretario dio lectura a la propuesta presentada a esta Asamblea para enajenar 971 acciones emitidas por esta Sociedad propiedad del Ing. HECTOR VARGAS GARZA a favor de la accionista VALORES ECOLOGICOS, S.A. DE C.V. por asi convenir a sus intereses.-

En uso de la palabra el representante de la Accionista CHEMICAL WASTE MANAGEMENT INC. expresó la renuncia irrevocable de parte de su representada al derecho de preferencia para adquirir dicho paquete accionario.

Discutida que fue la proposicion anterior, la Asamblea por unanimidad de votos tomó los siguientes ACUERDOS:

PRIMERO:    Se autoriza la enajenación de las 971 acciones emitidas por esta Sociedad propiedad del Ing. HECTOR VARGAS GARZA a favor de VALORES ECOLOGICOS, S.A. DE C.V.

SEGUNDO:    Se acepta la renuncia irrevocable al derecho de preferencia de la Accionista CHEMICAL WASTE MANAGEMENT, INC. para adquirir dicho paquete accionario de la Sociedad

II.- Con respecto al desahogo del SEGUNDO y último PUNTO contenido en la Orden del Día, la Asamblea por unanimidad de votos, salvando el suyo los interesados, tomo el siguiente ACUERDO:

CGEA0041164

**TERCERO:**  Se designan a los Señores C.P. ROBERTO SALAZAR VILLARREAL y LIC ALEJANDRO MARTIN SANCHEZ FRANCO como **DELEGADOS ESPECIALES** de la presente Asamblea, a fin de que en forma conjunta o separada ocurran ante el Notario Público de su elección a protocolizar en lo conducente el Acta que se levante de la presente Asamblea y gestionar la inscripción en el Registro Público de la Propiedad y del Comercio, correspondiente del Testimonio que de dicha protocolización se expida, en caso de así considerarse necesario o conveniente, formalizando los Acuerdos adoptados.-

No habiendo otro asunto que tratar, se dio por terminada la presente Asamblea que se suspendió por el término prudente para que el Secretario procediera a levantar la presente Acta por duplicado; acto seguido el Secretario dio lectura a la misma, y por unanimidad de votos se aprobó, firmándose por el Presidente, el Secretario, El Comisario y todos los accionistas y representantes de accionistas.

Se hace constar que todos los accionistas y representantes de accionistas estuvieron presentes desde el inicio de la presente Asamblea hasta su total terminación, así como en el momento de tomarse todos y cada uno de los ACUERDOS adoptados.-

Se agrega al Apéndice de la presente Acta, un ejemplar de la misma en papel simple, adjuntándose a esta última las Cartas Poder exhibidas, la Lista de Asistencia suscrita por los Asistentes y debidamente certificada por los Escrutadores designados y demás documentos presentados en la Asamblea. Todo ello forma el expediente de esta Asamblea que se conserva en el archivo de la Secretaría.-

Se concluyó la Asamblea a las 10:00 horas del día, mes y año al principio señalados.-

_____
ING. HECTOR VARGAS GARZA
PRESIDENTE

_____
LIC. ALEJANDRO MARTIN SANCHEZ FRANCO
SECRETARIO

CHEMICAL WASTE MANAGEMENT, INC.
Representada por LIC. ALEJANDRO SÁNCHEZ FRANCO

VALORES ECOLOGICOS, S.A. DE C.V.
Representada por el Lic. HECTOR VARGAS AGUIRRE

SR. AMEL CIENFUEGOS PECINO
COMISARIO

CGEA0041165

## LISTA DE ASISTENCIA

A LA ASAMBLEA GENERAL ORDINARIA DE ACCIONISTAS DE RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. CELEBRADA A LAS 9:30 HORAS DEL DIA 20 DE OCTUBRE DEL 2000, EN LAZARO CARDENAS 2400 DESPACHO B21, SAN PEDRO GARZA GARCIA, N.L., DOMICILIO SOCIAL.-

| ACCIONISTAS | ACCIONES | | | FIRMAS |
|---|---|---|---|---|
| | SERIE B | SERIE B-V | SERIE P | |
| CHEMICAL WASTE MANAGEMENT, INC. Representada por el ALEJANDRO SANCHEZ FRANCO | 1,085 | 372 | 3,343 | |
| HECTOR VARGAS GARZA | 915 | 56 | | |
| VALORES ECOLOGICOS, S.A. DE C.V. Representada por el LIC. HECTOR VARGAS AGUIRRE | | | 2,229 | |
| TOTALES | 2,000 | 428 | 5,572 | |

