I.- PRESENTATION OF THE PROPOSAL TO SELL SHARES ISSUED BY THIS CORPORATION.

II.- APPOINTMENT OF SPECIAL DELEGATE OR DELEGATES TO FORMALIZE THE RESOLUTIONS ADOPTED, IF APPLICABLE.

Regarding the FIRST POINT contained in the Agenda, the Secretary read a proposal submitted to this Meeting to sell 971 shares issued by this Corporation owned by Ing. Héctor Vargas Garza in favor of the shareholder VALORES ECOLOGICOS, S.A. DE C.V. since that benefits their interests.

The representative of the Shareholder CHEMICAL WASTE MANAGEMENT INC. expressed its irrevocable waiver by such company of its preferential right to acquire such shares.

After discussing the aforesaid proposal, the Meeting by unanimous vote adopted the following RESOLUTIONS:

FIRST: It is hereby approved the sale of 971 shares issued by this Corporation owned by Ing. Héctor Vargas Garza in favor of VALORES ECOLOGICOS, S.A. DE C.V.

SECOND. It is hereby accepted the irrevocable waiver of the Shareholder CHEMICAL WASTE MANAGEMENT, INC. to exercise its preferential right to acquire such shares issued by this Corporation .

II. Regarding the SECOND and last POINT of the Agenda, the Meeting by unanimous vote, adopted the following RESOLUTION:

THIRD. Messrs. C.P. Roberto Salazar Villarreal and Lic. Alejandro Martín Sánchez Franco are appointed as SPECIAL DELEGATES of this Meeting so that in a joint or separate form they appear before the Notary public of their choice in order to protocolize the required parts of this Minute and to perform the required procedures in order to file the corresponding Public Deed of the aforesaid protocoloization in the Public Registry of Property and Commerce, in case that would be necessary or convenient, formalizing the adopted Resolutions.

Without any other issue to deal with, this Meeting finished after being suspended by the proper time so that the Secretary could draft this Minute; following the Secretary read it and it was approved by unanimous vote, and was signed by the Presidente and the Secretary of the Meeting and the Examiner.

It is herein set forth that all the shareholders and representatives of shareholders were present since the beginning of this Meeting until it finished, as well as in the moment of taking each and every one of the adopted RESOLUTIONS.

A copy of this Minute in simple paper, the shown proxies, the Attendance List signed by the Attendants and duly certified by the appointed tellers and the other documents shown in the Meeting are added as attachements of this Minute. The aforesaid forms the file of this Meeting that is kept in the files of the Secretary.

The Meeting was adjourned at the 10:00 hours of the day, month, and year mentioned at the beginning.

_____          _____

CGEA0041170

ING. HECTOR VARGAS GARZA
PRESIDENT

LIC. ALEJANDRO M. SANCHEZ
FRANCO
SECRETARY

CHEMICAL WASTE MANAGEMENT,
INC. Represented by LIC. ALEJANDRO
SANCHEZ FRANCO

VALORES ECOLOGICOS. S.A. DE C.V.
Represented by LIC. HECTOR VARGAS
AGUIRRE

C.P. AMEL CIENFUEGOS PECINO
EXAMINER

CGEA0041171

## ATTENDANCE LIST

TO THE GENERAL ORDINARY SHAREHOLDERS' MEETING OF RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. THAT TOOK PLANCE AT THE 9:30 HOURS OF OCTOBER 20, 2000 IN LAZARO CARDENAS 2400 OFFICE B21, SAN PEDRO GARZA GARCIA, N.L. CORPORATE DOMICILE.

| SHAREHOLDERS | SHARES | | | SIGNATURES |
|---|---|---|---|---|
| | SERIES B | SERIES B-V | SERIES P | |
| CHEMICAL WASTE MANAGEMENT, INC. represented by LIC. ALEJANDRO SANCHEZ FRANCO | 1,085 | 372 | 3,343 | _____ |
| ING. HECTOR VARGAS GARZA | 915 | 56 | | _____ |
| VALORES ECOLOGICOS, S.A. DE C.V. represented by LIC. HECTOR VARGAS AGUIRRE | | | 2,229 | _____ |
| TOTALS | 2,000 | 428 | 5,572 | |
| TOTAL CAPITAL STOCK | | 8,000 | | |

The undersigned appointed as Teller in order to verify the Attendance,Quorum of this Meeting, CERTIFIES that, after revising the Book of Registry of Shares, the proxies submitted and this Attendance List the totality of the 8,000 shares of the Total Capital Stock of RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V., that represent 100% of the subscibed and paid capital stock of the Corporation, are represented.

C.P. ROBERTO SALAZAR VILLARREAL
TELLER

**RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V.**
**ACTA DE ASAMBLEA GENERAL EXTRAORDINARIA DE ACCIONISTAS**
**NOVIEMBRE 14, 2000**

En la ciudad de San Pedro Garza García, N.L., domicilio social de RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. siendo las (10:30) horas del día 14 de noviembre del (2000) se reunieron en  Lázaro Cárdenas 2400 Edificio Losoles Despacho B-21, los representantes de accionistas cuyos nombres y firmas aparecen en la Lista de Asistencia al efecto preparada y certificada por el Escrutador designado, de la cual el original se agrega al expediente del duplicado de la presente Acta, con el objeto de celebrar una Asamblea General Extraordinaria de Accionistas a la cual fueron debidamente citados. Estuvieron también presentes los Señores Ing. HÉCTOR VARGAS GARZA y Lic. ALEJANDRO MARTIN SANCHEZ FRANCO, Presidente y Secretario del Consejo de Administración de la Sociedad, respectivamente, el Señor C.P. AMEL CIENFUEGOS PECINO, Comisario de la Sociedad y  los Señores Lic. HECTOR VARGAS AGUIRRE, DR. JUAN ANTONIO CUELLAR LOPEZ y C.P. ROBERTO SALAZAR VILLARREAL, en calidad de invitados-

Presidió la Asamblea el Sr. Ing. HECTOR VARGAS GARZA, en su calidad de Presidente del Consejo de Administración y el Sr. Lic. ALEJANDRO MARTIN SANCHEZ FRANCO en calidad de Secretario del Consejo de Administración, esto de conformidad con los Estatutos Sociales.

A propuesta del Presidente, por unanimidad de votos la Asamblea designó Escrutador al Señor C.P. ROBERTO SALAZAR VILLARREAL quien aceptó su cargo y procedió a verificar la correspondiente Lista de Asistencia, el Registro de Acciones y las Cartas Poder exhibidas, certificando que en la Asamblea de relación se encontraron legalmente representadas las 8,000 Acciones en que se encuentra dividido el capital social total de la Sociedad y por ende el quórum a que se refieren los Estatutos Sociales para declarar legítimamente instalada la Asamblea, distribuidas de la siguiente manera:

| ACCIONISTAS | SERIE B | ACCIONES SERIE B-V | SERIE P | |
|---|---|---|---|---|
| CHEMICAL WASTE MANAGEMENT, INC. | 1,085 | 372 | 3,343 | |
| INMOBILIARIA CONFINAMINA, S.A. DE C.V. | 686 | 42 | 1,672 | ≈ ع ۸۵۶ |
| VALORES ECOLOGICOS, S.A. DE C.V. | 229 | 14 | 557 | |
| TOTALES | 2,000 | 428 | 5,572 | |
| TOTAL CAPITAL SOCIAL | | 8,000 | | |

En virtud de la certificación del Escrutador respecto de haberse encontrado representado el 100% de las acciones representativas del Capital Social total suscrito y pagado de la Sociedad, el Presidente declaró legalmente instalada la Asamblea y apta para tratar y resolver los asuntos que la motivan, a pesar de no haberse publicado Convocatoria previa, de conformidad con lo dispuesto por los Estatutos Sociales.

Acto seguido, el Secretario dio lectura, a la siguiente:-

ORDEN DEL DIA:

I.- PRESENTACION DE LA PROPUESTA PARA VENDER ACCIONES EMITIDAS POR ESTA SOCIEDAD

II.  PRESENTACION DE UNA PROPUESTA PARA LA CONVERSION DE LAS ACCIONES PREFERENTES EN ACCIONES ORDINARIAS.

III.- REFORMA SUSTANCIAL DE ESTATUTOS SOCIALES DE LA SOCIEDAD MEDIANTE LA REFORMA A LAS CLAUSULAS 6ª. A 37ª. INCLUSIVE.

IV.- PRESENTACION DEL INFORME DEL CONSEJO DE ADMINISTRACION, INCLUYENDO LOS ESTADOS FINANCIEROS RELATIVOS AL EJERCICIO SOCIAL PARCIAL COMPRENDIDO DEL 01 DE ENERO AL 31 DE OCTUBRE DEL 2000, SU DISCUSION Y APROBACION, EN SU CASO, DESPUES DE CONOCER EL INFORME DEL COMISARIO.-

CGEA0041173

V.- RATIFICACION, EN SU CASO, DE TODOS LOS ACTOS Y ACUERDOS TOMADOS POR LA ASAMBLEA DESDE LA CONSTITUCION DE LA SOCIEDAD HASTA LA FECHA.-

VI.- PRESENTACION DE LA RENUNCIA DEL CONSEJO DE ADMINISTRACION, EL SECRETARIO, EL DIRECTOR GENERAL Y LOS COMISARIOS EN FUNCIONES .-

VII.- NOMBRAMIENTO DEL CONSEJO DE ADMINISTRACION Y COMISARIOS QUE ENTRARAN EN FUNCIONES A PARTIR DE ESTA FECHA Y DETERMINACION DE SUS EMOLUMENTOS.-

VIII NOMBRAMIENTO DE DELEGADO O DELEGADOS ESPECIALES PARA FORMALIZAR LOS ACUERDOS ADOPTADOS, EN SU CASO.

I. Con respecto al desahogo del PRIMER PUNTO contenido en la Orden del Día, el Secretario dió lectura a la propuesta presentada a esta Asamblea para enajenar 4,800 acciones emitidas por esta Sociedad propiedad de la Accionista Chemical Waste Management Inc. en favor de SARP INDUSTRIES MEXICO, S.A. DE C.V.-

En uso de la palabra el representante de la Accionista VALORES ECOLOGICOS, S.A. DE C.V. expresó la renuncia irrevocable de parte de su representada al derecho de preferencia para adquirir dicho paquete accionario.

El Secretario dio lectura a la propuesta presentada a esta Asamblea para enajenar 2,400 acciones emitidas por esta Sociedad propiedad de la accionista VALORES ECOLOGICOS, S.A. DE C.V. en favor de la Sociedad INMOBILIARIA CONFINAMINA, S.A. DE C.V., por así convenir a sus intereses.-

En uso de la palabra el representante de la Accionista CHEMICAL WASTE MANAGEMENT INC. expresó la renuncia irrevocable de parte de su representada al derecho de preferencia para adquirir dicho paquete accionario.

Discutidas que fueron las proposiciones anteriores, la Asamblea por unanimidad de votos tomó los siguientes ACUERDOS:

PRIMERO:      Se autoriza la enajenación de las 4,800 acciones emitidas por esta Sociedad propiedad de CHEMICAL WASTE MANAGEMENT, INC. a favor de SARP INDUSTRIES MEXICO, S.A. DE C.V..

SEGUNDO:      Se acepta la renuncia irrevocable al derecho de preferencia de la Accionista VALORES ECOLOGICOS, S.A. DE C.V. para adquirir las 4,800 acciones mencionadas en el ACUERDO que antecede.

TERCERO:      Se autoriza la enajenación de 2,400 acciones emitidas por esta Sociedad propiedad de la Accionista VALORES ECOLOGICOS, S.A. DE C.V. a favor de INMOBILIARIA CONFINAMINA, S.A. DE C.V.

CUARTO:      Se acepta la renuncia irrevocable al derecho de preferencia de la Accionista CHEMICAL WASTE MANAGEMENT, Inc: para adquirir las 2,400 acciones mencionadas en el ACUERDO que antecede.

II.- El Presidente de la Asamblea informó que se había presentado una propuesta para convertir la totalidad de las 5,572 acciones preferentes (acciones Serie "P") emitidas por esta Sociedad, en acciones ordinarias, las cuales tendían los mismos derechos y obligaciones que el resto de las acciones representativas del capital social de esta Sociedad. En tal virtud, se propone a la Asamblea deliberar sobre la propuesta presentada y, en su caso, resolver lo que se considere conveniente.

Dicha propuesta fue ampliamente comentada por los accionistas quienes, por unanimidad de votos tómaron los siguientes ACUERDOS:

QUINTO:      Se aprueba convertir la totalidad de las 5,572 acciones preferentes (acciones Serie "P") emitidas por esta Sociedad, en acciones ordinarias, las cuales tendían los mismos derechos y obligaciones que el resto de las acciones representativas del capital social de esta Sociedad. Asimismo se aprueba que dicha conversión sea a razón de una a una, es decir, las 5,572 acciones Serie "P" se convertirán en 5,572 acciones ordinarias.

Se hace constar que los actuales accionistas propietarios de acciones Serie "P" (que por acuerdo de esta Asamblea se convierten en acciones ordinarias), manifiestan que a esta fecha la Sociedad no les adeuda cantidad alguna o cualquier otro concepto derivado de los derechos que concedían las referidas acciones Serie "P", por lo que renuncian a ejercer cualquier acción o reclamación en contra de la Sociedad que pudiera haberse derivado de las referidas acciones Serie "P".

III.- Con respecto al desahogo del TERCER PUNTO contenido en la Orden del Día, la Asamblea por así convenir a los intereses de la Sociedad desean reformar sustancialmente los Estatutos mediante la modificación de las Cláusulas 6ª. a 37ª. inclusive , para que queden redactadas en los términos del proyecto presentado a esta Asamblea y del cual se agrega a esta Acta una copia firmada por los representantes de los accionistas que asistieron a esta Asamblea.

Después de una discusión extensiva y revisado el proyecto presentado los Accionistas, por unanimidad de votos, tomaron los siguientes ACUERDOS:

SEXTO:    Se autoriza reformar las Cláusulas 6ª. A la 37ª. de los Estatutos Sociales de la Sociedad para que en algunas cambie su contenido  y en otras su numeración y queden redactadas en los términos del proyecto presentado a esta Asamblea.

SEPTIMO:    En consecuencia, la totalidad de los Estatutos Sociales de la Sociedad vigentes serán los siguientes:

## TITULO PRIMERO

### CONSTITUCION

PRIMERA.  Los comparecientes constituyen una sociedad anónima de capital variable, que se rige por estos Estatutos y, en lo no previsto en ellos, por la Ley General de Sociedades Mercantiles.

## TITULO SEGUNDO
### DENOMINACION, DOMICILIO, DURACION Y OBJETO

SEGUNDA. La sociedad se denomina **RESIDUOS INDUSTRIALES MULTIQUIM**, denominación que siempre irá seguida de las palabras "Sociedad Anónima de Capital Variable" o de su abreviación "S. A. de C. V."

TERCERA. El domicilio de la sociedad es la ciudad de San Pedro Garza García, Nuevo León, pero los accionistas o el Consejo de Administración de la sociedad podrán establecer agencias o sucursales de la sociedad en cualquier parte de la República Mexicana y del extranjero, sin que por ello se entienda cambiado su domicilio.

CUARTA. La duración de la sociedad es de noventa y nueve años contados a partir de la fecha de firma de su escritura constitutiva.

QUINTA. El objeto de la sociedad es:
a)    Manejo y control de residuos sólidos o líquidos, peligrosos, potencialmente peligrosos, así como cualquier actividad relacionada con el almacenamiento, recolección, transportación, importación, exportación, tratamiento, reuso, reciclaje, incineración, mezclado, confinamiento y disposición final de dichos residuos.

b)    La prestación de servicios consistentes en la realización o elaboración de estudios de impacto ambiental, así como la prestación de servicios técnicos, consultivos y de asesoría  de dicha materia.

c)    Transformación, compra, venta, distribución, consignación y fabricación de toda clase de productos químicos y sus derivados.

d)    Promover, constituir, organizar, explotar y tomar participación en el capital y patrimonio de todo género de sociedades mercantiles, civiles, asociaciones o empresas industriales, comerciales, de servicio o de cualquier otra índole, tanto nacionales como extranjeras, así como participar en su administración o liquidación.

e)    La emisión, suscripción, aceptación, endoso y aval de cualquier título o valores mobiliarios que la ley permita.

f)    La adquisición, enajenación y, en general, la negociación con todo tipo de acciones, partes sociales, y de cualquier título o valor permitido por la Ley.

CGEA0041175

g)   Obtener o conceder préstamos otorgando y recibiendo garantías específicas, girar, endosar o avalar toda clase de títulos de crédito y otorgar fianzas y garantías de cualquier clase respecto a las obligaciones contraidas o de los títulos emitidos o aceptados por terceros.

h)   Adquirir enajenar, tomar y otorgar el uso y goce por cualquier título permitido por la Ley de bienes muebles e inmuebles.

i)   Obtener y otorgar por cualquier título, patentes, marcas, nombres, comerciales, opciones y preferencias, derechos de autor y concesiones para todo tipo de actividades.

j)   La prestación o contratación de servicios técnicos, consultivos y de asesoría, así como la celebración de contratos y convenios para la realización de esos fines.

k)   Girar en el ramo de comisiones, mediaciones y aceptar el desempeño de negociaciones de toda especie.

l)   La adquisición de los inmuebles necesarios o convenientes para la instalación de oficinas y dependencias.

m)   La celebración de los contratos y la ejecución de todos los actos relacionados con los objetos anteriores.

## TITULO TERCERO
### CAPITAL SOCIAL Y ACCIONES

SEXTA. El capital social es variable, con un mínimo de $20,000.00 (VEINTE MIL 00/100 PESOS MONEDA NACIONAL), representado por 2,000 acciones ordinarias. El capital variable de la sociedad será ilimitado.

SEPTIMA. Todas las acciones del capital social inclusive cualesquiera acciones preferentes, o con derechos especiales o de voto limitado, serán nominativas sin expresión de valor nominal.

Todas las acciones representativas del capital social mínimo de la Sociedad estarán divididas en Serie "F-I" que representará el 90% del capital mínimo y en "Serie F-II" que representará el 10% del capital mínimo de la sociedad. , y las acciones representativas del capital social variable estarán divididas en Serie "V-I" que representarán el 90% del capital variable de la sociedad y en Serie "V-II" que representarán el 10% del capital variable de la sociedad.

OCTAVA. Con excepción de las acciones preferentes o con derechos especiales o limitados que se emitan, todas las acciones conferirán los mismos derechos y obligaciones. Las acciones preferentes se emitirán en las mismas proporciones que representen el resto de las Series de acciones y para identificarlas se agregará la letra "P" a la Serie que corresponda.

NOVENA. Los aumentos y reducciones del capital social quedan sujetos a las siguientes disposiciones:

a)   Los aumentos y disminuciones del capital mínimo y variable, se efectuarán mediante resolución de una asamblea general extraordinaria de accionistas o mediante resolución unánime adoptada por los accionistas fuera de asamblea y confirmada por escrito.

b)   No se emitirán nuevas acciones, sino hasta que todas las acciones emitidas con anterioridad hayan sido totalmente pagadas.

c)   Las acciones autorizadas, pero aún no suscritas y aquellas que hayan sido amortizadas o retiradas, deberán conservarse en la Tesorería de la sociedad.

d)   Solamente acciones íntegramente pagadas podrán ser amortizadas o retiradas.

e)   La amortización y retiro de acciones se harán proporcionalmente entre los accionistas, salvo acuerdo en contrario unánime de los accionistas adoptado en Asamblea de Accionistas o mediante resolución unánime de los accionistas tomada fuera de asamblea y confirmada por escrito y respetando el derecho de retiro de los accionistas según lo dispuesto en la Cláusula Décima Octava.

## TITULO CUARTO
### TRANSMISIONES DE ACCIONES

DECIMA. La transmisión de acciones emitidas por la Sociedad requerirá de la previa aprobación del Consejo de Administración y se sujetará a los términos y condiciones estipulados en esta Cláusula y en la Ley, y se realizará por medio del endoso y entrega del título respectivo, sin perjuicio de su transmisión por cualquier otro medio legal. No obstante lo anterior, las transmisiones de acciones estarán sujetas, , a los

CGEA0041176

términos que para ese efecto se establecen en el Convenio de Accionistas de fecha 14 de noviembre del 2000, un ejemplar del cual se guarda en la Secretaría de la sociedad. En los certificados provisionales y, en su caso, en los títulos definitivos de las acciones que se emitan, se insertará, además de lo previsto en la cláusula Décima Sexta de estos estatutos, la leyenda a que se refiere la cláusula Décima, párrafo 7 de estos mismos estatutos. Cualquiera de las siguientes transmisiones de acciones podrá efectuarse sin la previa autorización del Consejo de Administración:

a)     Si se trata de una fusión en la que esta sociedad tenga el carácter de fusionada.

b)     Si es autorizada por la totalidad de los accionistas de la sociedad;

c) Si el accionista oferente es una persona física, tendrá derecho de transmitir libremente todas o parte de sus acciones a sus ascendientes o descendientes en línea directa hasta el segundo grado, y a sus familiares en línea colateral hasta el segundo grado.

d)     Transmisiones de acciones con base en el Convenio de Accionistas de fecha 14 de noviembre del 2000

Ninguna otra transmisión de acciones de esta sociedad por cualquier accionista podrá efectuarse sin la previa autorización del Consejo de Administración, otorgada de conformidad con las siguientes disposiciones. Toda transmisión efectuada en contravención a la restricción anterior será nula y carecerá de efecto alguno y el Consejo de Administración podrá rehusarse a inscribirla en el Libro de Registro de acciones de la sociedad y podrá pedir judicialmente la rescisión de dicha transmisión.

1.     Los accionistas gozarán en los términos de esta cláusula, del derecho de preferencia para adquirir una parte proporcional de las acciones de la sociedad que vayan a transmitirse por cualquier accionista. Para calcular dicha proporción no se tomarán en cuenta las acciones poseídas por los accionistas que no deseen hacer uso del derecho de preferencia que se les otorga en esta cláusula.

2.     El accionista que desee vender o transmitir todas o parte de sus acciones a cualquier persona o entidad de acuerdo a una oferta de compra recibida, o bien en el caso de que desee hacer una oferta de venta, deberá notificar al Secretario de la sociedad de dicha propuesta de venta o transmisión, la cual contendrá el nombre y dirección del posible adquirente de buena fe, el número de las acciones involucradas, precio por acción y los demás términos y condiciones de la transacción propuesta, y dicha notificación deberá ir acompañada de una copia de dicha oferta.

3.     Tan luego como reciba dicho aviso, el Secretario de la sociedad dará aviso a todos los accionistas de la sociedad por telex, facsímil, telegrama o cablegrama, confirmado por correo certificado, aéreo en el caso de los accionistas residentes en el extranjero, al domicilio que cada uno de ellos tenga registrado en el Libro de Registro de Acciones de la sociedad, acerca de la oferta. Los accionistas gozarán de un plazo de treinta días, contados a partir de la fecha del aviso del Secretario para ejercitar su derecho de preferencia concedido en esta cláusula, dando aviso por escrito al Secretario. Dicho aviso surtirá efectos al ser entregado en la Secretaría de la sociedad, contra el recibo correspondiente. De ejercerse el derecho de preferencia en los términos aquí señalados, la operación jurídica por la que se formalice dicha transmisión de acciones se deberá llevar a cabo dentro de los 30 (treinta) días siguientes a la fecha en que se haya notificado el ejercicio del derecho de preferencia a que se refiere este párrafo.

4.     Para los efectos del ejercicio del derecho de preferencia establecido en esta cláusula, se observarán las siguientes reglas:

     a)     En caso de que más de un accionista tenga interés en adquirir las acciones ofrecidas, dichas acciones serán adquiridas por los respectivos adquirentes en proporción al número de acciones de la sociedad de las que cada uno de ellos sea titular al hacerse la oferta, excluyendo para efectos del cómputo de dicha proporción, las acciones ofrecidas y las acciones de las que sean titulares los accionistas que no deseen adquirir acciones de acuerdo con el derecho de preferencia a que se contrae esta cláusula.

     b)     El precio de las acciones materia de este derecho de preferencia será cubierto en efectivo, contra la entrega de los correspondientes títulos de acciones, debidamente endosados a cada adquirente respectivamente, o de cualquier otra

manera estipulada por el accionista oferente en su aviso al Secretario de su oferta de transmisión de acciones.

c)  El precio de las acciones materia del derecho de preferencia, en el caso de haberse recibido la oferta de un tercero de buena fe, será igual al precio convenido con dicho tercero que desea comprar las acciones y, en el caso de una oferta de venta, en el precio establecido en la misma y notificada a la sociedad en los términos del párrafo 2 del inciso d) de esta cláusula.

5.  Al concluir el plazo de treinta días al que se refiere el inciso tres de esta cláusula, si los accionistas no han ejercitado su derecho de preferencia para adquirir todas las acciones ofrecidas o, en su caso, el de designar a uno o más adquirentes para las mismas, el accionista oferente tendrá derecho, durante un periodo de treinta días a partir de la expiración de dicho plazo, de transmitir la totalidad de las acciones ofrecidas, de acuerdo con las disposiciones de esta cláusula, a cualquier persona física o moral, a un precio no menor que el que se determine de acuerdo a las reglas establecidas en el punto c) del inciso cuatro de ésta cláusula, en la inteligencia de que, transcurrido dicho plazo de treinta días, la transmisión de las mismas quedará sujeta nuevamente a la previa autorización del Consejo de Administración, de acuerdo con las disposiciones de esta cláusula.

6.  Los derechos de preferencia y de disponer libremente de las acciones ofrecidas consignados en esta cláusula no serán divisibles y por lo tanto sólo podrán ser ejercitados respecto de todas las acciones ofrecidas.

7.  Una leyenda esencialmente en los términos que a continuación se señalan será colocada en todos los certificados provisionales o títulos definitivos de acciones emitidos por la sociedad:
"La enajenación de las acciones amparadas por el presente título o certificado está sujeta a los términos y condiciones de las disposiciones de la cláusula Décima de los Estatutos de la sociedad."

## TITULO QUINTO
## DERECHOS PREFERENTES

DECIMA PRIMERA.  Cada accionista registrado tendrá preferencia para suscribir y adquirir las nuevas acciones que sean emitidas por la sociedad al efectuarse cualquier aumento del capital social en proporción al número de acciones que posea antes del aumento y sin contar para los efectos de dicha proporción las acciones poseídas por accionistas que no ejerzan sus derechos de preferencia.  Dicho derecho de preferencia deberá ejercitarse dentro de los quince días siguientes a la publicación de la resolución decretando el aumento de capital en el periódico oficial del domicilio de la sociedad.

## TITULO SEXTO
## CERTIFICADOS DE ACCIONES Y REGISTRO DE ACCIONISTAS

DECIMA SEGUNDA.  Los certificados provisionales y los títulos definitivos de acciones llevarán numeración progresiva y contendrán todos los datos que requiere el artículo ciento veinticinco de la Ley General de Sociedades Mercantiles, así como el texto completo de la Cláusula Décima Sexta de este instrumento y .erán firmados por dos Consejeros Propietarios.  Los títulos definitivos de acciones podrán llevar adheridos cupones de dividendos.

DECIMA TERCERA.  Todos los certificados de acciones podrán amparar una o varias acciones y cualquier accionista podrá solicitar del Consejo de Administración el canje de cualquier certificado que previamente se hubiera emitido a su favor por uno o varios certificados nuevos que amparen sus acciones, siempre y cuando el número total de acciones amparadas por dichos nuevos certificados sea igual al número total de acciones amparados por los certificados sustituidos.  El costo de cualquier canje de certificados solicitado por un accionista será por cuenta de dicho accionista.

DECIMA CUARTA.  En caso de pérdida, robo, extravío o destrucción de cualquier título provisional o definitivo de acciones, su reposición queda sujeta a las disposiciones del Capítulo Primero, Título Primero de la Ley General de Títulos y Operaciones de Crédito.  Todos los duplicados de certificados de acciones llevarán la indicación de que son duplicados y que los certificados originales correspondientes han quedado sin valor alguno.  Todos los gastos inherentes a la reposición de dichos certificados o títulos de acciones serán por cuenta exclusiva del tenedor del certificado repuesto.

DECIMA QUINTA.  La sociedad llevará un Registro de Acciones en que se harán constar todas las emisiones de acciones así como el nombre, domicilio y nacionalidad de los tenedores de las mismas, y si las acciones han sido total o parcialmente pagadas, las exhibiciones que se hagan y todas las

CGEA0041178

transmisiones de acciones. Este registro será llevado por el Secretario de la sociedad, o cualquier otro funcionario autorizado por una asamblea de accionistas. Toda transmisión de acciones será efectiva respecto de la sociedad, a partir de la fecha en que dicha transmisión haya sido inscrita en el Registro de Acciones de la sociedad.

<strong>TÍTULO SÉPTIMO<br>ACCIONISTAS EXTRANJEROS</strong>

**DÉCIMA SEXTA.** Los socios extranjeros actuales o futuros de la sociedad, se obligan formalmente con la Secretaría de Relaciones Exteriores a considerarse como Nacionales respecto a las acciones de dicha sociedad que adquieran o de que sean titulares, así como de los bienes derechos, concesiones, participaciones o intereses de que sea titular la sociedad, o bien de los derechos y obligaciones que deriven de los contratos en que sea parte la propia sociedad con autoridades mexicanas, y a no invocar, por lo mismo, la protección de sus Gobiernos, bajo la pena en caso contrario, de perder en beneficio de la Nación las participaciones sociales que hubieren adquirido.

<strong>TÍTULO OCTAVO<br>ASAMBLEA DE ACCIONISTAS</strong>

**DÉCIMA SÉPTIMA.** La asamblea de accionistas es el órgano supremo de la sociedad y sus resoluciones serán obligatorias para todos los accionistas, aún para los ausentes o disidentes. En todo caso los accionistas disidentes gozarán de los derechos que les conceden los artículos doscientos uno y doscientos seis de la Ley General de Sociedades Mercantiles, y los accionistas ausentes, en su caso, el derecho a que se refiere el artículo doscientos uno de la propia Ley. Para el caso de retiro de algún accionista, se estará a lo dispuesto en el artículo doscientos veinte de la Ley General de Sociedades Mercantiles, y el valor del reembolso será el valor neto por acción reflejado en los estados financieros al cierre del ejercicio social en el cual surta efectos el aviso de retiro de la sociedad, aprobados por la Asamblea General Ordinaria de Accionistas. El derecho de retiro a que se refiere esta cláusula, solo podrá ejercerse previa la resolución de la asamblea extraordinaria de accionistas de la sociedad que apruebe el retiro del accionista y los plazos para el pago del reembolso correspondiente, en la inteligencia de que no se podrá ejercer dicho derecho de retiro si de ello deriva un incumplimiento al Convenio de Accionistas de fecha 14 de noviembre del 2000.-

**DÉCIMA OCTAVA.** Las asambleas de accionistas serán ordinarias, extraordinarias y especiales.

a)  Serán asambleas ordinarias aquellas que se reúnan para tratar de cualquiera de los siguientes asuntos:

   1)  Aquellos a que se refiere el artículo ciento ochenta de la Ley General de Sociedades Mercantiles;

   2)  Aquellos referidos en el artículo ciento ochenta y uno de la Ley General de Sociedades Mercantiles;

   3)  Todos los demás asuntos contenidos en la Orden del Día y que, de acuerdo a la Ley o estatutos, no estén expresamente reservados para una Asamblea Extraordinaria o Especial de Accionistas; y

   4)  El informe a los accionistas sobre el balance general y el correspondiente estado de resultados del ejercicio social de cada sociedad en la que la empresa sea titular de la mayoría de las acciones o partes sociales.

b)  Serán asambleas extraordinarias aquellas que se reúnan para tratar de cualesquiera de los siguientes asuntos:

   1.  Prórroga de la duración de la sociedad;

   2.  Disolución anticipada de la sociedad;

   3.  Aumento y disminución del capital mínimo y variable de la sociedad;

   4.  Cambio de objeto de la sociedad;

   5.  Cambio de nacionalidad de la sociedad;

   6.  Transformación de la sociedad;

   7.  Fusión con otra sociedad;

CGEA0041179

8. Emisión de acciones privilegiadas;

9. Amortización por la sociedad de sus propias acciones del capital mínimo o variable y emisión de acciones de goce;

10. Emisión de bonos;

11. Cualquier otra modificación de los estatutos;

12. Cualquier otro asunto para el cual se señala una mayoría especial para quórum de asistencia o votación;

c) Serán asambleas especiales de accionistas aquellas que se convoquen por cualquier categoría de accionistas para tratar cualquier asunto que pueda perjudicar los derechos de dicha categoría de accionistas.

DÉCIMA NOVENA. Las asambleas de accionistas quedan sujetas a las siguientes disposiciones:

a) Salvo las estipulaciones en contrario aquí contenidas, las asambleas de accionistas podrán celebrarse cuando lo juzgue conveniente el Presidente del Consejo de Administración, el Presidente del Consejo, el Secretario, o a solicitud de un Comisario, o de accionistas que posean, en total, un número de acciones que por lo menos represente el treinta y tres por ciento (33%) del capital suscrito y pagado de la sociedad o de la categoría de accionistas que desee celebrar una asamblea especial o por cualquier accionista en los casos previstos por el artículo ciento ochenta y cinco de la Ley General de Sociedades Mercantiles.

b) Las asambleas ordinarias deberán celebrarse cuando menos una vez cada año dentro de los cuatro meses siguientes al cierre de cada ejercicio social y deberán incluir entre los temas a tratar, el de un informe a los accionistas sobre el balance general y el correspondiente estado de resultados del ejercicio social inmediato anterior de cada sociedad en la que la empresa sea titular de la mayoría de las acciones o partes sociales.

c) Todas las asambleas de accionistas se celebrarán en el domicilio social de la sociedad, salvo caso fortuito o de fuerza mayor

d) La convocatoria para cualquier asamblea será hecha por el Consejo de Administración, el Secretario, o un Comisario, o de acuerdo con las disposiciones de los artículos ciento sesenta y ocho, ciento ochenta y cuatro y ciento ochenta y cinco de la Ley General de Sociedades Mercantiles.

e) La convocatoria será publicada en un diario de los de mayor circulación o en el Diario Oficial del domicilio social de la sociedad cuando menos con quince días de anticipación a la fecha de cualquier asamblea.

f) La convocatoria contendrá por lo menos, la fecha, hora y lugar de la asamblea, así como la orden del día para la misma, y será firmada por el Presidente o Secretario de la sociedad, o por la persona designada por el Consejo de Administración o por un Comisario, o en ausencia de ellos, por un juez competente, conforme a las disposiciones de los artículos ciento sesenta y ocho, ciento ochenta y cuatro y ciento ochenta y cinco de la Ley General de Sociedades Mercantiles.

g) Además de la publicación de la convocatoria y salvo lo dispuesto en el siguiente inciso de esta cláusula, las personas que la sociedad reconozca como accionistas en la fecha de la convocatoria, así como todos los Comisarios y sus suplentes, deberán ser convocados a toda asamblea, por escrito, con por lo menos quince días de anticipación a la fecha de la misma, por telex, telefax, telegrama o cablegrama, confirmado por correo aéreo certificado, si el destinatario reside en el extranjero; y confirmado por correo certificado si el destinatario reside en los Estados Unidos Mexicanos, porte pagado, a la última dirección que dichos accionistas y Comisarios propietarios y suplentes hayan inscrito en la oficina del Secretario de la sociedad, en la inteligencia de que los accionistas residentes en el extranjero podrán registrar con la sociedad una segunda dirección ubicada en la República Mexicana a donde les deberá ser enviada por copia adicional de la convocatoria personal.

h) Cualquier asamblea de accionistas podrá celebrarse sin necesidad de previa convocatoria, y toda asamblea que se haya instalado sin la publicación de convocatoria y que se suspenda por cualquier razón podrá reunirse sin previa convocatoria, si los accionistas que poseen o representan la totalidad de las acciones con derecho a voto en dicha asamblea, se encuentran presentes o representados en el momento de la votación.

i)  Los accionistas podrán ser representados en cualquier asamblea por medio de la persona que designen como apoderado por escrito. Los miembros propietarios o suplentes del Consejo de Administración y los Comisarios propietarios o suplentes, no podrán ser apoderados de los accionistas para estos fines.

j)  Salvo el caso de orden judicial en contrario, para concurrir a cualquier asamblea de accionistas la sociedad únicamente reconocerá como tenedores de acciones a aquellas personas físicas o morales cuyos nombres se encuentren inscritos en el libro de registro de acciones y dicha inscripción en el expresado libro será suficiente para permitir la entrada de dicha persona a la asamblea.

k)  Todas las asambleas de accionistas serán presididas por el Presidente del Consejo de Administración, asistido por el Secretario de la sociedad, y a falta de uno o de otro o de ambos, actuarán en su lugar como Presidente y Secretario, según sea el caso, quienes sean designados por la asamblea por simple mayoría de votos.

l)  Antes de instalarse la asamblea, la persona que la presida designará uno o más escrutadores que hagan el recuento de las personas presentes en la asamblea, el número de votos que cada uno de ellos tenga derecho a emitir.

m)  Para considerar legalmente instalada a una asamblea ordinaria de accionistas convocada en primera convocatoria, deberán estar presentes o representados los tenedores de por lo menos el cincuenta por ciento ( 50%) de las acciones emitidas con derecho a voto.

Para considerar legalmente instalada a una asamblea extraordinaria de accionistas convocada en primera convocatoria, deberán estar presentes o representados los tenedores de por lo menos el setenta y cinco por ciento (75%) de las acciones emitidas con derecho a voto.

o)  En la instalación de las asambleas especiales de accionistas, se requerirá un quórum de asistencia en primera o subsecuentes convocatorias de por lo menos el setenta y cinco por ciento (75%) de las acciones de dicha clase.

p)  Con excepción de acciones de voto limitado que sean emitidas por la sociedad, cada acción da derecho a emitir un voto en cualquier asamblea ordinaria o extraordinaria de accionistas o en cualquier asamblea especial de accionistas celebrada por los tenedores de acciones de la misma categoría.

q)  Comprobada la existencia de un quórum para la asamblea, la persona que presida la declarará legalmente instalada y someterá a su consideración los puntos de la Orden del Día.

r)  Todas las votaciones serán económicas a menos que los asistentes que posean o representen una mayoría de las acciones presentes acuerden que el voto sea por escrito.

s)  Para la validez de las resoluciones adoptadas en cualquier asamblea ordinaria de accionistas, celebrada en primera o ulterior convocatoria, se requerirá el voto afirmativo de los tenedores de por lo menos una mayoría de las acciones con derecho a voto presentes o representadas.

,)  Para la validez de las resoluciones adoptadas en cualquier asamblea extraordinaria de accionistas, celebrada en primera o ulterior convocatoria, se requerirá el voto afirmativo de los tenedores de por lo menos el cincuenta por ciento (50%) de las acciones con derecho a voto.

u)  Para resolver cualesquiera de los asuntos que se mencionan a continuación se requerirá el voto afirmativo de todos los accionistas:

1.  La fusión, o escisión de la sociedad o la venta de substancialmente todos los activos de la misma.

2.  . La ampliación de las actividades de la sociedad a líneas de negocios distintas a , mas alla de la recolección, almacenamiento, transportación, tratamiento y disposición final de substancias peligrosas sólidas o liquidas en los Estados Unidos Mexicanos, incluyendo pero sin limitarse a su, reuso, reciclaje, mezcla, tratamiento térmico, bioremediación, confinamiento, importación, exportación y a las actividades que en materia de residuos industriales estuviere llevando a cabo la sociedad al momento en que se resuelva sobre la citada ampliación. Dentro de las actividades que la sociedad podrá desarrollar y que no se considerarán como ampliación, se incluyen las de incineración, transportación, tratamiento térmico y bioremediación de substancias peligrosas sólidas o liquidas en los Estados

CGEA0041181

Unidos Mexicanos, incluyendo la adquisición de instalaciones y de inmuebles para la realización de todas las actividades aquí referidas.

3.  La emisión de acciones preferentes.

4.  Aumentos o reducciones al capital social, o la división de acciones.

5.  La designación y remoción del Comisario de la sociedad que haya sido designado de común acuerdo por todos los accionistas. En caso de que hubiere un comisario designado por cada Serie de acciones, corresponderá a los accionistas de cada Serie la designación y remoción del que les corresponda.

6.  El cambio de nacionalidad de la sociedad.

7.  La disolución de la sociedad.

8.  La modificación de los estatutos de la sociedad en los asuntos previstos en los párrafos 1 al 13 de este inciso u).

9.  La celebración o modificación de cualquier contrato o convenio con algún accionista de la sociedad o afiliada de aquél, que no sea en el curso normal de negocios de la sociedad.

10. La realización de cualquier gasto de capital que en forma acumulada o en una operación individual exceda por ejercicio fiscal de US$10 millones (diez millones de Dólares moneda de los Estados Unidos de América) o su equivalente en moneda nacional .

11. La enajenación de activos de la sociedad por un monto que en forma acumulada o en una operación individual exceda por ejercicio fiscal de US$1 millón (un millón de Dólares moneda de los Estados Unidos de América) o su equivalente en moneda nacional .

12. La contratación de préstamos o créditos que en lo individual o en forma acumulada, excedan por ejercicio fiscal de US$10 millones (diez millones de Dólares moneda de los Estados Unidos de América) o su equivalente en moneda nacional .

13. La constitución de gravámenes, hipoteca o prenda sobre los activos de la sociedad por valor que en lo individual o en forma acumulada exceda de US$10 millones (diez millones de Dólares moneda de los Estados Unidos de América) o su equivalente en moneda nacional.

v)  En cuanto a la votación en asambleas especiales de accionistas se estará a lo que dispone el artículo ciento noventa y cinco de la Ley General de Sociedades Mercantiles.

w)  Los accionistas podrán adoptar cualquier resolución que les competa, fuera de Asamblea, siempre y cuando la resolución respectiva sea aprobada por unanimidad de los accionistas que representen la totalidad de las acciones con derecho a voto o de la categoría especial de acciones de que se trate. Las resoluciones que se adopten de esta manera, tendrán, para todos los efectos legales, la misma validez que aquéllas que hayan sido adoptadas por los accionistas reunidos en Asamblea General o Especial, según sea el caso, siempre y cuando consten en escritura pública o escrito privado ratificado ante fedatario público o se cumpla con los siguientes requisitos:

1.  Una vez que exista consenso entre los accionistas respecto del contenido de una resolución, el Secretario de la sociedad deberá preparar el texto de la misma y enviarlo a los accionistas por el medio más expedito al domicilio que tengan registrado con la sociedad;

2.  De estar de acuerdo con el texto respectivo, cada accionista deberá firmar una copia de la resolución y enviarla al Secretario de la sociedad por el medio más expedito;

3.  Habiendo recibido las copias de la resolución respectiva, firmadas de conformidad por cada uno de los accionistas con derecho a voto, el Secretario de la sociedad preparará un escrito en el que certificará y hará constar el texto de la resolución y el hecho de que fue aprobada unánimemente por los accionistas con derecho a voto. Dicha certificación será asentada en el Libro de Actas de Asamblea de la Sociedad y será firmada por el Secretario y Presidente de la misma;

4.  El Secretario formará un expediente en relación con las certificaciones que prepare de acuerdo con el párrafo que antecede, donde deberá agregar las copias de la resolución

CGEA0041182

firmadas de conformidad por los accionistas con derecho a voto y cualquier otro documento a que se haga referencia en la resolución aprobada.

5.    La resolución de que se trate deberá protocolizarse si es de aquellas que, conforme a la ley o estos estatutos, debe ser resuelta por una Asamblea Extraordinaria de Accionistas.

## TITULO NOVENO
## ADMINISTRACION DE LA SOCIEDAD

VIGESIMA . La sociedad será administrada por un Consejo de Administración integrado por cuando menos cinco (5) consejeros  que podrán ser accionistas o extraños. En el supuesto de que el número de consejeros a designarse sea de cinco (5), los accionistas titulares de las acciones que formen parte de las Series "F-I" y "V-I" tendrán derecho a designar a cuatro (4) de los cinco consejeros y los accionistas titulares de las acciones que formen parte de las Series "F-II" y "V-II" tendrán derecho a designar uno (1) de los cinco consejeros. El derecho de designación de consejeros incluye el derecho a designar a sus respectivos suplentes, en el entendido que suplirán exclusivamente las ausencias de los consejeros propietarios designados por la propia Serie. Si la asamblea de accionistas resuelve designar un número mayor de consejeros, se respetará la proporción que para la designación de consejeros se establece aquí para las diversas Series.

La Asamblea de accionistas, al designar a las personas que integren el Consejo de Administración, podrá exigir, si así lo considera conveniente, que aseguren la responsabilidad en que pudieren incurrir en el desempeño de su encargo, mediante el otorgamiento de la garantía que al efecto determine.

VIGESIMA PRIMERA. Cada accionista o grupo de accionistas que posea por lo menos un veinticinco porciento (25%) de las acciones emitidas por la Sociedad, tendrá el derecho de elegir un Consejero Propietario y su Suplente. Los accionistas elegirán de entre sus miembros, un Presidente del Consejo que permanecerá en su cargo por un (1) año.

VIGESIMA SEGUNDA. Cada accionista, o grupo de accionistas de la sociedad que elija uno o más consejeros propietarios tendrá también el derecho de nombrar uno o más suplentes para sustituirlos en cualquier sesión a la que no asista el consejero propietario en caso de la muerte, remoción, renuncia, incapacidad legal u otro impedimento permanente que le impida el consejero propietario cumplir debidamente con sus obligaciones.

VIGESIMA TERCERA. Los consejeros propietarios y sus suplentes durarán en su cargo un año o hasta que sus sucesores hayan sido nombrados y tomen posesión de sus cargos. Los miembros propietarios y suplentes podrán ser removidos en cualquier momento por los accionistas de la Serie de acciones que los haya designado. Sólo podrá revocarse el nombramiento de uno o más consejeros designados por una minoría de accionistas cuando se revoque igualmente el nombramiento de los demás miembros del Consejo. Así mismo, cualquier accionista de una de las Series podrá proponer la remoción de cualquier Consejero nombrado por accionistas de serie distinta  solo si mediare causa justificada para dicha remoción. Los consejeros propietarios y suplentes podrán ser reelectos. Cuando no pueda reunirse el quórum requerido debido a la muerte, remoción, renuncia, incapacidad legal o impedimento permanente de uno o más consejeros y sus suplentes, el Comisario o comisarios por mayoría designarán a uno o más sucesores, según el caso, para desempeñar el cargo o cargos vacantes hasta que la asamblea de accionistas o los accionistas mediante resolución unánime adoptada fuera de asamblea y confirmada por escrito designe al sucesor o sucesores, en su caso. Si existieren vacantes permanentes de Consejeros, los accionistas de la serie que hubiere designado al consejero o consejeros que hubieren originado dicha vacante tendrán derecho a designar al consejero o consejeros que llenarán dichas vacantes.

VIGESIMA CUARTA. El Consejo de Administración se reunirá en el domicilio social de la empresa o en cualquier lugar donde fuere legalmente citado. El Consejo podrá reunirse cuantas veces lo juzgue necesario o conveniente su Presidente o cualesquiera tres (3) de los consejeros propietarios o suplentes en funciones. Las convocatorias para las sesiones del Consejo deberán ser enviadas por escrito, a cada uno de los consejeros propietarios y suplentes, así como a todos los comisarios propietarios y suplentes, con por lo menos quince días de anticipación a la fecha de la sesión, por telex, telefax, facsímil, telegrama o cablegrama, confirmado por carta enviada por correo certificado, aéreo si el destinatario reside en el extranjero u ordinario si el destinatario reside en los Estados Unidos Mexicanos, porte pagado, a la última dirección que dichos destinatarios hayan registrado con el Secretario. La convocatoria contendrá la hora, fecha, lugar y Orden del Día de la sesión.

Cualquier sesión del Consejo podrá celebrarse válidamente aún sin previa convocatoria, cuando estén presentes en ella todos los consejeros propietarios o sus suplentes en funciones.

VIGESIMA QUINTA.

a)   Habrá quórum en cualquier sesión del Consejo de Administración cuando esté presente por lo menos una mayoría de los consejeros propietarios o de sus suplentes respectivos.

b)   Cualquier resolución del Consejo de Administración únicamente será válida cuando sea aprobada por el voto afirmativo de por lo menos una mayoría de los consejeros propietarios o de sus respectivos suplentes presentes.

c)   El Presidente del Consejo o quien desempeñe dicho cargo en su ausencia no tendrá voto de calidad. De toda la sesión del Consejo de Administración se levantará un acta que se asentará en el libro de actas correspondiente y que será firmado por lo menos, por el Presidente y Secretario.

d)   El Consejo de Administración podrá adoptar cualquier resolución que le compéta, fuera de sesión de consejo, siempre y cuando la resolución respectiva sea aprobada por unanimidad de los consejeros propietarios que constituyan dicho Consejo. Las resoluciones que se adopten de esta manera, tendrán, para todos los efectos legales, la misma validez que aquéllas que hayan sido adoptadas por el Consejo de Administración reunido en Sesión de Consejo, siempre y cuando consten en escritura pública o escrito privado ratificado ante fedatario público o se cumpla con los siguientes requisitos:

1.   Una vez que exista consenso entre los miembros propietarios del Consejo de Administración respecto del contenido de una resolución, el Secretario de la sociedad deberá preparar el texto de la misma y enviarlo a los consejeros propietarios por el medio más expedito al domicilio que tengan registrado con la sociedad;

2.   De estar de acuerdo con el texto respectivo, cada consejero propietario deberá firmar una copia de la resolución y enviarla al Secretario de la sociedad por el medio más expedito;

3.   Habiendo recibido las copias de la resolución respectiva, firmadas de conformidad por cada uno de los consejeros propietarios, el Secretario de la sociedad preparará un escrito en el que certificará y hará constar el texto de la resolución y el hecho de que fue aprobada unánimemente por los miembros propietarios del Consejo de Administración. Dicha certificación será asentada en el Libro de Actas de Sesiones de Consejo de la Sociedad y será firmada por el Secretario y Presidente de la misma; y,

4.   El Secretario formará un expediente en relación con las certificaciones que prepare de acuerdo con el párrafo que antecede, donde deberá agregar las copias de la resolución firmadas de conformidad por los consejeros propietarios y cualquier otro documento a que se haga referencia en la resolución aprobada.

e)   Los siguientes asuntos deberán ser aprobados por el Consejo de Administración:

1)   La aprobación o modificación del presupuesto anual, del plan de negocios o del programa de inversiones de capital.

2)   La aprobación de los gastos de capital por partida y por periodo en exceso del monto que determine el propio Consejo de Administración.

3)   La compra, venta o arrendamiento de activos fuera del curso ordinario de negocios por un valor que exceda la cantidad que determine el Consejo de Administración.

4)   La aprobación o modificación de cualquier contrato cuando el valor de dicho contrato exceda el que para ese efecto determine el Consejo de Administración.

5)   La asunción de cualquier pasivo en exceso del monto que para ese efecto determine el Consejo de Administración.

6)   El inicio o la transacción de cualquier litigio cuyo valor exceda el que determine para ese efecto del Consejo de Administración.

7)   La aprobación de cualquier contrato o modificación al mismo, que se celebre con cualquier accionista o alguna de sus afiliadas.

8)   La constitución de cualquier garantía de pago o de cumplimiento de obligaciones de cualquier tercero o el otorgamiento de crédito a cualquier tercero, salvo que se trate de operaciones en el curso ordinario de las actividades de la sociedad.

9)    La constitución, adquisición o enajenación de cualquier subsidiaria de la sociedad o de las acciones representativas del capital de dicha subsidiaria.

10)    La adquisición, compra o suscripción de acciones, partes sociales, obligaciones u otros valores en cualquier compañía que no fuere subsidiaria de la sociedad.

11)    La constitución de cualquier gravamen sobre activos de la sociedad, diversos de los que resulten de adquisiciones autorizadas o de aquéllos que resulten por aplicación de la Ley.

12)    Las modificaciones a las políticas contables.

13)    La solicitud de permisos, autorizaciones o licencias de importancia que hayan de someterse a autoridades gubernamentales.

14)    Cualquier convenio, licencia, operación o acto, que pueda tener por efecto dificultar o hacer imposible la continuidad de las operaciones de la sociedad.

15)    La contratación o el despido de cualquier persona que tenga un salario mayor al monto que para ese efecto determine el Consejo de Administración.

16)    Las modificaciones substanciales a las políticas laborales.

VIGESIMA SEXTA. El Consejo de Administración tendrá las más amplias facultades reconocidas por la ley un mandatario general para celebrar todo tipo de contratos y para realizar toda clase de actos y operaciones que por ley o por disposición de estos estatutos no estén reservados a una asamblea de accionistas, así como para administrar y dirigir los negocios de la sociedad, para realizar todos y cada uno de los objetos sociales de la misma y para representar a ésta ante toda clase de autoridades judiciales (civiles y penales), laborales o administrativas, ya sean federales, estatales o municipales, con el más amplio poder para Pleitos y Cobranzas, Actos de Administración y de Dominio Ordinarios, en los términos de los tres primeros párrafos del artículo dos mil quinientos cincuenta y cuatro del Código Civil para el Distrito Federal y de los artículos correlativos del Código Civil para el Estado de Nuevo León, gozando aún de aquellas que requieren cláusula especial y a las cuales se refiere el artículo dos mil quinientos ochenta y siete del Código Civil para el Distrito Federal y los artículos correspondientes del Código Civil del Estado de Nuevo León, y aquellas facultades a que se refieren los artículos dos mil quinientos setenta y cuatro, dos mil quinientos ochenta y dos y dos mil quinientos noventa y tres del Código Civil para el Distrito Federal y de los Artículos correlativos del Código Civil para el Estado de Nuevo León, y expresamente las facultades para administrar relaciones laborales, conciliar, comparecer a juicio en los términos de las fracciones primera y sexta del Artículo ochocientos setenta y seis y Artículo ochocientos setenta y ocho de la Ley Federal del Trabajo y celebrar convenios, y las facultades y autorizaciones de acuerdo con el artículo noveno de la Ley General de Títulos y Operaciones de Crédito, incluyendo en forma enunciativa, pero de ninguna manera limitativa, lo siguiente:

a)    Promover quejas y querellas y desistirse de ellas, presentar acusaciones, constituirse en coadyuvante del Ministerio Público y otorgar perdones.

b)    Iniciar juicios de amparo y desistirse de ellos.

c)    Otorgar, sin limitaciones, o con las que el Consejo juzgue pertinentes, y revocar toda clase de poderes generales y/o especiales, incluyendo, pero sin que esto implique limitación alguna, poderes para actos de administración y para pleitos y cobranzas.

d)    Otorgar sus facultades en la persona o personas, gerentes, funcionarios, apoderados o comités que el Consejo juzgue conveniente;

e)    Desistirse;

f)    Transigir;

g)    Comprometer en árbitros;

h)    Absolver y articular posiciones;

i)    Recusar;

j)    Recibir pagos

CGEA0041185

Ningún miembro del Consejo de Administración podrá, individual y separadamente, ejercitar los poderes arriba mencionados salvo autorización expresa del Consejo de Administración o de la asamblea de accionistas o mediante resolución unánime adoptada por los accionistas fuera de asamblea y confirmada por escrito.

## TITULO DECIMO
## FUNCIONARIOS

VIGESIMA SEPTIMA. La Asamblea de Accionistas o el Consejo de Administración elegirá de entre los miembros del Consejo  a un Presidente, quien tendrá, además de la representación del Consejo, las facultades previstas en la Ley y en estos estatutos, así como a un  Secretario que podrá ser o no consejero y este último será el Secretario de la Sociedad. Además, la Asamblea de Accionistas o el Consejo de Administración designará un Presidente Ejecutivo de la Sociedad encargado de supervisar y dirigir en forma general los negocios y actividades sociales, con las facultades de Apoderado General que para ese efecto de confiera la Asamblea de Accionistas o el Consejo de Administración, un Vicepresidente de desarrollo de Negocios quien auxiliará al Presidente Ejecutivo en sus labores, así como un Director General encargado de la operación y conducción cotidiana de la actividad social, con las facultades de apoderado general que para ese efecto le confiera la Asamblea de  Accionistas o el Consejo de Administración.  El Consejo o la Asamblea podrá igualmente designar uno o mas Gerentes o funcionarios quienes gozarán de las facultades específicas que expresamente se les confieran.

La asamblea de accionistas o los accionistas por la resolución unánime adoptada por los accionistas fuera de asamblea y confirmada por escrito, a su discreción, podrá remover a cualquier persona designada conforme a esta cláusula.  Asimismo, el Consejo de Administración podrá remover a cualquiera de dichas personas que éste haya designado.

## TITULO DECIMO PRIMERO
## VIGILANCIA DE LA SOCIEDAD

VIGESIMA OCTAVA.  La vigilancia de la sociedad  estará confiada a  un Comisario en caso de que los accionitas de las diversas Series estén de acuerdo con la persona así designada o, en caso contrario, la vigilancia de la sociedad estará a cargo de dos Comisarios uno de los cuales será designado por los accionistas de las Series "F-I" y "V-I" y el segundo por los accionistas de las Series "F-II" y "V-II".. Estos podrán ser o no accionistas y tendrán los derechos y obligaciones que les confieren los artículos ciento sesenta y seis y siguientes de la Ley General de Sociedades Mercantiles.  Los comisarios durarán en su cargo un año, o hasta que sus sucesores hayan sido designados y tomen posesión de sus cargos.  En la asamblea de accionistas en que se designen Comisarios cada accionista o grupo de accionistas que posea por lo menos un veinticinco  por ciento de las acciones emitidas de la sociedad tendrá el derecho de designar un Comisario propietario y su suplente. Lo anterior sin perjuicio del derecho de designar un Comisario que, en los términos de esta cláusula, les corresponde a los accionistas titulares de las acciones de las Series "F-II" y "V-II".  Cada accionista o grupo de accionistas que elija un Comisario, podrá designar a la vez uno o varios comisarios suplentes, que podrán ser o no accionistas, para sustituir a los Comisarios propietarios en sus faltas temporales o permanentes.
La Asamblea de accionistas, al designar a las personas que hayan de actuar como Comisarios, podrá exigir, si así lo considera conveniente, que aseguren la responsabilidad en que pudieren incurrir en el desempeño de su encargo, mediante el otorgamiento de la garantía que al efecto determine.

VIGESIMA NOVENA. Cualquier Comisario tendrá:

a)     El derecho de realizar una auditoria y examen anual de los libros y registros de la sociedad, con objeto de expedir un dictamen acerca de la situación financiera de la sociedad, de acuerdo con los principios contables generalmente aceptados y aplicados en forma consistente, y

b)     Acceso completo en cualquier momento, durante horas hábiles de la empresa, a todos los establecimientos, libros, registros, documentos e información de o relativa a la sociedad y sus operaciones.

## TITULO DECIMO SEGUNDO
## EJERCICIO SOCIAL, ESTADOS FINANCIEROS,
## RESERVAS Y RESPONSABILIDAD LIMITADA

TRIGESIMA. El ejercicio social de la sociedad será el que determinen los accionistas en Asamblea General Ordinaria.

**TRIGESIMA PRIMERA.** El informe de la administración y los estados financieros requeridos por el Artículo ciento setenta y dos de la Ley General de Sociedades Mercantiles, serán preparados al cierre de cada ejercicio social y contendrán toda la información requerida por dicho artículo. Dichos estados financieros se prepararán dentro de los tres meses siguientes al cierre de cada ejercicio social y, junto con el informe de la administración, serán puestos a disposición de los accionistas por lo menos quince días antes de la fecha fijada para la asamblea de accionistas en que se vayan a discutir.

**TRIGESIMA SEGUNDA.** Después de efectuar las separaciones necesarias para el pago de impuestos, reparto de utilidades, creación o aumento del fondo de reserva legal hasta que éste alcance, por lo menos, la quinta parte del capital social, las utilidades que anualmente obtenga la sociedad conforme al balance general aprobado, se aplicarán a los fines que disponga la asamblea de accionistas, o la resolución unánime adoptada por los accionistas fuera de asamblea y confirmada por escrito.

**TRIGESIMA TERCERA.** La responsabilidad de cada accionista quedará limitada al valor proporcional que cada acción poseída por dicho accionista represente del capital social y cada accionista deberá ser responsable por cualquier parte insoluta de dicho valor de las acciones que posea.

**TITULO DECIMO TERCERO**
**DISOLUCION Y LIQUIDACION DE LA SOCIEDAD**

**TRIGESIMA CUARTA.** La sociedad se disolverá en los casos enumerados en el artículo doscientos veintinueve de la Ley General de Sociedades Mercantiles, pero únicamente de acuerdo con lo previsto en el artículo doscientos treinta y dos de dicha Ley.

**TRIGESIMA QUINTA.** La liquidación de la sociedad se llevará a cabo de acuerdo a lo dispuesto por el ipítulo Décimo Primero de la Ley General de Sociedades Mercantiles, por uno o más liquidadores.

**TRIGESIMA SEXTA.** Durante la liquidación de la Sociedad, los liquidadores tendrán las mismas facultades y obligaciones que durante el término normal de vida de la misma tienen el Consejo de Administración.

**TRIGESIMA SEPTIMA.** Mientras no haya sido inscrito en el Registro Público de Comercio el nombramiento de los liquidadores y éstos no hayan entrado en funciones, el Consejo de Administración y los funcionarios, directores o gerentes generales y especiales de la sociedad continuarán desempeñando su cargo, pero no podrán iniciar nuevas operaciones después de haber sido aprobada por los accionistas la resolución de disolución de la sociedad o de que se compruebe la existencia de la causa legal de ésta.

**OCTAVO:** Como consecuencia de los ACUERDOS adoptados en esta Asamblea, se aprueba expedir, en sustitución de los actuales que serán cancelados, nuevos Títulos que amparen la totalidad de las acciones representativas del capital social de esta Sociedad, y en los que se incluyan las modificaciones estatutarias y de series de acciones aprobadas en esta Asamblea.

Asimismo, y en virtud de las ventas de acciones aprobadas en esta Asamblea, que pretenden realizar diversos accionistas de esta Sociedad, se aprueba que los nuevos Títulos que se emitan conforme a lo establecido en este ACUERDO, se expidan en favor de quienes resulten ser accionistas al momento de la expedición de dichos Títulos.

√.- Con respecto al desahogo del CUARTO PUNTO contenido en la Orden del Día, el Secretario dio lectura al .nforme del Consejo de Administración sobre la situación y actividades de la Sociedad durante el Ejercicio Social Parcial comprendido del 01 de enero al 31 de octubre del año 2000, y presentó a los Señores Accionistas las Cuentas Generales del Ejercicio Social que se da cuenta y los Estados Financieros de la Sociedad.-

Acto seguido, el Comisario dio lectura a su Informe correspondiente.-

Escuchado que fue el Informe del Consejo de Administración, el Informe del Comisario y revisados que fueron los Estados Financieros de la Sociedad, la Asamblea por unanimidad de votos tomó los siguientes ACUERDOS:

**NOVENO:** Se aprueba sin reserva alguna el Informe del Consejo de Administración sobre la situación y actividades de la Sociedad durante el Ejercicio Social Parcial comprendido del 01 de enero al 31 de octubre del año 2000.-

**DECIMO:**    Se aprueban sin reserva alguna y basados en el Informe del Comisario, las Cuentas Generales del Ejercicio Social comprendido del 01 de enero al 31 de octubre del año 2000, así como los Estados Financieros de la Sociedad correspondientes al periodo que se menciona. Agréguense al expediente de esta Acta los documentos mencionados.-

**DECIMO PRIMERO:**    Se ratifican todos y cada uno de los Acuerdos tomados y ejecutados por el Consejo de Administración de la Sociedad realizados en el desempeño de sus funciones durante el Ejercicio Social del que se da cuenta, liberándolo de cualesquier responsabilidad que pudiere derivarse de dicho desempeño.-

V.- Con respecto al desahogo del QUINTO PUNTO contenido en la Orden del Día, el Secretario dio lectura a una solicitud por parte de un accionista en el sentido de que se ratifiquen todos los actos y acuerdos tomados por la Asamblea desde la Constitución de la Sociedad hasta la fecha de hoy.

Despues de una deliberación extensiva del punto, la Asamblea por unanimidad de votos tomó el siguiente ACUERDO:

**DECIMO SEGUNDO:**    Se ratifican todos los actos y acuerdos tomados y llevados a cabo por la Asamblea desde la Constitución de la Sociedad hasta la fecha de hoy.-

VI.- Con respecto al desahogo del SEXTO PUNTO contenido en la Orden del Día, el Secretario dio lectura a los comunicados de la renuncia, con efectos a esta fecha, del pleno del Consejo de Administración, el Secretario, El Director General y los Comisarios, presentadas con motivo de la reestructuración administrativa de la Sociedad.

Acto seguido, la Asamblea por unanimidad de votos tomó los siguientes ACUERDOS:

**DECIMO TERCERO:**    Se acepta la renuncia del Consejo de Administración, del Secretario, del Director General  y de los Comisarios en funciones y se les libera de cualquier responsabilidad en pudieron haber incurrido en el desempeño de sus cargos, desde que tomaron posesión hasta esta fecha.

VII.- Con respecto al desahogo del SEPTIMO PUNTO contenido en la Orden del Día, el Secretario informó a los Señores Accionistas que en los términos de los Estatutos Sociales, es necesario nombrar el Consejo de Administración y los Comisarios que entrarán en funciones a partir de esta fecha, así como la determinación de sus emolumentos.

Acto Seguido el Secretario dio lectura a la propuesta que un Accionista presentó a la consideración de la Asamblea en relación al Consejo de Administración y Comisarios que entrarán en funciones a partir de esta fecha.-

Discutida que fue la proposición anterior, así como la determinación de los emolumentos correspondientes, la Asamblea por unanimidad de votos tomó los siguientes ACUERDOS:

**DECIMO CUARTO:**    Se designa el siguiente Consejo de Administración  y Comisarios que entrarán en funciones a partir de esta fecha:

CONSEJO DE ADMINISTRACION

| CONSEJEROS PROPIETARIOS DE LAS SERIES "F I" y "V I" | | CONSEJEROS SUPLENTES DE LAS SERIES "F I" y "V I" | |
|---|---|---|---|
| JEAN ALAIN JULLIEN | PRESIDENTE | | VACANTE |
| PASCAL GAUTHIER | CONSEJERO | | VACANTE |
| JEAN JACQUES GRIMAUX | CONSEJERO | | VACANTE |
| PIERRE RELLET | CONSEJERO | | VACANTE |

CONSEJERO PROPIETARIO                                                   CONSEJERO SUPLENTE
DE LAS SERIES "F II" y "V II"                                           DE LAS SERIES "F II" y "V II"

ING. HECTOR VARGAS GARZA                              LIC. JOSE DE JESUS VARGAS AGUIRRE

LIC. LUIS SANTOS THERIOT   SECRETARIO NO CONSEJERO

CGEA0041188

**COMISARIOS**

COMISARIO DE LAS SERIES
"F I" y "V I"

COMISARIO DE LAS SERIES
"F II" y "V II"

SR. ALBERTO VAZQUEZ

LIC. ANDRES GONZALEZ SANDOVAL

**DECIMO QUINTO:** El Consejo de Administración designado conforme al ACUERDO precedente tendrá los poderes, facultades y obligaciones contenidos en los Estatutos Sociales. Por su parte, los Comisarios de la Sociedad designados tendrán las obligaciones y atribuciones contenidas en los Estatutos Sociales y se acepta la renuncia de los Consejeros y los Comisarios a percibir remuneración alguna por el desempeño de sus funciones, lo cual les es agradecido plenamente por la presente Asamblea.-

**DECIMO SEXTO:** Se exime a los Consejeros y Comisarios designados conforme a los ACUERDOS que anteceden, a prestar las garantías correspondientes para caucionar su función en los términos de la ley.-

VIII.- Con respecto al desahogo del OCTAVO y último PUNTO contenido en la Orden del Día, la Asamblea por unanimidad de votos, tomó el siguiente ACUERDO:

**DECIMO SEPTIMO:** Se designan a los Señores LIC. LUIS SANTOS THERIOT, LIC. JOSE GUADALUPE GONZALEZ MERAZ Y LIC. ALEJANDRO MARTIN SANCHEZ FRANCO como DELEGADOS ESPECIALES de la presente Asamblea, a fin de que en forma conjunta o separada ocurran ante el Notario Público de su elección a protocolizar en lo conducente el Acta que se levante de la presente Asamblea y gestionar la inscripción en el Registro Público de la Propiedad y del Comercio correspondiente del Testimonio que de dicha protocolización se expida, en caso de así considerarse necesario o conveniente, formalizando los Acuerdos adoptados.-

No habiendo otro asunto que tratar, se dió por terminada la presente Asamblea que se suspendió por el término prudente para que el Secretario procediera a levantar la presente Acta por duplicado; acto seguido el Secretario dió lectura a la misma, y por unanimidad de votos se aprobó, firmándose por el Presidente y el Secretario de la Asamblea, todos los representantes de los accionistas y el Comisario.

Se hace constar que todos los representantes de los accionistas estuvieron presentes desde el inicio de la presente Asamblea hasta su total terminación, así como en el momento de tomarse todos y cada uno de los ACUERDOS adoptados.-

Se agrega al Apéndice de la presente Acta, un ejemplar de la misma en papel simple, adjuntándose a esta última las Cartas Poder exhibidas, la Lista de Asistencia suscrita por los Asistentes y debidamente certificada por los Escrutadores designados y demás documentos presentados en la Asamblea. Todo ello forma el expediente de esta Asamblea que se conserva en el archivo de la Secretaría.-

Se concluyó la Asamblea a las 11:30 horas del día, mes y año al principio señalados.-

ING. HECTOR VARGAS GARZA
PRESIDENTE

LIC. ALEJANDRO MARTIN SANCHEZ FRANCO
SECRETARIO

CHEMICAL WASTE MANAGEMENT, INC.
Representada por LIC ALEJANDRO
SANCHEZ FRANCO

VALORES ECOLOGICOS, S.A. DE C.V.
Representada por LIC. HECTOR VARGAS AGUIRRE

C.P. AMERICO GRANADOS PECINO
COMISARIO

**RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V.**

**ASAMBLEA GENERAL DE ACCIONISTAS**

**NOVIEMBRE 14, 2000**

SEÑORES ACCIONISTAS

De acuerdo con las facultades y obligaciones que me conceden los Estatutos de esta Sociedad , asi como los artículos 164,166,169 y demás relativos de la Ley General de Sociedades Mercantiles, procedí a realizar un examen de las operaciones de la Sociedad respecto del Ejercicio Social Parcial del año 2000 el cual comprende del 1° de enero al 31 de octubre del 2000.

Con base en dicho examen, me permito informar a la Asamblea lo siguiente:

Me cercioré de la subsistencia de las garantías a que se refiere el artículo 152 de la Ley General de Sociedades Mercantiles.

Recibí mensualmente del Consejo de Administración la información suficiente sobre el Estado de Situación Financiera, así como el Estado de Resultados de cada mes.

Realice personalmente, un examen de las operaciones, documentación y registros que lleva la empresa, a mi juicio con suficiente extensión para cumplir con la obligación de vigilar las operaciones de la empresa.

En mi opinión las políticas, criterios contables y de información seguidos por la Sociedad son adecuadas y suficientes.

En mi opinión el informe rendido por el Consejo de Administración a esta Asamblea es veraz y da una información suficiente sobre las operaciones de la empresa.

Por todo lo anteriormente expuesto y con base en los Estados Financieros emitidos por la Sociedad al 31 de octubre del año 2000 me permito recomendar a esta honorable Asamblea sea aprobado el Informe rendido por los Administradores, así como también ratificar todos los actos y acuerdos tomados por el Consejo de Administración durante el periodo mencionado.

Atentamente

C.P. AMEL CIENFUEGOS PECINO
COMISARIO

**LISTA DE ASISTENCIA**

A LA ASAMBLEA GENERAL EXTRAORDINARIA DE ACCIONISTAS DE RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. CELEBRADA A LAS 10:30 HORAS DEL DIA 14 DE NOVIEMBRE DEL 2000, EN LAZARO CARDENAS 2400 DESPACHO B21, SAN PEDRO GARZA GARCIA, N.L., DOMICILIO SOCIAL.-

| ACCIONISTAS | SERIE B | ACCIONES SERIE B-V | SERIE P | FIRMAS |
|---|---|---|---|---|
| CHEMICAL WASTE MANAGEMENT, INC. Representada por ALEJANDRO SANCHEZ FRANCO | 1,085 | 372 | 3,343 | |
| INMOBILIARIA CONFINAMINA, S.A. DE C.V. Representada por LIC. HECTOR VARGAS AGUIRRE | 686 | 42 | 1,672 | |
| VALORES ECOLOGICOS, S.A. DE C.V. Representada por LIC. HECTOR VARGAS AGUIRRE | 229 | 14 | 557 | |
| TOTALES | 2,000 | 428 | 5,572 | |
| TOTAL CAPITAL SOCIAL | | 8,000 | | |

EL suscrito designado ESCRUTADOR para verificar el Quórum de Asistencia a la Asamblea de relación, HAGO CONSTAR que, habiendo revisado el Libro de Registro de Acciones, las Cartas Poder exhibidas y esta Lista de Asistencia se encuentran representadas la totalidad de las 8,000 acciones del Capital Social Total de RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V., mismas que representan el 100% del capital social suscrito y pagado de la Sociedad.

C.P. ROBERTO SALAZAR VILLARREAL
ESCRUTADOR

CGEA0041191

## PROXY/CARTA PODER

San Pedro Garza García, N.L.

November/Noviembre 8, 2000

MR.(SR).HECTOR VARGAS AGUIRRE

Present./Presente.

Dear sir:

Muy señor nuestro:

Through this letter we grant you a SPECIAL PROXY, as broad, complied, and sufficient as may be necessary under law, so that you attend the General Extraordinary Shareholders' Meeting of RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. that will take place on November 14, 2000 representing 686 Series "B" shares, 42 Series "B V" shares, and 1,672 Series "P" all of them issued by the company RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. and owned by INMOBILIARIA CONFINAMINA, S.A. DE C.V. and so that thereat you may hear, discuss, and vote regarding the issues to be dealt with at such Meeting. Additionally you are expressly authorized so that, in case the corresponding proposal is submitted to the Meeting, in our name and representation you may approve the sale of shares representing the capital stock of RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V., that the shareholder CHEMICAL WASTE MANAGEMENT, INC. wishes to make in favor of SARP INDUSTRIES MEXICO, S.A. DE C.V. and so that you irrevocably waive our right to acquire the aforesaid shares whose transfer is pretended

Por medio de la presente otorgamos a Usted un PODER ESPECIAL, tan amplio, cumplido y suficiente, cuanto en derecho sea necesario para asistir a la Asamblea General Extraordinaria de Accionistas de la sociedad denominada RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V., que se celebrará el día 14 de noviembre del 2000, representando 686 acciones Serie "B", 42 acciones Serie "B V" y 1,672 acciones Serie "P" todas emitidas por la citada sociedad RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V., propiedad de INMOBILIARIA CONFINAMINA, S.A. DE C.V. y para que oiga, opine y vote sobre los asuntos que en dicha Asamblea hayan de tratarse. Adicionalmente de manera expresa se autoriza a Usted para que, en caso de que se presente en dicha Asamblea la propuesta respectiva, en nuestro nombre y representación apruebe la venta de acciones representativas del capital social de RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V., que pretende realizar la accionista CHEMICAL WASTE MANAGEMENT, INC. en favor SARP INDUSTRIES MEXICO, S.A. DE C.V., y para que renuncie de manera irrevocable al derecho que nos corresponda para adquirir las citadas acciones que se pretenden transmitir.

Of course we bind ourselves to be and pass through everything that you perform within the limits of this proxy.

Desde luego nos obligamos a estar y pasar por todo lo que usted realice dentro de los límites del presente poder.

Sincerely,

Atentamente,

INMOBILIARIA CONFINAMINA, S.A. DE C.V.

By/Por: ING. ABELARDO RAUL CAVAZOS GARZA
Position/Cargo: Sole Administrator/Administrador Unico

Testigo/Witness

Mario G. Zambrano O.

Testigo/Witness

CGEA0041192

**PROXY/CARTA PODER**
San Pedro Garza Garcia, N.L.
November/Noviembre 8, 2000

MR.(SR). HECTOR VARGAS AGUIRRE
Present./Presente

| | |
|---|---|
| Dear sir: | Muy señor nuestro: |
| Through this letter we grant you a SPECIAL PROXY, as broad, complied, and sufficient as may be necessary under law, so that you attend the General Extraordinary Shareholders' Meeting of RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. that will take place on November 14, 2000, representing 229 Series "B" shares, 14 Series "B-V" shares, and 557 Series "P" shares, all of them issued by the company RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. and owned by VALORES ECOLOGICOS, S.A. DE C.V. and so that thereat you may hear, discuss, and vote regarding the issues to be dealt with at such Meeting. Additionally you are expressly authorized so that, in case the corresponding proposal is submitted to the Meeting, in our name and representation you may approve the sale of shares representing the capital stock of RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V., that the shareholder CHEMICAL WASTE MANAGEMENT, INC. wishes to make in favor of SARP INDUSTRIES MEXICO, S.A. DE C.V. and so that you irrevocably waive our right to acquire the aforesaid shares whose transfer is pretended. | Por medio de la presente otorgamos a Usted un PODER ESPECIAL, tan amplio, cumplido y suficiente, cuanto en derecho sea necesario para asistir a la Asamblea General Extraordinaria de Accionistas de la sociedad denominada RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V., que se celebrará el día 14 de noviembre del 2000, representando 229 acciones Serie "B", 14 acciones Serie "B-V" y 557 acciones Serie "P", todas emitidas por la citada sociedad RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. propiedad de VALORES ECOLOGICOS, S.A. DE C.V. y para que oiga, opine y vote sobre los asuntos que en dicha Asamblea hayan de tratarse. Adicionalmente de manera expresa se autoriza a Usted para que, en caso de que se presente en dicha Asamblea la propuesta respectiva, en nuestro nombre y representación apruebe la venta de acciones representativas del capital social de RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V., que pretende realizar la accionista CHEMICAL WASTE MANAGEMENT, INC., en favor de SARP INDUSTRIES MEXICO, S.A. DE C.V. y para que renuncie de manera irrevocable al derecho que nos corresponda para adquirir las citadas acciones que se pretenden transmitir. |
| Of course we bind ourselves to be and pass through everything that you perform within the limits of this proxy. | Desde luego nos obligamos a estar y pasar por todo lo que usted realice dentro de los limites del presente poder. |
| Sincerely | Atentamente, |

VALORES ECOLOGICOS, S.A. DE C.V.

By/Por: ING. HECTOR VARGAS GARZA
Position/Cargo: Sole Administrator/Administrador Unico

Testigo/Witness                                        Testigo/Witness

## PROXY/CARTA PODER

San Pedro Garza García, N.L.

October/Octubre 30, 2000

LIC. ALEJANDRO SANCHEZ FRANCO

Present./Presente.

Dear sir:

Through this letter we grant you a SPECIAL PROXY, as broad, complied, and sufficient as may be necessary under law, so that you can attend the General Extraordinary Shareholders' Meeting of RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. that will take place on November 14, 2000, representing 1,085 Series "B" shares, 372 Series "B-V" shares, and 3,343 Series "P" shares, all of them issued by the company RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. and owned by CHEMICAL WASTE MANAGEMENT, INC. and so that thereat you may hear, discuss, and vote regarding the issues to be dealt with at such Meeting. Additionally you are expressly authorized so that, in case the corresponding proposal is submitted to the Meeting, in our name and representation you may approve the sale of shares, representing the capital stock of RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V., that the shareholder VALORES ECOLOGICOS, S.A. DE C.V. wishes to make in favor of INMOBILIARIA CONFINAMINA, S.A. DE C.V. and so that you irrevocably waive our right to acquire the aforesaid shares whose transfer is pretended.

Of course we bind ourselves to be and pass through everything that you perform within the limits of this proxy.

Sincerely,

Muy señor nuestro:

Por medio de la presente otorgamos a Usted un PODER ESPECIAL, tan amplio, cumplido y suficiente, cuanto en derecho sea necesario para asistir a la Asamblea General Extraordinaria de Accionistas de la sociedad denominada RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V., que se celebrará el día 14 de noviembre del 2000, representando 1,085 acciones Serie "B", 372 acciones Serie "B-V" y 3,343 acciones Serie "P", todas emitidas por la citada sociedad RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. propiedad de CHEMICAL WASTE MANAGEMENT, INC. y para que oiga, opine y vote sobre los asuntos que en dicha Asamblea hayan de tratarse. Adicionalmente de manera expresa se autoriza a Usted para que, en caso de que se presente en dicha Asamblea la propuesta respectiva, en nuestro nombre y representación apruebe la venta de acciones representativas del capital social de RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V., que pretende realizar la accionista VALORES ECOLOGICOS, S.A. DE C.V., en favor de INMOBILIARIA CONFINAMINA, S.A. DE C.V., y para que renuncie de manera irrevocable al derecho que nos corresponda para adquirir las citadas acciones que se pretendan transmitir.

Desde luego nos obligamos a estar y pasar por todo lo que usted realice dentro de los límites del presente poder.

Atentamente,

CHEMICAL WASTE MANAGEMENT, INC.

By/Por: MR. JOHN H. SLOCUM
Position/Cargo: Vice President

WITNESS/TESTIGOS

CGEA0041194