# (TRANSLATION FOR INFORMATION PURPOSES ONLY)

## RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V.
## MINUTE OF THE GENERAL EXTRAORDINARY SHAREHOLDERS'
## MEETING
## NOVEMBER 14, 2000

In the City of San Pedro Garza García, N.L., corporate domicile of RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. at being the 10:30 hours of November 14, 2000 the shareholders and the representatives of the shareholders, whose names and signatures appear in the Attendance List prepared and certified by the appointed Teller whose original is attached to the file of the duplicate of this minute, gathered in Lázaro Cárdenas 2400 Edificio Losoles Office B-21 in order to hold a General Extraordinary Shareholders' Meeting to which the aforesaid were duly called. Messrs. Ing. Héctor Vargas Garza and Lic. Alejandro Martín Sánchez Franco, respectively President and Secretary of the Board of Directors of the Corporation, and C.P. Amel Cienfuegos Pecino, Examiner of the Corporation, were present. Messrs. Lic. Héctor Vargas Aguirre, Dr. Juan Antonio Cuellar López, and C.P. Roberto Salazar Villarreal attended the Meeting as guests.

The Meeting was presided by Mr. Ing. Héctor Vargas Garza, as Chairman of the Board of Directors , and Mr. Lic. Alejandro Martín Sánchez Franco in his character of Secreary of the Board of Directors, the aforesaid according to the By-laws.

Due to the proposal of the President, by unanimous vote the Meeting appointed Mr. C.P. Roberto Salazar Villarreal was appointed as Teller who accepted that position and proceeded to verify the corresponding Attendance List, the Registry of Shares, and the Proxies that were shown, certifying that the 8,000 Shares in which the total corporate stock of the Corporation is divided were legally represented and consequently the quorum referred by the By-laws in order to legitimately declare installed a Meeting, distributed as follows:

| SHAREHOLDERS | SHARES | | |
|---|---|---|---|
| | SERIES B | SERIES B-V | SERIES P |
| CHEMICAL WASTE MANAGEMENT, INC. | 1,085 | 372 | 3,343 |
| INMOBILIARIA CONFINAMINA, S.A. DE C.V. | 686 | 42 | 1,672 |
| VALORES ECOLOGICOS, S.A. DE C.V. | 229 | 14 | 557 |
| TOTALS | 2,000 | 428 | 5,572 |
| TOTAL CAPITAL STOCK | | 8,000 | |

As a consequence of the certification of the Teller regarding the representation of 100% of the shares that form the total subscribed and paid capital stock of the Corporation, the President declared the meeting legally installed and able to treat and resolve the issues that originated it, even though there was no publication of a previous Call, according to the By-laws.

Afterwards, the Secretary read the following:-

CGEA0041195

## AGENDA:

I.- PRESENTATION OF THE PROPOSAL TO SELL SHARES ISSUED BY THIS CORPORATION.

II. PRESENTATION OF A PROPOSAL FOR THE CONVERSION OF THE PREFERRED SHARES OF STOCK TO ORDINARY SHARES.

III.- SUBSTANTIAL AMENDMENTS TO THE BY-LAWS OF THE CORPORATION THROUGH THE REFORM TO THE CLAUSES 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36 and 37.

IV.- PRESENTATION OF THE REPORT OF THE BOARD OF DIRECTORS, INCLUDING THE FINANCIAL REPORTS REGARDING THE PARTIAL CORPORATE YEAR COMPRISED BETWEEN JANUARY 1 TO OCTOBER 31 2000, ITS DISCUSSION AND APPROVAL, IF APPLICABLE, AFTER REVIEWING THE EXAMINER'S REPORT.

V.- RATIFICATION, IF APPLICABLE, OF ALL THE ACTS AND AGREEMENTS TAKEN BY THE MEETING SINCE THE INCORPORATION OF THE COMPANY UP TO DATE.

VI.- PRESENTATION OF THE RESIGNATION OF THE CURRENT BOARD OF DIRECTORS, THE SECRETARY, GENERAL DIRECTOR, AND THE EXAMINER.

VII.- APPOINTMENT OF THE BOARD OF DIRECTORS AND EXAMINER WHOSE APPOINTMENTS WILL BE EFFECTIVE BEGINNING ON THIS DATE AND DETERMINATION OF THEIR FEE.

VIII.- APPOINTMENT OF SPECIAL DELEGATE OR DELEGATES TO FORMALIZE THE RESOLUTIONS ADOPTED, IF APPLICABLE.

I. Regarding the FIRST POINT contained in the Agenda, the Secretary read a proposal submitted to this Meeting to sell 4,800 shares issued by this Corporation owned by the Shareholder Chemical Waste Management, Inc. in favor of SARP INDUSTRIES MEXICO, S.A. DE C.V. since that benefits its interests.

The representative of the Shareholder VALORES ECOLOGICOS, S.A. DE C.V. expressed the irrevocable waiver by such company of its preferential right to acquire such shares.

The Secretary read a proposal submitted to this Meeting to sell 2,400 shares issued by this Corporation owned by the Shareholder VALORES ECOLOGICOS, S.A. DE C.V.. in favor the company INMOBILIARIA CONFINAMINA, S.A. DE C.V. since that benefits their interests.

The representative of the Shareholder CHEMICAL WASTE MANAGEMENT, INC. expressed its irrevocable waiver by such company of its preferential right to acquire such shares.

After discussing the aforesaid proposals, the Meeting by unanimous vote adopted the following RESOLUTIONS:

CGEA0041196

FIRST: It is hereby approved the sale of 4,800 shares issued by this Corporation and owned by CHEMICAL WASTE MANAGEMENT, INC. in favor of SARP INDUSTRIES MEXICO, S.A. DE C.V.

SECOND. It is hereby accepted the irrevocable waiver of the Shareholder VALORES ECOLOGICOS, S.A. DE C.V. to its preferential right to acquire the 4,800 shares mentioned in the previous RESOLUTION.

THIRD: It is hereby approved the sale of 2,400 shares issued by this Corporation owned by VALORES ECOLOGICOS, S.A. DE C.V. in favor of INMOBILIARIA CONFINAMINA.

FOURTH. It is hereby accepted the irrevocable waiver of the Shareholder CHEMICAL WASTE MANAGEMENT, INC. to its preferential right to acquire the 2,400 shares mentioned in the previous RESOLUTION.

II. The President of the Meeting informed about the submission of a proposal in order to convert all the 5,572 shares of preferred stock (Series "P" shares) issued by the Corporation, into ordinary shares, same that would entitle the same rights and obligations as the rest of the shares that represent the capital stock of the Corporation. Consequently, it is proposed that this Meeting discusses about the submitted proposal and, if applicable, resolves what it considers convenient.

The aforesaid proposal was widely discussed by the shareholders who, by unanimous vote, adopted the following RESOLUTIONS:

FIFTH: It is hereby approved to change all the 5,572 shares of preferred stock (Series "P" shares) issued by this Corporation, into ordinary shares, same that will have the same rights and obligations than the rest of the shares representing the capital stock of this Corporation. Similarly, it is hereby approved that such change be in a 1 to 1 ratio, that is, the 5,572 Series "P" shares will become 5,572 ordinary shares.

It is herein stated that the current shareholders who are owners of Series "P" shares (that as resolved by this Meeting have become ordinary shares), set forth that up to this date the Corporation does not owe them any amount or any other concept originated from the rights granted by the referred Series "P" shares, and as a consequence they waive any action or claim against the Corporation that could have originated from the mentioned Series "P" shares.

III. Regarding the THIRD POINT of the Agenda, the Meeting, since that is the interest of the Corporation, wishes to substantially amend the By-laws through the modification of its Clauses 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36 and 37 so that they are drafted in the terms of the draft submitted to this Meeting from which a copy signed by the representatives of the shareholders that attended the Meeting is attached to this Minute.

After an extensive discussion and after the revision of the project submitted to the Shareholders by unanimous vote, they adopted the following RESOLUTIONS:

SIXTH: It is hereby authorized to amend the Clauses 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36 and 37 of the By-laws of the Corporation so that they be drafted in the terms of the project submitted to this Meeting in the understanding that some of them are amended in their content and others only in their clause number.

CGEA0041197

SEVENTH: As a consequence, hereinafter the totality of the By-laws of the Corporation will be the following:

**RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V.**

CHAPTER I
ORGANIZATION

FIRST. The corporation is a variable capital corporation subject to this charter and by laws and to the General Law of Mercantile Corporations with regard to matters not herein provided.

CHAPTER II
NAME, DOMICILE, DURATION AND PURPOSE

SECOND. The name of the corporation is **RESIDUOS INDUSTRIALES MULTIQUIM**, which shall always be followed by the words "Sociedad Anonima de Capital Variable" or by its abbreviation "S.A. de C.V."

THIRD. The domicile of the corporation shall be at San Pedro Garza Garcia, Nuevo Leon. The shareholders, or the Board of Directors of the corporation may establish agencies or branches of the corporation anywhere within the United Mexican States or abroad without such acts constituting a change of domicile.

FOURTH. The corporation shall have a duration of 99 (ninety nine) years from the date of incorporation.

FIFTH. The corporation shall have as corporate purpose:

a) Handling and control of hazardous, potentially hazardous, solid or liquid waste, as well as any activity involving the storage, collection, transportation, importation, exportation, treatment, reuse, recycling, incineration, blending, confinement and final disposal of any such wastes.

b) To render services pertaining to the elaboration of environmental impact studies, as well as the rendering of technical and counseling services related thereto.

c) Transformation, purchase, sale, distribution, consignation and production of any kind of chemical products and products derived therefrom.

d) To promote, execute, organize, exploit and participate in the capital and patrimony of all types of Mercantile and Civil corporations, Associations, Industrial Companies, Services Corporations or any other company, whether Mexican or Foreign and to participate in their administration or liquidation.

e) The acquisition, subscription, acceptance, endorsement and guarantee of any security or stock permitted by law.

f) The acquisition, alienation and, in general the negotiation of all types of stock, corporate capital and of any security or bond by law.

g) To obtain and grant loans, obtaining specific guarantees, as well as to transfer, endorse or guarantee all types of titles of credit, and to grant bonds and guarantees of any kind with respect to the contracted obligations or of the issued or accepted titles by third parties.

CGEA0041198

h) To acquire, alienate, obtain and grant the use and enjoyment under any title permitted by law, of movable and fixed property.

i) To obtain and grant under any title the use of patents, trademarks, denominations, commercial names, options and preferences, copyrights and concessions for all types of activities.

j) The rendering and hiring of technical, and counseling services as well as the execution of contracts and agreements for the realization of the aforementioned purposes.

k) To grant commissions, act as mediator and accept the conveyance of negotiations of any type.

l) The acquisition of real estate for the installation of industrial plants as well as for offices.

m) The execution of all of the agreements and of the necessary applications with respect to all of the aforementioned purposes.

## CHAPTER III
## CAPITAL AND SHARES.

SIXTH. The capital of the corporation shall be variable, with a minimum of $20,000.00, (Twenty Thousand 00/100 Pesos Mexican Currency), represented by 2,000 common shares. The variable portion of the capital of the corporation shall be unlimited.

SEVENTH. All of the shares of stock comprising the capital of the corporation including any preferred shares or shares with special rights or limited voting rights, will be nominative without expression of nominal value.

All the shares that represent the minimum capital stock of the Corporation will be divided in the Series "F-1" that will represent 90% of the fixed minimum capital and in the Series "F-II" that will represent 10% of the fixed minimum capital of the corporation, and the shares that represent the variable portion of the capital stock will be divided in the Series "V-1" that will represent 90% of the variable portion of the capital of the corporation and in the Series "V-II" that will represent 10% of the variable portion of the capital stock of the corporation.

EIGHTH. Except for such preferred shares or shares with special or limited rights as may be issued, all shares shall have equal rights and obligations. The shares of preferred stock will be issued in the same proportions represented by the rest of the Series of shares and in order to identify them the letter "P" will be added to the corresponding Series.

NINTH. Increases and reductions of the capital of the corporation shall be governed by the following rules:

a) Increases and reductions of the minimum capital of the corporation and of the variable capital of the corporation shall be effected by resolution of an extraordinary meeting of shareholders, or by the unanimous resolution adopted by the shareholders out of a meeting and confirmed in writing.

b) No new shares shall be issued unless and until all previously issued shares have been fully paid.

c) Authorized but inscribed shares and those which have been amortized or retired shall be kept in the corporate treasury.

d) Only fully paid shares may be amortized or retired.

e) The amortization or retirement of shares, unless otherwise unanimously agreed upon among the shareholders at a Shareholders' Meeting or by the unanimous resolution adopted by the shareholders out of a meeting and confirmed in writing, and respecting the rights of withdrawal of shareholders provided in clause 18, shall be carried out among the shareholders, in proportion to the shares held by each.

## CHAPTER IV
## STOCK TRANSFERS

TENTH. The transfer of shares issued by the Corporation will require the previous approval of the Board of Directors and will be subject to the terms and conditions set forth in this Clause and in the Law, and will be made through the endorsement and delivery of the corresponding stock certificate, not withstanding their transmission through any other legal means. Nonetheless the aforesaid, the transfers of shares will be subject to the terms that for such effect are established in the Shareholders' Covenant dated as of November 14, 2000, whose sample is kept in the Secretaryship of the corporation. The provisional stock certificates and, if applicable, the definite stock certificates to be issued, will contain, in addition to the content of clause Sixteenth of this by-laws, the language referred by clause Tenth, paragraph 7 of this by-laws. Any of the following share transfers may be effected without the prior consent of the Board of Directors:

a) In case of a merger if the corporation has the character of company that is being merged.

b) If authorized by all the company shareholders.

c) If the offerer shareholder is an entity, holder of said shares on its own behalf, and not as trustee, it shall be fully entitled to freely transfer all or part of its shares to any company of which it is the direct or indirect holder of the majority of the corporate capital of the offerer shareholder ("parent company") or to any company of which said parent company is the direct or indirect holder of the majority of the corporate capital.

d) If the offering shareholder is an individual, he shall be entitled to freely transfer all or part of his shares to ancestors or descendants in a direct line within the second degree, and to his collateral bloodline relatives within the second degree.

e) Transmissions of shares according to the shareholders' agreement dated as of November 14, 2000.

No other transfer of shares may be effected by any shareholder without the prior consent of the Board of Directors, which shall be granted in accordance with the rules set forth below. Any such other transfer made without the prior consent of the Board of Directors shall be considered null and void and the Board of Directors may refuse to record such unauthorized transfer in the Stock Register and may also request the judicial rescission of the same.

1) The shareholders of the corporation shall have, under the terms of this clause, a right of first refusal to acquire any pro rata portion of shares of the corporation, to be transferred by any one or more shareholders. In determining such pro rata portion, the shares held by shareholders who do not wish to exercise their rights under this clause may be excluded from the computation.

2) The shareholder that wishes to sell or transfer all or part of his shares to any person or entity according to a purchase offer received, or in case he wishes to make a sale offer, shall notify the Secretary of the corporation about such proposal of sale or transfer which shall contain the name and address of the possible purchaser in good faith, the number of shares involved, the price per share, and the other terms and conditions of the proposed transaction, and the aforesaid notice shall be attached with a copy of such offer.

3) As soon as the Secretary of the corporation receives such notice, he shall notify the shareholders of the corporation, by telex, facsimile, telegram or cable, confirmed by registered airmail to those residing abroad or

by registered mail to those residing in the United Mexican States, at their last registered address, of the offer; it is understood that each shareholder shall be entitled to register a second address with the Secretary of the Corporation to which a copy of said notice should be sent. The shareholders shall have thirty (30) days, from the date of the foregoing notice from the Secretary to exercise the right of first refusal granted herein by written notice to the Secretary. Such notice shall be deemed effective on delivery to the office of the Secretary against the corresponding receipt. In case the preemption right is exercised in the terms herein mentioned, the legal operation through which such transfer of shares is formalized shall take place within 30 (thirty) days following the date of the notice of the preemption right referred in this paragraph.

4) For purposes of the exercise of the right of first refusal provided in this clause, the following rules shall be observed:

a) If more than one shareholder declares his intention to acquire shares offered, such shares shall be acquired by the respective purchasers, in proportion to the number of shares of the corporation which each possesses at the time of the offer, excluding from the computation of said proportion the shares offered and the shares of shareholders who do not wish to acquire shares under this right of first refusal.

b) The purchase price for shares acquired under the right of first refusal provided in this Clause, shall be paid in cash, against delivery of the shares duly endorsed to the respective purchasers or in such other manner as stipulated by the offerer shareholder in the notice to the Secretary.

c) The price of the shares which are the matter of the preemption right, in case the offer was received from a third party in good faith, will be the same as the price agreed with such third party who wishes to purchase the shares and, in the case of a sale offer, in the price established in the same and notified to the corporation in the terms of the subsection d) number 2 above of this clause.

5) At the end of the thirty (30) day period referred to in paragraph 3) of this Clause, if the shareholder(s) has (have) not exercised the right of first refusal provided herein, with respect to all of the shares offered, or in such case, its (their) right to designate one or more purchasers for same, the offerer shareholder shall be entitled during a period of thirty (30) days thereafter to transfer all of the shares offered under this clause, to any person or entity, at a price no less than the one determined in accordance with the rules set forth on paragraph 4) section c) of this Clause; in the understanding that at the end of said thirty (30) day period, said offerer shareholder shall once again be bound to request the consent of the Board of Directors in accordance with all the provisions of this Clause.

6) The rights of first refusal and freedom of transfer provided in this clause shall not be divisible; and therefore, may only be exercised with respect to all shares offered.

7) A notation substantially in the following form shall be placed on any and all provisional or definitive share certificates issued by the corporation.

"The transfer of this certificate and of the shares herein represented is restricted by the provisions of Clause Tenth of the charter and by laws of the corporation."

## CHAPTER V
## PREEMPTIVE RIGHTS.

ELEVENTH. Each shareholder of record shall have the preemptive right to subscribe and acquire shares of stock of the corporation issued with respect to any increase of its capital in the proportion which the number of shares of stock owned by such shareholders bears to the total number of shares held, prior to the increase, by the shareholders exercising preemptive rights. Said preemptive right shall be exercised within fifteen (15)

CGEA0041201

days immediately following the date of the publication, in the Official Gazette of the corporate domicile, of the resolution declaring the capital increase.

## CHAPTER VI
## SHARE CERTIFICATES AND STOCK REGISTER.

TWELFTH. All provisional certificates and permanent share certificates shall bear consecutive numbering and shall set forth all the data required by Article 125 of the General Law of Mercantile Corporations, and the full text of Clause Sixteenth of this document, shall be signed by any two principal directors. The permanent share certificates may have dividend coupons attached.

THIRTEENTH. All share certificates may cover one or more shares and any shareholder may request the Board of Directors to exchange any certificates previously issued to him and to issue one or more new certificates provided always that the total number of shares covered by the certificates exchanged are the same. The cost of any such exchange shall be borne by the shareholder.

FOURTEENTH. In the case of loss, theft, misplacement or destruction of any provisional or permanent share certificate, the issuance of a duplicate certificate shall be subject to the provisions of chapter one, title one of the General Law of Negotiable Instruments and Credit Operations. All such share certificates issued as duplicates shall state that such new certificates are duplicates and that the original certificates have become invalid. All costs of legally effecting such replacement of certificates shall be borne by the holder of the certificate replaced.

FIFTEENTH. The corporation shall have a stock register book which shall set forth the issuance of all shares as well as the name, domicile and nationality of the owners of such shares, and also whether such shares are fully or partially paid in, the payments made on shares which are not fully paid in, and all transfers of shares. The Secretary of the corporation shall be charged with the custody of the said stock register. Any stock transfer shall be effective, as regards to the corporation, from the date on which it is recorded on the Stock Register. The Secretary shall have the obligation of making the entries referred to in this Clause.

## CHAPTER VII
## FOREIGN SHAREHOLDERS

SIXTEENTH. Any foreigner who upon the incorporation of the corporation or at any time thereafter acquires an equity interest or participation in the corporation shall thereby be considered a Mexican (National of the United Mexican States) as regards such interest or participation and it shall be understood that such foreigner agrees not to invoke the protection of his government under penalty in case of failure to comply with this agreement, of the forfeit of such interest or participation to the Mexican Nation.

## CHAPTER VIII
## MEETINGS OF SHAREHOLDERS

SEVENTEENTH. The meeting of shareholders is the supreme authority of the corporation, and its resolutions shall be binding on all shareholders, including absent or dissenting shareholders. In any event, dissenting shareholders shall in any case, enjoy the rights provided under articles 201 and 206 of the General Law of Mercantile Corporations, and absent shareholders shall enjoy the right referred to in Article 201 of the General Law of Mercantile Corporations. In the case of a withdrawal of a shareholder, the provisions of Articles 220 of the General Law of Mercantile Corporations shall apply, and the amount to be reimbursed shall be the net worth per share, as determined by the financial statements of the corporation, approved by the General Ordinary Shareholders' Meeting, for the fiscal year of the corporation immediately proceeding the year

CGEA0041202

in which the corporation received the notice of withdrawal. The withdrawal right referred by this clause will only be able to be exercised previous resolution of the extraordinary shareholders' meeting of the corporation that approves the retirement of the shareholder and the terms for the payment of the corresponding reimbursement, in the understanding that such shareholder will not be able to exercise such withdrawal right if doing so has as a consequence the noncompliance of the Shareholders' Agreement dated as of November 14, 2000 .

EIGHTEENTH. Meetings of shareholders shall be ordinary, extraordinary and special.

a) Ordinary meetings of shareholders shall be those called to deal with any of the following matters: 1) those referred to in Article 180 of the General Law of Mercantile Corporations; 2) those referred to in Article 181 of the General Law of Mercantile Corporations; 3) Any other matters included on the agenda for the meeting which according to law or this charter and bylaws are not expressly reserved to an extraordinary or special meeting of shareholder; and 4) the report to the shareholders on the balance sheet and the corresponding statement of results of the fiscal year of each company in which the company is the holder of the majority of the shares or equity quotas.

b) Extraordinary meetings of shareholders shall be those called to deal with any of the following matters:

1. Extension of the duration of the corporation.
2. Dissolution of the corporation prior to the duration stipulated in the charter and bylaws;
3. Increases and reductions on the minimum and variable capital stock;
4. Change in the corporate purposes;
5. Change in the nationality of the corporation;
6. Change in the nature of the entity;
7. Merger of the corporation;
8. Issuance of preferred shares;
9. Redemption by the corporation of its shares representing minimum or variable capital and issue of participation certificates therefor;
10. Issuance of bonds;
11. Any amendment to the charter and bylaws
12. Any other matter for which a special quorum or voting majority is established;

c) Special meetings of shareholders shall be those called by any class of shareholders to deal with any matter adversely affecting the rights of such shareholders as a class.

NINETEENTH. With regard to meetings of shareholders, the following rules shall be observed:

a) Except as provided herein, meetings of shareholders may be held whenever the Board of Directors, or the Chairman of the Board considers advisable, or upon the request of an Examiner, or of shareholders owning shares of stock in the aggregate equal to at least 33% of the subscribed and paid in capital of the corporation, or of the class requesting a special meeting, or of any shareholder in the cases set forth in Article 185 of the General Law of Mercantile Corporations.

b) Ordinary meetings shall be held at least once each year within the first four months immediately following the close of the fiscal year of the corporation, and shall include among the items on the agenda that of a report to the shareholders regarding the balance sheet and the corresponding statement of results of the immediately preceding fiscal year of each company in which this corporation is the holder of the majority of the shares or equity quotas.

c) All meetings of shareholders shall be held at the domicile of the corporation, except in the event of acts of God or force majeure.

d) Notice of all meetings shall be issued by the Board of Directors or by an Examiner, or in accordance with the provisions of Articles 168, 184 and 185 of the General Law of Mercantile Corporations.

e) The notice of the meeting shall be published in a daily newspaper or large circulation or in the Official Gazette of the domicile of the corporation at least fifteen (15) days prior to the date of any meeting.

f) The notice of the meeting shall set forth at least the date, hour, place and agenda for the meeting and shall be signed by the President or Secretary of the corporation or by the person designated by the Board of Directors or by an examiner, or in their absence, by a judge of competent jurisdiction in accordance with the provisions of articles 168, 184 and 185 of the General Law of Mercantile Corporations.

g) In addition to publication of the notice for the meeting and except in the case provided for in the following paragraph of this clause, each person who is recognized by the corporation as a shareholder on the date of the notice, and all Examiners and their alternates, shall be given written notice of the meeting, at least fifteen days prior the date of any meeting, by telex, telefax, telegram or cablegram confirmed by registered airmail, if the recipient resides abroad, or confirmed by registered mail if the recipient resides within the Mexican United States, duly prepaid, to the latest address that such shareholders Examiners and their alternates shall have filed in writing with the office of the Secretary of the corporation. It is understood, however, that the shareholders residing abroad may file with the Secretary a second address in the United Mexican States, to which address an additional copy of the personal notice shall be sent.

h) Any meeting of shareholders may be held without prior notice and any meeting of shareholders recessed for any reason may be reconvened without prior notice if the shareholders owning all of the stock entitled to vote at such a meeting are present or represented at the moment of voting.

i) Any shareholder may be represented at any meeting of shareholders by any person designated in writing as his proxy. The principal or alternate members of the Board of Directors and the Examiner principal or alternate may not act as proxies.

j) Except in case of a judicial order to the contrary, only those individual or legal entities whose names are recorded in the Stock Register shall be recognized as holders of shares of the corporation for purposes of attending any meeting of shareholders, and such recording on the stock Register shall be sufficient for the admission of such person to the meeting.

k) The Chairman of the Board of Directors assisted by the Secretary of the corporation, shall preside at all meetings of shareholders. In the absence of any of the foregoing, the persons elected to take their place, by a simple majority vote of the shareholders present at the meeting, shall act as Chairman and Secretary of the meeting.

l) Prior to convening a meeting of shareholders, the person presiding shall appoint one or more recount clerks to report as to the persons present at the meeting, the number of shares held or represented by such persons and as to the number of votes each such person is entitled to cast.

m) For a quorum to exist at an ordinary meeting of shareholders convened at the first call, the holders of at least fifty percent (50%) of the shares entitled to vote at such a meeting must be present personally or by proxy.

n) For a quorum to exist at an extraordinary meeting of shareholders convened at the first call, the holders of at least seventy five percent (75%) of the shares entitled to vote at such a meeting must be present personally or by proxy.

o) With respect to quorums at special meetings of shareholders held upon first or subsequent call, a quorum of seventy five percent (75%) of such class shall be required.

p) Except for such limited voting shares as may be issued by the corporation, each share shall have the right to cast one vote at any ordinary or extraordinary meeting of shareholders, or at any special meetings of shareholders held by the holders of shares of the same class.

q) Once it has been established that a quorum exists, the person presiding shall declare the meeting legally convened and shall submit the matters on the agenda to the meeting.

r) All votes shall be by hand count unless the shareholders representing a majority of shares present or represented by proxy, shall agree that the vote be by written ballot.

s) To validly adopt resolutions at any ordinary meeting of shareholders, the affirmative vote of shareholders representing at least the majority of the shares entitled to vote and present at the meeting shall be required.

t) To validly adopt resolutions at any extraordinary meeting of shareholders the affirmative vote of shareholders representing at least fifty percent (50%) of the capital stock shall be required.

u) To resolve on any of the matters mentioned below, the affirmative vote of all shareholders will be required:

1. The merger orsplit of the corporation or sale of substantially all the assets of the same.

2. The increase of the scope of the activities of the corporation to lines of business different to, that extend beyond the collection, storage, transportation, treatment, and final disposal of dangerous solid or liquid substances in the United States of México, including but not limited to their reuse, recycle, mixture, thermic treatment, bioremediation, confinement, importation, exportation, and to the activities that the corporation would be performing in the matter of industrial residues at the moment in which the referred increase of scope is resolved. Within the activities that the corporation will be able to perform and that will not be considered an increase of their scope the following are included, the incineration, transportation, thermic treatment, and bioremediation of dangerous solid or liquid substances in the United Mexican States, including the acquisition of facilities and real estates in order to perform all the activities herein referred.

3. The issuance of preferred shares of stock.

4. Increases or decreases to the capital stock or the division of shares.

5. The appointment and revocation of the Examiner of the corporation that had been appointed by the unanimous agreement of the shareholders. In case there is one examiner appointed by each Series of shares, the appointment and removal of its respective Examiner will correspond to the shareholders of each Series

6. The change in the nationality of the corporation.

7. The dissolution of the corporation.

8. The amendment to the bylaws of the corporation regarding the issues foreseen in paragraphs 1 through 13 of this subsection u).

9. The execution or amendment to any agreement or covenant with any shareholder of the corporation or affiliate of the latter, that is not in the normal business course of the corporation.

10. The performance of any expense of capital that in an accumulated form or in an individual operation exceeds per fiscal year US$10 million (ten million Dollars currency of the United States of America) or its equivalent in Mexican currency.

11. The sale of assets of the corporation for an amount that in an accumulated form or in an individual operation exceeds per fiscal year US$1 million (one million Dollars currency of the United States of America) or its equivalent in Mexican currency.

12. The execution of loans or credits that individually or jointly exceed per fiscal year US$10 million (ten million Dollars currency of the United States of America) or its equivalent in Mexican currency.

13. The execution of encumbrances, mortgage, or pledge over the assets of the corporation in a value that individually or jointly exceeds US$10 million (ten million Dollars currency of the United States of America) or its equivalent in Mexican currency.

v)  With respect to voting at special meetings of shareholders the provisions of Article 195 of the General law of Mercantile Corporations, shall be applied.

w)  The shareholders may adopt any resolution of their interest without a meeting, when the corresponding resolution must be approved unanimously by the shareholders who represent the totality of the shares with right to vote or of the special class of shares. The resolutions adopted in this manner, shall have all the legal effects that any ordinary, extraordinary or special shareholders' meeting have, if they are evidenced by public instrument or by private instrument ratified before a notary public or they complied with the following requirements:

1.  Once a consensus exists between the shareholders with respect to the content of the resolution, the Secretary of the meeting shall prepare the text of the resolution and deliver it to the shareholders through the most expeditious way to the domicile registered in the company.

2.  In the event that the shareholders agreed with the corresponding text, each shareholder shall sign a copy of the resolution and deliver it to the Secretary of the company through the most expeditious way.

3.  Once, each of the shareholders have signed a copy of the resolution, the Secretary of the company shall prepare a writ to evidence and certify the text of the resolution and that it was unanimously approved by the shareholders with right to vote.  Such writ shall be transcribed in the corresponding minutes book and signed by the Secretary and Chairman of the company.

4.  The Secretary shall have a file with regard to the writs that must be prepared in accordance with the above paragraph, and shall aggregate copies of the resolution signed by each of the shareholders with right to vote and any other document related with the resolution approved.

5.  The resolution shall be protocolized if it is one of those that requires to be protocolized by law or by this By laws, or when the resolution requires an extraordinary shareholders' meeting.

## CHAPTER IX
## MANAGEMENT OF THE CORPORATION

TWENTIETH.  Management of the corporation shall be vested in a Board of Directors composed of at least five (5) directors, who may or may not be shareholders. In case the number of directors to be appointed is of five (5), the titleholders of the shares that are part of the Series "FI" and "VI" will have the right to appoint four (4) out of the five directors and the titleholders of the shares of the Series "FII" and "VII" will have the right to appoint one (1) out of the five directors. The right to appoint directors includes the right to appoint

CGEA0041206

their corresponding substitutes, in the understanding that they will exclusively substitute the absences of the Directors appointed by the same Series. If the shareholders' meeting takes the resolution of appointing more than five directors, the proportion for the appointment of directors herein foreseen for the different Series will be respected. The shareholders' Meeting, at the moment of appointing the persons that form the Board of Directors, can request, if it considers it convenient, that its members secure the responsibility in which they could incur while performing their position by granting the guarantee that the Meeting determines for such effect.

TWENTY FIRST. Any one or more shareholders holding at least twentyfive percent (25%) of the total issued an outstanding shares of the corporation shall be entitled to elect one Director and his Alternate. The Shareholders shall elect, from among the members elected, a Chairman of the Board who shall remain in office for one (1) year.

TWENTY SECOND. Each shareholder or group of shareholders of the corporation that have elected one or more Directors shall also be entitled to appoint one or more alternates to substitute for the same at a meeting when the principal Director or Directors are absent on in case of death, removal, resignation, legal incapacity or any other permanent impediment to the proper discharge of the functions of said principal Director or Directors.

TWENTY THIRD. Members of the Board and their alternates shall remain in office for one year or until they are replaced by their successors. The members of the Board and their alternates may be removed at any time by the shareholders of the Series that appointed them. The removal of any Board member appointed by a minority of shareholders may only be effected upon the removal of all other Board members. Similarly, any shareholder may propose the removal of any Director appointed by shareholders of a different series only if there is a justified cause for such removal. The Directors and their alternates may be reelected. If a quorum of the Board cannot be formed due to the death, removal, resignation, incapacity or permanent impediment of one or more directors and their alternates, the Examiner or Examiners by majority, shall designate a successor or successors, as the case may be, to hold office until their replacements have been appointed by a meeting of shareholders or by the unanimous resolution adopted by the shareholders out of a meeting and confirmed in writing. In case there would be permanent vacancies of Directors, the shareholders of the Series that had appointed the Director or Directors that had originated such vacancy shall have the right to appoint the Director or Directors required to fulfill such vacancies.

TWENTY FOURTH. The Board of Directors may meet at any place designated in the notice for the meeting. The Board may meet as frequently as is deemed necessary or convenient by its Chairman, or any three (3) of its members or acting alternates. Written notice of any such meeting shall be sent to all directors and their alternates and to all examiners and their alternates at least fifteen (15) days prior to the meeting, by telex, telefax, facsimile, telegram, or cablegram confirmed by registered airmail, if the recipient resides abroad, or by registered mail if the recipient resides within the United Mexican States, duly prepaid, to the latest address registered with the Secretary by each recipient. Said notice shall contain the hour, date, place and Items in the Agenda of the meeting.

Any meeting of the Board shall be valid, however called, if all directors or acting Alternate directors, and Examiners or their alternates are present at the meeting.

TWENTY FIFTH.

a) A quorum shall exist at any meeting of the Board of Directors only if at least a majority of the Directors or of their respective alternate is present.

CGEA0041207

b) Any resolutions of the Board of Directors shall only be passed with the approval of at least a majority of the Directors or of their respective alternates present at the meeting.

c) The Chairman of the Board or the person who would take that position during the Chairman's absence shall not be entitled to cast an additional tie breaking vote. Minutes of all meetings of the Board shall be prepared and transcribed in the appropriate minute book, signed by at least the chairman and secretary of the meeting.

d) The Board of Directors may adopt any resolution of their interest without a board meeting, when the corresponding resolution must be approved unanimously by the directors who represent the Board of Directors. The resolutions adopted through this manner, shall have all the legal effects that any board meeting has, if it is evidenced by public instrument or by private instrument ratified before a notary public or it complies with the following requirements:

1. Once a consensus exists between the directors with respect to the content of the resolutions, the Secretary of the meeting shall prepare the text of the resolution and deliver it to the directors through the most expeditious way to the domicile registered in the company.

2. In the event that the directors agreed with the corresponding text, each director shall sign a copy of the resolution and deliver it to the Secretary of the company through the most expeditious way.

3. Once, each of the directors have signed a copy of the resolution, the Secretary of the company shall prepare a text to evidence and certify the text of the resolution and that it was unanimously approved by the directors with right to vote. Such writ shall be transcribed in the corresponding board meeting book and signed by the Secretary and the Chairman of the company.

4. The Secretary shall have a file with regard to the writs that must be prepared in accordance with the above paragraph, and shall aggregate copies of the resolution signed by each of the directors and any other document related with the resolution approved.

e) The following issues shall be approved by the Board of Directors:

1) The approval or amendment of the annual budget, of the business plan, or of the capital investments program.

2) The approval of the expenses of capital per entry and per period that exceed the amount determined by the same Board of Directors.

3) The purchase, sale, or lease of assets outside of the ordinary course of business for an amount that exceeds the sum that the Board of Directors determines.

4) The approval or amendment of any agreement when the amount of that agreement exceeds the one determined for such effect by the Board of Directors.

5) Assuming any debt in excess to the amount determined for such effect by the Board of Directors.

6) The beginning or the transaction regarding any lawsuit whose amount exceeds the one determined for such effect by the Board of Directors.

7) The approval of any agreement or amendment to the same that is executed with any shareholder or any of its affiliates.

CGEA0041208

8) The execution of any payment guaranty or of compliance of obligations of any third party or granting a credit to any third party, unless the aforesaid refers to operations in the ordinary course of business of the corporation.

9) The incorporation, purchase, or sale of any subsidiary of the corporation or of the shares that represent the capital stock of such subsidiary.

10) The acquisition, purchase, or subscription of shares, quotas, obligations, or other titles in any company, that would not be a subsidiary of the corporation.

11) The execution of any encumbrance over assets of the corporation, diverse from the ones that result form the authorized acquisitions or from those that result due to the enforcement of the Law.

12) The amendments to the accounting policies.

13) The request of permits, authorizations, or licenses of material importance that need to be submitted to the government authorities.

14) Any covenant, license, operation, or act that could have as an effect to difficult or make impossible the continuity of the operations of the corporation.

15) Employing or firing any person that has a higher salary than the amount for such effect determined by the Board of Directors.

16) The substantial amendments to the labor policies.

TWENTY SIXTH. The Board of Directors shall have the broadest legal authority granted to attorneys-in-fact to enter into all agreements, to carry out all acts and operations which by law or by this charter and bylaws are not expressly reserved to a meeting of shareholders, to manage and direct the affairs of the corporation, to carry out the purpose of the corporation and to represent the corporation before any judicial (criminal or civil), labor or administrative authorities, whether federal, state or municipal, with as broad authority for lawsuits and collections, acts of administration and acts of ordinary domain as provided in the first three paragraphs of Article two thousand five hundred fifty four (2554) of the Civil Code for the Federal District and the corresponding articles of the Civil Code of the State of Nuevo Leon and with those powers which, according to law, must be expressly set forth and referred to in Articles two thousand five hundred eighty seven (2587) of the Civil Code of the Federal District and the corresponding articles of the Civil Code of the State of Nuevo Leon and those powers referred to in articles two thousand five hundred and seventy four (2574), two thousand five hundred and eighty two (2582) and two thousand five hundred ninety three (2593) of the Civil Code for the Federal District and the corresponding articles of the Civil Code of the State of Nuevo Leon, and the express powers to administer labor relations, conciliate, appear at trial in terms of fractions I and VI of Articles 876 and Article 878 of the Federal Labor Law, and to enter into accords, powers and authorities in accordance with article 9 (nine) of the General Law of Negotiable Instruments and Credit Operations, including but without any limitation whatsoever, the following:

a) To file and withdraw criminal complaints, submit accusations, assist the District Attorney and grant pardons;
b) To file and desist from "amparo" proceedings;
c) To grant, without limitations or with those the Board deems proper and revoke general and/or special powers of attorney of any kind whatsoever, including but no limited to general powers for acts of administration or lawsuits and collections;
d) To grant its powers to one or more persons, managers, executives, attorneys in fact or committees as the Board deems convenient;

e) To withdraw from litigation;
f) To make settlements;
g) To submit to arbitration;
h) To answer and make interrogatories;
i) To make challenges;
j) To receive payments;

No member of the Board of Directors, may individually or separately, exercise any of the foregoing powers except as expressly authorized by the Board of Directors or by a meeting of Shareholders, or by an unanimous resolution adopted by the shareholders out of a meeting and confirmed in writing.

## CHAPTER X
## OFFICERS

TWENTY SEVENTH. The Shareholders' Meeting or the Board of Directors will elect among its members a President, who will have, in addition to the representation of the Board, the powers and authority foreseen by the Law and these bylaws, as well as a Secretary who may or may not be a director and who will be the Secretary of the Corporation. In addition, the Shareholders' Meeting or the Board of Directors will appoint an Executive President of the Corporation in charge of the supervision and direction in a general form of the businesses and social activities, with the powers and authority of General Attorney in Fact that for such effect are granted to him by the Shareholders' Meeting or the Board of Directors, a Vice-president for the Development of Business who will support the Executive President in his labors, as well as a General Director in charge of the operation and daily conduction of the social activity, with the authority as general attorney that for such effect is conferred to him by the Shareholders' Meeting or the Board of Directors. In addition, the Board or the Shareholders' Meeting can appoint one or more Directors or General or Special Managers who will have the authority expressly granted to them.

A meeting of shareholders or the shareholders by the unanimous resolution adopted by the shareholders out of a meeting and confirmed in writing at its discretion, may remove any person appointed under this clause. Likewise, the Board of Directors may remove any of said persons that it appointed.

## CHAPTER XI
## SURVEILLANCE OF THE CORPORATION

TWENTY EIGHT. The surveillance of the corporation will be conferred to an Examiner if the shareholders of the different Series agree with the person appointed or, in the contrary, the surveillance of the corporation will be conferred to two Examiners in the understanding that one of them will be appointed by the shareholders of the Series "FI" and "VI" and the second one by the shareholders of the Series "FII" and "VII". They may or may not be shareholders and shall have the rights and obligations conferred to them by articles 166 and the following ones of the General Law of Mercantile Corporations. The Examiners shall remain in office for one year, or until their successors have been appointed and taken office. At the meeting of shareholders appointing the Examiner or Examiners, any one or more shareholders holding at least twenty five percent (25%) of the total issued and outstanding shares of the corporation shall be entitled to elect one Examiner and his alternate. The shareholder or group of shareholders who designate an Examiner may likewise appoint one or more alternate Examiners, who need not be shareholders, to substitute for the Examiners during their temporary or permanent absences.

The shareholders' Meeting, at the moment of appointing the persons that will act as Examiners, can request, if it considers it convenient, that they secure the responsibility in which they could incur while performing their position by granting the guarantee that the Meeting determines for such effect.

TWENTY NINTH. Any Examiner of the corporation shall:

a)  Have the right to perform an annual audit and examination of the corporation's books and records in order to render a certified opinion of the financial position of the corporation in conformity with generally accepted accounting principles applied on a consistent basis; and

b)  Have full access at all times during working hours of the corporation to all facilities, records, documents and information of the corporation and its operations.

## CHAPTER XII
## FISCAL YEAR, FINANCIAL STATEMENTS, RESERVES AND LIMITED LIABILITY

THIRTIETH.  The fiscal year of the corporation shall be as determined by a General Ordinary Meeting of Shareholders.

THIRTY FIRST.  A management report and financial statements as required by article 172 of the General Law of Mercantile Corporations shall be prepared as of the close of each fiscal year and shall contain all the information required by such article.  Such financial statements shall be prepared within the three months immediately following the close of each fiscal year and, together with the management report, shall be made available to the shareholders at least fifteen (15) days prior to the date fixed for the meeting of shareholders at which it is to be discussed.

THIRTY SECOND.  After making the required provisions for payment of taxes, profit participation of employees, formation or increase of the legal reserve fund until such reserve equals at least one fifth of the corporate capital, the earning of the corporation for each fiscal year based upon an approved balance sheet shall be allocated in the manner approved by a meeting of shareholders, or by the unanimous resolution adopted by the shareholders out of a meeting and confirmed in writing.

THIRTY THIRD.  The liability of each shareholder shall be limited to the par value of the shares of stock held by such shareholder and each shareholder shall be liable for any unpaid part of the par value of said shares.

## CHAPTER XIII
## DISSOLUTION AND LIQUIDATION

THIRTY FOURTH.  The corporation shall be dissolved in the cases set forth in Articles 229 of the General Law of Mercantile Corporations, but only in accordance with the provisions of Article 232 of said Law.

THIRTY FIFTH.  The liquidation of the corporation shall be carried out under the provisions of Chapter II of the General law of Mercantile Corporations by one or more liquidators.

THIRTY SIXTH.  During the liquidation of the corporation, the liquidators shall have the same authority and obligation as the Board of Directors and Officers during the normal existence of the corporation.

THIRTY SEVENTH.  Prior to recording the appointment of the liquidator or liquidators at the Public Registry of Commerce and to the assumption, by the same of their obligations, the Board of Directors, Officers, General Managers and Managers of the corporation shall continue in office.

However, the Board, Officers, General Directors and Managers may not initiate new transactions after the resolution to dissolve the corporation has been approved by the shareholders or after the existence of a legal cause for dissolution is approved.

CGEA0041211

EIGHT: As a consequence of the RESOLUTIONS adopted in this Meeting, it is hereby approved to issue, in substitution of the current stock certificates that will be canceled, new Stock Certificates that support all the shares representing the capital stock of the Corporation, and that shall include the amendments to the by-laws and to the type of Series of shares approved by the Meeting.

Similarly, and as a consequence of the sales of shares approved in this Meeting, that several shareholders of this Corporation pretend to make, it is hereby approved that the new Stock Certificates issued according to the content of this RESOLUTION, are issued in favor of the actual shareholders at the moment in which these Stock Certificates are issued.

IV. Regarding the THIRD POINT of the Agenda, the Secretary read the Report of the Board of Directors regarding the situation and activities of the Corporation during the Partial Corporate Year comprised between January 1 and October 31 2000, and also submitted to the Shareholders the General Accounts of the Corporate Year that is being revised and the Financial Reports of the Corporation.-

Following, the Examiner read his report.

After listening to the Report of the Board of Directors, the Examiner's Report and after revising the Financial Reports of the Corporation, the Meeting by unanimous vote adopted the following RESOLUTIONS:

NINTH: The Report of the Board of Directors about the situation and activities of the Corporation during the Partial Corporate Year comprised between January 1 and September 30 of the year 2000 is approved without any reserve.

TENTH. Based upon the report of the Examiner the General Accounts of the Corporate Year comprised between January 1 and October 31 of the year 2000, as well as the Financial Reports of the Corporation that correspond to the referred period are approved without any reserve. The aforementioned documents shall be attached to the file of this Minute.

ELEVENTH: All and every one of the Resolutions taken and performed by the Board of Directors of the Corporation made while performing their functions during the referred Corporate Year are ratified, being released from any responsibility that there could be.

V. Regarding the FIFTH POINT of the Agenda, the Secretary read the request of a shareholder so that all the acts and resolutions adopted by the Meeting since the incorporation of the company up to date are ratified.

After an extensive discussion, the Meeting by unanimous vote adopted the following RESOLUTION:

TWELFTH: All the acts and agreements adopted and performed by the Meeting since the Incorporation of the Company up to date are ratified.

VI. Regarding the SIXTH POINT of the Agenda, the Secretary read the letters of resignation with effects to this date of the Board of Directors, the Secretary, the General Director, and the Examiners submitted as a consequence of the changes to the management of the Corporation

Following, the Meeting by unanimous vote adopted the following RESOLUTIONS:

THIRTEENTH: The resignations of the Board of Directors, the Secretary, the General Director, and the current Examiners are hereby accepted and they are released from any liability in which they could have incurred while performing the aforesaid positions, the aforesaid since they began with such positions and up to date.

VII.- Regarding the SEVENTH POINT of the Agenda the Secretary informed to the Shareholders that in the terms of the By-laws, it is necessary to appoint a Board of Directors and the Examiners that shall hold those positions beginning on this date, as well as the determination of their fees.

Following the Secretary read the proposal that a Shareholder submitted for the consdieration of the Meeting regarding the Board of Directors and the Examiners that shall hold those positions beginning on this date

After discussing the aforesaid proposal, as well as the determination of the corresponding fees, the Meeting by unanimous vote adopted the following RESOLUTIONS:

FOURTEENTH: It is hereby appointed the following Board of Directors and Examiners that shall hold those positions beginning on this date:

## BOARD OF DIRECTORS

**DIRECTORS OF THE
SERIES FI AND VI**

| | | |
|---|---|---|
| JEAN ALAIN JULLIEN | PRESIDENT | |
| PASCAL GAUTHIER | MEMBER | |
| JEAN JACQUES GRIMAUX | MEMBER | |
| PIERRE RELLET | MEMBER | |

**ALTERANTE
DIRECTORS OF THE
SERIES FI AND VI**
VACANT
VACANT
VACANT
VACANT

**DIRECTORS OF THE
SERIES FII AND VII**

ING. HECTOR VARGAS
GARZA

**ALTERANTE
DIRECTORS OF THE
SERIES FII AND VII**
C.P. JOSE DE JESUS
VARGAS AGUIRRE

LIC. LUIS SANTOS THERIOT      SECRETARY (BUT NOT DIRECTOR)

**EXAMINER OF THE
SERIES FI AND VI**
MR. ALBERTO VAZQUEZ

**EXAMINER OF THE
SERIES FI AND VI**
LIC. ANDRES
GONZALEZ SANDOVAL

FIFTEENTH: The Board of Directors appointed according to the previous RESOLUTION shall have the power, authority, and obligations contained in the by-laws. Similarly the appointed Examiners of the Corporation shall have the obligations and attributions contained in the by-laws and the waiver of the Directors and Examiners to receive any fee for the performance of their position is accepted, same that is thanked to them by this Meeting.

CGEA0041213

SIXTEENTH The Directors and Examiners appointed according to the previous RESOLUTIONS shall not be required to provide the corresponding guarantees in order to secure their position in the terms of the law.

VIII. Regarding the EIGHT and last POINT of the Agenda, the Meeting by unanimous vote adopted the following RESOLUTION:

SEVENTEENTH:. Messrs. LIC. LUIS SANTOS THERIOT, LIC. JOSE GUADALUPE GONZALEZ MERAZ, AND LIC. ALEJANDRO MARTIN SNACHEZ FRANCO are appointed as SPECIAL DELEGATES of this Meeting so that in a joint or separate form they appear before the Notary public of their choice in order to protocolize the required parts of this Minute and to perform the required procedures in order to file the corresponding Public Deed of the aforesaid protocolization in the Public Registry of Property and Commerce, in case that would be necessary or convenient, formalizing the adopted Resolutions.

Without any other issue to deal with, this Meeting finished after being suspended by the proper time so that the Secretary could draft this Minute; following the Secretary read it and it was approved by unanimous vote, and was signed by the President and the Secretary of the Meeting, all the representatives of the shareholders.

It is herein set forth that all the shareholders and representatives of shareholders were present since the beginning of this Meeting until it finished, as well as in the moment of taking each and every one of the adopted RESOLUTIONS.

A copy of this Minute in simple paper, the shown proxies, the Attendance List signed by the Attendants and duly verified by the appointed examiners and the other documents shown in the Meeting are added as attachments of this Minute. The aforesaid forms the file of this Meeting that is kept in the files of the Secretary.

The Meeting was adjourned at the 11:30 hours of the day, month, and year mentioned at the beginning.

| | |
|---|---|
| ING. HECTOR VARGAS GARZA PRESIDENT | LIC. ALEJANDRO MARTIN SANCHEZ FRANCO SECRETARY |
| CHEMICAL WASTE MANAGEMENT, INC. Represented by ALEJANDRO SANCHEZ FRANCO | VALORES ECOLOGICOS, S.A. DE C.V. Represented by MR.HECTOR VARGAS AGUIRRE |

C.P. AMEL CIENFUEGOS PECINO
EXAMINER

CGEA0041214

## ATTENDANCE LIST

TO THE GENERAL EXTRAORDINARY SHAREHOLDERS' MEETING OF RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. THAT TOOK PLACE AT THE 10:30 HOURS OF NOVEMBER 14, 2000 IN LAZARO CARDENAS 2400 OFFICE B-21, SAN PEDRO GARZA GARCIA, N.L. CORPORATE DOMICILE.

| SHAREHOLDERS | SHARES | | | SIGNATURES |
|---|---|---|---|---|
| | SERIES B | SERIES B-V | SERIES P | |
| CHEMICAL WASTE MANAGEMENT, INC. represented by ALEJANDRO SÁNCHEZ FRANCO | 1,085 | 372 | 3,343 | _____ |
| INMOBILIARIA CONFINAMINA, S.A. DE C.V. represented by MR. HECTOR VARGAS AGUIRRE | 686 | 42 | 1,672 | _____ |
| VALORES ECOLOGICOS, S.A. DE C.V. represented by MR. HECTOR VARGAS AGUIRRE | 229 | 14 | 557 | _____ |
| TOTALS | 2,000 | 428 | 5,572 | |
| TOTAL CAPITAL STOCK | | 8,000 | | |

The undersigned appointed as Teller in order to verify the Attendance Quorum of this Meeting, CERTIFIES that, after revising the Book of Registry of Shares, the proxies submitted, and this Attendance List the totality of the 8,000 shares of the Total Capital Stock of RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. that represent the 100% of the subscribed and paid capital stock of the Corporation.

C.P. ROBERTO SALAZAR VILLARREAL
TELLER

CGEA0041215

### RESIDUOS INDUSTRIALES MULTIQUIM
### GENERAL SHAREHOLDERS' MEETING
### NOVEMBER 14, 2000

DEAR SHAREHOLDERS,

According to the attributions and obligations that the By-laws of the Corporation grant me, as well as articles 164, 166, 169 and other relatives of the General Law of Commercial Corporations I proceeded to perform an examination of the operations of the Corporation regarding the Partial Corporate Year of the year 2000 that covers from January 1 to October 31, 2000.

Based upon such examination, I inform the Meeting the following:

I. I revised the existence of the guarantees referred by article 152 of the General Law of Commercial Corporations.

II. Every month I received from the Board of Directors sufficient information about the Financial Situation Sheet, as well as of the Gain and Loss Sheet..

III. I personally performed and exam of the operations, documentation and registries that the company has, to my judgment with the required extension to comply with the obligation of surveying the operations of the company.

IV. In my opinion the policies, accounting criteria and of information followed by the Corporation are adequate and sufficient.

V. In my opinion the report rendered by the Board of Directors to this Meeting is accurate and gives sufficient information about the operations of the company.

VI. As a consequence of all the above expressed and based upon the Financial Statements issued by the Corporation as of October 31, 2000 I recommend to this honorable Meeting the approval of the report rendered by the Managers as well as the ratification of all the acts and agreements taken by the Board of Directors during the mentioned period.

### ATTENTIVELY

### C.P. AMEL CIENFUEGOS PECINO
### EXAMINER

RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V.
ACTA DE ASAMBLEA GENERAL ORDINARIA DE ACCIONISTAS
NOVIEMBRE 14, 2000

En la ciudad de San Pedro Garza García, N.L., domicilio social de RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. siendo las (13:00) horas del día 14 de noviembre del (2000) se reunieron en Lázaro Cárdenas 2400 Edificio Losoles Despacho B-21, los representantes de accionistas cuyos nombres y firmas aparecen en la Lista de Asistencia al efecto preparada y certificada por el Escrutador designado, de la cual el original se agrega al expediente del duplicado de la presente Acta, con el objeto de celebrar una Asamblea General Ordinaria de Accionistas a la cual fueron debidamente citados. Estuvieron también presentes los Señores JEAN ALAIN JULLIEN y LIC. LUIS SANTOS THERIOT, Presidente y Secretario del Consejo de Administración de la Sociedad, respectivamente, así como los Señores SR. ALBERTO VAZQUEZ y LIC. ANDRES GONZALEZ SANDOVAL, Comisarios de la Sociedad y los Señores ING. HECTOR VARGAS GARZA, Lic. HECTOR VARGAS AGUIRRE, DR. JUAN ANTONIO CUELLAR LOPEZ y C.P. ROBERTO SALAZAR VILLARREAL, en calidad de invitados-

Presidió la Asamblea el Señor JEAN ALAIN JULLIEN en su calidad de Presidente del Consejo de Administración y actuo como Secretario el Señor LIC. LUIS SANTOS THERIOT en calidad de Secretario del Consejo de Administración, esto de conformidad con los Estatutos Sociales.

A propuesta del Presidente, por unanimidad de votos la Asamblea designó Escrutador al Señor C.P. ROBERTO SALAZAR VILLARREAL quien aceptó su cargo y procedió a verificar la correspondiente Lista de Asistencia, el Registro de Acciones y las Cartas Poder exhibidas, certificando que en la Asamblea de relación se encontraron legalmente representadas las 8,000 Acciones en que se encuentra dividido el capital social total de la Sociedad y por ende el quórum a que se refieren los Estatutos Sociales para declarar legítimamente instalada la Asamblea, distribuidas de la siguiente manera:

| ACCIONISTA | SERIE F- | SERIE F-I | SERIE V-I | SERIE V- |
|---|---|---|---|---|
| SARP INDUSTRIES ME: S.A. DE C.V. | 1200 | | 3600 | |
| INMOBILIARIA CONFINAI S.A. DE C.V. | 600 | | 1800 | |
| VALORES ECOLOGICOS, DE C.V. | | 200 | | 600 |
| TOTALES | 1800 | 200 | 5400 | 600 |

En virtud de la certificación del Escrutador respecto de haberse encontrado representado el 100% de las acciones representativas del Capital Social total suscrito y pagado de la Sociedad, el Presidente declaró legalmente instalada la Asamblea y apta para tratar y resolver los asuntos que la motivan, a pesar de no haberse publicado Convocatoria previa, de conformidad con lo dispuesto por los Estatutos Sociales.

Acto seguido el Secretario dio lectura, a la siguiente:-

ORDEN DEL DIA:

I.- RATIFICACION DEL NOMBRAMIENTO DEL CONSEJO DE ADMINISTRACION Y COMISARIOS Y DETERMINACION DE SUS EMOLUMENTOS.-

II.- REVOCACION DE PODERES OTORGADOS POR PARTE DE LA SOCIEDAD

III.- NOMBRAMIENTO DE DIVERSOS FUNCIONARIOS DE LA SOCIEDAD Y OTORGAMIENTO DE PODERES A FAVOR DE DIVERSAS PERSONAS.-

IV.- PRESENTACION DE UNA PROPUESTA PARA APROBAR CONTRATOS QUE CELEBRE LA SOCIEDAD.

V.- NOMBRAMIENTO DE DELEGADO O DELEGADOS ESPECIALES PARA FORMALIZAR LOS ACUERDOS ADOPTADOS, EN SU CASO.

I.- Con respecto al desahogo del PRIMER PUNTO contenido en la Orden del Día, el Secretario informó a los Señores Accionistas que se había presentado una propuesta para la ratificación del nombramiento del Consejo de Administración y los Comisarios, así como la determinación de sus emolumentos.

Discutida que fue la proposición anterior, así como la determinación de los emolumentos correspondientes, la Asamblea por unanimidad de votos tomó los siguientes ACUERDOS:

PRIMERO: Se ratifica la designación del Consejo de Administración y Comisarios de la Sociedad, de modo que que dichos órganos de administración y vigilancia quedan designados como sigue:

CONSEJO DE ADMINISTRACION

CONSEJEROS PROPIETARIOS
DE LAS SERIES "F I" y "V I"

CONSEJEROS SUPLENTES
DE LAS SERIES "F I" y "V I"

| | | |
|---|---|---|
| JEAN ALAIN JULLIEN | PRESIDENTE | VACANTE |
| PASCAL GAUTHIER | CONSEJERO | VACANTE |
| JEAN JACQUES GRIMAUX | CONSEJERO | VACANTE |
| PIERRE RELLET | CONSEJERO | VACANTE |

| CONSEJERO PROPIETARIO | CONSEJERO SUPLENTE |
|---|---|
| DE LAS SERIES "F II" y "V II" | DE LAS SERIES "F II" y "V II" |

ING. HECTOR VARGAS GARZA      LIC. JOSE DE JESUS VARGAS AGUIRRE

LIC. LUIS SANTOS THERIOT      SECRETARIO NO CONSEJERO

COMISARIOS

| COMISARIO DE LAS SERIES | COMISARIO DE LAS SERIES |
|---|---|
| "F I" y "V I" | "F II" y "V II" |

SR. ALBERTO VAZQUEZ                LIC. ANDRES GONZALEZ SANDOVAL

**SEGUNDO:**   El Consejo de Administración designado conforme al ACUERDO precedente tendrá los poderes, facultades y obligaciones contenidos en los Estatutos Sociales.  Por su parte, los Comisarios de la Sociedad designados tendrán las obligaciones y atribuciones contenidas en los Estatutos Sociales y se acepta la renuncia de los Consejeros y los Comisarios a percibir remuneración alguna por el desempeño de sus funciones, lo cual les es agradecido plenamente por la presente Asamblea.-

**TERCERO:**  Se exime a los Consejeros y Comisarios designados conforme a los ACUERDOS que anteceden, a prestar las garantías correspondientes para caucionar su función en los términos de la ley.-

II.- Con respecto al desahogo del SEGUNDO PUNTO contenido en la Orden del Día, la Asamblea por unanimidad de votos, tomó el siguiente ACUERDO:

**CUARTO:**   Se revocan todas las designaciones y poderes otorgados por la Sociedad hasta esta fecha, con excepción de los siguientes los cuales subsisten integramente tal como fueron otorgados: