e) The amortization or retirement of shares, unless otherwise unanimously agreed upon among the shareholders at a Shareholders' Meeting or by the unanimous resolution adopted by the shareholders out of a meeting and confirmed in writing, and respecting the rights of withdrawal of shareholders provided in clause 18, shall be carried out among the shareholders, in proportion to the shares held by each.

## CHAPTER IV
## STOCK TRANSFERS

TENTH. The transfer of shares issued by the Corporation will require the previous approval of the Board of Directors and will be subject to the terms and conditions set forth in this Clause and in the Law, and will be made through the endorsement and delivery of the corresponding stock certificate, not withstanding their transmission through any other legal means. Nonetheless the aforesaid, the transfers of shares will be subject to the terms that for such effect are established in the Shareholders' Covenant dated as of November 14, 2000, whose sample is kept in the Secretaryship of the corporation. The provisional stock certificates and, if applicable, the definite stock certificates to be issued, will contain, in addition to the content of clause Sixteenth of this by-laws, the language referred by clause Tenth, paragraph 7 of this by-laws. Any of the following share transfers may be effected without the prior consent of the Board of Directors:

a) In case of a merger if the corporation has the character of company that is being merged.

b) If authorized by all the company shareholders.

c) If the offerer shareholder is an entity, holder of said shares on its own behalf, and not as trustee, it shall be fully entitled to freely transfer all or part of its shares to any company of which it is the direct or indirect holder of the majority of the corporate capital of the offerer shareholder ("parent company") or to any company of which said parent company is the direct or indirect holder of the majority of the corporate capital.

d) If the offering shareholder is an individual, he shall be entitled to freely transfer all or part of his shares to ancestors or descendants in a direct line within the second degree, and to his collateral bloodline relatives within the second degree.

e) Transmissions of shares according to the shareholders' agreement dated as of November 14, 2000.

No other transfer of shares may be effected by any shareholder without the prior consent of the Board of Directors, which shall be granted in accordance with the rules set forth below. Any such other transfer made without the prior consent of the Board of Directors shall be considered null and void and the Board of Directors may refuse to record such unauthorized transfer in the Stock Register and may also request the judicial rescission of the same.

1) The shareholders of the corporation shall have, under the terms of this clause, a right of first refusal to acquire any pro rata portion of shares of the corporation, to be transferred by any one or more shareholders. In determining such pro rata portion, the shares held by shareholders who do not wish to exercise their rights under this clause may be excluded from the computation.

2) The shareholder that wishes to sell or transfer all or part of his shares to any person or entity according to a purchase offer received, or in case he wishes to make a sale offer, shall notify the Secretary of the corporation about such proposal of sale or transfer which shall contain the name and address of the possible purchaser in good faith, the number of shares involved, the price per share, and the other terms and conditions of the proposed transaction, and the aforesaid notice shall be attached with a copy of such offer.

3) As soon as the Secretary of the corporation receives such notice, he shall notify the shareholders of the corporation, by telex, facsimile, telegram or cable, confirmed by registered airmail to those residing abroad or

CGEA0041200

by registered mail to those residing in the United Mexican States, at their last registered address, of the offer; it is understood that each shareholder shall be entitled to register a second address with the Secretary of the Corporation to which a copy of said notice should be sent. The shareholders shall have thirty (30) days, from the date of the foregoing notice from the Secretary to exercise the right of first refusal granted herein by written notice to the Secretary. Such notice shall be deemed effective on delivery to the office of the Secretary against the corresponding receipt. In case the preemption right is exercised in the terms herein mentioned, the legal operation through which such transfer of shares is formalized shall take place within 30 (thirty) days following the date of the notice of the preemption right referred in this paragraph.

4) For purposes of the exercise of the right of first refusal provided in this clause, the following rules shall be observed:

a) If more than one shareholder declares his intention to acquire shares offered, such shares shall be acquired by the respective purchasers, in proportion to the number of shares of the corporation which each possesses at the time of the offer, excluding from the computation of said proportion the shares offered and the shares of shareholders who do not wish to acquire shares under this right of first refusal.

b) The purchase price for shares acquired under the right of first refusal provided in this Clause, shall be paid in cash, against delivery of the shares duly endorsed to the respective purchasers or in such other manner as stipulated by the offerer shareholder in the notice to the Secretary.

c) The price of the shares which are the matter of the preemption right, in case the offer was received from a third party in good faith, will be the same as the price agreed with such third party who wishes to purchase the shares and, in the case of a sale offer, in the price established in the same and notified to the corporation in the terms of the subsection d) number 2 above of this clause.

5) At the end of the thirty (30) day period referred to in paragraph 3) of this Clause, if the shareholder(s) has (have) not exercised the right of first refusal provided herein, with respect to all of the shares offered, or in such case, its (their) right to designate one or more purchasers for same, the offerer shareholder shall be entitled during a period of thirty (30) days thereafter to transfer all of the shares offered under this clause, to any person or entity, at a price no less than the one determined in accordance with the rules set forth on paragraph 4) section c) of this Clause; in the understanding that at the end of said thirty (30) day period, said offerer shareholder shall once again be bound to request the consent of the Board of Directors in accordance with all the provisions of this Clause.

6) The rights of first refusal and freedom of transfer provided in this clause shall not be divisible; and therefore, may only be exercised with respect to all shares offered.

7) A notation substantially in the following form shall be placed on any and all provisional or definitive share certificates issued by the corporation.

"The transfer of this certificate and of the shares herein represented is restricted by the provisions of Clause Tenth of the charter and by laws of the corporation."



## CHAPTER V
## PREEMPTIVE RIGHTS.

ELEVENTH. Each shareholder of record shall have the preemptive right to subscribe and acquire shares of stock of the corporation issued with respect to any increase of its capital in the proportion which the number of shares of stock owned by such shareholders bears to the total number of shares held, prior to the increase, by the shareholders exercising preemptive rights. Said preemptive right shall be exercised within fifteen (15)

CGEA0041201

days immediately following the date of the publication, in the Official Gazette of the corporate domicile, of the resolution declaring the capital increase.

## CHAPTER VI
## SHARE CERTIFICATES AND STOCK REGISTER.

TWELFTH. All provisional certificates and permanent share certificates shall bear consecutive numbering and shall set forth all the data required by Article 125 of the General Law of Mercantile Corporations, and the full text of Clause Sixteenth of this document, shall be signed by any two principal directors. The permanent share certificates may have dividend coupons attached.

THIRTEENTH. All share certificates may cover one or more shares and any shareholder may request the Board of Directors to exchange any certificates previously issued to him and to issue one or more new certificates provided always that the total number of shares covered by the certificates exchanged are the same. The cost of any such exchange shall be borne by the shareholder.

FOURTEENTH. In the case of loss, theft, misplacement or destruction of any provisional or permanent share certificate, the issuance of a duplicate certificate shall be subject to the provisions of chapter one, title one of the General Law of Negotiable Instruments and Credit Operations. All such share certificates issued as duplicates shall state that such new certificates are duplicates and that the original certificates have become invalid. All costs of legally effecting such replacement of certificates shall be borne by the holder of the certificate replaced.

FIFTEENTH. The corporation shall have a stock register book which shall set forth the issuance of all shares as well as the name, domicile and nationality of the owners of such shares, and also whether such shares are fully or partially paid in, the payments made on shares which are not fully paid in, and all transfers of shares. The Secretary of the corporation shall be charged with the custody of the said stock register. Any stock transfer shall be effective, as regards to the corporation, from the date on which it is recorded on the Stock Register. The Secretary shall have the obligation of making the entries referred to in this Clause.

## CHAPTER VII
## FOREIGN SHAREHOLDERS

SIXTEENTH. Any foreigner who upon the incorporation of the corporation or at any time thereafter acquires an equity interest or participation in the corporation shall thereby be considered a Mexican (National of the United Mexican States) as regards such interest or participation and it shall be understood that such foreigner agrees not to invoke the protection of his government under penalty in case of failure to comply with this agreement, of the forfeit of such interest or participation to the Mexican Nation.

## CHAPTER VIII
## MEETINGS OF SHAREHOLDERS

SEVENTEENTH. The meeting of shareholders is the supreme authority of the corporation, and its resolutions shall be binding on all shareholders, including absent or dissenting shareholders. In any event, dissenting shareholders shall in any case, enjoy the rights provided under articles 201 and 206 of the General Law of Mercantile Corporations, and absent shareholders shall enjoy the right referred to in Article 201 of the General Law of Mercantile Corporations. In the case of a withdrawal of a shareholder, the provisions of Articles 220 of the General Law of Mercantile Corporations shall apply, and the amount to be reimbursed shall be the net worth per share, as determined by the financial statements of the corporation, approved by the General Ordinary Shareholders' Meeting, for the fiscal year of the corporation immediately proceeding the year

in which the corporation received the notice of withdrawal. The withdrawal right referred by this clause will only be able to be exercised previous resolution of the extraordinary shareholders' meeting of the corporation that approves the retirement of the shareholder and the terms for the payment of the corresponding reimbursement, in the understanding that such shareholder will not be able to exercise such withdrawal right if doing so has as a consequence the noncompliance of the Shareholders' Agreement dated as of November 14, 2000 .

EIGHTEENTH. Meetings of shareholders shall be ordinary, extraordinary and special.

a) Ordinary meetings of shareholders shall be those called to deal with any of the following matters: 1) those referred to in Article 180 of the General Law of Mercantile Corporations; 2) those referred to in Article 181 of the General Law of Mercantile Corporations; 3) Any other matters included on the agenda for the meeting which according to law or this charter and bylaws are not expressly reserved to an extraordinary or special meeting of shareholder; and 4) the report to the shareholders on the balance sheet and the corresponding statement of results of the fiscal year of each company in which the company is the holder of the majority of the shares or equity quotas.

b) Extraordinary meetings of shareholders shall be those called to deal with any of the following matters:

1. Extension of the duration of the corporation.
2. Dissolution of the corporation prior to the duration stipulated in the charter and bylaws;
3. Increases and reductions on the minimum and variable capital stock;
4. Change in the corporate purposes;
5. Change in the nationality of the corporation;
6. Change in the nature of the entity;
7. Merger of the corporation;
8. Issuance of preferred shares;
9. Redemption by the corporation of its shares representing minimum or variable capital and issue of participation certificates therefor;
10. Issuance of bonds;
11. Any amendment to the charter and bylaws
12. Any other matter for which a special quorum or voting majority is established;

c) Special meetings of shareholders shall be those called by any class of shareholders to deal with any matter adversely affecting the rights of such shareholders as a class.

NINETEENTH. With regard to meetings of shareholders, the following rules shall be observed:

a) Except as provided herein, meetings of shareholders may be held whenever the Board of Directors, or the Chairman of the Board considers advisable, or upon the request of an Examiner, or of shareholders owning shares of stock in the aggregate equal to at least 33% of the subscribed and paid in capital of the corporation, or of the class requesting a special meeting, or of any shareholder in the cases set forth in Article 185 of the General Law of Mercantile Corporations.

b) Ordinary meetings shall be held at least once each year within the first four months immediately following the close of the fiscal year of the corporation, and shall include among the items on the agenda that of a report to the shareholders regarding the balance sheet and the corresponding statement of results of the immediately preceding fiscal year of each company in which this corporation is the holder of the majority of the shares or equity quotas.

c) All meetings of shareholders shall be held at the domicile of the corporation, except in the event of acts of God or force majeure.

d) Notice of all meetings shall be issued by the Board of Directors or by an Examiner, or in accordance with the provisions of Articles 168, 184 and 185 of the General Law of Mercantile Corporations.

e) The notice of the meeting shall be published in a daily newspaper or large circulation or in the Official Gazette of the domicile of the corporation at least fifteen (15) days prior to the date of any meeting.

f) The notice of the meeting shall set forth at least the date, hour, place and agenda for the meeting and shall be signed by the President or Secretary of the corporation or by the person designated by the Board of Directors or by an examiner, or in their absence, by a judge of competent jurisdiction in accordance with the provisions of articles 168, 184 and 185 of the General Law of Mercantile Corporations.

g) In addition to publication of the notice for the meeting and except in the case provided for in the following paragraph of this clause, each person who is recognized by the corporation as a shareholder on the date of the notice, and all Examiners and their alternates, shall be given written notice of the meeting, at least fifteen days prior the date of any meeting, by telex, telefax, telegram or cablegram confirmed by registered airmail, if the recipient resides abroad, or confirmed by registered mail if the recipient resides within the Mexican United States, duly prepaid, to the latest address that such shareholders Examiners and their alternates shall have filed in writing with the office of the Secretary of the corporation. It is understood, however, that the shareholders residing abroad may file with the Secretary a second address in the United Mexican States, to which address an additional copy of the personal notice shall be sent.

h) Any meeting of shareholders may be held without prior notice and any meeting of shareholders recessed for any reason may be reconvened without prior notice if the shareholders owning all of the stock entitled to vote at such a meeting are present or represented at the moment of voting.

i) Any shareholder may be represented at any meeting of shareholders by any person designated in writing as his proxy. The principal or alternate members of the Board of Directors and the Examiner principal or alternate may not act as proxies.

j) Except in case of a judicial order to the contrary, only those individual or legal entities whose names are recorded in the Stock Register shall be recognized as holders of shares of the corporation for purposes of attending any meeting of shareholders, and such recording on the stock Register shall be sufficient for the admission of such person to the meeting.

k) The Chairman of the Board of Directors assisted by the Secretary of the corporation, shall preside at all meetings of shareholders. In the absence of any of the foregoing, the persons elected to take their place, by a simple majority vote of the shareholders present at the meeting, shall act as Chairman and Secretary of the meeting.

l) Prior to convening a meeting of shareholders, the person presiding shall appoint one or more recount clerks to report as to the persons present at the meeting, the number of shares held or represented by such persons and as to the number of votes each such person is entitled to cast.

m) For a quorum to exist at an ordinary meeting of shareholders convened at the first call, the holders of at least fifty percent (50%) of the shares entitled to vote at such a meeting must be present personally or by proxy.

n) For a quorum to exist at an extraordinary meeting of shareholders convened at the first call, the holders of at least seventy five percent (75%) of the shares entitled to vote at such a meeting must be present personally or by proxy.

CGEA0041204

o) With respect to quorums at special meetings of shareholders held upon first or subsequent call, a quorum of seventy five percent (75%) of such class shall be required.

p) Except for such limited voting shares as may be issued by the corporation, each share shall have the right to cast one vote at any ordinary or extraordinary meeting of shareholders, or at any special meetings of shareholders held by the holders of shares of the same class.

q) Once it has been established that a quorum exists, the person presiding shall declare the meeting legally convened and shall submit the matters on the agenda to the meeting.

r) All votes shall be by hand count unless the shareholders representing a majority of shares present or represented by proxy, shall agree that the vote be by written ballot.

s) To validly adopt resolutions at any ordinary meeting of shareholders, the affirmative vote of shareholders representing at least the majority of the shares entitled to vote and present at the meeting shall be required.

t) To validly adopt resolutions at any extraordinary meeting of shareholders the affirmative vote of shareholders representing at least fifty percent (50%) of the capital stock shall be required.

u) To resolve on any of the matters mentioned below, the affirmative vote of all shareholders will be required:

1. The merger orsplit of the corporation or sale of substantially all the assets of the same.

2. The increase of the scope of the activities of the corporation to lines of business different to, that extend beyond: the collection, storage, transportation, treatment, and final disposal of dangerous solid or liquid substances in the United States of México, including but not limited to their reuse, recycle, mixture, thermic treatment, bioremediation, confinement, importation, exportation, and to the activities that the corporation would be performing in the matter of industrial residues at the moment in which the referred increase of scope is resolved. Within the activities that the corporation will be able to perform and that will not be considered an increase of their scope the following are included, the incineration, transportation, thermic treatment, and bioremediation of dangerous solid or liquid substances in the United Mexican States, including the acquisition of facilities and real estates in order to perform all the activities herein referred.

3. The issuance of preferred shares of stock.

4. Increases or decreases to the capital stock or the division of shares.

5. The appointment and revocation of the Examiner of the corporation that had been appointed by the unanimous agreement of the shareholders. In case there is one examiner appointed by each Series of shares, the appointment and removal of its respective Examiner will correspond to the shareholders of each Series

6. The change in the nationality of the corporation.

7. The dissolution of the corporation.

8. The amendment to the bylaws of the corporation regarding the issues foreseen in paragraphs 1 through 13 of this subsection u).

9. The execution or amendment to any agreement or covenant with any shareholder of the corporation or affiliate of the latter, that is not in the normal business course of the corporation.

10. The performance of any expense of capital that in an accumulated form or in an individual operation exceeds per fiscal year US$10 million (ten million Dollars currency of the United States of America) or its equivalent in Mexican currency.

11. The sale of assets of the corporation for an amount that in an accumulated form or in an individual operation exceeds per fiscal year US$1 million (one million Dollars currency of the United States of America) or its equivalent in Mexican currency.

12. The execution of loans or credits that individually or jointly exceed per fiscal year US$10 million (ten million Dollars currency of the United States of America) or its equivalent in Mexican currency.

13. The execution of encumbrances, mortgage, or pledge over the assets of the corporation in a value that individually or jointly exceeds US$10 million (ten million Dollars currency of the United States of America) or its equivalent in Mexican currency.

v) With respect to voting at special meetings of shareholders the provisions of Article 195 of the General law of Mercantile Corporations, shall be applied.

w) The shareholders may adopt any resolution of their interest without a meeting, when the corresponding resolution must be approved unanimously by the shareholders who represent the totality of the shares with right to vote or of the special class of shares. The resolutions adopted in this manner, shall have all the legal effects that any ordinary, extraordinary or special shareholders' meeting have, if they are evidenced by public instrument or by private instrument ratified before a notary public or they complied with the following requirements:

1. Once a consensus exists between the shareholders with respect to the content of the resolution, the Secretary of the meeting shall prepare the text of the resolution and deliver it to the shareholders through the most expeditious way to the domicile registered in the company.

2. In the event that the shareholders agreed with the corresponding text, each shareholder shall sign a copy of the resolution and deliver it to the Secretary of the company through the most expeditious way.

3. Once, each of the shareholders have signed a copy of the resolution, the Secretary of the company shall prepare a writ to evidence and certify the text of the resolution and that it was unanimously approved by the shareholders with right to vote. Such writ shall be transcribed in the corresponding minutes book and signed by the Secretary and Chairman of the company.

4. The Secretary shall have a file with regard to the writs that must be prepared in accordance with the above paragraph, and shall aggregate copies of the resolution signed by each of the shareholders with right to vote and any other document related with the resolution approved.

5. The resolution shall be protocolized if it is one of those that requires to be protocolized by law or by this By laws, or when the resolution requires an extraordinary shareholders' meeting.

## CHAPTER IX
## MANAGEMENT OF THE CORPORATION

TWENTIETH. Management of the corporation shall be vested in a Board of Directors composed of at least five (5) directors, who may or may not be shareholders. In case the number of directors to be appointed is of five (5), the titleholders of the shares that are part of the Series "FI" and "VI" will have the right to appoint four (4) out of the five directors and the titleholders of the shares of the Series "FII" and "VII" will have the right to appoint one (1) out of the five directors. The right to appoint directors includes the right to appoint

CGEA0041206

their corresponding substitutes, in the understanding that they will exclusively substitute the absences of the Directors appointed by the same Series. If the shareholders' meeting takes the resolution of appointing more than five directors, the proportion for the appointment of directors herein foreseen for the different Series will be respected. The shareholders' Meeting, at the moment of appointing the persons that form the Board of Directors, can request, if it considers it convenient, that its members secure the responsibility in which they could incur while performing their position by granting the guarantee that the Meeting determines for such effect.

TWENTY FIRST.  Any one or more shareholders holding at least twentyfive percent (25%) of the total issued an outstanding shares of the corporation shall be entitled to elect one Director and his Alternate.   The Shareholders shall elect, from among the members elected, a Chairman of the Board who shall remain in office for one (1) year.

TWENTY SECOND.  Each shareholder or group of shareholders of the corporation that have elected one or more Directors shall also be entitled to appoint one or more alternates to substitute for the same at a meeting when the principal Director or Directors are absent on in case of death, removal, resignation, legal incapacity or any other permanent impediment to the proper discharge of the functions of said principal Director or Directors.

TWENTY THIRD.  Members of the Board and their alternates shall remain in office for one year or until they are replaced by their successors.  The members of the Board and their alternates may be removed at any time by the shareholders of the Series that appointed them. The removal of any Board member appointed by a minority of shareholders may only be effected upon the removal of all other Board members.  Similarly, any shareholder may propose the removal of any Director appointed by shareholders of a different series only if there is a justified cause for such removal. The Directors and their alternates may be reelected.  If a quorum of the Board cannot be formed due to the death, removal, resignation, incapacity or permanent impediment of one or more directors and their alternates, the Examiner or Examiners by majority, shall designate a successor or successors, as the case may be, to hold office until their replacements have been appointed by a meeting of shareholders or by the unanimous resolution adopted by the shareholders out of a meeting and confirmed in writing. In case there would be permanent vacancies of Directors, the shareholders of the Series that had appointed the Director or Directors that had originated such vacancy shall have the right to appoint the Director or Directors required to fulfill such vacancies.

TWENTY FOURTH.  The Board of Directors may meet at any place designated in the notice for the meeting. The Board may meet as frequently as is deemed necessary or convenient by its Chairman, or any three (3) of its members or acting alternates.  Written notice of any such meeting shall be sent to all directors and their alternates and to all examiners and their alternates at least fifteen (15) days prior to the meeting, by telex, telefax, facsimile, telegram, or cablegram confirmed by registered airmail, if the recipient resides abroad, or by registered mail if the recipient resides within the United Mexican States, duly prepaid, to the latest address registered with the Secretary by each recipient.  Said notice shall contain the hour, date, place and Items in the Agenda of the meeting.

Any meeting of the Board shall be valid, however called, if all directors or acting Alternate directors, and Examiners or their alternates are present at the meeting.

TWENTY FIFTH.

a)  A quorum shall exist at any meeting of the Board of Directors only if at least a majority of the Directors or of their respective alternate is present.

b) Any resolutions of the Board of Directors shall only be passed with the approval of at least a majority of the Directors or of their respective alternates present at the meeting.

c) The Chairman of the Board or the person who would take that position during the Chairman's absence shall not be entitled to cast an additional tie breaking vote. Minutes of all meetings of the Board shall be prepared and transcribed in the appropriate minute book, signed by at least the chairman and secretary of the meeting.

d) The Board of Directors may adopt any resolution of their interest without a board meeting, when the corresponding resolution must be approved unanimously by the directors who represent the Board of Directors. The resolutions adopted through this manner, shall have all the legal effects that any board meeting has, if it is evidenced by public instrument or by private instrument ratified before a notary public or it complies with the following requirements:

1. Once a consensus exists between the directors with respect to the content of the resolutions, the Secretary of the meeting shall prepare the text of the resolution and deliver it to the directors through the most expeditious way to the domicile registered in the company.

2. In the event that the directors agreed with the corresponding text, each director shall sign a copy of the resolution and deliver it to the Secretary of the company through the most expeditious way.

3. Once, each of the directors have signed a copy of the resolution, the Secretary of the company shall prepare a text to evidence and certify the text of the resolution and that it was unanimously approved by the directors with right to vote. Such writ shall be transcribed in the corresponding board meeting book and signed by the Secretary and the Chairman of the company.

4. The Secretary shall have a file with regard to the writs that must be prepared in accordance with the above paragraph, and shall aggregate copies of the resolution signed by each of the directors and any other document related with the resolution approved.

e) The following issues shall be approved by the Board of Directors:

1) The approval or amendment of the annual budget, of the business plan, or of the capital investments program.

2) The approval of the expenses of capital per entry and per period that exceed the amount determined by the same Board of Directors.

3) The purchase, sale , or lease of assets outside of the ordinary course of business  for an amount that exceeds the sum that the Board of Directors determines.

4) The approval or amendment of any agreement when the amount of that agreement exceeds the one determined for such effect by the Board of Directors.

5) Assuming any debt in excess to the amount determined for such effect by the Board of Directors.

6) The beginning or the transaction regarding any lawsuit whose amount exceeds the one determined for such effect by the Board of Directors.

7) The approval of any agreement or amendment to the same that is executed with any shareholder or any of its affiliates.

8) The execution of any payment guaranty or of compliance of obligations of any third party or granting a credit to any third party, unless the aforesaid refers to operations in the ordinary course of business of the corporation.

9) The incorporation, purchase, or sale of any subsidiary of the corporation or of the shares that represent the capital stock of such subsidiary.

10) The acquisition, purchase, or subscription of shares, quotas, obligations, or other titles in any company, that would not be a subsidiary of the corporation.

11) The execution of any encumbrance over assets of the corporation, diverse from the ones that result form the authorized acquisitions or from those that result due to the enforcement of the Law.

12) The amendments to the accounting policies.

13) The request of permits, authorizations, or licenses of material importance that need to be submitted to the government authorities.

14) Any covenant, license, operation, or act that could have as an effect to difficult or make impossible the continuity of the operations of the corporation.

15) Employing or firing any person that has a higher salary than the amount for such effect determined by the Board of Directors.

16) The substantial amendments to the labor policies.


TWENTY SIXTH. The Board of Directors shall have the broadest legal authority granted to attorneys-in-fact to enter into all agreements, to carry out all acts and operations which by law or by this charter and bylaws are not expressly reserved to a meeting of shareholders, to manage and direct the affairs of the corporation, to carry out the purpose of the corporation and to represent the corporation before any judicial (criminal or civil), labor or administrative authorities, whether federal, state or municipal, with as broad authority for lawsuits and collections, acts of administration and acts of ordinary domain as provided in the first three paragraphs of Article two thousand five hundred fifty four (2554) of the Civil Code for the Federal District and the corresponding articles of the Civil Code of the State of Nuevo Leon and with those powers which, according to law, must be expressly set forth and referred to in Articles two thousand five hundred eighty seven (2587) of the Civil Code of the Federal District and the corresponding articles of the Civil Code of the State of Nuevo Leon and those powers referred to in articles two thousand five hundred and seventy four (2574), two thousand five hundred and eighty two (2582) and two thousand five hundred ninety three (2593) of the Civil Code for the Federal District and the corresponding articles of the Civil Code of the State of Nuevo Leon, and the express powers to administer labor relations, conciliate, appear at trial in terms of fractions I and VI of Articles 876 and Article 878 of the Federal Labor Law, and to enter into accords, powers and authorities in accordance with article 9 (nine) of the General Law of Negotiable Instruments and Credit Operations, including but without any limitation whatsoever, the following:

a) To file and withdraw criminal complaints, submit accusations, assist the District Attorney and grant pardons;
b) To file and desist from "amparo" proceedings;
c) To grant, without limitations or with those the Board deems proper and revoke general and/or special powers of attorney of any kind whatsoever, including but no limited to general powers for acts of administration or lawsuits and collections;
d) To grant its powers to one or more persons, managers, executives, attorneys in fact or committees as the Board deems convenient;

e) To withdraw from litigation;

f) To make settlements;

g) To submit to arbitration;

h) To answer and make interrogatories;

i) To make challenges;

j) To receive payments;

No member of the Board of Directors, may individually or separately, exercise any of the foregoing powers except as expressly authorized by the Board of Directors or by a meeting of Shareholders, or by an unanimous resolution adopted by the shareholders out of a meeting and confirmed in writing.

## CHAPTER X
## OFFICERS

TWENTY SEVENTH. The Shareholders' Meeting or the Board of Directors will elect among its members a President, who will have, in addition to the representation of the Board, the powers and authority foreseen by the Law and these bylaws, as well as a Secretary who may or may not be a director and who will be the Secretary of the Corporation. In addition, the Shareholders' Meeting or the Board of Directors will appoint an Executive President of the Corporation in charge of the supervision and direction in a general form of the businesses and social activities, with the powers and authority of General Attorney in Fact that for such effect are granted to him by the Shareholders' Meeting or the Board of Directors, a Vice-president for the Development of Business who will support the Executive President in his labors, as well as a General Director in charge of the operation and daily conduction of the social activity, with the authority as general attorney that for such effect is conferred to him by the Shareholders' Meeting or the Board of Directors. In addition, the Board or the Shareholders' Meeting can appoint one or more Directors or General or Special Managers who will have the authority expressly granted to them.

A meeting of shareholders or the shareholders by the unanimous resolution adopted by the shareholders out of a meeting and confirmed in writing at its discretion, may remove any person appointed under this clause. Likewise, the Board of Directors may remove any of said persons that it appointed.

## CHAPTER XI
## SURVEILLANCE OF THE CORPORATION

TWENTY EIGHT The surveillance of the corporation will be conferred to an Examiner if the shareholders of the different Series agree with the person appointed or, in the contrary, the surveillance of the corporation will be conferred to two Examiners in the understanding that one of them will be appointed by the shareholders of the Series "FI" and "VI" and the second one by the shareholders of the Series "FII" and "VII". They may or may not be shareholders and shall have the rights and obligations conferred to them by articles 166 and the following ones of the General Law of Mercantile Corporations. The Examiners shall remain in office for one year, or until their successors have been appointed and taken office. At the meeting of shareholders appointing the Examiner or Examiners, any one or more shareholders holding at least twenty five percent (25%) of the total issued and outstanding shares of the corporation shall be entitled to elect one Examiner and his alternate. The shareholder or group of shareholders who designate an Examiner may likewise appoint one or more alternate Examiners, who need not be shareholders, to substitute for the Examiners during their temporary or permanent absences.

The shareholders' Meeting, at the moment of appointing the persons that will act as Examiners, can request, if it considers it convenient, that they secure the responsibility in which they could incur while performing their position by granting the guarantee that the Meeting determines for such effect.

TWENTY NINTH. Any Examiner of the corporation shall:

a) Have the right to perform an annual audit and examination of the corporation's books and records in order to render a certified opinion of the financial position of the corporation in conformity with generally accepted accounting principles applied on a consistent basis; and

b) Have full access at all times during working hours of the corporation to all facilities, records, documents and information of the corporation and its operations.

## CHAPTER XII
## FISCAL YEAR, FINANCIAL STATEMENTS, RESERVES
## AND LIMITED LIABILITY

THIRTIETH.  The fiscal year of the corporation shall be as determined by a General Ordinary Meeting of Shareholders.

THIRTY FIRST.  A management report and financial statements as required by article 172 of the General Law of Mercantile Corporations shall be prepared as of the close of each fiscal year and shall contain all the information required by such article.  Such financial statements shall be prepared within the three months immediately following the close of each fiscal year and, together with the management report, shall be made available to the shareholders at least fifteen (15) days prior to the date fixed for the meeting of shareholders at which it is to be discussed.

THIRTY SECOND.  After making the required provisions for payment of taxes, profit participation of employees, formation or increase of the legal reserve fund until such reserve equals at least one fifth of the corporate capital, the earning of the corporation for each fiscal year based upon an approved balance sheet shall be allocated in the manner approved by a meeting of shareholders, or by the unanimous resolution adopted by the shareholders out of a meeting and confirmed in writing.

THIRTY THIRD.  The liability of each shareholder shall be limited to the par value of the shares of stock held by such shareholder and each shareholder shall be liable for any unpaid part of the par value of said shares.

## CHAPTER XIII
## DISSOLUTION AND LIQUIDATION

THIRTY FOURTH.  The corporation shall be dissolved in the cases set forth in Articles 229 of the General Law of Mercantile Corporations, but only in accordance with the provisions of Article 232 of said Law.

THIRTY FIFTH.  The liquidation of the corporation shall be carried out under the provisions of Chapter II of the General law of Mercantile Corporations by one or more liquidators.

THIRTY SIXTH.  During the liquidation of the corporation, the liquidators shall have the same authority and obligation as the Board of Directors and Officers during the normal existence of the corporation.

THIRTY SEVENTH.  Prior to recording the appointment of the liquidator or liquidators at the Public Registry of Commerce and to the assumption, by the same of their obligations, the Board of Directors, Officers, General Managers and Managers of the corporation shall continue in office.

However, the Board, Officers, General Directors and Managers may not initiate new transactions after the resolution to dissolve the corporation has been approved by the shareholders or after the existence of a legal cause for dissolution is approved.

EIGHT: As a consequence of the RESOLUTIONS adopted in this Meeting, it is hereby approved to issue, in substitution of the current stock certificates that will be canceled, new Stock Certificates that support all the shares representing the capital stock of the Corporation, and that shall include the amendments to the by-laws and to the type of Series of shares approved by the Meeting.

Similarly, and as a consequence of the sales of shares approved in this Meeting, that several shareholders of this Corporation pretend to make, it is hereby approved that the new Stock Certificates issued according to the content of this RESOLUTION, are issued in favor of the actual shareholders at the moment in which these Stock Certificates are issued.

IV. Regarding the THIRD POINT of the Agenda, the Secretary read the Report of the Board of Directors regarding the situation and activities of the Corporation during the Partial Corporate Year comprised between January 1 and October 31 2000, and also submitted to the Shareholders the General Accounts of the Corporate Year that is being revised and the Financial Reports of the Corporation.-

Following, the Examiner read his report.

After listening to the Report of the Board of Directors, the Examiner's Report and after revising the Financial Reports of the Corporation, the Meeting by unanimous vote adopted the following RESOLUTIONS:

NINTH: The Report of the Board of Directors about the situation and activities of the Corporation during the Partial Corporate Year comprised between January 1 and September 30 of the year 2000 is approved without any reserve.

TENTH. Based upon the report of the Examiner the General Accounts of the Corporate Year comprised between January 1 and October 31 of the year 2000, as well as the Financial Reports of the Corporation that correspond to the referred period are approved without any reserve. The aforementioned documents shall be attached to the file of this Minute.

ELEVENTH: All and every one of the Resolutions taken and performed by the Board of Directors of the Corporation made while performing their functions during the referred Corporate Year are ratified, being released from any responsibility that there could be.

V. Regarding the FIFTH POINT of the Agenda, the Secretary read the request of a shareholder so that all the acts and resolutions adopted by the Meeting since the incorporation of the company up to date are ratified.

After an extensive discussion, the Meeting by unanimous vote adopted the following RESOLUTION:

TWELFTH: All the acts and agreements adopted and performed by the Meeting since the Incorporation of the Company up to date are ratified.

VI. Regarding the SIXTH POINT of the Agenda, the Secretary read the letters of resignation with effects to this date of the Board of Directors, the Secretary, the General Director, and the Examiners submitted as a consequence of the changes to the management of the Corporation

Following, the Meeting by unanimous vote adopted the following RESOLUTIONS:

CGEA0041212

THIRTEENTH: The resignations of the Board of Directors, the Secretary, the General Director, and the current Examiners are hereby accepted and they are released from any liability in which they could have incurred while performing the aforesaid positions, the aforesaid since they began with such positions and up to date.

VII.- Regarding the SEVENTH POINT of the Agenda the Secretary informed to the Shareholders that in the terms of the By-laws, it is necessary to appoint a Board of Directors and the Examiners that shall hold those positions beginning on this date, as well as the determination of their fees.

Following the Secretary read the proposal that a Shareholder submitted for the consdieration of the Meeting regarding the Board of Directors and the Examiners that shall hold those positions beginning on this date

After discussing the aforesaid proposal, as well as the determination of the corresponding fees, the Meeting by unanimous vote adopted the following RESOLUTIONS:

FOURTEENTH: It is hereby appointed the following Board of Directors and Examiners that shall hold those positions beginning on this date:

## BOARD OF DIRECTORS

**DIRECTORS OF THE
SERIES FI AND VI**

| | | |
|---|---|---|
| JEAN ALAIN JULLIEN | PRESIDENT | |
| PASCAL GAUTHIER | MEMBER | |
| JEAN JACQUES GRIMAUX | MEMBER | |
| PIERRE RELLET | MEMBER | |

**ALTERANTE
DIRECTORS OF THE
SERIES FI AND VI**
VACANT
VACANT
VACANT
VACANT

**DIRECTORS OF THE
SERIES FII AND VII**

ING. HECTOR VARGAS
GARZA

**ALTERANTE
DIRECTORS OF THE
SERIES FII AND VII**
C.P. JOSE DE JESUS
VARGAS AGUIRRE

LIC. LUIS SANTOS THERIOT       SECRETARY (BUT NOT DIRECTOR)

**EXAMINER OF THE
SERIES FI AND VI**
MR. ALBERTO VAZQUEZ

**EXAMINER OF THE
SERIES FI AND VI**
LIC. ANDRES
GONZALEZ SANDOVAL

FIFTEENTH: The Board of Directors appointed according to the previous RESOLUTION shall have the power, authority, and obligations contained in the by-laws. Similarly the appointed Examiners of the Corporation shall have the obligations and attributions contained in the by-laws and the waiver of the Directors and Examiners to receive any fee for the performance of their position is accepted, same that is thanked to them by this Meeting.

CGEA0041213

SIXTEENTH The Directors and Examiners appointed according to the previous RESOLUTIONS shall not be required to provide the corresponding guarantees in order to secure their position in the terms of the law.

VIII. Regarding the EIGHT and last POINT of the Agenda, the Meeting by unanimous vote adopted the following RESOLUTION:

SEVENTEENTH:. Messrs. LIC. LUIS SANTOS THERIOT, LIC. JOSE GUADALUPE GONZALEZ MERAZ, AND LIC. ALEJANDRO MARTIN SNACHEZ FRANCO are appointed as SPECIAL DELEGATES of this Meeting so that in a joint or separate form they appear before the Notary public of their choice in order to protocolize the required parts of this Minute and to perform the required procedures in order to file the corresponding Public Deed of the aforesaid protocolization in the Public Registry of Property and Commerce, in case that would be necessary or convenient, formalizing the adopted Resolutions.

Without any other issue to deal with, this Meeting finished after being suspended by the proper time so that the Secretary could draft this Minute; following the Secretary read it and it was approved by unanimous vote, and was signed by the President and the Secretary of the Meeting, all the representatives of the shareholders.

It is herein set forth that all the shareholders and representatives of shareholders were present since the beginning of this Meeting until it finished, as well as in the moment of taking each and every one of the adopted RESOLUTIONS.

A copy of this Minute in simple paper, the shown proxies, the Attendance List signed by the Attendants and duly verified by the appointed examiners and the other documents shown in the Meeting are added as attachments of this Minute. The aforesaid forms the file of this Meeting that is kept in the files of the Secretary.

The Meeting was adjourned at the 11:30 hours of the day, month, and year mentioned at the beginning.

| | |
|---|---|
| ING. HECTOR VARGAS GARZA<br>PRESIDENT | LIC. ALEJANDRO MARTIN SANCHEZ<br>FRANCO<br>SECRETARY |
| CHEMICAL WASTE MANAGEMENT,<br>INC.<br>Represented by ALEJANDRO SANCHEZ<br>FRANCO | VALORES ECOLOGICOS, S.A. DE C.V.<br>Represented by MR.HECTOR VARGAS<br>AGUIRRE |

C.P. AMEL CIENFUEGOS PECINO
EXAMINER

CGEA0041214

## ATTENDANCE LIST

TO THE GENERAL EXTRAORDINARY SHAREHOLDERS' MEETING OF RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. THAT TOOK PLACE AT THE 10:30 HOURS OF NOVEMBER 14, 2000 IN LAZARO CARDENAS 2400 OFFICE B-21, SAN PEDRO GARZA GARCIA, N.L. CORPORATE DOMICILE.

| SHAREHOLDERS | SHARES | | | SIGNATURES |
|---|---|---|---|---|
| | SERIES B | SERIES B-V | SERIES P | |
| CHEMICAL WASTE MANAGEMENT, INC. represented by ALEJANDRO SÁNCHEZ FRANCO | 1,085 | 372 | 3,343 | _____ |
| INMOBILIARIA CONFINAMINA, S.A. DE C.V. represented by MR. HECTOR VARGAS AGUIRRE | 686 | 42 | 1,672 | _____ |
| VALORES ECOLOGICOS, S.A. DE C.V. represented by MR. HECTOR VARGAS AGUIRRE | 229 | 14 | 557 | _____ |
| TOTALS | 2,000 | 428 | 5,572 | |
| TOTAL CAPITAL STOCK | | 8,000 | | |

The undersigned appointed as Teller in order to verify the Attendance Quorum of this Meeting, CERTIFIES that, after revising the Book of Registry of Shares, the proxies submitted, and this Attendance List the totality of the 8,000 shares of the Total Capital Stock of RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. that represent the 100% of the subscribed and paid capital stock of the Corporation.

_____
C.P. ROBERTO SALAZAR VILLARREAL
TELLER

CGEA0041215

### RESIDUOS INDUSTRIALES MULTIQUIM
### GENERAL SHAREHOLDERS' MEETING
### NOVEMBER 14, 2000

DEAR SHAREHOLDERS

According to the attributions and obligations that the By-laws of the Corporation grant me, as well as articles 164, 166, 169 and other relatives of the General Law of Commercial Corporations I proceeded to perform an examination of the operations of the Corporation regarding the Partial Corporate Year of the year 2000 that covers from January 1 to October 31, 2000.

Based upon such examination, I inform the Meeting the following:

I. I revised the existence of the guarantees referred by article 152 of the General Law of Commercial Corporations.

II. Every month I received from the Board of Directors sufficient information about the Financial Situation Sheet, as well as of the Gain and Loss Sheet..

III. I personally performed and exam of the operations, documentation and registries that the company has, to my judgment with the required extension to comply with the obligation of surveying the operations of the company.

IV. In my opinion the policies, accounting criteria and of information followed by the Corporation are adequate and sufficient.

V. In my opinion the report rendered by the Board of Directors to this Meeting is accurate and gives sufficient information about the operations of the company.

VI. As a consequence of all the above expressed and based upon the Financial Statements issued by the Corporation as of October 31, 2000 I recommend to this honorable Meeting the approval of the report rendered by the Managers as well as the ratification of all the acts and agreements taken by the Board of Directors during the mentioned period.

### ATTENTIVELY

### C.P. AMEL CIENFUEGOS PECINO
### EXAMINER

CGEA0041216

**RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V.**
**ACTA DE ASAMBLEA GENERAL ORDINARIA DE ACCIONISTAS**
**NOVIEMBRE 14, 2000**

En la ciudad de San Pedro Garza García, N.L., domicilio social de RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. siendo las (13:00) horas del día 14 de noviembre del (2000) se reunieron en Lázaro Cárdenas 2400 Edificio Losoles Despacho B-21, los representantes de accionistas cuyos nombres y firmas aparecen en la Lista de Asistencia al efecto preparada y certificada por el Escrutador designado, de la cual el original se agrega al expediente del duplicado de la presente Acta, con el objeto de celebrar una Asamblea General Ordinaria de Accionistas a la cual fueron debidamente citados. Estuvieron también presentes los Señores JEAN ALAIN JULLIEN y LIC. LUIS SANTOS THERIOT, Presidente y Secretario del Consejo de Administración de la Sociedad, respectivamente, así como los Señores SR. ALBERTO VAZQUEZ y LIC. ANDRES GONZALEZ SANDOVAL, Comisarios de la Sociedad y los Señores ING. HECTOR VARGAS GARZA, Lic. HECTOR VARGAS AGUIRRE, DR. JUAN ANTONIO CUELLAR LOPEZ y C.P. ROBERTO SALAZAR VILLARREAL, en calidad de invitados-

Presidió la Asamblea el Señor JEAN ALAIN JULLIEN en su calidad de Presidente del Consejo de Administración y actuo como Secretario el Señor LIC. LUIS SANTOS THERIOT en calidad de Secretario del Consejo de Administración, esto de conformidad con los Estatutos Sociales.

A propuesta del Presidente, por unanimidad de votos la Asamblea designó Escrutador al Señor C.P. ROBERTO SALAZAR VILLARREAL quien aceptó su cargo y procedió a verificar la correspondiente Lista de Asistencia, el Registro de Acciones y las Cartas Poder exhibidas, certificando que en la Asamblea de relación se encontraron legalmente representadas las 8,000 Acciones en que se encuentra dividido el capital social total de la Sociedad y por ende el quórum a que se refieren los Estatutos Sociales para declarar legitimamente instalada la Asamblea, distribuidas de la siguiente manera:

| ACCIONISTA | SERIE F- | SERIE F-I | SERIE V-I | SERIE V- |
|---|---|---|---|---|
| SARP INDUSTRIES ME: S.A. DE C.V. | 1200 | | 3600 | |
| INMOBILIARIA CONFINA! S.A. DE C.V. | 600 | | 1800 | |
| VALORES ECOLOGICOS, DE C.V. | | 200 | | 600 |
| TOTALES | 1800 | 200 | 5400 | 600 |

En virtud de la certificación del Escrutador respecto de haberse encontrado representado el 100% de las acciones representativas del Capital Social total suscrito y pagado de la Sociedad, el Presidente declaró legalmente instalada la Asamblea y apta para tratar y resolver los asuntos que la motivan, a pesar de no haberse publicado Convocatoria previa, de conformidad con lo dispuesto por los Estatutos Sociales.

CGEA0041217

Acto seguido el Secretario dio lectura, a la siguiente:-

ORDEN DEL DIA:

I.- RATIFICACION DEL NOMBRAMIENTO DEL CONSEJO DE ADMINISTRACION Y COMISARIOS Y DETERMINACION DE SUS EMOLUMENTOS.-

II.- REVOCACION DE PODERES OTORGADOS POR PARTE DE LA SOCIEDAD

III.- NOMBRAMIENTO DE DIVERSOS FUNCIONARIOS DE LA SOCIEDAD Y OTORGAMIENTO DE PODERES A FAVOR DE DIVERSAS PERSONAS.-

IV.- PRESENTACION DE UNA PROPUESTA PARA APROBAR CONTRATOS QUE CELEBRE LA SOCIEDAD.

V.- NOMBRAMIENTO DE DELEGADO O DELEGADOS ESPECIALES PARA FORMALIZAR LOS ACUERDOS ADOPTADOS, EN SU CASO.

I.- Con respecto al desahogo del PRIMER PUNTO contenido en la Orden del Día, el Secretario informó a los Señores Accionistas que se había presentado una propuesta para la ratificación del nombramiento del Consejo de Administración y los Comisarios, así como la determinación de sus emolumentos.

Discutida que fue la proposición anterior, así como la determinación de los emolumentos correspondientes, la Asamblea por unanimidad de votos tomó los siguientes ACUERDOS:

PRIMERO:   Se ratifica la designación del Consejo de Administración y Comisarios de la Sociedad, de modo que que dichos órganos de administración y vigilancia quedan designados como sigue:

CONSEJO DE ADMINISTRACION

| CONSEJEROS PROPIETARIOS DE LAS SERIES "F I" y "V I" | | CONSEJEROS SUPLENTES DE LAS SERIES "F I" y "V I" |
|---|---|---|
| JEAN ALAIN JULLIEN | PRESIDENTE | VACANTE |
| PASCAL GAUTHIER | CONSEJERO | VACANTE |
| JEAN JACQUES GRIMAUX | CONSEJERO | VACANTE |
| PIERRE RELLET | CONSEJERO | VACANTE |

CONSEJERO PROPIETARIO
DE LAS SERIES "F II" y "V II"

CONSEJERO SUPLENTE
DE LAS SERIES "F II" y "V II"

ING. HECTOR VARGAS GARZA     LIC. JOSE DE JESUS VARGAS AGUIRRE

LIC. LUIS SANTOS THERIOT     SECRETARIO NO CONSEJERO

COMISARIOS

COMISARIO DE LAS SERIES
"F I" y "V I"

COMISARIO DE LAS SERIES
"F II" y "V II"

SR. ALBERTO VAZQUEZ     LIC. ANDRES GONZALEZ SANDOVAL

**SEGUNDO:** El Consejo de Administración designado conforme al ACUERDO precedente tendrá los poderes, facultades y obligaciones contenidos en los Estatutos Sociales. Por su parte, los Comisarios de la Sociedad designados tendrán las obligaciones y atribuciones contenidas en los Estatutos Sociales y se acepta la renuncia de los Consejeros y los Comisarios a percibir remuneración alguna por el desempeño de sus funciones, lo cual les es agradecido plenamente por la presente Asamblea.-

**TERCERO:** Se exime a los Consejeros y Comisarios designados conforme a los ACUERDOS que anteceden, a prestar las garantías correspondientes para caucionar su función en los términos de la ley.-

II.- Con respecto al desahogo del SEGUNDO PUNTO contenido en la Orden del Día, la Asamblea por unanimidad de votos, tomó el siguiente ACUERDO:

**CUARTO:** Se revocan todas las designaciones y poderes otorgados por la Sociedad hasta esta fecha, con excepción de los siguientes los cuales subsisten integramente tal como fueron otorgados:

| NOMRE DEL APODERADO: | NUMERO Y FECHA DE LAS ESCRITI PUBLICAS QUE CONTIENEN PODERES QUE SUBSISTEN: |
|---|---|
| 1. ROGELIO CANTU PEREZ | 17,737 de mayo 13 de 1997 |
| 2. JOSE LUIS TORRES CERDA | 17,951 de agosto 28 de 1997 |
| 3. SERGIO SANCHEZ RODRIGUEZ | 18,354 de enero 27 de 1998 |
| 4. ENRIQUE ALVARADO RAMIREZ | 18,356 de enero 27 de 1998 |
| 5. ALFREDO CONTRERAS CAVAZOS | 18,357 de enero 27 de 1998 |
| 6. SALOMON ROJAS PENA | 18,360 de enero 27 de 1998 |
| 7. MIGUEL ANGEL ARAOZ PATINO | 18,363 de enero 27 de 1998 |
| 8. GERARDO LOPEZ DE LA ROSA | 18,371 de enero 27 de 1998 |
| 9. ALBERTO CUERVO PEREZ | 18,373 de enero 27 de 1998 |
| 10. HECTOR RENE LOPEZ DINO | 18,374 de enero 27 de 1998 |
| 11. VICTOR HUGO REYES CANTU | 18,377 de enero 27 de 1998 |
| 12. DAGOBERTO TREVINO RODRIGU | 18,382 de enero 27 de 1998 |
| 13. GERARDO VAZQUEZ FALCON | 18,412 de febrero 10 de 1998 |
| 14. VICTOR PRIETO OLGUIN | 19,327 de enero 19 de 1999 |
| 15. JOSE JUAN GONZALEZ ALVAREZ | 19,637 de mayo 10 de 1999 |
| 16. ROBERTO CANTU FLORES | 19,673 de mayo 26 de 1999 |
| 17. LUIS MARTIN ESPINOSA GUTIERF | 19,674 de mayo 26 de 1999 |
| 18.LEOPOLDO CERVANTES LEON | 19,271 de diciembre 21 de 1998 |
| 19.CANDELARIO FLORES BARCENAS | 2,534 de marzo 29 del 2000 |
| 20. ALEJANDRO SANCHEZ FRANCO | 2,535 de marzo 29 del 2000 |

**QUINTO:** Se designan Apoderdos de la Sociedad a los Señores Lic. Héctor Vargas Aguirre, Doctor Juan Antonio Cuéllar López y Roberto Salazar Villarreal y se le otorgan los siguientes poderes y facultades:

**a) Poder General para Pleitos y Cobranzas,** el cual podrán ejercer conjunta o separadamente, que se le concede con todas las facultades generales y las especiales que requieran cláusula especial, de acuerdo con lo previsto en los artículos 2,448 (dos mil cuatrocientos cuarenta y ocho) párrafo primero y 2,481 (dos mil cuatrocientos ochenta y uno) del Código Civil del Estado de Nuevo León, sus correlativos los artículos 2,554 (dos mil quinientos cincuenta y cuatro) párrafo primero y 2,587 (dos mil quinientos ochenta y siete) del Código Civil Federal, y los artículos correlativos de los Códigos Civiles de las demás entidades federativas de los Estados Unidos Mexicanos, estando facultado, por consiguiente, entre otras cosas, para representar a la Sociedad frente a todo tipo de autoridades, dependencias, entidades y organismos federales, estatales o municipales, sea de la especie y de la denominación que fueren, y frente a todo tipo de personas morales y físicas; para presentar toda clase de demandas; contestarlas, desistirse de ellas cuando en su opinión fuere conveniente y seguirlas en todas sus instancias; para interponer recursos o defensas; para ofrecer y desahogar pruebas; para interrogar o tachar testigos; para renunciar a términos o a plazos, para renunciar a competencias o jurisdicciones cuando sea permitido por la ley; para comprometer en árbitros o someterse a procedimientos arbitrales; para absolver y articular posiciones; para impugnar o recusar jueces, para recibir pagos; para presentar denuncias, acusaciones o querellas de naturaleza penal y para desistirse de ellas; para convertirse en tercero coadyuvante en el ejercicio de la acción penal y conceder perdones; para presentar demandas de amparo y desistirse de ellas cuando convenga a los intereses de la poderdante; para representar a la Sociedad conforme y para los efectos de los artículos (11) once, (46) cuarenta y seis, (47) cuarenta y siete, (134) ciento treinta y cuatro fracción (III) Tercera, (523) quinientos veintitrés, (692) seiscientos noventa y dos, fracciones (I, II y III) Primera, Segunda y Tercera, (786) setecientos ochenta y seis, (787) setecientos ochenta y siete, (873) ochocientos setenta y tres, (874) ochocientos    setenta y cuatro, (876) ochocientos setenta y seis, (878) ochocientos setenta y ocho, (880) ochocientos ochenta, (883) ochocientos ochenta y tres, (884) ochocientos ochenta y cuatro y demás relativos de la Ley Federal del Trabajo, para comparecer ante las Juntas de Conciliación y Arbitraje con la representación patronal y la representación legal de la empresa para todos los efectos de acreditar la personalidad y la capacidad en juicio o fuera de él, con facultades para articular y absolver posiciones, para desahogar la prueba confesional en todas sus partes; para comparecer con toda la representación legal bastante y suficiente a la audiencia de conciliación, de demanda y excepciones y de ofrecimiento y admisión de pruebas, así como para acudir a la audiencia de desahogo de pruebas; asimismo con facultades para proponer arreglos conciliatorios, celebrar transacciones, para tomar toda clase de decisiones para negociar y suscribir convenios laborales y en general, para incoar procesos y acciones de naturaleza civil, mercantil, penal, laboral, administrativa o de cualesquiera otras especies, entendiéndose que la enumeración de facultades contenida en este inciso es de carácter ejemplificativo y de ninguna manera limitativo.

**b) Poder General para Actos de Administración Laboral,** el cual podrán ejercer conjunta o separadamente de acuerdo con lo previsto en los numerales 11 (once), 786 (setecientos ochenta y seis) y 787 (setecientos ochenta y siete) de la Ley Federal del Trabajo; incluyendo

expresamente, pero sin que ello sea limitativo, facultades para actos de administración en materia laboral tales como la ocupación y distribución de trabajadores, la determinación de las tareas que corresponden a cada puesto o área de trabajo y su remuneración y, en su caso, la desocupación o promoción de todo tipo de trabajadores, pudiendo, por ende, negociar, celebrar, terminar o rescindir toda clase de contratos o convenios de trabajo; proponer arreglos conciliatorios, absolver posiciones para desahogar la prueba confesional y representar a la Sociedad frente a todo tipo de autoridades, dependencias, entidades y organismos federales, estatales o municipales, de naturaleza judicial, administrativa o del trabajo, sean de la especie y de la denominación que fueren y frente a todo tipo de personas morales y físicas, para cualquier trámite y/o procedimiento laboral administrativo y, en general, obligar a la Sociedad en materia laboral en todo aquello que competa a la administración.

c) **Poder General para Actos de Administración,** el cual podrán ejercer conjunta o separadamente de acuerdo con lo previsto en el segundo párrafo del artículo 2,448 (dos mil cuatrocientos cuarenta y ocho) del Código Civil del Estado de Nuevo León, su correlativo párrafo segundo del artículo 2,554 (dos mil quinientos cincuenta y cuatro) del Código Civil Federal y los artículos correlativos de los Códigos Civiles de las demás entidades federativas de los Estados Unidos Mexicanos.

d) **Poder General Cambiario** el cual deberán ejercer conjuntamente cualesquiera dos de los Apoderdos designados en este Acuerdo, en los términos de los artículos 9 (noveno) fracción I y 85 (ochenta y cinco) de la Ley General de Títulos y Operaciones de Crédito, que incluye, entre otras, facultades para suscribir, emitir, endosar, aceptar, protestar, avalar, presentar para aceptación y pago y, en general, para negociar títulos de crédito, así como para abrir y cerrar cuentas bancarias a nombre de la Sociedad, girar cheques en contra de dichas cuentas y retirar fondos de ellas.

e) Los Apoderados Lic. Héctor Vargas Aguirre, Doctor Juan Antonio Cuéllar López y C.P. Roberto Salazar Villarreal tendrán facultades para otorgar poderes generales o especiales concediendo facultades y poderes de entre los señalados en los incisos a), b), y c) arriba precisados, con o sin facultades de substitución, así como para revocar los poderes que hayan sido otorgados; lo anterior, siempre con apego a las limitaciones señaladas en el inciso e) de esta resolución.

**SEXTO:** Expresamente se resuelve que tanto los Poderes que subsisten conforme al ACUERDO CUARTO, como los otorgados en esta Asamblea estarán sujetos, en cuanto a su ejercicio, a las limitaciones que establecen los Estatutos Sociales de la Sociedad.

III.- Con respecto al desahogo del TERCER PUNTO contenido en la Orden del Día, la Asamblea por unanimidad de votos, salvando el suyo los interesados, tomó los siguientes ACUERDOS:

**SEPTIMO:**    Se designa al ING. HECTOR VARGAS GARZA como PRESIDENTE EJECUTIVO de la Sociedad

**OCTAVO:**    Se designa al LIC. HECTOR VARGAS AGUIRRE como VICE PRESIDENTE DE DESARROLLO DE NEGOCIOS de la Sociedad el cual auxiliará al Presidente Ejecutivo en sus labores.

**NOVENO:**    Se designa al DR. JUAN ANTONIO CUELLAR LOPEZ como DIRECTOR GENERAL de la Sociedad

**DECIMO:**    Se designa Apoderado de la Sociedad al Señor Jean Alain Jullien a quien se le otorgan los siguientes poderes y facultades, los cuales en cuanto a su ejercicio tendrán las limitaciones que establecen los Estatutos Sociales de la Sociedad :

**a) Poder General para Pleitos y Cobranzas,** que se le concede con todas las facultades generales y las especiales que requieran cláusula especial, de acuerdo con lo previsto en los artículos 2,448 (dos mil cuatrocientos cuarenta y ocho) párrafo primero y 2,481 (dos mil cuatrocientos ochenta y uno) del Código Civil del Estado de Nuevo León, sus correlativos los artículos 2,554 (dos mil quinientos cincuenta y cuatro) párrafo primero y 2,587 (dos mil quinientos ochenta y siete) del Código Civil Federal, y los artículos correlativos de los Códigos Civiles de las demás entidades federativas de los Estados Unidos Mexicanos, estando facultado, por consiguiente, entre otras cosas, para representar a la Sociedad frente a todo tipo de autoridades, dependencias, entidades y organismos federales, estatales o municipales, sea de la especie y de la denominación que fueren, y frente a todo tipo de personas morales y físicas; para presentar toda clase de demandas; contestarlas, desistirse de ellas cuando en su opinión fuere conveniente y seguirlas en todas sus instancias; para interponer recursos o defensas; para ofrecer y desahogar pruebas; para interrogar o tachar testigos; para renunciar a términos o a plazos, para renunciar a competencias o jurisdicciones cuando sea permitido por la ley; para comprometer en árbitros o someterse a procedimientos arbitrales; para absolver y articular posiciones; para impugnar o recusar jueces, para recibir pagos; para presentar denuncias, acusaciones o querellas de naturaleza penal y para desistirse de ellas; para convertirse en tercero coadyuvante en el ejercicio de la acción penal y conceder perdones; para presentar demandas de amparo y desistirse de ellas cuando convenga a los intereses de la poderdante; para representar a la Sociedad conforme y para los efectos de los artículos (11) once, (46) cuarenta y seis, (47) cuarenta y siete, (134) ciento treinta y cuatro fracción (III) Tercera, (523) quinientos veintitrés, (692) seiscientos noventa y dos, fracciones (I, II y III) Primera, Segunda y Tercera, (786) setecientos ochenta y seis, (787) setecientos ochenta y siete, (873) ochocientos setenta y tres, (874) ochocientos    setenta y cuatro, (876) ochocientos setenta y seis, (878) ochocientos setenta y ocho, (880) ochocientos ochenta, (883) ochocientos ochenta y tres, (884) ochocientos ochenta y cuatro y demás relativos de la Ley Federal del Trabajo, para comparecer ante las Juntas de Conciliación y Arbitraje con la representación patronal y la representación legal de la empresa para todos los efectos de

acreditar la personalidad y la capacidad en juicio o fuera de él, con facultades para articular y absolver posiciones, para desahogar la prueba confesional en todas sus partes; para comparecer con toda la representación legal bastante y suficiente a la audiencia de conciliación, de demanda y excepciones y de ofrecimiento y admisión de pruebas, así como para acudir a la audiencia de desahogo de pruebas; asimismo con facultades para proponer arreglos conciliatorios, celebrar transacciones, para tomar toda clase de decisiones para negociar y suscribir convenios laborales y en general, para incoar procesos y acciones de naturaleza civil, mercantil, penal, laboral, administrativa o de cualesquiera otras especies, entendiéndose que la enumeración de facultades contenida en este inciso es de carácter ejemplificativo y de ninguna manera limitativo.

b) **Poder General para Actos de Administración Laboral,** de acuerdo con lo previsto en los numerales 11 (once), 786 (setecientos ochenta y seis) y 787 (setecientos ochenta y siete) de la Ley Federal del Trabajo; incluyendo expresamente, pero sin que ello sea limitativo, facultades para actos de administración en materia laboral tales como la ocupación y distribución de trabajadores, la determinación de las tareas que corresponden a cada puesto o área de trabajo y su remuneración y, en su caso, la desocupación o promoción de todo tipo de trabajadores, pudiendo, por ende, negociar, celebrar, terminar o rescindir toda clase de contratos o convenios de trabajo; proponer arreglos conciliatorios, absolver posiciones para desahogar la prueba confesional y representar a la Sociedad frente a todo tipo de autoridades, dependencias, entidades y organismos federales, estatales o municipales, de naturaleza judicial, administrativa o del trabajo, sean de la especie y de la denominación que fueren y frente a todo tipo de personas morales y físicas, para cualquier trámite y/o procedimiento laboral administrativo y, en general, obligar à la Sociedad en materia laboral en todo aquello que competa a la administración.

c) **Poder General para Actos de Administración,** de acuerdo con lo previsto en el segundo párrafo del artículo 2,448 (dos mil cuatrocientos cuarenta y ocho) del Código Civil del Estado de Nuevo León, su correlativo párrafo segundo del artículo 2,554 (dos mil quinientos cincuenta y cuatro) del Código Civil Federal y los artículos correlativos de los Códigos Civiles de las demás entidades federativas de los Estados Unidos Mexicanos.

d) **Poder General Cambiario** en los términos de los artículos 9 (noveno) fracción I y 85 (ochenta y cinco) de la Ley General de Títulos y Operaciones de Crédito, que incluye, entre otras, facultades para suscribir, emitir, endosar, aceptar, protestar, avalar, presentar para aceptación y pago y, en general, para negociar títulos de crédito, así como para abrir y cerrar cuentas bancarias a nombre de la Sociedad, girar cheques en contra de dichas cuentas y retirar fondos de ellas.

e) El Apoderado Sr. Jean Alain Jullien tendrá facultades para otorgar poderes generales o especiales concediendo facultades y poderes de entre los señalados en los incisos a), b), c) y d) arriba precisados, con o sin facultades de substitución, así como para revocar los poderes que hayan sido otorgados; lo anterior,

**DECIMO PRIMERO:** Se otorga a los señores Jean-Alain Jullien y/o Pascal Gauthier y/o Jean-Jacques Grimaux y/o Pierre Rellet, con las limitaciones que establecen los estatutos de esta Sociedad, poder cambiario especial con la finalidad de que en nombre de Residuos

CGEA0041224

Industriales Multquim, S.A. de C.V. puedan llevar a cabo las acciones conducentes para abrir cuentas bancarias en cualquier institución de crédito mexicana o extranjera, autorizar a otras personas para que con su firma puedan disponer de los recursos depositados en las cuentas, efectuar depósitos de cualquier tipo, hacer retiros, librar cheques, dar instrucciones para que se efectúen transferencias electrónicas de fondos y, en general, girar instrucciones relativas a la disposición de las cantidades depositados en la cuenta o cuentas de la Sociedad en México y/o en el extranjero.

DECIMO SEGUNDO: Se otorgan a los señores Pascal Gauthier, Jean-Jacques Grimaux y Pierre Rellet los siguientes poderes para que los ejerzan de forma conjunta o separada, los cuales en cuanto a su ejercicio tendrán las limitaciones que establecen los Estatutos Sociales de la Sociedad:

a) **Poder General para Pleitos y Cobranzas,** que se le concede con todas las facultades generales y las especiales que requieran cláusula especial, de acuerdo con lo previsto en los artículos 2,448 (dos mil cuatrocientos cuarenta y ocho) párrafo primero y 2,481 (dos mil cuatrocientos ochenta y uno) del Código Civil del Estado de Nuevo León, sus correlativos los artículos 2,554 (dos mil quinientos cincuenta y cuatro) párrafo primero y 2,587 (dos mil quinientos ochenta y siete) del Código Civil Federal, y los artículos correlativos de los Códigos Civiles de las demás entidades federativas de los Estados Unidos Mexicanos, estando facultado, por consiguiente, entre otras cosas, para representar a la Sociedad frente a todo tipo de autoridades, dependencias, entidades y organismos federales, estatales o municipales, sea de la especie y de la denominación que fueren, y frente a todo tipo de personas morales y físicas; para presentar toda clase de demandas; contestarlas, desistirse de ellas cuando en su opinión fuere conveniente y seguirlas en todas sus instancias; para interponer recursos o defensas; para ofrecer y desahogar pruebas; para interrogar o tachar testigos; para renunciar a términos o a plazos, para renunciar a competencias o jurisdicciones cuando sea permitido por la ley; para comprometer en árbitros o someterse a procedimientos arbitrales; para absolver y articular posiciones; para impugnar o recusar jueces, para recibir pagos; para presentar denuncias, acusaciones o querellas de naturaleza penal y para desistirse de ellas; para convertirse en tercero coadyuvante en el ejercicio de la acción penal y conceder perdones; para presentar demandas de amparo y desistirse de ellas cuando convenga a los intereses de la poderdante; para representar a la Sociedad conforme y para los efectos de los artículos (11) once, (46) cuarenta y seis, (47) cuarenta y siete, (134) ciento treinta y cuatro fracción (III) Tercera, (523) quinientos veintitrés, (692) seiscientos noventa y dos, fracciones (I, II y III) Primera, Segunda y Tercera, (786) setecientos ochenta y seis, (787) setecientos ochenta y siete, (873) ochocientos setenta y tres, (874) ochocientos setenta y cuatro, (876) ochocientos setenta y seis, (878) ochocientos setenta y ocho, (880) ochocientos ochenta, (883) ochocientos ochenta y tres, (884) ochocientos ochenta y cuatro y demás relativos de la Ley Federal del Trabajo, para comparecer ante las Juntas de Conciliación y Arbitraje con la representación patronal y la representación legal de la empresa para todos los efectos de acreditar la personalidad y la capacidad en juicio o fuera de él, con facultades para articular y absolver posiciones, para desahogar la prueba confesional en todas sus partes; para comparecer con toda la representación legal bastante y suficiente a la audiencia de conciliación, de demanda y excepciones y de ofrecimiento y admisión de pruebas, así como para acudir a la audiencia de desahogo de pruebas; asimismo con facultades para proponer arreglos conciliatorios, celebrar transacciones, para tomar toda clase de

CGEA0041225

decisiones para negociar y suscribir convenios laborales y en general, para incoar procesos y acciones de naturaleza civil, mercantil, penal, laboral, administrativa o de cualesquiera otras especies, entendiéndose que la enumeración de facultades contenida en este inciso es de carácter ejemplificativo y de ninguna manera limitativo.

**b) Poder General para Actos de Administración Laboral,** de acuerdo con lo previsto en los numerales 11 (once), 786 (setecientos ochenta y seis) y 787 (setecientos ochenta y siete) de la Ley Federal del Trabajo; incluyendo expresamente, pero sin que ello sea limitativo, facultades para actos de administración en materia laboral tales como la ocupación y distribución de trabajadores, la determinación de las tareas que corresponden a cada puesto o área de trabajo y su remuneración y, en su caso, la desocupación o promoción de todo tipo de trabajadores, pudiendo, por ende, negociar, celebrar, terminar o rescindir toda clase de contratos o convenios de trabajo; proponer arreglos conciliatorios, absolver posiciones para desahogar la prueba confesional y representar a la Sociedad frente a todo tipo de autoridades, dependencias, entidades y organismos federales, estatales o municipales, de naturaleza judicial, administrativa o del trabajo, sean de la especie y de la denominación que fueren y frente a todo tipo de personas morales y físicas, para cualquier trámite y/o procedimiento laboral administrativo y, en general, obligar a la Sociedad en materia laboral en todo aquello que competa a la administración.

c) Los poderes precisados en los incisos a) y b) anteriores se otorgan en el entendido de que los apoderados contarán con facultades de delegación.

**DECIMO TERCERO:** Se otorga al Dr. Juan Antonio Cuéllar López Poder Especial para actos de administración y de dominio, suficiente y cumplido en cuanto a derecho proceda, para que el apoderado pueda gestionar y obtener de las autoridades competentes, sean éstas federales, estatales o municipales, los permisos o autorizaciones que permitan a Residuos Industriales Multiquim, S.A. de C.V. destinar al uso y operación del confinamiento que actualmente tiene autorizado esa empresa en el municipio de Mina, N.L. una superficie de al menos 700 hectáreas de las que forman parte del predio identificado como "Parcela No. 39" la cual tiene una superficie de aproximadamente 1,625 hactáreas, misma que colinda con el confinamiento de Residuos Industriales Multiquim, S.A. de C.V. y cuya propiedad actual es de la empresa Inmobiliaria Confinamina, S.A. de C.V., quedando autorizado el apoderado para adquirir la citada superficie de terreno mediante la permuta que haga a favor de Inmobiliaria Confinamina S.A. de C.V. de una extensión de superficie equivalente de la que forme parte de la superficie de terreno propiedad de Residuos Industriales Multiquim, S.A. de C.V. y respecto de la cual esta última cuenta con autorización para destinar a uso de confinamiento pero que, por las condiciones montañosas de parte del terreno, no utiliza dicha actualmente dicha porción para ese efecto. El apoderado queda autorizado para llevar a cabo las gestiones y trámites que correspondan para subdividir y, en su caso, fusionar el predio actualmente autorizado para uso y operación de confinamiento, para el efecto de que con la superficie que se incorpore en los términos aquí autorizados y reducido de la superficie por la que aquélla se permute, la extensión total del predio destinado a usarse y operarse como confinamiento de substancias peligrosas corresponda al total de la superficie aprobada para ese efecto. Del uso de este poder el apoderado deberá informar al Consejo de Admnistración. No obstante lo anterior, en caso de que la autorización o permiso que haya de obtenerse de las autoridades competentes para los efectos aquí mencionados haya de imponer condiciones o limitaciones que resulten más gravosas que las que actualmente se aplican al predio en que se opera el

presente confinamiento, el apoderado requerirá de la previa aprobación del consejo de administración para el ejercicio del presente poder.

IV.- Por lo que toca al CUARTO PUNTO de la Orden del Día, el Presidente de la Asamblea informó que se había presentado una propuesta en la que se mencionaba que, a fin de cumplir con lo establecido en el párrafo 9) inciso u) de la Cláusula VIGÉSIMA de los estatutos recién reformados de esta Sociedad, era necesario que esta Asamblea apruebe que los diversos contratos mencionados en dicha Cláusula forman parte del curso ordinario de negocios de la sociedad.

La Asamblea comentó ampliamente la propuesta presentada y, por unanimidad de votos tomó el siguiente ACUERDO:

DECIMO CUARTO: Para los efectos del párrafo 9) inciso u) de la Cláusula VIGÉSIMA de los estatutos reformados de Residuos Industriales Multiquim, S.A de C.V., esta Asamblea, por unanimidad de votos de sus accionistas, aprueba como contratos que forman parte del curso ordinario de negocios de la sociedad los siguientes:

(i) el que haya de celebrarse por la sociedad con Sarp Industries, S.A o alguna de sus filiales, para el suministro de servicios administrativos y una contraprestación de hasta el 2% sobre el monto de las ventas de la sociedad;

(ii) el que haya de celebrarse por la sociedad con Inmobiliaria Confinamina, S.A de C.V. por el suministro de materias primas a partir de junio 26 del 2000, a precios de mercado no inferiores a los precios actuales; y

(iii) el Contrato que haya de celebrarse con Valores Ecológicos, S.A de C.V. o alguna de sus filiales, para el suministro de servicios administrativos a la sociedad por un plazo de 3 (tres) años a partir de la fecha de esta asamblea o hasta el momento en que Valores Ecológicos, S.A de C.V. enajene sus acciones en Residuos Industriales Multiquim, S.A. de C.V., lo que ocurra primero.

V.- Con respecto al desahogo del QUINTO y último PUNTO contenido en la Orden del Día, la Asamblea por unanimidad de votos, tomó el siguiente ACUERDO:

DECIMO QUINTO: Se designan a los Señores Lic. LUIS SANTOS THERIOT, Lic. JOSE GUADALUPE GONZALEZ MERAZ y Lic. ALEJANDRO MARTIN SANCHEZ FRANCO como DELEGADOS ESPECIALES de la presente Asamblea, a fin de que en forma conjunta o separada ocurran ante el Notario Público de su elección a protocolizar en lo conducente el Acta que se levante de la presente Asamblea, revocar designaciones y poderes e instituir a los funcionarios y apoderados designados, otorgarles los poderes y facultades en los términos acordados en esta Asamblea, y en general para gestionar la inscripción en el Registro Público de la Propiedad y del Comercio, correspondiente del Testimonio que de

CGEA0041227

dicha protocolización se expida, en caso de así considerarse necesario o conveniente, formalizando los Acuerdos adoptados.-

No habiendo otro asunto que tratar, se dio por terminada la presente Asamblea que se suspendió por el término prudente para que el Secretario procediera a levantar la presente Acta por duplicado; acto seguido el Secretario dio lectura a la misma, y por unanimidad de votos se aprobó, firmándose por el Presidente y el Secretario de la Asamblea, todos los representantes de los accionistas y el Comisario.-

Se hace constar que todos los representantes de los accionistas estuvieron presentes desde el inicio de la presente Asamblea hasta su total terminación, así como en el momento de tomarse todos y cada uno de los ACUERDOS adoptados.-

Se agrega al Apéndice de la presente Acta, un ejemplar de la misma en papel simple, adjuntándose a esta última las Cartas Poder exhibidas, la Lista de Asistencia suscrita por los Asistentes y debidamente certificada por los Escrutadores designados y demás documentos presentados en la Asamblea. Todo ello forma el expediente de esta Asamblea que se conserva en el archivo de la Secretaría.-

Se concluyó la Asamblea a las 14:00 horas del día, mes y año al principio señalados.-

_____
SR. JEAN ALAIN JULLIEN
PRESIDENTE

_____
LIC. LUIS SANTOS THERIOT
SECRETARIO

VALORES ECOLOGICOS, S.A. DE C.V.
C.V. Representada
por el LIC. HECTOR VARGAS
AGUIIRRE

INMOBILIARIA CONFINAMINA, S.A. DE
Representada por el Lic. JOSE GUADALUPE
GONZALEZ MERAZ

CGEA0041228

SARP INDUSTRIES MEXICO, S.A. DE C.V.
Representada por el LIC. LUIS SANTOS THERIOT

SR. ALBERTO VAZQUEZ
COMISARIO

LIC. ANDRES GONZALEZ SANDOVAL
COMISARIO

ACTA ASAMBLEA ORDINARIA
NOVICMBRE 14, 2000

CGEA0041229

## LISTA DE ASISTENCIA

A LA ASAMBLEA GENERAL ORDINARIA DE ACCIONISTAS DE RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. CELEBRADA A LAS 13:00 HORAS DEL DIA 14 DE NOVIEMBRE DEL 2000, EN LAZARO CARDENAS 2400 DESPACHO B-21, SAN PEDRO GARZA GARCIA, N.L., DOMICILIO SOCIAL.-

| ACCIONISTA | SERIE F-I | SERI F-II | SERIE V-I | SERIE V-II | FIRMA |
|---|---|---|---|---|---|
| SARP INDUSTRIES MEXICO S.A. DE C.V. *representado por Luis Santos Theriet* | 1200 | | 3600 | | *[firma]* |
| INMOBILIARIA CONFINAMINA S.A. DE C.V. *representado por Luis Gpe Gza María* | 600 | | 1800 | | *[firma]* |
| VALORES ECOLOGICOS, S.A. DE C.V. *representado por Hector Vasquez Aguirre* | | 200 | | 600 | *[firma]* |
| TOTALES | 1800 | 200 | 5400 | ~~600~~ | |

EL suscrito designado ESCRUTADOR para verificar el Quórum de Asistencia a la Asamblea de relación, HAGO CONSTAR que, habiendo revisado el Libro de Registro de Acciones, las Cartas Poder exhibidas y esta Lista de Asistencia se encuentran representadas la totalidad de las 8,000 acciones del Capital Social Total de RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V., mismas que representan el 100% del capital social suscrito y pagado de la Sociedad.

C.P. ROBERTO SALAZAR VILLARREAL
ESCRUTADOR

CGEA0041230

# PROXY/CARTA PODER

San Pedro Garza García, N.L.

November/Noviembre 8, 2000

## MR.(SR). HECTOR VARGAS AGUIRRE

Present./Presente

| | |
|---|---|
| Dear sir: | Muy señor nuestro: |
| Through this letter we grant you a SPECIAL PROXY. as broad, complied, and sufficient as may be necessary under law, so that you attend the General Ordinary Shareholders' Meeting of RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. that will take place on November 14, 2000 representing 800 shares issued by the company RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. and owned by VALORES ECOLOGICOS, S.A. DE C.V. and so that thereat you may hear, discuss, and vote regarding the issues to be dealt with at such Meeting. | Por medio de la presente otorgamos a Usted un PODER ESPECIAL, tan amplio, cumplido y suficiente, cuanto en derecho sea necesario para asistir a la Asamblea General Ordinaria de Accionistas de la sociedad denominada RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V., que se celebrará el día 14 de noviembre del 2000, representando 800 acciones emitidas por la citada sociedad RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. propiedad de VALORES ECOLOGICOS. S.A. DE C.V. y para que oiga, opine y vote sobre los asuntos que en dicha Asamblea hayan de tratarse. |
| Of course we bind ourselves to be and pass through everything that you perform within the limits of this proxy. | Desde luego nos obligamos a estar y pasar por todo lo que usted realice dentro de los límites del presente poder. |
| Sincerely, | Atentamente, |

VALORES ECOLOGICOS, S.A. DE C.V

By/Por: ING. HECTOR VARGAS GARZA
Position/Cargo: Sole Administrator/Administrador Unico

Testigo/Witness

Testigo/Witness



## PROXY/CARTA PODER

San Pedro Garza García, N.L.

November/Noviembre 8, 2000

MR.(SR.) LUIS SANTOS THERIOT

Present./Presente.

Dear sir:

Through this letter we grant you a SPECIAL PROXY, as broad, complied, and sufficient as may be necessary under law, so that you can attend the General Ordinary Shareholders' Meeting of RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. that will take place on November 14, 2000 representing 4,800 shares issued by the company RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. and owned by SARP INDUSTRIES MEXICO, S.A. DE C.V. and so that thereat you may hear, discuss, and vote regarding the issues to be dealt with at such Meeting.

Of course we bind ourselves to be and pass through everything that you perform within the limits of this proxy.

Sincerely,

Muy señor nuestro:

Por medio de la presente otorgamos a Usted un PODER ESPECIAL, tan amplio, cumplido y suficiente, cuanto en derecho sea necesario para asistir a la Asamblea General Ordinaria de Accionistas de la sociedad denominada RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V., que se celebrará el día 14 de noviembre del 2000, representando 4,800 acciones emitidas por la citada sociedad RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. propiedad de SARP INDUSTRIES MEXICO, S.A. DE C.V. y para que oiga, opine y vote sobre los asuntos que en dicha Asamblea hayan de tratarse.

Desde luego nos obligamos a estar y pasar por todo lo que usted realice dentro de los límites del presente poder.

Atentamente,

SARP INDUSTRIES MEXICO, S.A. DE C.V.

By/Por: JEAN-ALAIN JULLIEN
Position/Cargo: President of the Board of Directors/
Presidente del Consejo de Administración

Testigo/Witness

Testigo/Witness

Compagnie Générale d'Entreprises Automobiles
Societe anonyme au capital de 105 064 768 euros • Siret 572 221 034 00778 • R.C.S 572 221 034 Nanterre
Siege Social -Parc des Fontaines- • 169. avenue Georges Clemenceau • 92735 Nanterre Cedex

VIVE!

## PROXY/CARTA PODER
### San Pedro Garza García, N.L.
### November/Noviembre 8, 2000

MR.(SR.)JOSE GUDALUPE GONZALEZ MERAZ

Present./Presente.

Dear sir:

Through this letter we grant you a SPECIAL PROXY, as broad, complied, and sufficient as may be necessary under law, so that you can appear before the General Ordinary Shareholders' Meeting of RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. that will take place on November 14, 2000 representing 2,400 shares issued by the company RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. and owned by INMOBILIAIRA CONFINAMINA, S.A. DE C.V. and so that thereat you may hear, discuss, and vote regarding the issues to be dealt with at such Meeting.

Of course we bind ourselves to be and pass through everything that you perform within the limits of this proxy.

Muy señor nuestro:

Por medio de la presente otorgamos a Usted un PODER ESPECIAL, tan amplio, cumplido y suficiente, cuanto en derecho sea necesario para asistir a la Asamblea General Ordinaria de Accionistas de la sociedad denominada RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V., que se celebrará el día 14 de noviembre del 2000, representando 2,400 acciones emitidas por la citada sociedad RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. propiedad de INMOBILIARIA CONFINAMINA, S.A. DE C.V. y para que oiga, opine y vote sobre los asuntos que en dicha Asamblea hayan de tratarse.

Desde luego nos obligamos a estar y pasar por todo lo que usted realice dentro de los límites del presente poder.

Sincerely,

Atentamente,

INMOBILIARIA CONFINAMINA, S.A. DE C.V.

By/Por: ING. ABELARDO R. CAVAZOS GARZA
Position/Cargo: Sole Administrator/Administrador Unico

Testigo/Witness

Testigo/Witness

## (TRANSLATION FOR INFORMATION PURPOSES ONLY)

**RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V.**
**MINUTE OF THE GENERAL ORDINARY SHAREHOLDERS' MEETING**
**NOVEMBER 14, 2000**

In the City of San Pedro Garza García, N.L., corporate domicile of RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. being the 13:00 hours of November 14, 2000 the shareholders and the representatives of the shareholders, whose names and signatures appear in the Attendance List prepared and certified by the appointed Teller whose original is attached to the file of the duplicate of this minute, gathered in Lázaro Cárdenas 2400 Edificio Losoles Office B-21 in order to hold a General Ordinary Shareholders' Meeting to which the aforesaid were duly called. Messrs. Jean-Allain Jullien and Lic. Luis Santos Theriot, respectively as President and Secretary of the Board of Directors of the Corporation as well Messrs. Alberto Vázquez and Lic. Andrés González Sandoval, Examiners of the Corporation, and Messrs. Ing. Héctor Vargas Garza, Lic. Héctor Vargas Aguirre, Dr. Juan Antonio Cuellar López. and C.P. Roberto Salazar Villarreal attended the Meeting as guests.

The Meeting was presided by Mr. Jean-Allain Jullien, as Chairman of the Board of Directors, and Mr. Luis Santos Theriot, in his character of Secretary of the Board of Directors, acted with that same position in the Meeting according to the By-laws.

Due to the proposal of the President, by unanimous vote the Meeting appointed Mr. C.P. Roberto Salazar Villarreal was appointed as Teller who accepted that position and proceeded to verify the corresponding Attendance List, the Registry of Shares, and the Proxies that were shown, certifying that the 8,000 Shares in which the total corporate stock of the Corporation is divided were legally represented and consequently the quorum referred by the By-laws in order to legitimately declare installed a Meeting, distributed as follows:

| SHAREHOLDERS | | | SHARES | |
| --- | --- | --- | --- | --- |
| | SERIES F-I | SERIES F-II | SERIES V-I | SERIES V-II |
| SARP INDUSTRIES MEXICO, S.A. DE C.V. | 1200 | | 3600 | |
| INMOBILIARIA CONFINAMINA, S.A. DE C.V. | 600 | | 1800 | |
| VALORES ECOLOGICOS. S.A. DE C.V. | | 200 | | 600 |
| TOTALS | 1800 | 200 | 5400 | 600 |

As a consequence of the certification of the teller regarding the representation of 100% of the shares that form the total subscribed and paid capital stock of the Corporation, the President declared the meeting legally installed and able to treat and resolve the issues that originated it, even though there was no publication of a previous Call, according to the By-laws.

Afterwards, the Secretary read the following:-

## AGENDA:

I.- RATIFICATION OF THE APPOINTMENT OF THE BOARD OF DIRECTORS AND EXAMINER AND DETERMINATION OF THEIR FEE.

II.- REVOCATION OF THE POWERS GRANTED BY THE CORPORATION.

III.- APPOINTMENT OF SEVERAL OFFICERS OF THE CORPORATION AND GRANTING OF POWERS IN FAVOR OF SEVERAL PERSONS.

IV.- PRESENTATION OF A PROPOSAL TO APPROVE AGREEMENTS TO BE EXECUTED BY THE CORPORATION.

V.- APPOINTMENT OF SPECIAL DELEGATE OR DELEGATES TO FORMALIZE THE RESOLUTIONS ADOPTED, IF APPLICABLE.

I.- Regarding the FIRST POINT of the Agenda the Secretary informed to the Shareholders that a proposal regarding the ratification of the Board of Directors and the Examiners as well as the determination of their fees was submitted to this Meeting .

After discussing the aforesaid proposal, as well as the determination of the corresponding fees, the Meeting by unanimous vote adopted the following RESOLUTIONS:

FIRST: The following Board of Directors and Examiners whose positions will be effective beginning on this date are appointed:

### BOARD OF DIRECTORS

| DIRECTOR OF THE SERIES FI AND VI | | ALTERANTES OF THE SERIES FI AND VI |
|---|---|---|
| JEAN ALAIN JULLIEN | PRESIDENT | VACANT |
| PASCAL GAUTHIER | MEMBER | VACANT |
| JEAN JACQUES GRIMAUX | MEMBER | VACANT |
| PIERRE RELLET | MEMBER | VACANT |

DIRECTOR OF THE SERIES FII AND VII
ING. HECTOR VARGAS GARZA

ALTERANTES OF THE SERIES FII AND VII
LIC. JOSE DE JESUS VARGAS AGUIRRE

LIC. LUIS SANTOS THERIOT        SECRETARY (BUT NOT DIRECTOR)

EXAMINER THE SERIES FI AND VI
MR. ALBERTO VAZQUEZ

EXAMINER OF THE SERIES FII AND VII
LIC. ANDRES GONZALEZ SANDOVAL

CGEA0041235

SECOND: The Board of Directors appointed according to the previous RESOLUTION shall have the power, authority, and obligations contained in the by-laws. Similarly the appointed Examiners of the Corporation shall have the obligations and attributions contained in the by-laws and this Assembly takes note of the Directors' and Examiners' decision to waive their right to receive any fee for the performance of their position is accepted, same that is thanked to them by this Meeting.

THIRD: The members of the Board and Examiners appointed are herein waived according to the previous RESOLUTIONS from providing the corresponding guarantee for the performance of their positions in the terms of the law.

II. Regarding the SECOND POINT of the Agenda, the Meeting by the unanimous vote of the present adopted the following RESOLUTION:

FOURTH: All the appointments and powers granted by the Corporation up to this date are revoked except for the following that will subsist:

| NAME OF THE ATTORNEY: | NUMBER AND DATE OF THE PUBLIC DEED THAT CONTAINS THE POWERS OF ATTORNEY THAT SUBSIST. |
|---|---|
| 1. ROGELIO CANTU PEREZ | 17,737; May 13, 1997 |
| 2. JOSE LUIS TORRES CERDA | 17,951; August 28, 1997 |
| 3. SERGIO SANCHEZ RODRIGUEZ | 18,354; February 27, 1998 |
| 4. ENRIQUE ALVARADO RAMIREZ | 18,356; January 27, 1998 |
| 5. ALFREDO CONTRERAS CAVAZOS | 18,357; January 27, 1998 |
| 6. SALOMON ROJAS PEÑA | 18,360; January 27, 1998 |
| 7. MIGUEL ANGEL ARAOZ PEÑA | 18,363; January 27, 1998 |
| 8. GERARDO LOPEZ DE LA ROSA | 18,371; January 27, 1998 |
| 9. ALBERTO CUERVO PEREZ | 18,373; January 27, 1998 |
| 10. HECTOR RENE LOPEZ DINO | 18,374; January 27, 1998 |
| 11. VICTOR HUGO REYES CANTU | 18,377; January 27, 1998 |
| 12. DAGOBERTO TREVIÑO RODRIGUEZ | 18,382; January 27, 1998 |
| 13. GERARDO VAZQUEZ FALCON | 18,412; February 10, 1998 |
| 14. VICTOR PRIETO OLGUIN | 19,327; January 19, 1999 |
| 15. JOSE JUAN GONZALEZ ALVAREZ | 19,637; May 10, 1999 |
| 16. ROBERTO CANTU FLORES | 19,673; May 26, 1999 |
| 17. LUIS MARTIN ESPINOZA GUTIERREZ | 19,674; May 26, 1999 |
| 18. LEOPOLDO CERVANTES LEON | 19,271; December 21, 1998 |
| 19. HECTOR VARGAS AGUIRRE | 2,381; February 8, 2000 |
| 20. JUAN ANTONIO CUELLAR LOPEZ | 2,381; February 8, 2000 |
| 21. ROBERTO SALAZAR VILLARREAL | 2,381; February 8, 2000 |
| 22. CANDELARIO FLORES BARCENAS | 2,534; March 29, 2000 |
| 23. ALEJANDRO SANCHEZ FRANCO | 2,535; March 29, 2000 |

FIFTH: Messrs Lic. Héctor Vargas Aguirre, Dr. Juan Antonio Cuéllar López and Roberto Salazar Villarreal arer herein appointed as attorneys of the Corporation and are granted with the following powers of attorney:

a) General Power of Attorney for Lawsuits and Collections, which they can exercise jointly or separately and that is conferred with all the general and special powers which must be expressly granted, as provided in Articles 2,448 (two thousand four hundred and forty eight), first paragraph and 2,481 (two thousand

CGEA0041236

four hundred and eighty one) of the Civil Code for the State of Nuevo Leon, and their corresponding Articles 2,554 (two thousand five hundred and fifty four), first paragraph, and 2,587 (two thousand five hundred and eighty seven) of the Civil Code for the Federal District and the correlative articles of the other civil codes of the federal states of the United Mexican States; being authorized, consequently and among other powers, to represent the Corporation before all kinds of authorities, bureaus, legal entities and organisms of federal, state or municipal level, notwithstanding their kind and name that they might be, and before any kind of individual or legal entity; to file all kinds of suits, answer them and voluntarily dismiss them whenever it be considered convenient and pursue them in all their instances; to file appeals or remedies; to offer and carry out evidence; to interrogate witnesses and disqualify them; to waive terms or times; to waive any jurisdiction or competence whenever permitted by Law; to compromise and submit to arbitral proceedings; to make and answer interrogatories; to challenge or object judges; to receive payments; to make assignment of assets; to file denouncements, accusations or complaints of criminal nature and to dismiss them; to assist the Government Attorney as a co-party in criminal proceedings and to grant pardons; to file habeas corpus ("amparo") suits and dismiss them whenever convenes the Principal's interests; to represent the Corporation pursuant to and for the effects of the articles (11) eleven, (46) forty six, (47) forty seven, (134) one hundred and thirty four section (III) three, (523) five hundred and twenty three, (692) six hundred and ninety two, sections (I, II, and III) First, Second and Third, (786) seven hundred and eighty six, (787) seven hundred and eighty seven, (873) eight hundred and seventy three, (874) eight hundred and seventy four, (876) eight hundred and seventy six, (878) eight hundred and seventy eight, (880) eight hundred and eighty and other corresponding of the Federal Labor Law, to appear before the Local Board of Settlement and Arbitration with the employer's representation and the legal representation of the corporation for all the effect to establish the legal status and capacity in trial or out of it, with powers to make and answer interrogations and carry out the interrogatories in all its parts; to appear with the entire and sufficient legal representation to the hearing of settlement, suit and remedies and offering of evidence, as to appear to the hearing for the carrying out of evidence; likewise, with powers to propose settlements, to make transactions, to negotiate and sign labor agreements and, in general, to initiate proceedings and actions of civil, commercial, criminal, labor, administrative or any other nature, being understood that the powers contained in this section are merely descriptive and not limited under any circumstance.

**b) General Power of Attorney for Acts of Labor Administration,** that they can exercise jointly or separately and that is granted pursuant to that foreseen in articles 11 (eleven), 786 (seven hundred and eighty six) and 787 (seven hundred and eighty seven) of the Federal Labor Law, including expressly, but without being limited to, authorities to perform administration acts on labor matters such as the hiring and distribution of employees, the establishment of the duties that correspond to each position or labor areas and their compensation and, if applicable, the firing or promotion for all kind of workers and being able, as a consequence, to negotiate, execute, terminate and rescind all kind of labor contracts or agreements, to propose conciliatory settlements, to answer interrogatories in order to carry out depositions in all their parts and to represent the Corporation before all kinds of federal, state or municipal authorities, bureaus, entities and organisms, either judicial, administrative or of Labor nature, notwithstanding their kind and name that they might have and before any type of entity and individual, for any procedure and/or labor administrative proceeding and, in general, to bind the Corporation on labor matters in everything that concerns its administration.

**c) General Power of Attorney for acts of Administration.** That they may exercise jointly or separately in the terms of the second paragraph of Article 2448 of the Civil Code in force in the State of Nuevo Leon, its correlative second paragraph of Article 2,554 of the Civil Code for the Federal District, and the corresponding provisions of the other civil codes in effect in the whole territory of the Mexican Republic.

**d) General Power of Attorney for Negotiable Instruments.** That may be exercised jointly by any two of the attorneys mentioned above in the terms of Articles 9 and 85 of the General Law of Negotiable Instruments and Credit Operations, including, among others, the power to subscribe, issue, endorse, accept, be

CGEA0041237

surety, guarantee and present for acceptance and payment, and, in general, to negotiate with all types of negotiable instruments as well as to open and close bank accounts on behalf of the Corporation, write or draw checks against such accounts or withdraw funds from them.

f) The attorneys Lic. Héctor Vargas Aguirre, Dr. Juan Antionio Cuéllas López and C.P. Roberto Salazar Villarreal are granted with the authority to grant general or special powers of attorney, granting powers or authorities from among the above stated on a), b), c), and d) sections, with or without substitution, and to revoke those powers so granted; the aforesaid, limited to the content of subsection e) of this resolution.

SIXTH: It is herein established that the powers of attorney that subsist according to the FOURTH RESOLUTION as well as those granted by this Meeting will be subject to the limitations mentioned by the By-laws of the Corporation.

III. Regarding the THIRD POINT of the Agenda, the Meeting by unanimous vote adopted the following RESOLUTIONS:

SEVENTH: ING. HECTOR VARGAS GARZA is herein appointed as EXECUTIVE PRESIDENT of the Corporation.

EIGHT: LIC. HECTOR VARGAS AGUIRRE is appointed as VICE PRESIDENT FOR THE DEVELOPMENT OF BUSINESSES of the Corporation who will support the Executive President on his work.

NINTH: DR. JUAN ANTONIO CUELLAR LOPEZ is appointed as GENERAL DIRECTOR of the Corporation.

TENTH: Mr. Jean Alain Jullien is appointed as Attorney of the Corporation and is granted with the following powers of attorney with the limitations set forth by the corporate by-laws:

**a) General Power of Attorney for acts of Administration.** In the terms of the second paragraph of Article 2448 of the Civil Code in force in the State of Nuevo Leon, its correlative second paragraph of Article 2.554 of the Civil Code for the Federal District, and the corresponding provisions of the other civil codes in effect in the whole territory of the Mexican Republic.

**b) General Power of Attorney for Acts of Labor Administration.** pursuant to that foreseen in articles 11 (eleven), 786 (seven hundred and eighty six) and 787 (seven hundred and eighty seven) of the Federal Labor Law, including expressly, but without being limited to, authorities to perform administration acts on labor matters such as the hiring and distribution of employees, the establishment of the duties that correspond to each position or labor areas and their compensation and, if applicable, the firing or promotion for all kind of workers and being able, as a consequence, to negotiate, execute, terminate and rescind all kind of labor contracts or agreements, to propose conciliatory settlements, to answer interrogatories in order to carry out depositions in all their parts and to represent the Corporation before all kinds of federal, state or municipal authorities, bureaus, entities and organisms, either judicial, administrative or of Labor nature, notwithstanding their kind and name that they might have and before any type of entity and individual, for any procedure and/or labor administrative proceeding and, in general, to bind the Corporation on labor matters in everything that concerns its administration.

**c) General Power of Attorney for Negotiable Instruments.** In the terms of Articles 9 and 85 of the General Law of Negotiable Instruments and Credit Operations, including, among others, the power to subscribe, issue, endorse, accept, be surety, guarantee and present for acceptance and payment, and, in general, to negotiate

CGEA0041238

with all types of negotiable instruments as well as to open and close bank accounts on behalf of the Corporation, write or draw checks against such accounts or withdraw funds from them.

**d) General Power of Attorney for Lawsuits and Collections,** which is conferred with all the general and special powers which must be expressly granted, as provided in Articles 2,448 (two thousand four hundred and forty eight), first paragraph and 2,481 (two thousand four hundred and eighty one) of the Civil Code for the State of Nuevo Leon, and their corresponding Articles 2,554 (two thousand five hundred and fifty four), first paragraph, and 2,587 (two thousand five hundred and eighty seven) of the Civil Code for the Federal District and the correlative articles of the other civil codes of the federal states of the United Mexican States; being authorized, consequently and among other powers, to represent the Corporation before all kinds of authorities, bureaus, legal entities and organisms of federal, state or municipal level, notwithstanding their kind and name that they might be, and before any kind of individual or legal entity; to file all kinds of suits, answer them and voluntarily dismiss them whenever it be considered convenient and pursue them in all their instances; to file appeals or remedies; to offer and carry out evidence; to interrogate witnesses and disqualify them; to waive terms or times; to waive any jurisdiction or competence whenever permitted by Law; to compromise and submit to arbitral proceedings; to make and answer interrogatories; to challenge or object judges; to receive payments; to make assignment of assets; to file denouncements, accusations or complaints of criminal nature and to dismiss them; to assist the Government Attorney as a co-party in criminal proceedings and to grant pardons; to file habeas corpus ("amparo") suits and dismiss them whenever convenes the Principal's interests; to represent the Corporation pursuant to and for the effects of the articles (11) eleven, (46) forty six, (47) forty seven, (134) one hundred and thirty four section (III) three, (523) five hundred and twenty three, (692) six hundred and ninety two, sections (I, II, and III) First, Second and Third, (786) seven hundred and eighty six, (787) seven hundred and eighty seven, (873) eight hundred and seventy three, (874) eight hundred and seventy four, (876) eight hundred and seventy six, (878) eight hundred and seventy eight, (880) eight hundred and eighty and other corresponding of the Federal Labor Law, to appear before the Local Board of Settlement and Arbitration with the employer's representation and the legal representation of the corporation for all the effect to establish the legal status and capacity in trial or out of it, with powers to make and answer interrogatories and carry out the interrogatories in all its parts; to appear with the entire and sufficient legal representation to the hearing of settlement, suit and remedies and offering of evidence, as to appear to the hearing for the carrying out of evidence; likewise, with powers to propose settlements, to make transactions, to negotiate and sign labor agreements and, in general, to initiate proceedings and actions of civil, commercial, criminal, labor, administrative or any other nature, being understood that the powers contained in this section are merely descriptive and not limited under any circumstance.

**e)** The attorney is granted with the authority to grant general or special powers of attorney, granting powers or authorities from among the above stated on a), b), c), and d) sections, with or without substitution, and to revoke those powers so granted.

**ELEVENTH:** Messrs Jean-Alain Jullien and/or Pascal Gauthier and/or Jean-Jacques Grimaux and/or Pierre Rellet are granted with a special power of attorney so that they can perform the required actions in order to open bank accounts on behalf of Residuos Industriales Multiquim, S.A. de C.V. in any Mexican or foreign credit institution, authorize other persons so that with their signature they can dispose of the amounts deposited in the accounts, make deposits of any type, make withdrawals, to issue checks, give instructions so that wire transfers are made, and, in general, to give instructions regarding the disposal of the amounts deposited in the account or accounts of the Corporation in México and/or abroad.

**TWELFTH.** Messrs. Pascal Gauthier, Jean-Jacques Grimaux, and Pierre Rellet are granted with the following powers of attorney that they will be able to exercise jointly or separately:

CGEA0041239

**a) General Power of Attorney for Lawsuits and Collections,** which is conferred with all the general and special powers which must be expressly granted, as provided in Articles 2,448 (two thousand four hundred and forty eight), first paragraph and 2,481 (two thousand four hundred and eighty one) of the Civil Code for the State of Nuevo Leon, and their corresponding Articles 2,554 (two thousand five hundred and fifty four), first paragraph, and 2,587 (two thousand five hundred and eighty seven) of the Civil Code for the Federal District and the correlative articles of the other civil codes of the federal states of the United Mexican States; being authorized, consequently and among other powers, to represent the Corporation before all kinds of authorities, bureaus, legal entities and organisms of federal, state or municipal level, notwithstanding their kind and name that they might be, and before any kind of individual or legal entity; to file all kinds of suits, answer them and voluntarily dismiss them whenever it be considered convenient and pursue them in all their instances; to file appeals or remedies; to offer and carry out evidence; to interrogate witnesses and disqualify them; to waive terms or times; to waive any jurisdiction or competence whenever permitted by Law; to compromise and submit to arbitral proceedings; to make and answer interrogatories; to challenge or object judges; to receive payments; to make assignment of assets; to file denouncements, accusations or complaints of criminal nature and to dismiss them; to assist the Government Attorney as a co-party in criminal proceedings and to grant pardons; to file habeas corpus ("amparo") suits and dismiss them whenever convenes the Principal's interests; to represent the Corporation pursuant to and for the effects of the articles (11) eleven, (46) forty six, (47) forty seven, (134) one hundred and thirty four section (III) three, (523) five hundred and twenty three, (692) six hundred and ninety two, sections (I, II, and III) First, Second and Third, (786) seven hundred and eighty six, (787) seven hundred and eighty seven, (873) eight hundred and seventy three, (874) eight hundred and seventy four, (876) eight hundred and seventy six, (878) eight hundred and seventy eight, (880) eight hundred and eighty and other corresponding of the Federal Labor Law, to appear before the Local Board of Settlement and Arbitration with the employer's representation and the legal representation of the corporation for all the effect to establish the legal status and capacity in trial or out of it, with powers to make and answer interrogatories and carry out the interrogatories in all its parts; to appear with the entire and sufficient legal representation to the hearing of settlement, suit and remedies and offering of evidence, as to appear to the hearing for the carrying out of evidence; likewise, with powers to propose settlements, to make transactions, to negotiate and sign labor agreements and, in general, to initiate proceedings and actions of civil, commercial, criminal, labor, administrative or any other nature, being understood that the powers contained in this section are merely descriptive and not limited under any circumstance.

**b) General Power of Attorney for Acts of Labor Administration,** pursuant to that foreseen in articles 11 (eleven), 786 (seven hundred and eighty six) and 787 (seven hundred and eighty seven) of the Federal Labor Law, including expressly, but without being limited to, authorities to perform administration acts on labor matters such as the hiring and distribution of employees, the establishment of the duties that correspond to each position or labor areas and their compensation and, if applicable, the firing or promotion for all kind of workers and being able, as a consequence, to negotiate, execute, terminate and rescind all kind of labor contracts or agreements, to propose conciliatory settlements, to answer interrogatories in order to carry out depositions in all their parts and to represent the Corporation before all kinds of federal, state or municipal authorities, bureaus, entities and organisms, either judicial, administrative or of Labor nature, notwithstanding their kind and name that they might have and before any type of entity and individual, for any procedure and/or labor administrative proceeding and, in general, to bind the Corporation on labor matters in everything that concerns its administration.

c) The powers of attorney mentioned on subsections a) and b) above are granted to the referred attorneys with authority so that they can delegate them.

THIRTEENTH: Dr. Juan Antonio Cuéllar López is granted with a Special power of attorney for acts of management and disposal of property, sufficient and complied as may be necessary under law, so that the attorney may request and obtain before the competent authorities, from the federal, state or municipal level, the permits or authorizations that allow Residuos

CGEA0041240

Industriales Multiquim, S.A. de C.V. to use for the operation of the confinement that such company has already authorized in the municipality of Mina, N.L. a surface area of at least 700 hectares from those that form part of the real estate identified as "Parcela No. 39" that has a surface area of approximately 1,625 hectares, same that borders the confinement of Residuos Industriales Multiquim, S.A. de C.V. whose current ownership of Inmobiliaria Confinamina, S.A. de C.V., being herein authorized the attorney to acquire the aforesaid extension of property through the interchange that it makes in favor of Inmobiliaria Confinamina, S.A. de C.V. of an extension equivalent of the one that is part of the property of Residuos Industriales Multiquim, S.A. de C.V. and from which the latter has authorization to use for confinement but that, due to the mountains found on part of the property, such portion is not currently used for such purpose. The attorney is herein authorized to perform the procedures that correspond in order to divide and, if applicable, merge the property currently authorized for use and operation for confinement, for the effect that the with the surface area that is added in the terms herein set forth and reduced from the surface from which it is changed the total extension of the property to be used and operated as confinement of dangerous substances corresponds to the total surface approved for such effect. The attorney shall inform to the Board of Directors about the use of this power. Nonetheless, if the authorization or permit to be obtained from the competent authorities for the effects herein mentioned should include conditions or limitations that may be more than the ones that are currently applied, the attorney will need a previous approval from the Board of Directors in order to exercise this power.

IV. Regarding the FOURTH POINT of the Agenda, the President of the Meeting informed that a proposal has been submitted stating that in order to comply with the content of paragraph 9) subsection u) of the TWENTIETH Clause of the amended by-laws of this Corporation, it would be necessary that this Meeting approves that the different agreements mentioned in the aforesaid Clause form part of the ordinary line of business of the Corporation.

The Meeting discussed the proposal and by unanimous vote adopted the following RESOLUTION:

FOURTEENTH: For the effects of paragraph 9 subsection u) of the TWENTIETH Clause of the amended by-laws of Residuos Industriales Multiquim. S.A. de C.V., this Meeting, by unanimous vote of its shareholders, approves as agreements that form part of the ordinary line of business of the Corporation the following:

(i) the agreement to be executed by the Corporation with Sarp Industries, S.A. or an affiliate so that it renders administrative services in exchange of a consideration of up to 2% over the value of the sales of the Corporation;

(ii) the agreement to be executed by the Corporation with Inmobiliaria Confinamina, S.A. de C.V. so that it supplies raw materials beginning on June 26.2000 with market prices that are not lower than the current prices; and

(iii) the agreement to be executed with Valores Ecológicos, S.A. de C.V. or an affiliate so that it supplies administrative services to the Corporation for a term of 3 (three) years beginning on the date of this Meeting or until the moment in which Valores Ecológicos, S.A. de C.V. sells its shares of Residuos Industriales Multiquim, S.A. de C.V., whatever happens first.

V.Regarding the FIFTH and last POINT of the Agenda, the Meeting by unanimous vote adopted the following RESOLUTION:

CGEA0041241

FIFTEENTH. Messrs. LIC. LUIS SANTOS THERIOT, LIC. JOSE GUADALUPE GONZALEZ MERAZ, and LIC. ALEJANDRO MARTIN SANCHEZ FRANCO are appointed as SPECIAL DELEGATES of this Meeting so that in a joint or separate form they appear before the Notary Public of their choice in order to protocolize the required parts of this Minute, revoke the appointments and powers referred above, institute the appointed officers and attorneys, grant them the authority and powers agreed by this Meeting, and in general to perform the required procedures in order to file the corresponding Public Deed of the aforesaid protocolization in the Public Registry of Property and Commerce, in case that would be necessary or convenient, formalizing the adopted Resolutions.

Without any other issue to deal with, this Meeting finished after being suspended by the proper time so that the Secretary could draft this Minute; following the Secretary read it and it was approved by unanimous vote, and was signed by the President and Secretary of the Meeting, all the representatives of the shareholders, and the Examiner.

It is herein set forth that all the representatives of the shareholders were present since the beginning of this Meeting until it finished, as well as in the moment of taking each and every one of the adopted RESOLUTIONS.

A copy of this Minute in simple paper, the shown proxies, the Attendance List signed by the Attendants and duly certified by the appointed examiners and the other documents shown in the Meeting are added as attachments of this Minute. The aforesaid forms the file of this Meeting that is kept in the files of the Secretaryship.

The Meeting was adjourned at the 14:00 hours of the day, month, and year mentioned at the beginning.

| | |
|---|---|
| ING. HECTOR VARGAS GARZA<br>PRESIDENT | LIC. ALEJANDRO MARTIN SANCHEZ<br>FRANCO<br>SECRETARY |
| VALORES ECOLOGICOS, S.A. DE C.V.<br>Represented by MR. HECTOR VARGAS<br>AGUIRRE | INMOBILIARIA CONFINAMINA, S.A. DE<br>C.V.<br>Represented by MR. JOSE GUADALUPE<br>GONZALEZ MERAZ |
| SARP INDUSTRIES MEXICO, S.A. DE<br>C.V.<br>Represented by MR. LUIS SANTOS<br>THERIOT | C.P. AMEL CIENFUEGOS PECINO<br>EXAMINER |

LIC. ANDRES GONZALEZ SANDOVAL
EXAMINER

CGEA0041242

## ATTENDANCE LIST

TO THE GENERAL ORDINARY SHAREHOLDERS' MEETING OF RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V. THAT TOOK PLACE AT THE 13:00 HOURS OF NOVEMBER 14, 2000 IN LAZARO CARDENAS 2400 OFFICE B21, SAN PEDRO GARZA GARCIA, N.L. CORPORATE DOMICILE.

| SHAREHOLDERS | | | SHARES | |
|---|---|---|---|---|
| | SERIES F-I | SERIES F-II | SERIES V-I | SERIES V-II |
| SARP INDUSTRIES MEXICO. S.A. DE C.V. | 1200 | | 3600 | |
| INMOBILIARIA CONFINAMINA, S.A. DE C.V. | 600 | | 1800 | |
| VALORES ECOLOGICOS, S.A. DE C.V. | | 200 | | 600 |
| TOTALS | 1800 | 200 | 5400 | 600 |

The undersigned appointed as Teller in order to verify the Attendance Quorum of this Meeting, CERTIFIES that, after revising the Book of Registry of Shares, the proxies submitted and this Attendance List the totality of the 8,000 shares of the Total Capital Stock of RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V., same that represent 100% of the subscribed and paid capital stock of the Corporation, is represented.

C.P. ROBERTO SALAZAR VILLARREAL
TELLER

CGEA0041243

**INMOBILIARIA CONFINAMINA, S.A. DE C.V.**
**ACTA DE ASAMBLEA GENERAL ORDINARIA DE ACCIONISTAS**
**OCTUBRE 25, 2000**

En la ciudad de San Pedro Garza Garcia, N.L., domicilio social de **INMOBILIARIA CONFINAMINA, S.A. DE C.V.** siendo las (10:30) horas del dia (25) de octubre del (2000) se reunieron en Lázaro Cárdenas 2400 Edificio Losoles Despacho PB-5, los representantes de accionistas cuyos nombres y firmas aparecen en la Lista de Asistencia al efecto preparada y certificada por los Escrutadores designados, de la cual el original se agrega al expediente del duplicado de la presente Acta, con el objeto de celebrar una Asamblea General Ordinaria de Accionistas a la cual fueron debidamente citados.- Se encontraron presentes los Señores Ing. ABELARDO RAUL CAVAZOS GARZA y C.P. RAUL SALINAS GARZA, Administrador Unico y Comisario de la Sociedad, respectivamente. Asistió también el Señor LIC. GUILLERMO VARGAS AGUIRRE, en calidad de invitado.-

Presidio la Asamblea el Sr. Ing. ABELARDO RAUL CAVAZOS GARZA, en su calidad de Administrador Unico de la Sociedad y el Sr. LIC. HECTOR VARGAS AGUIRRE fue nombrado por la Asamblea por unanimidad como Secretario, de conformidad con los Estatutos Sociales de la Sociedad.

A propuesta del Presidente, por unanimidad de votos la Asamblea designó Escrutadores a los Señores LIC. CTOR VARGAS AGUIRRE y LIC. GUILLERMO VARGAS AGUIRRE quienes aceptaron sus cargos y procedieron a verificar la correspondiente Lista de Asistencia, el Registro de Acciones y las Cartas Poder exhibidas, certificando que en la Asamblea de relación se encontraron legalmente representadas las 500 Acciones en que se encuentra dividido el capital social total de la Sociedad y por ende el quórum a que se refieren los Estatutos Sociales para declarar legitimamente instalada la Asamblea, distribuidas de la siguiente manera:

| ACCIONISTAS | ACCIONES |
|---|---|
| VALORES ECOLOGICOS, S.A. DE C.V.<br>Representada por el LIC. HECTOR VARGAS AGUIRRE | 495 |
| MINERA LA FE DEL NORTE, S.A. DE C.V.<br>Representada por el LIC. GUILLERMO VARGAS AGUIRRE | 5 |
| TOTAL CAPITAL SOCIAL | 500 |

En virtud de la certificación de los Escrutadores respecto de haberse encontrado representado el 100% de las acciones representativas del Capital Social total de la Sociedad, el Presidente declaró legalmente instalada la Asamblea y apta para tratar y resolver los asuntos que la motivan, a pesar de no haberse publicado Convocatoria previa, de conformidad con lo dispuesto por los Estatutos Sociales.

Acto seguido, el Secretario dio lectura, a la siguiente:-

**ORDEN DEL DIA:**

I.-PROPOSICION, DISCUSION Y APROBACION EN SU CASO DEL PROYECTO QUE PRESENTA EL ADMINISTRADOR UNICO DE LA SOCIEDAD PARA AUMENTAR EL CAPITAL SOCIAL EN SU PARTE VARIABLE.

CGEA0041244

II.- PRESENTACION DE LA PROPUESTA PARA ADQUIRIR ACCIONES EMITIDAS POR LA SOCIEDAD RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V.-

III.-NOMBRAMIENTO DE DELEGADO O DELEGADOS ESPECIALES PARA FORMALIZAR LOS ACUERDOS ADOPTADOS, EN SU CASO.

•

Leída que fue la Orden del Día, por unanimidad de votos se aprobó, pasándose a su desahogo.

I.- Con respecto al desahogo del PRIMER PUNTO contenido en la Orden del Día, el Presidente informó sobre la conveniencia de aumentar el capital social de la Sociedad en su parte variable en la suma de $327,000,000.00 (Trescientos veintisiete millones de pesos 00/100 Moneda Nacional).-

El Presidente de la Asamblea manifestó que dicha cantidad deberá ser aportada en efectivo por los actuales cionistas por razones de carácter financiero.

Al efecto el Lic. Guillermo Vargas Aguirre en representación de la Accionista MINERA LA FE DEL NORTE, S.A. DE C.V. manifestó a la Asamblea la renuncia irrevocable de su representada al derecho preferencial de suscribir en su parte proporcional el aumento al Capital Social en su parte variable propuesto en la presente Asamblea.

Así mismo el Lic. Hector Vargas Aguirre manifestó el deseo de su representada VALORES ECOLOGICOS, S.A. DE C.V. de suscribir en su totalidad el aumento de capital social en la parte variable propuesto en la presente Asamblea.

Después de una amplia discusión del tema al respecto, la Asamblea por unanimidad de votos tomó los siguientes ACUERDOS:

PRIMERO:     Se resuelve aumentar el capital social de la Sociedad en su parte variable en la cantidad de $327,000,000.00 (Trescientos Veintisiete Millones de Pesos 00/100 Moneda Nacional) mediante la emisión de 3,270,000 (tres millones doscientas setenta mil) acciones con valor nominal de $100.00 (cien pesos 00/100) cada una, correspondiendo a la Serie "B" Parte Variable, ordinarias, nominativas totalmente suscritas e íntegramente pagadas y por tanto liberadas.-

SEGUNDO:    Estas 3,270,000 (tres millones doscientas setenta mil) acciones ordinarias, nominativas y liberadas han quedado totalmente suscritas y pagadas en este acto con la cantidad $327,000,000.00 (Trescientos Veintisiete Millones de Pesos 00/100 Moneda Nacional) que la accionista VALORES ECOLOGICOS, S.A. DE C.V. entrega en efectivo a la Sociedad.-

TERCERO:    Se acepta la renuncia irrevocable de la accionista MINERA LA FE DEL NORTE, S.A. DE C.V. al derecho preferencial de suscribir el aumento al Capital Social en su parte Variable acordado en la presente Asamblea.

**CUARTO:** Procédase al canje total de los títulos actualmente en circulación por los Títulos Definitivos emisión Octubre 25, 2000, que amparen en su totalidad las 3,270,500 (tres millones doscientas setenta mil quinientas) acciones a fin de que dichos títulos nuevos consignen el capital social total de **INMOBILIARIA CONFINAMINA, S.A. DE C.V.-**

Por tanto el Capital Social Total de la Sociedad asciende a la suma de $327,050,000.00 (trescientos veintisiete millones cincuenta mil pesos 00/100 M.N.) de los cuales $50,000.00 (cincuenta mil pesos 00/100 M.N.) corresponden al Capital Mínimo Fijo y $327,000,000.00 (trescientos veintisiete millones de pesos 00/100 M.N.) corresponden al Capital Variable quedando representado de la siguiente manera:

| ACCIONISTAS | ACCIONES PARTE FIJA SERIE A |
|---|---|
| VALORES ECOLOGICOS, S.A. DE C.V. | 495 |
| MINERA LA FE DEL NORTE, S.A. DE C.V. | 5 |
| TOTAL CAPITAL MINIMO FIJO | 500 |

| ACCIONISTAS | ACCIONES PARTE VARIABLE SERIE B |
|---|---|
| VALORES ECOLOGICOS, S.A. DE C.V. | 3,270,000 |
| TOTAL CAPITAL VARIABLE | 3,270,000 |
| TOTAL CAPITAL SOCIAL | 3,270,500 |

- Con respecto al desahogo del SEGUNDO PUNTO contenido en la Orden del Día, el Secretario dio lectura a propuesta presentada a esta Asamblea para adquirir 2,400 acciones emitidas por la Sociedad Residuos Industriales Multiquim, S. A. de C.V. por considerar una buena adquisición por el portafolio de inversión de la Sociedad y puede redituar ganancias para los accionistas de la Sociedad por considerar a Residuos Industriales Multiquim, S.A. de C.V. una empresa solida y lider en su ramo.-

Discutida que fue la proposición anterior, la Asamblea por unanimidad de votos tomó el siguiente ACUERDO:

**QUINTO:** Se autoriza la compra de 2,400 acciones de la Sociedad Residuos Industriales Multiquim, S.A. de C.V., que representan el 30% del capital social de dicha empresa, en los términos que se consideren más convenientes para la Sociedad, autorizándose asimismo la celebración de los actos jurídicos necesarios para llevar a cabo la transacción mencionada.

CGEA0041246

..- Con respecto al desahogo del TERCER y último PUNTO contenido en la Orden del Día, la Asamblea por unanimidad de votos, salvando el suyo los interesados, tomó el siguiente ACUERDO:

**SEXTO:** Se designan a los Señores LIC. HECTOR VARGAS AGUIRRE y LIC. GUILLERMO VARGAS AGUIRRE como DELEGADOS ESPECIALES de la presente Asamblea, a fin de que en forma conjunta o separada ocurran ante el Notario Público de su elección a protocolizar en lo conducente el Acta que se levante de la presente Asamblea y gestionar la inscripción en el Registro Público de la Propiedad y del Comercio, correspondiente del Testimonio que de dicha protocolización se expida, en caso de así considerarse necesario o conveniente, formalizando los Acuerdos adoptados.-

No habiendo otro asunto que tratar, se dio por terminada la presente Asamblea que se suspendió por el término prudente para que el Secretario procediera a levantar la presente Acta por duplicado; acto seguido el Secretario dio lectura a la misma, y por unanimidad de votos se aprobó, firmándose por el Presidente y el Secretario de la Asamblea, todos los representantes de los accionistas y el Comisario.-

Se hace constar que todos los representantes de accionistas estuvieron presentes desde el inicio de la presente Asamblea hasta su total terminación, así como en el momento de tomarse todos y cada uno de los ACUERDOS adoptados.-

Se agrega al Apéndice de la presente Acta, un ejemplar de la misma en papel simple, adjuntándose a esta última las Cartas Poder exhibidas, la Lista de Asistencia suscrita por los Asistentes y debidamente certificada por los Escrutadores designados y demás documentos presentados en la Asamblea. Todo ello forma el expediente de esta Asamblea que se conserva en el archivo de la Secretaría.-

Se concluyó la Asamblea a las 11:00 horas del día, mes y año al principio señalados.-

ING. ABELARDO RAUL CAVAZOS GARZA
PRESIDENTE

LIC. HECTOR VARGAS AGUIRRE
SECRETARIO

VALORES ECOLOGICOS, S.A. DE C.V.
Representada por el LIC. HECTOR VARGAS AGUIRRE

MINERA LA FE DEL NORTE, S.A. DE C.V.
Representada por el LIC. GUILLERMO VARGAS AGUIRRE

C.P. RAUL SALINAS GARZA
COMISARIO

CGEA0041247

## LISTA DE ASISTENCIA

A LA ASAMBLEA GENERAL ORDINARIA DE ACCIONISTAS DE INMOBILIARIA CONFINAMINA, S.A. DE C.V. CELEBRADA A LAS 10:30 HORAS DEL DIA 25 DE OCTUBRE DEL 2000, EN LAZARO CARDENAS 2400 DESPACHO PB-5, SAN PEDRO GARZA GARCIA, N.L., DOMICILIO SOCIAL.-

| ACCIONISTAS | ACCIONES | FIRMAS |
|---|---|---|
| VALORES ECOLOGICOS, S.A. DE C.V. Representada por el LIC. HECTOR VARGAS AGUIRRE. | 495 | |
| NERA LA FE DEL NORTE, S.A. DE C.V. Representada por el LIC. GUILLERMO VARGAS AGUIRRE. | 5 | |
| TOTAL CAPITAL SOCIAL | <u>500</u> | |



Lossuscritos designados ESCRUTADORES para verificar el Quórum de Asistencia a la Asamblea de relación, HACEMOS CONSTAR que, habiendo revisado la presente Asamblea se encuentran representadas la totalidad de las 500 acciones del Capital Social Total de INMOBILIARIA CONFINAMINA, S.A. DE C.V.

LIC. HECTOR VARGAS AGUIRRE                     LIC. GUILLERMO VARGAS AGUIRRE
ESCRUTADOR                                                        ESCRUTADOR

CGEA0041248

# PROXY/CARTA PODER

San Pedro Garza García, N.L.

October/Octubre 16, 2000

MR.(SR.) JOSE DE JESUS VARGAS AGUIRRE

Present/Presente

Dear sir:

Muy señor nuestro:

Through this letter we grant you a SPECIAL PROXY, as broad, complied, and sufficient as may be necessary under law, so that you can attend the General Ordinary Shareholders' Meeting of INMOBILIARIA CONFINAMINA, S.A. DE C.V. that will take place on October 25, 2000 representing 495 Series "A" shares all of them issued by the company INMOBILIARIA CONFINAMINA, S.A. DE C.V. and owned by VALORES ECOLOGICOS, S.A. DE C.V. and so that thereat you may hear, discuss, and vote regarding the issues to be dealt with at such Meeting. Additionally you are expressly authorized so that, in case the corresponding proposal is submitted to the Meeting, in our name and representation you may approve the increase in the variable portion of the capital stock that will be proposed in such Meeting for the amount of $327'000.000.00 Pesos Mexican Currency represented by 3'270,000 shares of the Series "B" and so that you accept to subscribe and subscribe, in our name and representation, the aforesaid shares to be issued as a consequence of the referred increase in the capital stock.

Por medio de la presente otorgamos a Usted un PODER ESPECIAL, tan amplio, cumplido y suficiente, cuanto en derecho sea necesario para asistir a la Asamblea General Ordinaria de Accionistas de la sociedad denominada INMOBILIARIA CONFINAMINA, S.A. DE C.V., que se celebrará el día 25 de octubre del 2000, representando 495 acciones Serie "A" todas emitidas por la citada sociedad INMOBILIARIA CONFINAMINA, S.A. DE C.V., propiedad de VALORES ECOLOGICOS, S.A. DE C.V. y para que oiga, opine y vote sobre los asuntos que en dicha Asamblea hayan de tratarse. Adicionalmente de manera expresa se autoriza a Usted para que, en caso de que se presente en dicha Asamblea la propuesta respectiva, en nuestro nombre y representación apruebe el aumento de capital variable que se propondrá en dicha Asamblea por la cantidad de $327'000.000 Pesos M.N. representada por 3'270,000 acciones de la Serie "B" y para que acepte suscribir y suscriba, en nuestro nombre y representación, las citadas acciones que se emitan con motivo del referido aumento de capital.

Of course we bind ourselves to be and pass through everything that you perform within the limits of this proxy.

Desde luego nos obligamos a estar y pasar por todo lo que usted realice dentro de los límites del presente poder.

Sincerely,

Atentamente,

VALORES ECOLOGICOS, S.A. DE C.V.

By/Por: ING. HECTOR VARGAS GARZA
Position/Cargo: Sole Administrator/Administrador Unico

Testigo/Witness

Testigo/Witness

CGEA0041249

## PROXY/CARTA PODER

San Pedro Garza García, N.L.

October/Octubre 16, 2000

MR.(SR). HECTOR VARGAS AGUIRRE

Present./Presente.

Dear sir:

Muy señor nuestro:

Through this letter we grant you a SPECIAL PROXY, as broad, complied, and sufficient as may be necessary under law, so that you attend the General Ordinary Shareholders' Meeting of INMOBILIARIA CONFINAMINA, S.A. DE C.V. that will take place on October 25, 2000 representing 5 Series "A" shares issued by the company INMOBILIARIA CONFINAMINA, S.A. DE C.V. and owned by MINERA LA FE DEL NORTE, S.A. DE C.V. and so that thereat you may hear, discuss, and vote regarding the issues to be dealt with at such Meeting. Additionally you are expressly authorized so that, in case the corresponding proposal is submitted to the Meeting, in our name and representation you may approve the increase in the variable portion of the capital stock that will be proposed in such Meeting for the amount of $327'000,000.00 Pesos Mexican Currency represented by 3'270,000 shares of the Series "B" and so that you waive our right to subscribe the aforesaid shares to be issued as a consequence of the referred increase in the capital stock.

Por medio de la presente otorgamos a Usted un PODER ESPECIAL, tan amplio, cumplido y suficiente, cuanto en derecho sea necesario para asistir a la Asamblea General Ordinaria de Accionistas de la sociedad denominada INMOBILIARIA CONFINAMINA, S.A. DE C.V., que se celebrará el día 25 de octubre del 2000, representando 5 acciones Serie "A" emitidas por la citada sociedad INMOBILIARIA CONFINAMINA, S.A. DE C.V., propiedad de MINERA LA FE DEL NORTE, S.A. DE C.V. y para que oiga, opine y vote sobre los asuntos que en dicha Asamblea hayan de tratarse. Adicionalmente de manera expresa se autoriza a Usted para que, en caso de que se presente en dicha Asamblea la propuesta respectiva, en nuestro nombre y representación apruebe el aumento de capital variable que se propondrá en dicha Asamblea por la cantidad de $327'000,000.00 Pesos M.N. representada por 3'270,000 acciones de la Serie "B" y para que renuncie al derecho que nos corresponda para suscribir las citadas acciones que se emitan con motivo del referido aumento de capital.

Of course we bind ourselves to be and pass through everything that you perform within the limits of this proxy.

Desde luego nos obligamos a estar y pasar por todo lo que usted realice dentro de los límites del presente poder.

Sincerely,

Atentamente,

MINERA LA FE DEL NORTE, S.A. DE C.V.

By/Por: ING. HECTOR VARGAS GARZA
Position/Cargo: Sole Administrator/Administrador Unico

Testigo/Witness

Testigo/Witness

CGEA0041250

## (TRANSLATION FOR INFORMATION PURPOSES ONLY)

### INMOBILIARIA CONFINAMINA, S.A. DE C.V.
### MINUTE OF THE GENERAL ORDINARY SHAREHOLDERS' MEETING
### OCTOBER 25, 2000

In the City of San Pedro Garza García, N.L., corporate domicile of INMOBILIARIA CONFINAMINA, S.A. DE C.V. being the 10:30 hours of October 25, 2000 the representatives of the shareholders, whose names and signatures appear in the Attendance List prepared and certified by the appointed Tellers whose original is attached to the file of the duplicate of this minute, gathered in Lázaro Cárdenas 2400 Edificio Losoles Office PB-5 in order to hold a General Ordinary Shareholders' Meeting to which the aforesaid were duly called. There were also present Messrs. ING.. ABELARDO RAUL CAVAZOS GARZA, Sole Administrator of the Corporation, C.P. RAUL SALINAS GARZA, Examiner of the Corporation, and as guest MR. GUILLERMO VARGAS AGUIRRE.

The Meeting was presided by MR. ING. ABELARDO RAÚL CAVAZOS GARZA, as Sole Administrator of the Corporation, and MR. HECTOR VARGAS AGUIRRE was appointed as Secretary by the unanimous vote of the Meeting according to the By-laws.

Due to the proposal of the President, by unanimous vote the Meeting appointed MR HECTOR VARGAS AGUIRRE and ING. GUILLERMO VARGAS AGUIRRE as Tellers who accepted those positions and proceeded to verify the corresponding Attendance List, the Registry of Shares, and the Proxies that were shown, certifying that the 500 Shares in which the total corporate stock of the Corporation is divided were legally represented and consequently the quorum referred by the By-laws in order to legitimately declare installed a Meeting, distributed as follows:

| SHAREHOLDERS | SHARES |
| --- | --- |
| | SERIES A FIXED |
| VALORES ECOLOGICOS, S.A. DE C.V. | 495 |
| MINERA LA FE DEL NORTE, S.A. DE C.V. | 5 |
| TOTAL CAPITAL STOCK | 500 |

As a consequence of the certification of the Tellers regarding the representation of 100% of the shares that form the total subscribed and paid capital stock of the Corporation, the President declared the meeting legally installed and able to treat and resolve the issues that originated it, even though there was no publication of a previous Call, according to the By-laws.

Afterwards, the Secretary read the following:-

### AGENDA:

CGEA0041251

I.- PROPOSAL, DISCUSSION, AND, IF APPLICABLE, APPROVAL OF THE PROJECT SUBMITTED BY THE SOLE ADMINISTRATOR OF THE CORPORATION TO INCREASE THE VARIABLE PORTION OF THE CAPITAL STOCK.

II.- PRESENTATION OF A PROPOSAL TO PURCHASE SHARES ISSUED BY THE CORPORATION RESIDUOS INDUSTRIALES MULTIQUIM, S.A. DE C.V.

III.- APPOINTMENT OF SPECIAL DELEGATE OR DELEGATES TO FORMALIZE THE RESOLUTIONS ADOPTED, IF APPLICABLE.

Once the Agenda was read, it was approved by unanimous vote and the attendants dealt with its points as follows:

I. Regarding the FIRST POINT of the Agenda, the President informed about the convenience of increasing the variable portion of the capital stock of the Corporation in the amount of $327,000,000.00 (Three hundred twenty seven million pesos and 00/100 Mexican Currency).

The President of the Meeting set forth that such amount shall be contributed in cash by the current shareholders due to reasons of financial nature.

Mr. Guillermo Vargas Aguirre as representative of MINERA LA FE DEL NORTE, S.A. DE C.V. informed to the Meeting the irrevocable waiver of the company that he represents to the preferential right to subscribe in the corresponding proportional part the increase of the variable portion of the capital stock proposed in this Meeting.

Similarly, C.P. Héctor Vargas Aguirre informed the intention of his representative VALORES ECOLOGICOS, S.A. DE C.V. to entirely subscribe the increase in the variable portion of the capital stock proposed to the Meeting.

After discussing the aforesaid, the Meeting by unanimous vote adopted the following RESOLUTIONS:

FIRST: It is hereby approved to increase the variable portion of the capital stock of the Corporation in the amount of $327,000,000.00 (Three hundred twenty seven million pesos and 00/100 Mexican Currency) through the issuance of 3,270,000 (three million two hundred seventy thousand) shares with a par value of $100.00 each one, corresponding to the Series "B", variable portion, ordinary, nominative and entirely subscribed, paid and therefore released.

SECOND: These 3,270,000 (three million two hundred seventy thousand) ordinary, nominative and paid-up shares have been entirely subscribed and paid in this act with the amount of $327,000,000.00 (Three hundred twenty seven million pesos and 00/100 Mexican Currency) that the shareholder VALORES ECOLOGICOS, S.A. DE C.V. delivers in cash to the Corporation.

THIRD: It is hereby accepted the irrevocable waiver of the shareholder MINERA LA FE DEL NORTE, S.A. DE C.V. to the preferential right to subscribe the increase of the variable portion of the capital stock agreed by this Meeting.

FOURTH: It is hereby approved to replace the certificates currently circulating with the Definite Stock Certificates issued on October 26, 2000 that support the 3,270,500 (three million two

CGEA0041252

hundred seventy thousand five hundred) shares so that these new certificates cover all the capital stock of INMOBILIARIA CONFINAMINA, S.A. DE C.V.

Consequently, the Capital Stock of the Corporation is the amount of $327,050,000.00 (three hundred twenty seven million fifty thousand pesos and 00/100 Mexican Currency) from which $50.000 (fifty thousand pesos and 00/100 Mexican Currency) correspond to the Fixed Minimum Capital and $327,000,000.00 (three hundred twenty seven million pesos and 00/100 Mexican Currency) to the variable portion, in the understanding that hereinafter the capital stock will be represented as follows:

| SHAREHOLDERS | SHARES | |
|---|---|---|
| | SERIES A FIXED | SERIES B VARIABLE |
| VALORES ECOLOGICOS, S.A. DE C.V. | 495 | |
| MINERA LA FE DEL NORTE, S.A. DE C.V. | 5 | |
| VALORES ECOLOGICOS, S.A. DE C.V. | | 3,270,000 |
| TOTALS | 500 | 3,270,000 |
| TOTAL CAPITAL STOCK | 3,270,500 | |

II. Regarding the SECOND POINT of the Agenda, the Secretary read the proposal of the Sole Administrator to purchase 2,400 shares issued by the Corporation Residuos Industriales Multiquim, S.A: de C:V. since they consider it a good purchase for the Corporation suitable to produce gains for the shareholders of the Corporation since they consider Residuos Industriales Multiquim, S.A. de C.V. a solid company that is a leader on its line of business.

After discussing the aforesaid proposal, the Meeting by unanimous vote adopted the following RESOLUTION:

FIFTH: It is hereby approved the purchase of 2.400 shares of the Corporation Residuos Industriales Multiquim, S.A. de C.V. that represent 30% of the capital stock of Residuos Industriales Multiquim, S.A. de C.V. in the terms that may be considered more convenient to the interests of the Corporation and the execution of the required legal acts in order to perform the aforementioned transaction are also hereby authorized.

III. Regarding the THIRD and last POINT of the Agenda, the Meeting by unanimous vote, adopted the following RESOLUTION:

SIXTH. Messrs. LIC. HECTOR VARGAS AGUIRRE and LIC. GUILLERMO VARGAS AGUIRRE are appointed as SPECIAL DELEGATES of this Meeting so that in a joint or separate form they appear before the Notary public of their choice in order to protocolize the required parts of this Minute and in general to perform the required procedures in order to file the corresponding Public Deed of the aforesaid protocolization in the Public Registry of Property and Commerce, in case that would be necessary or convenient, formalizing the adopted Resolutions.

CGEA0041253

Without any other issue to deal with, this Meeting finished after being suspended by the proper time so that the Secretary could draft this Minute; following the Secretary read it and it was approved by unanimous vote, and was signed by the President, the Secretary and the Examiner.

It is herein set forth that all the representatives of the shareholders were present since the beginning of this Meeting until it finished, as well as in the moment of taking each and every one of the adopted RESOLUTIONS.

A copy of this Minute in simple paper, the shown proxies, the Attendance List signed by the Attendants and duly certified by the appointed examiners and the other documents shown in the Meeting are added as attachments of this Minute. The aforesaid forms the file of this Meeting that is kept in the files of the Secretary.

The Meeting was adjourned at the 11:00 hours of the day, month, and year mentioned at the beginning.

| | |
|---|---|
| ING. ABELARDO RAUL CAVAZOS GARZA<br>PRESIDENT | ING. HECTOR VARGAS GARZA<br>SECRETARY |
| VALORES ECOLOGICOS, S.A. DE C.V.<br>represented by C.P.HECTOR VARGAS GARZA | MINERA LA FE DEL NORTE, S.A. DE C.V. represented by GUILLERMO VARGAS AGUIRRE |

C.P. RAUL SALINAS GARZA
EXAMINER

CGEA0041254

## ATTENDANCE LIST

TO THE GENERAL ORDINARY SHAREHOLDERS' MEETING OF INMOBILIARIA
CONFINAMINA S.A. DE C.V. THAT TOOK PLACE AT THE 10:30 HOURS OF
OCTOBER 25, 2000 IN LAZARO CARDENAS 2400 OFFICE PB-5, SAN PEDRO GARZA
GARCIA, N.L. CORPORATE DOMICILE.

| SHAREHOLDERS | SHARES | |
|---|---|---|
| | SERIES A FIXED | SIGNATURES |
| VALORES ECOLOGICOS, S.A. DE C.V. represented by MR. HECTOR VARGAS AGUIRRE | 495 | _____ |
| MINERA LA FE DEL NORTE, S.A. DE C.V. represented by MR. GUILLERMO VARGAS AGUIRRE | 5 | _____ |
| TOTAL CAPITAL STOCK | 500 | |

The undersigned appointed as Tellers in order to verify the Attendance Quorum of this
Meeting, CERTIFY that, after revising the Stock Registry Book, the submitted proxies, and
the Attendance List the totality of the 500 shares of the Total Capital Stock of INMOBILIARIA
CONFINAMINA, S.A. DE C.V., that represents 100% of the subscribed and paid capital
stock of the Corporation, are represented.

| | |
|---|---|
| LIC. HECTOR VARGAS AGUIRRE TELLER | LIC. GUILLERMO VARGAS AGUIRRE TELLER |

CGEA0041255

**INMOBILIARIA CONFINAMINA, S.A. DE C.V.**
**ACTA DE ASAMBLEA GENERAL ORDINARIA DE ACCIONISTAS**
**NOVIEMBRE 14, 2000**

En la ciudad de San Pedro Garza García, N.L., domicilio social de **INMOBILIARIA CONFINAMINA, S.A. DE C.V.** siendo las (12:00) horas del día (14) de noviembre del (2000) se reunieron en Lázaro Cárdenas 2400 Edificio Losoles Despacho PB-5, los representantes de accionistas cuyos nombres y firmas aparecen en la Lista de Asistencia al efecto preparada y certificada por los Escrutadores designados, de la cual el original se agrega al expediente del duplicado de la presente Acta, con el objeto de celebrar una Asamblea General Ordinaria de Accionistas a la cual fueron debidamente citados.- Se encontraron presentes los Señores Ing. ABELARDO RAUL CAVAZOS GARZA, Administrador Unico de la Sociedad, C.P. RAUL SALINAS GARZA, Comisario de la Sociedad.-

Presidió la Asamblea el Señor Ing. ABELARDO RAUL CAVAZOS GARZA, en su calidad de Administrador Unico de la Sociedad y actuó como Secretario el señor Ing. HÉCTOR VARGAS AGUIRRE, el cual fué nombrado por unanimidad de votos de la Asamblea, esto de conformidad con los Estatutos Sociales.

A propuesta del Presidente, por unanimidad de votos la Asamblea designó Escrutadores a los Señores Lic. GUILLERMO VARGAS AGUIRRE y Lic. HECTOR VARGAS AGUIRRE, quienes aceptaron sus cargos y procedieron a verificar la correspondiente Lista de Asistencia, el Registro de Acciones y las Cartas Poder exhibidas, certificando que en la Asamblea de relación se encontraron legalmente representadas las 3,270,500 Acciones en que se encuentra dividido el capital social total de la Sociedad y por ende el quórum a que se refieren los Estatutos Sociales para declarar legítimamente instalada la Asamblea, distribuidas de la siguiente manera:

| ACCIONISTAS | ACCIONES PARTE FIJA SERIE A |
|---|---|
| VALORES ECOLOGICOS, S.A. DE C.V. | 495 |
| MINERA LA FE DEL NORTE, S.A. DE C.V. | 5 |
| TOTAL CAPITAL MINIMO FIJO | 500 |

| ACCIONISTAS | ACCIONES PARTE VARIABLE SERIE B |
|---|---|
| VALORES ECOLOGICOS, S.A. DE C.V. | 3,270,000 |
| TOTAL CAPITAL VARIABLE | 3,270,000 |
| TOTAL CAPITAL SOCIAL | 3,270,500 |

En virtud de la certificación de los Escrutadores respecto de haberse encontrado representado el 100% de las acciones representativas del Capital Social total suscrito y pagado de la Sociedad, el Presidente declaró legalmente instalada la Asamblea y apta para tratar y resolver los asuntos que la motivan, a pesar de no haberse publicado Convocatoria previa, de conformidad con lo dispuesto por los Estatutos Sociales.

Acto seguido, el Secretario dio lectura, a la siguiente:-

**ORDEN DEL DIA:**

I.-PRESENTACION DEL INFORME DEL ADMINISTRADOR UNICO, INCLUYENDO LOS ESTADOS FINANCIEROS RELATIVOS AL EJERCICIO SOCIAL PARCIAL COMPRENDIDO DEL 01 DE ENERO A 31 DE OCTUBRE DEL 2000, SU DISCUSION Y APROBACION, EN SU CASO, DESPUES DE CONOCER EL INFORME DEL COMISARIO.-

II.-RATIFICACION, EN SU CASO, DE TODOS LOS ACTOS Y ACUERDOS TOMADOS POR EL ADMINISTRADOR UNICO DE LA SOCIEDAD EN FUNCIONES DURANTE EL EJERCICIO SOCIAL PARCIAL COMPRENDIDO DE 01 DE ENERO A 31 DE OCTUBRE DEL 2000.-

III. PRESENTACION DE LA PROPUESTA PARA VENDER ACCIONES EMITIDAS POR ESTA SOCIEDAD.

IV.- PRESENTACION DE LA RENUNCIA DEL ADMINISTRADOR UNICO Y EL COMISARIO EN FUNCIONES .-

V.- NOMBRAMIENTO DEL CONSEJO DE ADMINISTRACION Y COMISARIO QUE ENTRARAN EN FUNCIONES A PARTIR DE ESTA FECHA Y DETERMINACION DE SUS EMOLUMENTOS.-

VI.-NOMBRAMIENTO DE DELEGADO O DELEGADOS ESPECIALES PARA FORMALIZAR LOS ACUERDOS ADOPTADOS, EN SU CASO.

I.- Con respecto al desahogo del PRIMER PUNTO contenido en la Orden del Dia, el Secretario dio lectura al Informe del Administrador Unico de la Sociedad sobre la situación y actividades de la Sociedad durante el Ejercicio Social Parcial comprendido del 01 de enero al 31 de octubre del año 2000, y presentó a los Señores Accionistas las Cuentas Generales del Ejercicio Social que se da a cuenta y los Estados Financieros de la Sociedad.-

cto seguido, el Comisario dio lectura a su Informe correspondiente.-

Escuchado que fue el Informe del Administrador Unico de la Sociedad, el Informe del Comisario y revisados que fueron los Estados Financieros de la Sociedad, la Asamblea por unanimidad de votos tomó los siguientes ACUERDOS:

PRIMERO:     Se aprueba sin reserva alguna el Informe del Administrador Unico de la Sociedad sobre la situación y actividades de la Sociedad durante el Ejercicio Social Parcial comprendido del 01 de enero al 31 de octubre del año 2000.-

SEGUNDO:     Se aprueban sin reserva alguna y basados en el Informe del Comisario, las Cuentas Generales del Ejercicio Social comprendido del 01 de enero al 31 de octubre del año 2000, asi como los Estados Financieros de la Sociedad

CGEA0041257

correspondientes al período que se menciona. Agréguense al expediente de esta Acta los documentos mencionados.-

II.- Por lo que toca al SEGUNDO PUNTO contenido en la Orden del Día, la Asamblea por unanimidad de votos tomó el siguiente acuerdo:

TERCERO:     Se ratifican todos y cada uno de los Acuerdos y Actos tomados y ejecutados por el Administrador Único de la Sociedad realizados en el desempeño de sus funciones durante el Ejercicio Social del que se da cuenta, liberándolo de cualesquier responsabilidad que pudiere derivarse de la misma.-

III. Con respecto al desahogo del TERCER PUNTO contenido en la Orden del Día, el Secretario dió lectura a la propuesta presentada a esta Asamblea para enajenar 5 acciones emitidas por esta Sociedad propiedad de la Accionista MINERA LA FE DEL NORTE, S.A. DE C.V., en favor de CGEA, S.A. o de SARP INDUSTRIES, S.A., o de otra empresa filial de alguna de las sociedades mencionadas, por así convenir a sus intereses.-

n uso de la palabra el representante de la Accionista VALORES ECOLOGICOS, S.A. DE C.V. expresó la renuncia irrevocable de parte de su representada al derecho de preferencia para adquirir dicho paquete accionario.

El Secretario dio lectura a la propuesta presentada a esta Asamblea para enajenar 3,270,495 acciones emitidas por esta Sociedad propiedad de la accionista VALORES ECOLOGICOS, S.A. DE C.V. en favor de CGEA, S.A. o de SARP INDUSTRIES, S.A., o de otra empresa filial de alguna de las sociedades mencionadas, por así convenir a sus intereses.-

En uso de la palabra el representante de la Accionista MINERA LA FE DEL NORTE, S.A. DE C.V. expresó la renuncia irrevocable de parte de su representada al derecho de preferencia para adquirir dicho paquete accionario.

Discutidas que fueron las proposiciones anteriores, la Asamblea por unanimidad de votos tomó los siguientes ACUERDOS:

CUARTO:      Se autoriza la enajenación de las 5 acciones emitidas por esta Sociedad propiedad de MINERA LA FE DEL NORTE, S.A. DE C.V. a favor de CGEA, S.A. o de SARP INDUSTRIES, S.A., o de otra empresa filial de alguna de las sociedades mencionadas.

QUINTO:      Se acepta la renuncia irrevocable al derecho de preferencia de la Accionista VALORES ECOLOGICOS, S.A. DE C.V. para adquirir las 5 acciones mencionadas en el ACUERDO que antecede.

SEXTO:       Se autoriza la enajenación de 3,270,495 acciones emitidas por esta Sociedad propiedad de la Accionista VALORES ECOLOGICOS, S.A. DE C.V. a favor de CGEA, S.A. o de SARP INDUSTRIES, S.A., o de otra empresa filial de alguna de las sociedades mencionadas.

CGEA0041258

**SEPTIMO:**    Se acepta la renuncia irrevocable al derecho de preferencia de la Accionista MINERA LA FE DEL NORTE, S.A. DE C.V., Inc: para adquirir las 3.270,495 acciones mencionadas en el ACUERDO que antecede.

IV.- Con respecto al desahogo del CUARTO PUNTO contenido en la Orden del Día, el Secretario dio lectura a los comunicados de la renuncia, con efectos a esta fecha, del Administrador Unico y el Comisario de la Sociedad, presentadas con motivo de la reestructuración administrativa de la Sociedad.

Acto seguido, la Asamblea por unaňimidad de votos tomó los siguientes ACUERDOS:

**OCTAVO:**    Se acepta la renuncia del Administrador Unico y el Comisario en funciones y se les libera de cualquier responsabilidad en pudieron haber incurrido en el desempeño de sus cargos, desde que tomaron posesión hasta esta fecha.

V.- Con respecto al desahogo del QUINTO PUNTO contenido en la Orden del Día, el Secretario informó a los Señores Accionistas que en los términos de los Estatutos Sociales, es necesario nombrar el Consejo de Administración y el Comisario que entrarán en funciones a partir de esta fecha, así como la determinación de us emolumentos.

Acto Seguido el Secretario dio lectura a la propuesta que un Accionista presentó a la consideración de la Asamblea en relación al Consejo de Administración y Comisario que entrarán en funciones a partir de esta fecha.-

Discutida que fue la proposición anterior, así como la determinación de los emolumentos correspondientes, la Asamblea por unanimidad de votos tomó los siguientes ACUERDOS:

**NOVENO:**    Se designa el siguiente Consejo de Administración y Comisarios que entrarán en funciones a partir de esta fecha:

### CONSEJO DE ADMINISTRACION

| CONSEJEROS PROPIETARIOS | | CONSEJEROS SUPLENTES |
|---|---|---|
| JEAN ALAIN JULLIEN | PRESIDENTE | VACANTE |
| PASCAL GAUTHIER | CONSEJERO | VACANTE |
| JEAN JACQUES GRIMAUX | CONSEJERO | VACANTE |
| PIERRE RELLET | CONSEJERO | VACANTE |

LIC. LUIS SANTOS THERIOT   SECRETARIO NO CONSEJERO

**COMISARIO**
**SR. ALBERTO VAZQUEZ**

CGEA0041259