# *Rules of Arbitration*

*in force as from 1 January 1998*

**Cost scales effective as of 1 July 2003**

**International Chamber of Commerce**
38 cours Albert 1er
75008 Paris - France
Telephone +33 1 49 53 28 28
Fax +33 1 49 53 29 33
Web site www.iccwbo.org

The ICC Rules of Arbitration and their Appendices have been translated into many different languages.
However, the English and French versions are the only official texts.

**© International Chamber of Commerce 1997, 2001**

All rights reserved.

**ICC No.: publication 808**

**Date of this online publication: October 2004**

## FOREWORD

The closing decades of the twentieth century saw international commercial arbitration gain worldwide acceptance as the normal means of resolving international commercial disputes. National laws on arbitration have been modernized on all continents. International treaties on arbitration have been signed or adhered to with impressive success. Arbitration has become part of the curricula of large numbers of law schools. With the gradual removal of political and trade barriers and the rapid globalization of the world economy, new challenges have been created for arbitration institutions in response to the growing demand of parties for certainty and predictability, greater rapidity and flexibility as well as neutrality and efficacy in the resolution of international disputes.

Since the International Court of Arbitration was established in 1923, ICC arbitration has been constantly nourished by the experience gathered by the ICC International Court of Arbitration in the course of administering more than thirteen thousand international arbitration cases, now involving each year parties and arbitrators from over 100 countries and from a diversity of legal, economic, cultural and linguistic backgrounds.

The present ICC Rules of Arbitration came into effect on 1 January 1998. They are the result of an intensive, worldwide consultation process and constitute the first major revision of the Rules in more than 20 years. The changes made are designed to reduce delays and ambiguities and to fill certain gaps, taking into account the evolution of arbitration practice. The basic features of the ICC arbitration system have not been altered, however, notably its universality and flexibility, as well as the central role played by the ICC Court in the administration of arbitral cases.

Every ICC arbitration is conducted by an arbitral tribunal with responsibility for examining the merits of the case and rendering a final award. Each year, ICC arbitrations are held in numerous countries, in most major languages

3

and with arbitrators from all over the world. The work of those arbitral tribunals is monitored by the ICC Court, which meets weekly all year round. Composed of members from over 80 countries, the Court organizes and supervises arbitrations held under the ICC Rules of Arbitration. The Court must remain constantly alert to changes in the law and the practice of arbitration in all parts of the world and must adapt its working methods to the evolving needs of parties and arbitrators. For the day-to-day management of cases in many languages, the ICC Court is supported by a Secretariat based at the headquarters of the International Chamber of Commerce, in Paris.

Although the ICC Rules of Arbitration have been especially designed for arbitrations in an international context, they may also be used for non-international cases.

## STANDARD ICC ARBITRATION CLAUSE

The ICC recommends that all parties wishing to make reference to ICC arbitration in their contracts use the following standard clause.

Parties are reminded that it may be desirable for them to stipulate in the arbitration clause itself the law governing the contract, the number of arbitrators and the place and language of the arbitration. The parties' free choice of the law governing the contract and of the place and language of the arbitration is not limited by the ICC Rules of Arbitration.

Attention is called to the fact that the laws of certain countries require that parties to contracts expressly accept arbitration clauses, sometimes in a precise and particular manner.

The ICC Rules of Arbitration have been translated into several of the languages listed below. These translations are available on the web site of the ICC International Court of Arbitration:

**www.iccarbitration.org**

### English

"All disputes arising out of or in connection with the present contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules."

## STANDARD CLAUSE FOR AN ICC
## PRE-ARBITRAL REFEREE PROCEDURE AND
## ICC ARBITRATION

The ICC Pre-Arbitral Referee Procedure provides for the appointment of a person empowered to make certain orders that might be necessary prior to a case being referred to arbitration or the courts.  Use of this procedure presupposes a written agreement between the parties.  Where parties wish to have recourse to both the ICC Pre-Arbitral Referee Procedure and ICC arbitration, specific reference should be made to both procedures.  The following standard clause is recommended:

"Any party to this contract shall have the right to have recourse to and shall be bound by the Pre-Arbitral Referee Procedure of the International Chamber of Commerce in accordance with its Rules for a Pre-Arbitral Referee Procedure.
All disputes arising out of or in connection with the present contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules of Arbitration."

For translations of this clause, please consult the web site of the ICC International Court of Arbitration:

**www.iccarbitration.org**

**RULES OF ARBITRATION OF THE
INTERNATIONAL CHAMBER OF COMMERCE**

INTRODUCTORY PROVISIONS

### Article 1
### International Court of Arbitration

1

The International Court of Arbitration (the "Court") of the International Chamber of Commerce (the "ICC") is the arbitration body attached to the ICC. The statutes of the Court are set forth in Appendix I. Members of the Court are appointed by the World Council of the ICC. The function of the Court is to provide for the settlement by arbitration of business disputes of an international character in accordance with the Rules of Arbitration of the International Chamber of Commerce (the "Rules"). If so empowered by an arbitration agreement, the Court shall also provide for the settlement by arbitration in accordance with these Rules of business disputes not of an international character.

2

The Court does not itself settle disputes. It has the function of ensuring the application of these Rules. It draws up its own Internal Rules (Appendix II).

3

The Chairman of the Court or, in the Chairman's absence or otherwise at his request, one of its Vice-Chairmen shall have the power to take urgent decisions on behalf of the Court, provided that any such decision is reported to the Court at its next session.

4

As provided for in its Internal Rules, the Court may delegate to one or more committees composed of its members the power to take certain decisions, provided that any such decision is reported to the Court at its next session.

5

The Secretariat of the Court (the "Secretariat") under the direction of its Secretary General (the "Secretary General") shall have its seat at the headquarters of the ICC.

## Article 2
### Definitions

In these Rules:

(i) "Arbitral Tribunal" includes one or more arbitrators.

(ii) "Claimant" includes one or more claimants and "Respondent" includes one or more respondents.

(iii) "Award" includes, *inter alia*, an interim, partial or final Award.

## Article 3
### Written Notifications or Communications; Time Limits

1

All pleadings and other written communications submitted by any party, as well as all documents annexed thereto, shall be supplied in a number of copies sufficient to provide one copy for each party, plus one for each arbitrator, and one for the Secretariat. A copy of any communication from the Arbitral Tribunal to the parties shall be sent to the Secretariat.

2

All notifications or communications from the Secretariat and the Arbitral Tribunal shall be made to the last address of the party or its representative for whom the same are intended, as notified either by the party in question or by the other party. Such notification or communication may be made by delivery against receipt, registered post, courier, facsimile transmission, telex, telegram or any other means of telecommunication that provides a record of the sending thereof.

3

A notification or communication shall be deemed to have been made on the day it was received by the party itself

or by its representative, or would have been received if
made in accordance with the preceding paragraph.

4

Periods of time specified in or fixed under the present
Rules shall start to run on the day following the date a
notification or communication is deemed to have been
made in accordance with the preceding paragraph. When
the day next following such date is an official holiday, or a
non-business day in the country where the notification or
communication is deemed to have been made, the
period of time shall commence on the first following
business day. Official holidays and non-business days are
included in the calculation of the period of time. If the
last day of the relevant period of time granted is an official
holiday or a non-business day in the country where the
notification or communication is deemed to have been
made, the period of time shall expire at the end of the
first following business day.

## COMMENCING THE ARBITRATION

### Article 4
### Request for Arbitration

1

A party wishing to have recourse to arbitration under
these Rules shall submit its Request for Arbitration (the
"Request") to the Secretariat, which shall notify the
Claimant and Respondent of the receipt of the Request
and the date of such receipt.

2

The date on which the Request is received by the
Secretariat shall, for all purposes, be deemed to be the
date of the commencement of the arbitral proceedings.

3

The Request shall, *inter alia*, contain the following
information:

a) the name in full, description and address of each of the parties;

b) a description of the nature and circumstances of the dispute giving rise to the claim(s);

c) a statement of the relief sought, including, to the extent possible, an indication of any amount(s) claimed;

d) the relevant agreements and, in particular, the arbitration agreement;

e) all relevant particulars concerning the number of arbitrators and their choice in accordance with the provisions of Articles 8, 9 and 10, and any nomination of an arbitrator required thereby; and

f) any comments as to the place of arbitration, the applicable rules of law and the language of the arbitration.

4

Together with the Request, the Claimant shall submit the number of copies thereof required by Article 3(1) and shall make the advance payment on administrative expenses required by Appendix III ("Arbitration Costs and Fees") in force on the date the Request is submitted. In the event that the Claimant fails to comply with either of these requirements, the Secretariat may fix a time limit within which the Claimant must comply, failing which the file shall be closed without prejudice to the right of the Claimant to submit the same claims at a later date in another Request.

5

The Secretariat shall send a copy of the Request and the documents annexed thereto to the Respondent for its Answer to the Request once the Secretariat has sufficient copies of the Request and the required advance payment.

6

When a party submits a Request in connection with a legal relationship in respect of which arbitration proceedings between the same parties are already pending under these Rules, the Court may, at the request

of a party, decide to include the claims contained in the
Request in the pending proceedings provided that the
Terms of Reference have not been signed or approved
by the Court. Once the Terms of Reference have been
signed or approved by the Court, claims may only be
included in the pending proceedings subject to the
provisions of Article 19.

### Article 5
### Answer to the Request; Counterclaims

1

Within 30 days from the receipt of the Request from the
Secretariat, the Respondent shall file an Answer (the
"Answer") which shall, *inter alia*, contain the following
information:

a)  its name in full, description and address;

b)  its comments as to the nature and circumstances of
    the dispute giving rise to the claim(s);

c)  its response to the relief sought;

d)  any comments concerning the number of arbitrators
    and their choice in light of the Claimant's proposals
    and in accordance with the provisions of Articles 8, 9
    and 10, and any nomination of an arbitrator required
    thereby; and

e)  any comments as to the place of arbitration, the
    applicable rules of law and the language of the
    arbitration.

2

The Secretariat may grant the Respondent an extension
of the time for filing the Answer, provided the application
for such an extension contains the Respondent's
comments concerning the number of arbitrators and
their choice and, where required by Articles 8, 9 and 10,
the nomination of an arbitrator. If the Respondent fails to
do so, the Court shall proceed in accordance with these
Rules.

3

The Answer shall be supplied to the Secretariat in the
number of copies specified by Article 3(1).

4

A copy of the Answer and the documents annexed thereto shall be communicated by the Secretariat to the Claimant.

5

Any counterclaim(s) made by the Respondent shall be filed with its Answer and shall provide:

a) a description of the nature and circumstances of the dispute giving rise to the counterclaim(s); and

b) a statement of the relief sought, including, to the extent possible, an indication of any amount(s) counterclaimed.

6

The Claimant shall file a reply to any counterclaim within 30 days from the date of receipt of the counterclaim(s) communicated by the Secretariat. The Secretariat may grant the Claimant an extension of time for filing the reply.

## Article 6
## Effect of the Arbitration Agreement

1

Where the parties have agreed to submit to arbitration under the Rules, they shall be deemed to have submitted *ipso facto* to the Rules in effect on the date of commencement of the arbitration proceedings, unless they have agreed to submit to the Rules in effect on the date of their arbitration agreement.

2

If the Respondent does not file an Answer, as provided by Article 5, or if any party raises one or more pleas concerning the existence, validity or scope of the arbitration agreement, the Court may decide, without prejudice to the admissibility or merits of the plea or pleas, that the arbitration shall proceed if it is *prima facie* satisfied that an arbitration agreement under the Rules may exist. In such a case, any decision as to the jurisdiction of the Arbitral Tribunal shall be taken by the Arbitral

Tribunal itself. If the Court is not so satisfied, the parties shall be notified that the arbitration cannot proceed. In such a case, any party retains the right to ask any court having jurisdiction whether or not there is a binding arbitration agreement.

3

If any of the parties refuses or fails to take part in the arbitration or any stage thereof, the arbitration shall proceed notwithstanding such refusal or failure.

4

Unless otherwise agreed, the Arbitral Tribunal shall not cease to have jurisdiction by reason of any claim that the contract is null and void or allegation that it is non-existent, provided that the Arbitral Tribunal upholds the validity of the arbitration agreement. The Arbitral Tribunal shall continue to have jurisdiction to determine the respective rights of the parties and to adjudicate their claims and pleas even though the contract itself may be non-existent or null and void.

## THE ARBITRAL TRIBUNAL

### Article 7
### General Provisions

1

Every arbitrator must be and remain independent of the parties involved in the arbitration.

2

Before appointment or confirmation, a prospective arbitrator shall sign a statement of independence and disclose in writing to the Secretariat any facts or circumstances which might be of such a nature as to call into question the arbitrator's independence in the eyes of the parties. The Secretariat shall provide such information to the parties in writing and fix a time limit for any comments from them.

3

An arbitrator shall immediately disclose in writing to the Secretariat and to the parties any facts or circumstances of a similar nature which may arise during the arbitration.

4

The decisions of the Court as to the appointment, confirmation, challenge or replacement of an arbitrator shall be final and the reasons for such decisions shall not be communicated.

5

By accepting to serve, every arbitrator undertakes to carry out his responsibilities in accordance with these Rules.

6

Insofar as the parties have not provided otherwise, the Arbitral Tribunal shall be constituted in accordance with the provisions of Articles 8, 9 and 10.

### Article 8
### Number of Arbitrators

1

The disputes shall be decided by a sole arbitrator or by three arbitrators.

2

Where the parties have not agreed upon the number of arbitrators, the Court shall appoint a sole arbitrator, save where it appears to the Court that the dispute is such as to warrant the appointment of three arbitrators. In such case, the Claimant shall nominate an arbitrator within a period of 15 days from the receipt of the notification of the decision of the Court, and the Respondent shall nominate an arbitrator within a period of 15 days from the receipt of the notification of the nomination made by the Claimant.

3

Where the parties have agreed that the dispute shall be settled by a sole arbitrator, they may, by agreement,

nominate the sole arbitrator for confirmation. If the parties fail to nominate a sole arbitrator within 30 days from the date when the Claimant's Request for Arbitration has been received by the other party, or within such additional time as may be allowed by the Secretariat, the sole arbitrator shall be appointed by the Court.

4

Where the dispute is to be referred to three arbitrators, each party shall nominate in the Request and the Answer, respectively, one arbitrator for confirmation. If a party fails to nominate an arbitrator, the appointment shall be made by the Court. The third arbitrator, who will act as chairman of the Arbitral Tribunal, shall be appointed by the Court, unless the parties have agreed upon another procedure for such appointment, in which case the nomination will be subject to confirmation pursuant to Article 9. Should such procedure not result in a nomination within the time limit fixed by the parties or the Court, the third arbitrator shall be appointed by the Court.

### Article 9
### Appointment and Confirmation of the Arbitrators

1

In confirming or appointing arbitrators, the Court shall consider the prospective arbitrator's nationality, residence and other relationships with the countries of which the parties or the other arbitrators are nationals and the prospective arbitrator's availability and ability to conduct the arbitration in accordance with these Rules. The same shall apply where the Secretary General confirms arbitrators pursuant to Article 9(2).

2

The Secretary General may confirm as co-arbitrators, sole arbitrators and chairmen of Arbitral Tribunals persons nominated by the parties or pursuant to their particular agreements, provided they have filed a statement of independence without qualification or a qualified statement of independence has not given rise to

objections. Such confirmation shall be reported to the Court at its next session. If the Secretary General considers that a co-arbitrator, sole arbitrator or chairman of an Arbitral Tribunal should not be confirmed, the matter shall be submitted to the Court.

3

Where the Court is to appoint a sole arbitrator or the chairman of an Arbitral Tribunal, it shall make the appointment upon a proposal of a National Committee of the ICC that it considers to be appropriate. If the Court does not accept the proposal made, or if the National Committee fails to make the proposal requested within the time limit fixed by the Court, the Court may repeat its request or may request a proposal from another National Committee that it considers to be appropriate.

4

Where the Court considers that the circumstances so demand, it may choose the sole arbitrator or the chairman of the Arbitral Tribunal from a country where there is no National Committee, provided that neither of the parties objects within the time limit fixed by the Court.

5

The sole arbitrator or the chairman of the Arbitral Tribunal shall be of a nationality other than those of the parties. However, in suitable circumstances and provided that neither of the parties objects within the time limit fixed by the Court, the sole arbitrator or the chairman of the Arbitral Tribunal may be chosen from a country of which any of the parties is a national.

6

Where the Court is to appoint an arbitrator on behalf of a party which has failed to nominate one, it shall make the appointment upon a proposal of the National Committee of the country of which that party is a national. If the Court does not accept the proposal made, or if the National Committee fails to make the proposal requested within the time limit fixed by the Court, or if the country of which the said party is a national has no National

Committee, the Court shall be at liberty to choose any person whom it regards as suitable. The Secretariat shall inform the National Committee, if one exists, of the country of which such person is a national.

### Article 10
### Multiple Parties

1

Where there are multiple parties, whether as Claimant or as Respondent, and where the dispute is to be referred to three arbitrators, the multiple Claimants, jointly, and the multiple Respondents, jointly, shall nominate an arbitrator for confirmation pursuant to Article 9.

2

In the absence of such a joint nomination and where all parties are unable to agree to a method for the constitution of the Arbitral Tribunal, the Court may appoint each member of the Arbitral Tribunal and shall designate one of them to act as chairman. In such case, the Court shall be at liberty to choose any person it regards as suitable to act as arbitrator, applying Article 9 when it considers this appropriate.

### Article 11
### Challenge of Arbitrators

1

A challenge of an arbitrator, whether for an alleged lack of independence or otherwise, shall be made by the submission to the Secretariat of a written statement specifying the facts and circumstances on which the challenge is based.

2

For a challenge to be admissible, it must be sent by a party either within 30 days from receipt by that party of the notification of the appointment or confirmation of the arbitrator, or within 30 days from the date when the party making the challenge was informed of the facts and circumstances on which the challenge is based if such date is subsequent to the receipt of such notification.

3

The Court shall decide on the admissibility and, at the same time, if necessary, on the merits of a challenge after the Secretariat has afforded an opportunity for the arbitrator concerned, the other party or parties and any other members of the Arbitral Tribunal to comment in writing within a suitable period of time. Such comments shall be communicated to the parties and to the arbitrators.

## Article 12
## Replacement of Arbitrators

1

An arbitrator shall be replaced upon his death, upon the acceptance by the Court of the arbitrator's resignation, upon acceptance by the Court of a challenge, or upon the request of all the parties.

2

An arbitrator shall also be replaced on the Court's own initiative when it decides that he is prevented *de jure* or *de facto* from fulfilling his functions, or that he is not fulfilling his functions in accordance with the Rules or within the prescribed time limits.

3

When, on the basis of information that has come to its attention, the Court considers applying Article 12(2), it shall decide on the matter after the arbitrator concerned, the parties and any other members of the Arbitral Tribunal have had an opportunity to comment in writing within a suitable period of time. Such comments shall be communicated to the parties and to the arbitrators.

4

When an arbitrator is to be replaced, the Court has discretion to decide whether or not to follow the original nominating process. Once reconstituted, and after having invited the parties to comment, the Arbitral Tribunal shall determine if and to what extent prior proceedings shall be repeated before the reconstituted Arbitral Tribunal.

5

Subsequent to the closing of the proceedings, instead of replacing an arbitrator who has died or been removed by the Court pursuant to Articles 12(1) and 12(2), the Court may decide, when it considers it appropriate, that the remaining arbitrators shall continue the arbitration. In making such determination, the Court shall take into account the views of the remaining arbitrators and of the parties and such other matters that it considers appropriate in the circumstances.

## THE ARBITRAL PROCEEDINGS

### Article 13
### Transmission of the File to the Arbitral Tribunal

The Secretariat shall transmit the file to the Arbitral Tribunal as soon as it has been constituted, provided the advance on costs requested by the Secretariat at this stage has been paid.

### Article 14
### Place of the Arbitration

1

The place of the arbitration shall be fixed by the Court unless agreed upon by the parties.

2

The Arbitral Tribunal may, after consultation with the parties, conduct hearings and meetings at any location it considers appropriate unless otherwise agreed by the parties.

3

The Arbitral Tribunal may deliberate at any location it considers appropriate.

**Article 15**
**Rules Governing the Proceedings**

1

The proceedings before the Arbitral Tribunal shall be governed by these Rules and, where these Rules are silent, by any rules which the parties or, failing them, the Arbitral Tribunal may settle on, whether or not reference is thereby made to the rules of procedure of a national law to be applied to the arbitration.

2

In all cases, the Arbitral Tribunal shall act fairly and impartially and ensure that each party has a reasonable opportunity to present its case.

**Article 16**
**Language of the Arbitration**

In the absence of an agreement by the parties, the Arbitral Tribunal shall determine the language or languages of the arbitration, due regard being given to all relevant circumstances, including the language of the contract.

**Article 17**
**Applicable Rules of Law**

1

The parties shall be free to agree upon the rules of law to be applied by the Arbitral Tribunal to the merits of the dispute. In the absence of any such agreement, the Arbitral Tribunal shall apply the rules of law which it determines to be appropriate.

2

In all cases the Arbitral Tribunal shall take account of the provisions of the contract and the relevant trade usages.

3

The Arbitral Tribunal shall assume the powers of an *amiable compositeur* or decide *ex aequo et bono* only if the parties have agreed to give it such powers.

### Article 18
### Terms of Reference; Procedural Timetable

1

As soon as it has received the file from the Secretariat, the Arbitral Tribunal shall draw up, on the basis of documents or in the presence of the parties and in the light of their most recent submissions, a document defining its Terms of Reference. This document shall include the following particulars:

a) the full names and descriptions of the parties;

b) the addresses of the parties to which notifications and communications arising in the course of the arbitration may be made;

c) a summary of the parties' respective claims and of the relief sought by each party, with an indication to the extent possible of the amounts claimed or counterclaimed;

d) unless the Arbitral Tribunal considers it inappropriate, a list of issues to be determined;

e) the full names, descriptions and addresses of the arbitrators;

f) the place of the arbitration; and

g) particulars of the applicable procedural rules and, if such is the case, reference to the power conferred upon the Arbitral Tribunal to act as *amiable compositeur* or to decide *ex aequo et bono*.

2

The Terms of Reference shall be signed by the parties and the Arbitral Tribunal. Within two months of the date on which the file has been transmitted to it, the Arbitral Tribunal shall transmit to the Court the Terms of Reference signed by it and by the parties. The Court may extend this time limit pursuant to a reasoned request from the Arbitral Tribunal or on its own initiative if it decides it is necessary to do so.

3

If any of the parties refuses to take part in the drawing up of the Terms of Reference or to sign the same, they shall

be submitted to the Court for approval. When the Terms of Reference have been signed in accordance with Article 18(2) or approved by the Court, the arbitration shall proceed.

4

When drawing up the Terms of Reference, or as soon as possible thereafter, the Arbitral Tribunal, after having consulted the parties, shall establish in a separate document a provisional timetable that it intends to follow for the conduct of the arbitration and shall communicate it to the Court and the parties. Any subsequent modifications of the provisional timetable shall be communicated to the Court and the parties.

### Article 19
### New Claims

After the Terms of Reference have been signed or approved by the Court, no party shall make new claims or counterclaims which fall outside the limits of the Terms of Reference unless it has been authorized to do so by the Arbitral Tribunal, which shall consider the nature of such new claims or counterclaims, the stage of the arbitration and other relevant circumstances.

### Article 20
### Establishing the Facts of the Case

1

The Arbitral Tribunal shall proceed within as short a time as possible to establish the facts of the case by all appropriate means.

2

After studying the written submissions of the parties and all documents relied upon, the Arbitral Tribunal shall hear the parties together in person if any of them so requests or, failing such a request, it may of its own motion decide to hear them.

3

The Arbitral Tribunal may decide to hear witnesses, experts appointed by the parties or any other person, in

the presence of the parties, or in their absence provided they have been duly summoned.

4

The Arbitral Tribunal, after having consulted the parties, may appoint one or more experts, define their terms of reference and receive their reports. At the request of a party, the parties shall be given the opportunity to question at a hearing any such expert appointed by the Tribunal.

5

At any time during the proceedings, the Arbitral Tribunal may summon any party to provide additional evidence.

6

The Arbitral Tribunal may decide the case solely on the documents submitted by the parties unless any of the parties requests a hearing.

7

The Arbitral Tribunal may take measures for protecting trade secrets and confidential information.

### Article 21
### Hearings

1

When a hearing is to be held, the Arbitral Tribunal, giving reasonable notice, shall summon the parties to appear before it on the day and at the place fixed by it.

2

If any of the parties, although duly summoned, fails to appear without valid excuse, the Arbitral Tribunal shall have the power to proceed with the hearing.

3

The Arbitral Tribunal shall be in full charge of the hearings, at which all the parties shall be entitled to be present. Save with the approval of the Arbitral Tribunal and the parties, persons not involved in the proceedings shall not be admitted.

4

The parties may appear in person or through duly authorized representatives. In addition, they may be assisted by advisers.

## Article 22
## Closing of the Proceedings

1

When it is satisfied that the parties have had a reasonable opportunity to present their cases, the Arbitral Tribunal shall declare the proceedings closed. Thereafter, no further submission or argument may be made, or evidence produced, unless requested or authorized by the Arbitral Tribunal.

2

When the Arbitral Tribunal has declared the proceedings closed, it shall indicate to the Secretariat an approximate date by which the draft Award will be submitted to the Court for approval pursuant to Article 27. Any postponement of that date shall be communicated to the Secretariat by the Arbitral Tribunal.

## Article 23
## Conservatory and Interim Measures

1

Unless the parties have otherwise agreed, as soon as the file has been transmitted to it, the Arbitral Tribunal may, at the request of a party, order any interim or conservatory measure it deems appropriate. The Arbitral Tribunal may make the granting of any such measure subject to appropriate security being furnished by the requesting party. Any such measure shall take the form of an order, giving reasons, or of an Award, as the Arbitral Tribunal considers appropriate.

2

Before the file is transmitted to the Arbitral Tribunal, and in appropriate circumstances even thereafter, the parties may apply to any competent judicial authority for interim

or conservatory measures. The application of a party to a judicial authority for such measures or for the implementation of any such measures ordered by an Arbitral Tribunal shall not be deemed to be an infringement or a waiver of the arbitration agreement and shall not affect the relevant powers reserved to the Arbitral Tribunal. Any such application and any measures taken by the judicial authority must be notified without delay to the Secretariat. The Secretariat shall inform the Arbitral Tribunal thereof.

## AWARDS

### Article 24
### Time Limit for the Award

1

The time limit within which the Arbitral Tribunal must render its final Award is six months. Such time limit shall start to run from the date of the last signature by the Arbitral Tribunal or by the parties of the Terms of Reference or, in the case of application of Article 18(3), the date of the notification to the Arbitral Tribunal by the Secretariat of the approval of the Terms of Reference by the Court.

2

The Court may extend this time limit pursuant to a reasoned request from the Arbitral Tribunal or on its own initiative if it decides it is necessary to do so.

### Article 25
### Making of the Award

1

When the Arbitral Tribunal is composed of more than one arbitrator, an Award is given by a majority decision. If there be no majority, the Award shall be made by the chairman of the Arbitral Tribunal alone.

2

The Award shall state the reasons upon which it is based.

3

The Award shall be deemed to be made at the place of the arbitration and on the date stated therein.

### Article 26
### Award by Consent

If the parties reach a settlement after the file has been transmitted to the Arbitral Tribunal in accordance with Article 13, the settlement shall be recorded in the form of an Award made by consent of the parties if so requested by the parties and if the Arbitral Tribunal agrees to do so.

### Article 27
### Scrutiny of the Award by the Court

Before signing any Award, the Arbitral Tribunal shall submit it in draft form to the Court. The Court may lay down modifications as to the form of the Award and, without affecting the Arbitral Tribunal's liberty of decision, may also draw its attention to points of substance. No Award shall be rendered by the Arbitral Tribunal until it has been approved by the Court as to its form.

### Article 28
### Notification, Deposit and Enforceability of the Award

1

Once an Award has been made, the Secretariat shall notify to the parties the text signed by the Arbitral Tribunal, provided always that the costs of the arbitration have been fully paid to the ICC by the parties or by one of them.

2

Additional copies certified true by the Secretary General shall be made available on request and at any time to the parties, but to no one else.

3

By virtue of the notification made in accordance with Paragraph 1 of this Article, the parties waive any other form of notification or deposit on the part of the Arbitral Tribunal.

4

An original of each Award made in accordance with the present Rules shall be deposited with the Secretariat.

5

The Arbitral Tribunal and the Secretariat shall assist the parties in complying with whatever further formalities may be necessary.

6

Every Award shall be binding on the parties. By submitting the dispute to arbitration under these Rules, the parties undertake to carry out any Award without delay and shall be deemed to have waived their right to any form of recourse insofar as such waiver can validly be made.

### Article 29
### Correction and Interpretation of the Award

1

On its own initiative, the Arbitral Tribunal may correct a clerical, computational or typographical error, or any errors of similar nature contained in an Award, provided such correction is submitted for approval to the Court within 30 days of the date of such Award.

2

Any application of a party for the correction of an error of the kind referred to in Article 29(1), or for the interpretation of an Award, must be made to the Secretariat within 30 days of the receipt of the Award by such party, in a number of copies as stated in Article 3(1). After transmittal of the application to the Arbitral Tribunal, the latter shall grant the other party a short time limit, normally not exceeding 30 days, from the receipt of the application by that party, to submit any comments

thereon. If the Arbitral Tribunal decides to correct or interpret the Award, it shall submit its decision in draft form to the Court not later than 30 days following the expiration of the time limit for the receipt of any comments from the other party or within such other period as the Court may decide.

3

The decision to correct or to interpret the Award shall take the form of an addendum and shall constitute part of the Award. The provisions of Articles 25, 27 and 28 shall apply *mutatis mutandis*.

## COSTS

### Article 30
### Advance to Cover the Costs of the Arbitration

1

After receipt of the Request, the Secretary General may request the Claimant to pay a provisional advance in an amount intended to cover the costs of arbitration until the Terms of Reference have been drawn up.

2

As soon as practicable, the Court shall fix the advance on costs in an amount likely to cover the fees and expenses of the arbitrators and the ICC administrative costs for the claims and counterclaims which have been referred to it by the parties. This amount may be subject to readjustment at any time during the arbitration. Where, apart from the claims, counterclaims are submitted, the Court may fix separate advances on costs for the claims and the counterclaims.

3

The advance on costs fixed by the Court shall be payable in equal shares by the Claimant and the Respondent. Any provisional advance paid on the basis of Article 30(1) will

be considered as a partial payment thereof. However, any party shall be free to pay the whole of the advance on costs in respect of the principal claim or the counterclaim should the other party fail to pay its share. When the Court has set separate advances on costs in accordance with Article 30(2), each of the parties shall pay the advance on costs corresponding to its claims.

4

When a request for an advance on costs has not been complied with, and after consultation with the Arbitral Tribunal, the Secretary General may direct the Arbitral Tribunal to suspend its work and set a time limit, which must be not less than 15 days, on the expiry of which the relevant claims, or counterclaims, shall be considered as withdrawn. Should the party in question wish to object to this measure, it must make a request within the aforementioned period for the matter to be decided by the Court. Such party shall not be prevented, on the ground of such withdrawal, from reintroducing the same claims or counterclaims at a later date in another proceeding.

5

If one of the parties claims a right to a set-off with regard to either claims or counterclaims, such set-off shall be taken into account in determining the advance to cover the costs of arbitration in the same way as a separate claim insofar as it may require the Arbitral Tribunal to consider additional matters.

### Article 31
### Decision as to the Costs of the Arbitration

1

The costs of the arbitration shall include the fees and expenses of the arbitrators and the ICC administrative expenses fixed by the Court, in accordance with the scale in force at the time of the commencement of the arbitral proceedings, as well as the fees and expenses of any experts appointed by the Arbitral Tribunal and the reasonable legal and other costs incurred by the parties for the arbitration.

2

The Court may fix the fees of the arbitrators at a figure higher or lower than that which would result from the application of the relevant scale should this be deemed necessary due to the exceptional circumstances of the case. Decisions on costs other than those fixed by the Court may be taken by the Arbitral Tribunal at any time during the proceedings.

3

The final Award shall fix the costs of the arbitration and decide which of the parties shall bear them or in what proportion they shall be borne by the parties.

## MISCELLANEOUS

### Article 32
### Modified Time Limits

1

The parties may agree to shorten the various time limits set out in these Rules. Any such agreement entered into subsequent to the constitution of an Arbitral Tribunal shall become effective only upon the approval of the Arbitral Tribunal.

2

The Court, on its own initiative, may extend any time limit which has been modified pursuant to Article 32(1) if it decides that it is necessary to do so in order that the Arbitral Tribunal or the Court may fulfil their responsibilities in accordance with these Rules.

### Article 33
### Waiver

A party which proceeds with the arbitration without raising its objection to a failure to comply with any provision of these Rules, or of any other rules applicable to the proceedings, any direction given by the Arbitral Tribunal,

or any requirement under the arbitration agreement relating to the constitution of the Arbitral Tribunal, or to the conduct of the proceedings, shall be deemed to have waived its right to object.

### Article 34
### Exclusion of Liability

Neither the arbitrators, nor the Court and its members, nor the ICC and its employees, nor the ICC National Committees shall be liable to any person for any act or omission in connection with the arbitration.

### Article 35
### General Rule

In all matters not expressly provided for in these Rules, the Court and the Arbitral Tribunal shall act in the spirit of these Rules and shall make every effort to make sure that the Award is enforceable at law.

**APPENDIX I**
**STATUTES OF THE INTERNATIONAL**
**COURT OF ARBITRATION OF THE ICC**

### Article 1
### Function

1

The function of the International Court of Arbitration of the International Chamber of Commerce (the "Court") is to ensure the application of the Rules of Arbitration of the International Chamber of Commerce, and it has all the necessary powers for that purpose.

2

As an autonomous body, it carries out these functions in complete independence from the ICC and its organs.

3

Its members are independent from the ICC National Committees.

### Article 2
### Composition of the Court

The Court shall consist of a Chairman, Vice-Chairmen, and members and alternate members (collectively designated as members). In its work it is assisted by its Secretariat (Secretariat of the Court).

### Article 3
### Appointment

1

The Chairman is elected by the ICC World Council upon the recommendation of the Executive Board of the ICC.

2

The ICC World Council appoints the Vice-Chairmen of the Court from among the members of the Court or otherwise.

3

Its members are appointed by the ICC World Council on the proposal of National Committees, one member for each Committee.

4

On the proposal of the Chairman of the Court, the World Council may appoint alternate members.

5

The term of office of all members is three years. If a member is no longer in a position to exercise his functions, his successor is appointed by the World Council for the remainder of the term.

### Article 4
### Plenary Session of the Court

The Plenary Sessions of the Court are presided over by the Chairman or, in his absence, by one of the Vice-Chairmen designated by him. The deliberations shall be valid when at least six members are present. Decisions are taken by a majority vote, the Chairman having a casting vote in the event of a tie.

### Article 5
### Committees

The Court may set up one or more Committees and establish the functions and organization of such Committees.

### Article 6
### Confidentiality

The work of the Court is of a confidential nature which must be respected by everyone who participates in that work in whatever capacity. The Court lays down the rules regarding the persons who can attend the meetings of the Court and its Committees and who are entitled to have access to the materials submitted to the Court and its Secretariat.

### Article 7
### Modification of the Rules of Arbitration

Any proposal of the Court for a modification of the Rules is laid before the Commission on Arbitration before submission to the Executive Board and the World Council of the ICC for approval.

**APPENDIX II**
**INTERNAL RULES OF THE INTERNATIONAL**
**COURT OF ARBITRATION OF THE ICC**

### Article 1
### Confidential Character of the Work of the
### International Court of Arbitration

1

The sessions of the Court, whether plenary or those of a Committee of the Court, are open only to its members and to the Secretariat.

2

However, in exceptional circumstances, the Chairman of the Court may invite other persons to attend. Such persons must respect the confidential nature of the work of the Court.

3

The documents submitted to the Court, or drawn up by it in the course of its proceedings, are communicated only to the members of the Court and to the Secretariat and to persons authorized by the Chairman to attend Court sessions.

4

The Chairman or the Secretary General of the Court may authorize researchers undertaking work of a scientific nature on international trade law to acquaint themselves with Awards and other documents of general interest, with the exception of memoranda, notes, statements and documents remitted by the parties within the framework of arbitration proceedings.

5

Such authorization shall not be given unless the beneficiary has undertaken to respect the confidential character of the documents made available and to refrain from any publication in their respect without having previously submitted the text for approval to the Secretary General of the Court.

6

The Secretariat will in each case submitted to arbitration under the Rules retain in the archives of the Court all Awards, Terms of Reference and decisions of the Court, as well as copies of the pertinent correspondence of the Secretariat.

7

Any documents, communications or correspondence submitted by the parties or the arbitrators may be destroyed unless a party or an arbitrator requests in writing within a period fixed by the Secretariat the return of such documents. All related costs and expenses for the return of those documents shall be paid by such party or arbitrator.

### Article 2
### Participation of Members of the International Court of Arbitration in ICC Arbitration

1

The Chairman and the members of the Secretariat of the Court may not act as arbitrators or as counsel in cases submitted to ICC arbitration.

2

The Court shall not appoint Vice-Chairmen or members of the Court as arbitrators. They may, however, be proposed for such duties by one or more of the parties, or pursuant to any other procedure agreed upon by the parties, subject to confirmation.

3

When the Chairman, a Vice-Chairman or a member of the Court or of the Secretariat is involved in any capacity whatsoever in proceedings pending before the Court, such person must inform the Secretary General of the Court upon becoming aware of such involvement.

4

Such person must refrain from participating in the discussions or in the decisions of the Court concerning

the proceedings and must be absent from the courtroom whenever the matter is considered.

5

Such person will not receive any material documentation or information pertaining to such proceedings.

### Article 3
### Relations between the Members of the Court and the ICC National Committees

1

By virtue of their capacity, the members of the Court are independent of the ICC National Committees which proposed them for appointment by the ICC World Council.

2

Furthermore, they must regard as confidential, vis-à-vis the said National Committees, any information concerning individual cases with which they have become acquainted in their capacity as members of the Court, except when they have been requested by the Chairman of the Court or by its Secretary General to communicate specific information to their respective National Committees.

### Article 4
### Committee of the Court

1

In accordance with the provisions of Article 1(4) of the Rules and Article 5 of its Statutes (Appendix I), the Court hereby establishes a Committee of the Court.

2

The members of the Committee consist of a Chairman and at least two other members. The Chairman of the Court acts as the Chairman of the Committee. If absent, the Chairman may designate a Vice-Chairman of the Court or, in exceptional circumstances, another member of the Court as Chairman of the Committee.

3

The other two members of the Committee are appointed by the Court from among the Vice-Chairmen or the other members of the Court. At each Plenary Session the Court appoints the members who are to attend the meetings of the Committee to be held before the next Plenary Session.

4

The Committee meets when convened by its Chairman. Two members constitute a quorum.

5

(a)     The Court shall determine the decisions that may be taken by the Committee.

(b)     The decisions of the Committee are taken unanimously.

(c)     When the Committee cannot reach a decision or deems it preferable to abstain, it transfers the case to the next Plenary Session, making any suggestions it deems appropriate.

(d)     The Committee's decisions are brought to the notice of the Court at its next Plenary Session.

## Article 5
## Court Secretariat

1

In case of absence, the Secretary General may delegate to the General Counsel and Deputy Secretary General the authority to confirm arbitrators, to certify true copies of Awards and to request the payment of a provisional advance, respectively provided for in Articles 9(2), 28(2) and 30(1) of the Rules.

2

The Secretariat may, with the approval of the Court, issue notes and other documents for the information of the parties and the arbitrators, or as necessary for the proper conduct of the arbitral proceedings.

## Article 6
### Scrutiny of Arbitral Awards

When the Court scrutinizes draft Awards in accordance with Article 27 of the Rules, it considers, to the extent practicable, the requirements of mandatory law at the place of arbitration.

## APPENDIX III
## ARBITRATION COSTS AND FEES

### Article 1
### Advance on Costs

1

Each request to commence an arbitration pursuant to the Rules must be accompanied by an advance payment of US\$ 2,500 on the administrative expenses. Such payment is non-refundable, and shall be credited to the Claimant's portion of the advance on costs.

2

The provisional advance fixed by the Secretary General according to Article 30(1) of the Rules shall normally not exceed the amount obtained by adding together the administrative expenses, the minimum of the fees (as set out in the scale hereinafter) based upon the amount of the claim and the expected reimbursable expenses of the Arbitral Tribunal incurred with respect to the drafting of the Terms of Reference. If such amount is not quantified, the provisional advance shall be fixed at the discretion of the Secretary General. Payment by the Claimant shall be credited to its share of the advance on costs fixed by the Court.

3

In general, after the Terms of Reference have been signed or approved by the Court and the provisional timetable has been established, the Arbitral Tribunal shall, in accordance with Article 30(4) of the Rules, proceed only with respect to those claims or counterclaims in regard to which the whole of the advance on costs has been paid.

4

The advance on costs fixed by the Court according to Article 30(2) of the Rules comprises the fees of the arbitrator or arbitrators (hereinafter referred to as "arbitrator"), any arbitration-related expenses of the arbitrator and the administrative expenses.

### 5

Each party shall pay in cash its share of the total advance on costs. However, if its share exceeds an amount fixed from time to time by the Court, a party may post a bank guarantee for this additional amount.

### 6

A party that has already paid in full its share of the advance on costs fixed by the Court may, in accordance with Article 30(3) of the Rules, pay the unpaid portion of the advance owed by the defaulting party by posting a bank guarantee.

### 7

When the Court has fixed separate advances on costs pursuant to Article 30(2) of the Rules, the Secretariat shall invite each party to pay the amount of the advance corresponding to its respective claim(s).

### 8

When, as a result of the fixing of separate advances on costs, the separate advance fixed for the claim of either party exceeds one half of such global advance as was previously fixed (in respect of the same claims and counterclaims that are the subject of separate advances), a bank guarantee may be posted to cover any such excess amount. In the event that the amount of the separate advance is subsequently increased, at least one half of the increase shall be paid in cash.

### 9

The Secretariat shall establish the terms governing all bank guarantees which the parties may post pursuant to the above provisions.

### 10

As provided in Article 30(2) of the Rules, the advance on costs may be subject to readjustment at any time during the arbitration, in particular to take into account fluctuations in the amount in dispute, changes in the amount of the estimated expenses of the arbitrator, or the evolving difficulty or complexity of arbitration proceedings.

### 11

Before any expertise ordered by the Arbitral Tribunal can be commenced, the parties, or one of them, shall pay an advance on costs fixed by the Arbitral Tribunal sufficient to cover the expected fees and expenses of the expert as determined by the Arbitral Tribunal. The Arbitral Tribunal shall be responsible for ensuring the payment by the parties of such fees and expenses.

## Article 2
## Costs and Fees

### 1

Subject to Article 31(2) of the Rules, the Court shall fix the fees of the arbitrator in accordance with the scale hereinafter set out or, where the sum in dispute is not stated, at its discretion.

### 2

In setting the arbitrator's fees, the Court shall take into consideration the diligence of the arbitrator, the time spent, the rapidity of the proceedings, and the complexity of the dispute, so as to arrive at a figure within the limits specified or, in exceptional circumstances (Article 31(2) of the Rules), at a figure higher or lower than those limits.

### 3

When a case is submitted to more than one arbitrator, the Court, at its discretion, shall have the right to increase the total fees up to a maximum which shall normally not exceed three times the fees of one arbitrator.

### 4

The arbitrator's fees and expenses shall be fixed exclusively by the Court as required by the Rules. Separate fee arrangements between the parties and the arbitrator are contrary to the Rules.

### 5

The Court shall fix the administrative expenses of each arbitration in accordance with the scale hereinafter set out or, where the sum in dispute is not stated, at its

discretion. In exceptional circumstances, the Court may fix the administrative expenses at a lower or higher figure than that which would result from the application of such scale, provided that such expenses shall normally not exceed the maximum amount of the scale. Further, the Court may require the payment of administrative expenses in addition to those provided in the scale of administrative expenses as a condition to holding an arbitration in abeyance at the request of the parties or of one of them with the acquiescence of the other.

6

If an arbitration terminates before the rendering of a final Award, the Court shall fix the costs of the arbitration at its discretion, taking into account the stage attained by the arbitral proceedings and any other relevant circumstances.

7

In the case of an application under Article 29(2) of the Rules, the Court may fix an advance to cover additional fees and expenses of the Arbitral Tribunal and may make the transmission of such application to the Arbitral Tribunal subject to the prior cash payment in full to the ICC of such advance. The Court shall fix at its discretion any possible fees of the arbitrator when approving the decision of the Arbitral Tribunal.

8

When an arbitration is preceded by an attempt at amicable resolution pursuant to the ICC ADR Rules, one half of the administrative expenses paid for such ADR proceedings shall be credited to the administrative expenses of the arbitration.

9

Amounts paid to the arbitrator do not include any possible value added taxes (VAT) or other taxes or charges and imposts applicable to the arbitrator's fees. Parties have a duty to pay any such taxes or charges; however, the recovery of any such charges or taxes is a matter solely between the arbitrator and the parties.

### Article 3
### ICC as Appointing Authority

Any request received for an authority of the ICC to act as appointing authority will be treated in accordance with the Rules of ICC as Appointing Authority in UNCITRAL or Other *Ad Hoc* Arbitration Proceedings and shall be accompanied by a non-refundable sum of US$ 2,500. No request shall be processed unless accompanied by the said sum. For additional services, ICC may at its discretion fix administrative expenses, which shall be commensurate with the services provided and shall not exceed the maximum sum of US$ 10,000.

### Article 4
### Scales of Administrative Expenses and Arbitrator's Fees

1

The Scales of Administrative Expenses and Arbitrator's Fees set forth below shall be effective as of 1 July 2003 in respect of all arbitrations commenced on or after such date, irrespective of the version of the Rules applying to such arbitrations.

2

To calculate the administrative expenses and the arbitrator's fees, the amounts calculated for each successive slice of the sum in dispute must be added together, except that where the sum in dispute is over US$ 80 million, a flat amount of US$ 88,800 shall constitute the entirety of the administrative expenses.

## A. ADMINISTRATIVE EXPENSES

| Sum in dispute (in US Dollars) | | | Administrative expenses(*) |
|---|---|---|---|
| up to | 50 000 | | $ 2 500 |
| from | 50 001 | to    100 000 | 3.50% |
| from | 100 001 | to    500 000 | 1.70% |
| from | 500 001 | to  1 000 000 | 1.15% |
| from | 1 000 001 | to  2 000 000 | 0.70% |
| from | 2 000 001 | to  5 000 000 | 0.30% |
| from | 5 000 001 | to 10 000 000 | 0.20% |
| from | 10 000 001 | to 50 000 000 | 0.07% |
| from | 50 000 001 | to 80 000 000 | 0.06% |
| over | 80 000 000 | | $ 88 800 |

*(*) For illustrative purposes only, the table on the following page indicates the resulting administrative expenses in US$ when the proper calculations have been made.*

## B. ARBITRATOR'S FEES

| Sum in dispute (in US Dollars) | | | Fees(**) | |
|---|---|---|---|---|
| | | | **minimum** | **maximum** |
| up to | 50 000 | | $ 2 500 | 17.00% |
| from | 50 001 | to    100 000 | 2.00% | 11.00% |
| from | 100 001 | to    500 000 | 1.00% | 5.50% |
| from | 500 001 | to  1 000 000 | 0.75% | 3.50% |
| from | 1 000 001 | to  2 000 000 | 0.50% | 2.75% |
| from | 2 000 001 | to  5 000 000 | 0.25% | 1.12% |
| from | 5 000 001 | to 10 000 000 | 0.10% | 0.616% |
| from | 10 000 001 | to 50 000 000 | 0.05% | 0.193% |
| from | 50 000 001 | to 80 000 000 | 0.03% | 0.136% |
| from | 80 000 001 | to 100 000 000 | 0.02% | 0.112% |
| over | 100 000 000 | | 0.01% | 0.056% |

*(**) For illustrative purposes only, the table on the following page indicates the resulting range of fees when the proper calculations have been made.*

| SUM IN DISPUTE (in US Dollars) | A. ADMINISTRATIVE EXPENSES(*) (in US Dollars) | B. ARBITRATOR'S FEES(**) (in US Dollars) | |
|---|---|---|---|
| | | Minimum | Maximum |
| | | | 17.00% of amount in dispute |
| up to 50 000 | 2 500 | 2 500 | |
| from 50 001 to 100 000 | 2 500 + 3.50% of amt. over 50 000 | 2 500 + 2.00% of amt. over 50 000 | 8 500 + 11.00% of amt. over 50 000 |
| from 100 001 to 500 000 | 4 250 + 1.70% of amt. over 100 000 | 3 500 + 1.00% of amt. over 100 000 | 14 000 + 5.50% of amt. over 100 000 |
| from 500 001 to 1 000 000 | 11 050 + 1.15% of amt. over 500 000 | 7 500 + 0.75% of amt. over 500 000 | 36 000 + 3.50% of amt. over 500 000 |
| from 1 000 001 to 2 000 000 | 16 800 + 0.70% of amt. over 1 000 000 | 11 250 + 0.50% of amt. over 1 000 000 | 53 500 + 2.75% of amt. over 1 000 000 |
| from 2 000 001 to 5 000 000 | 23 800 + 0.30% of amt. over 2 000 000 | 16 250 + 0.25% of amt. over 2 000 000 | 81 000 + 1.12% of amt. over 2 000 000 |
| from 5 000 001 to 10 000 000 | 32 800 + 0.20% of amt. over 5 000 000 | 23 750 + 0.10% of amt. over 5 000 000 | 114 600 + 0.616% of amt. over 5 000 000 |
| from 10 000 001 to 50 000 000 | 42 800 + 0.07% of amt. over 10 000 000 | 28 750 + 0.05% of amt. over 10 000 000 | 145 400 + 0.193% of amt. over 10 000 000 |
| from 50 000 001 to 80 000 000 | 70 800 + 0.06% of amt. over 50 000 000 | 48 750 + 0.03% of amt. over 50 000 000 | 222 600 + 0.136% of amt. over 50 000 000 |
| from 80 000 001 to 100 000 000 | 88 800 | 57 750 + 0.02% of amt. over 80 000 000 | 263 400 + 0.112% of amt. over 80 000 000 |
| over 100 000 000 | 88 800 | 61 750 + 0.01% of amt. over 100 000 000 | 285 800 + 0.056% of amt. over 100 000 000 |

*(*)(**) See preceeding page*

46