TOTAL CAPITAL SOCIAL                **8.000**

EL suscrito designado ESCRUTADOR para verificar el Quórum de Asistencia a la Asamblea de relación, HAGO CONSTAR que, habiendo revisado la presente Asamblea se encuentran representadas la totalidad de las 8,000 acciones del Capital Social Total de RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V.

C.P. ROBERTO SALAZAR VILLARREAL
ESCRUTADOR

CGEA0041166

# PROXY/CARTA PODER

San Pedro Garza García, N.L.

October/Octubre 16, 2000

MR.(SR).HECTOR VARGAS AGUIRRE

Present./Presente.

Dear sir:

Muy señor nuestro:

Through this letter we grant you a SPECIAL PROXY. as broad. complied. and sufficient as may be necessary under law, so that you attend the General Ordinary Shareholders' Meeting of RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. that will take place on October 20, 2000 representing 2.229 Series "P" shares. all of them issued by the company RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. and owned by VALORES ECOLOGICOS, S.A. DE C.V. and so that thereat you may hear, discuss, and vote regarding the issues to be dealt with at such Meeting. Additionally you are expressly authorized so that. in case the corresponding proposal is submitted to the Meeting. in our name and representation you may approve the sale of shares representing the capital stock of RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. that MR. HECTOR VARGAS GARZA wishes to make in our favor.

Por medio de la presente otorgamos a Usted un PODER ESPECIAL, tan amplio, cumplido y suficiente, cuanto en derecho sea necesario para asistir a la Asamblea General Ordinaria de Accionistas de la sociedad denominada RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V., que se celebrará el día 20 de octubre del 2000, representando 2.229 acciones Serie "P", todas emitidas por la citada sociedad RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. propiedad de VALORES ECOLOGICOS, S.A. DE C.V. y para que oiga, opine y vote sobre los asuntos que en dicha Asamblea hayan de tratarse. Adicionalmente de manera expresa se autoriza a Usted para que, en caso de que se presente en dicha Asamblea la propuesta respectiva, en nuestro nombre y representación apruebe la venta de acciones representativas del capital social de RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V., que pretende realizar el Sr. ING. HÉCTOR VARGAS GARZA en nuestro favor.

Of course we bind ourselves to be and pass through everything that you perform within the limits of this proxy.

Desde luego nos obligamos a estar y pasar por todo lo que usted realice dentro de los límites del presente poder.

Sincerely,

Atentamente.

VALORES ECOLOGICOS. S.A. DE C.V

By/Por: ING. HECTOR VARGAS GARZA
Position/Cargo: Sole Administrator/Administrador Unico

Testigo/Witness

Testigo/Witness

CGEA0041167

## PROXY/CARTA PODER

### San Pedro Garza García, N.L.

### October/Octubre 16, 2000

LIC. ALEJANDRO MARTIN SANCHEZ FRANCO

Present./Presente

Dear sir:

Muy señor nuestro:

Through this letter we grant you a SPECIAL PROXY, as broad, complied, and sufficient as may be necessary under law, so that you can attend the General Ordinary Shareholders' Meeting of RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. that will take place on October 20, 2000 representing 1,085 Series "B" shares, 372 Series "B-V" shares, and 3,343 Series "P" shares, all of them issued by the company RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. and owned by CHEMICAL WASTE MANAGEMENT, INC. and so that thereat you may hear, discuss, and vote regarding the issues to be dealt with at such Meeting. Additionally you are expressly authorized so that, in case the corresponding proposal is submitted to the Meeting, in our name and representation you may approve the sale of shares representing the capital stock of RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V., that MR. HECTOR VARGAS GARZA wishes to make in favor of VALORES ECOLOGICOS, S.A. DE C.V. and so that you irrevocably waive our right to acquire the aforesaid shares whose transfer is pretended.

Por medio de la presente otorgamos a Usted un PODER ESPECIAL, tan amplio, cumplido y suficiente, cuanto en derecho sea necesario para asistir a la Asamblea General Ordinaria de Accionistas de la sociedad denominada RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V., que se celebrará el día 20 de octubre del 2000, representando 1,085 acciones Serie "B", 372 acciones Serie "B-V" y 3,343 acciones Serie "P", todas emitidas por la citada sociedad RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. propiedad de CHEMICAL WASTE MANAGEMENT, INC. y para que oiga, opine y vote sobre los asuntos que en dicha Asamblea hayan de tratarse. Adicionalmente de manera expresa se autoriza a Usted para que, en caso de que se presente en dicha Asamblea la propuesta respectiva, en nuestro nombre y representación apruebe la venta de acciones representativas del capital social de RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V., que pretende realizar el Sr. ING. HÉCTOR VARGAS GARZA en favor de VALORES ECOLOGICOS, S.A. DE C.V., y para que renuncie de manera irrevocable al derecho que nos corresponda para adquirir las citadas acciones que se pretendan transmitir.

Of course we bind ourselves to be and pass through everything that you perform within the limits of this proxy.

Desde luego nos obligamos a estar y pasar por todo lo que usted realice dentro de los limites del presente poder.

Sincerely,

Atentamente,

CHEMICAL WASTE MANAGEMENT, INC.

By/Por: MR. JOHN H. SLOCUM
Position/Cargo: Vice President

WITNESS/TESTIGOS

CGEA0041168

# (TRANSLATION FOR INFORMATION PURPOSES ONLY)

## RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V.
## MINUTE OF THE GENERAL ORDINARY SHAREHOLDERS' MEETING
## OCTOBER 20, 2000

In the City of San Pedro Garza García, N.L., corporate domicile of RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. at being the 9:30 hours of October 20, 2000 the shareholders and the representatives of the shareholders, whose names and signatures appear in the Attendance List prepared and certified by the appointed Teller whose original is attached to the file of the duplicate of this minute, gathered in Lázaro Cárdenas 2400 Edificio Losoles Office B-21 in order to hold a General Ordinary Shareholders' Meeting to which the aforesaid were duly called. Mr. Alejandro Martín Sánchez Franco as Secretary of the Board of Directors. Mr. C.P. Amel Cienfuegos Pecino, as Examiner of the Corporation and Messrs. Lic. Héctor Vargas Aguirre, Dr. Juan Antonio Cuéllar López, and C.P. Roberto Salazar Villarreal as guests were present.

The Meeting was presided by Mr. Ing. Héctor Vargas Garza, as Chairman of the Board of Directors , and Mr. Lic. Alejandro Martín Sánchez Franco in his character of Secreary of the Board of Directors, the aforesaid according to the By-laws.

Due to the proposal of the President, by unanimous vote the Meeting appointed Mr. C.P. Roberto Salazar Villarreal was appointed as Teller who accepted that position and proceeded to verify the corresponding Attendance List, the Registry of Shares, and the Proxies that were shown, certifying that the 8,000 Shares in which the total corporate stock of the Corporation is divided were legally represented and consequently the quorum referred by the By-laws in order to legitimately declare installed a Meeting, distributed as follows:

| SHAREHOLDERS | SHARES | | |
| --- | --- | --- | --- |
| | SERIES B | SERIES B-V | SERIES P |
| CHEMICAL WASTE MANAGEMENT, INC. | 1,085 | 372 | 3,343 |
| ING. HECTOR VARGAS GARZA | 915 | 56 | |
| VALORES ECOLOGICOS, S.A. DE C.V. | | | 2,229 |
| TOTALS | 2,000 | 428 | 5,572 |
| TOTAL CAPITAL STOCK | | 8,000 | |

As a consequence of the certification of the teller regarding the representation of 100% of the shares that form the total subscribed and paid capital stock of the Corporation, the President declared the meeting legally installed and able to treat and resolve the issues that originated it, even though there was no publication of a previous Call, according to the By-laws.

Afterwards, the Secretary read the following:-

## AGENDA: